AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Kristine G. Manoukian

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Scott L. Alberino (*Admitted Pro Hac Vice*)

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ATARI, INC., *et al.*, | ) Case No. 13-10176 (JMP) |
| | ) |
| Debtors.[1] | ) (Jointly Administrated) |
| | ) |

**NOTICE OF FILING OF PROPOSED FINAL ORDER APPROVING THE
(CORRECTED) MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364 AND 507 AND FED. R. BANKR. P. 2002,
4001 AND 9014 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS, (II)
GRANTING FIRST PRIORITY PRIMING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION,
(IV) MODIFYING AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING**

     **PLEASE TAKE NOTICE** that on January 22, 2013, the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") filed the *(Corrected) Motion of Debtors and*

*Debtors-in-Possession Pursuant to 11 U.S.C. §§ 105, 361, 362, 364 and 507 and Fed. R. Bankr.*

---

[1] The Debtors in these chapter 11 cases are: Atari, Inc., Atari Interactive, Inc., California U. S. Holdings, Inc., and Humongous, Inc.

*P. 2002, 4001 and 9014 for Entry of Interim and Final Orders (I) Authorizing the Debtors to Incur Post-Petition Secured Indebtedness, (II) Granting First Priority Priming Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Scheduling a Final Hearing* [ECF No. 17] (the "DIP Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file (i) a proposed form of final order approving the DIP Motion (the "Proposed Final DIP Order"), a copy of which is attached hereto as Exhibit A, and (ii) a blackline comparing the Proposed Final DIP Order to the Interim DIP Order entered on January 25, 2013 [Docket No. 40], a copy of which is attached hereto as Exhibit B.

New York, New York
Dated:  March 5, 2013

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Ira S. Dizengoff*
    Ira S. Dizengoff
    Kristine G. Manoukian
    One Bryant Park
    New York, New York 10036
    Telephone:  (212) 872-1000
    Facsimile:   (212) 872-1002
    idizengoff@akingump.com
    kmanoukian@akingump.com

    Scott L. Alberino
    Robert S. Strauss Building
    1333 New Hampshire Avenue, N.W.
    Washington, DC 20036-1564
    Telephone:  (202) 887-4000
    Facsimile:   (202) 887-4288
    salberino@akingump.com

    *Proposed Counsel to the Debtors and Debtors in Possession*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Motion.

## Exhibit A

## Proposed Final DIP Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| ATARI, INC., *et al.*,[1] | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11

Case No. 13-10176 (JMP)

(Jointly Administered)

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364 AND 507 (I) AUTHORIZING THE DEBTORS TO INCUR POSTPETITION SECURED INDEBTEDNESS, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION AND (IV) MODIFYING AUTOMATIC STAY

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") filed in these chapter 11 cases (each a "Case") and, collectively, the "Cases") pursuant to sections 105, 361, 362, 364 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), requesting entry of an interim order (the "Interim Order") and a final order (the "Final Order"), authorizing the Debtors, to among other things:

(i)      enter into that certain term sheet (the "DIP Term Sheet"), attached to the Interim Order, by and between the Debtors, on the one hand, and Alden Global Distressed Opportunities Master Fund, L.P., Alden Global Value Recovery Master Fund, L.P. ("Alden" or together with Alden's successors and assigns pursuant to the DIP Credit Agreement (as defined below) and any other Lender (as defined in the DIP Credit Agreement) the "DIP Lender"), and Turnpike Limited, on the other hand, to obtain superpriority secured postpetition financing of up to

---

[1] The Debtors are Atari, Inc., Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

$5,000,000 (the "DIP Facility");

(ii)     authorizing the Debtors to execute and deliver the postpetition financing credit agreement upon satisfaction or waiver of conditions precedent set forth therein (the "DIP Credit Agreement") by and among the Debtors, Alden and Imperial Capital Loan Trading, LLC (the "DIP Collateral Agent"), and the other pospetition financing documents ancillary thereto, referenced in the DIP Term Sheet, the Interim Order or this Final Order, or requested by the DIP Lender (collectively, and together with the DIP Credit Agreement, the "DIP Credit Documents") and to perform such other acts as may be necessary or desirable to the DIP Lender in connection with the DIP Credit Agreement and the other DIP Credit Documents;

(iii)    subject to the satisfaction of each of the terms and conditions set forth in the DIP Term Sheet, the Interim Order, this Final Order and the DIP Credit Documents (collectively, the "DIP Financing Conditions"), authorizing the Debtors to grant the DIP Facility and all indebtedness, obligations and liabilities owing to the DIP Lender under the DIP Term Sheet, the DIP Facility, the DIP Credit Documents, the Interim Order and this Final Order (collectively, the "DIP Obligations"), allowed superpriority administrative expense claim status in these chapter 11 cases and any Successor Cases (as defined below), and authorizing the Debtors to grant to the DIP Lender and the DIP Collateral Agent for the benefit of Secured Parties (as defined in the DIP Credit Agreement) automatically perfected security interests in and liens on all of the Collateral (as defined below); and

(iv)    vacating and modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Final Order, the DIP Term Sheet and, subject to the satisfaction of the DIP Financing Conditions, the DIP Credit Documents.

The Court having considered the Motion, the Declaration of Robert A. Mattes the Debtors' Chief Financial Officer (the "Mattes Declaration"), in support of the chapter 11 petitions and first day motions, including the Motion, the exhibits attached thereto, the DIP Term Sheet, the DIP Facility, the Declaration of Michael Andersen in Support of Entry of a Final Order on Debtors' DIP Financing Motion, and the evidence submitted or adduced and the arguments of counsel made at the hearings held and concluded before this Court on January 24, 2013 (the "Interim Hearing") and March [6], 2013 (the "Final Hearing"); and the Court having entered the Interim Order [Docket No. 40] on January 25, 2013; and notice of the Motion, the Interim Hearing, the Interim Order and the Final Hearing having been provided in a sufficient manner and in accordance with the Interim Order; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for maximizing the value of the Debtors' assets for the benefit of the Debtors' creditors and all parties in interest; and all objections, responses, or reservations of rights, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ADJUDGED AND DECREED AS FOLLOWS:**[2]

A.    Petition Date.    On January 21, 2013 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court commencing the Cases.

B.    Debtors in Possession.    The Debtors are continuing in the management and operation of their business and assets as debtors in possession pursuant to Bankruptcy Code sections

---

[2] This Final Order shall constitute the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052. Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

1107 and 1108.  No trustee or examiner has been appointed in the Cases.  On February 6, 2013,

the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the

Cases, consisting of the following five members: (i) CD Projekt S.A., f/k/a CD Projekt Red S.A.;

(ii) Tavant Technologies, Inc.: (iii) CDV Software Entertainment, USA, Inc.; (iv) Rackspace

Hosting; and (v) Liquid Entertainment.

C.      Jurisdiction and Venue.  This Court has jurisdiction over the Cases, and over

the persons, entities and assets affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended

Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).  Consideration of the

Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and

proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Interim Order.  Based upon the Motion, the Mattes Declaration, the DIP Term Sheet

and the evidence submitted or proffered at the Interim Hearing, the Court approved the Debtors'

entry into and performance under the DIP Term Sheet and entered the Interim Order.  Pursuant to the

Interim Order, the Debtors were authorized, among other things, to incur secured borrowings up to

$2,000,000 on an interim basis in accordance with the terms of the DIP Term Sheet and the Interim

Order.

E.      Prepetition Debt.  As of the Petition Date, Atari Europe SAS, the Debtors'

French affiliate company ("Atari Europe"), had outstanding debt (the "Blue Bay Debt")

guaranteed by the Atari, S.A. (the "Parent") owed to Blue Bay Value Recovery (Master) Fund

Limited ("Blue Bay" and, together with the Parent, the "Prepetition Secured Parties").

Prior to the Petition Date, Blue Bay filed a financing statement (the "Blue Bay Lien")

against certain assets of Atari, Inc. (the "Blue Bay Collateral").  Further, based on the

4

Debtors' books and records, prior to the Petition Date, Atari Interactive Inc. had approximately $255 million of net obligations due to the Parent and Atari Inc. had approximately $18.9 million in net obligations due to the Parent[3] (together, the "Parent Intercompany Obligations").[4]  In addition, based on the Debtors' books and records, Atari Inc. had approximately $25.3 million of net obligations due to Atari Europe (the "Atari Europe Intercompany Obligations," and with the Parent Intercompany Obligations, the "Intercompany Obligations").  The Parent also filed a financing statement reflecting a lien (the "Parent Lien," and with the Bluebay Lien, the "Prepetition Liens") on all assets of Debtor Atari, Inc., except for certain intellectual property assets (the "Parent Collateral," and with the Blue Bay Collateral, the "Prepetition Collateral").  Subject to the Committee Investigation Rights (defined below) the Debtors each hereby irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the Blue Bay Debt, the Prepetition Liens, and the Intercompany Obligations (collectively, the "Waived Claims") or the validity or enforceability of the Waived Claims.

F.    Findings Regarding Postpetition Financing.

(i)    *Need for Postpetition Financing*.  The Debtors' need to obtain credit as set forth in the DIP Term Sheet and the DIP Credit Documents is immediate and critical in order to enable the Debtors to continue their operations, and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations

---

[3] Pursuant to the Debtors' books and records, the $18.9 million net obligation to the Parent is comprised of a $3.8 interest-bearing obligation and a $16.4 million trade obligation.

[4] The Parent net obligation to Atari, Inc. does not reflect approximately $1.2 million in unamortized intangible assets related to the Test Drive Unlimited Franchise.

requires the availability of working capital from the credit as set forth in the DIP Term Sheet and the DIP Credit Documents, the absence of which would immediately and irreparably harm the Debtors and their estates, creditors and equity holders.  The Debtors do not have sufficient available sources of working capital or financing to operate their business or to maintain their assets in the ordinary course of business without the authorized use of credit as set forth in the DIP Term Sheet and the DIP Credit Documents.

(ii)    *No Credit Available on More Favorable Terms.*  Given their current financial condition, financing arrangement and capital structure, the Debtors are unable to obtain postpetition financing from sources other than the DIP Lender on terms more favorable than those set forth in the DIP Term Sheet and the DIP Credit Documents.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code sections 503(b), 507(a) and 507(b), (b) secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Lender (1) perfected security interests in and liens on all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in the Interim Order and in this Final Order.

(iii)    *Use of Proceeds.*  As a condition to the authorization to obtain credit as set forth in this Final Order, the DIP Term Sheet, and the DIP Credit Documents, the DIP Lender requires, and the Debtors have agreed, that any financing provided pursuant to this Final Order

and the DIP Credit Documents shall be used in accordance with the Approved Budget[5] (as defined in the DIP Term Sheet and the DIP Credit Documents, as the same may be modified from time to time in accordance with the DIP Credit Agreement), solely for the Permitted Expenditures (as defined in the DIP Term Sheet and the DIP Credit Documents).

G.    Section 506(c).  In light of the DIP Lender's agreement to subordinate the DIP Liens (as defined below) and DIP Superpriority Claim (as defined below) to the Carveout (as defined below) pursuant to the terms of the DIP Term Sheet, the DIP Credit Documents and this Final Order, the DIP Lender is entitled to a waiver of the provisions of Bankruptcy Code section 506(c).

H.    Good Faith of the DIP Lender.

(i)    *Willingness to Provide Financing.*  The DIP Lender has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Final Order; (b) the satisfaction of the DIP Financing Conditions; (c) Court approval of the terms and conditions of the DIP Term Sheet and the DIP Credit Documents; and (d) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors as set forth in the DIP Term Sheet and the DIP Credit Documents in good faith, and that the DIP Lender's and DIP Collateral Agent's claims, superpriority claims, security interests, liens, protections, rights and remedies will have the protections provided in Bankruptcy Code section 364(e) and will not be affected by any subsequent reversal, modification, stay, vacatur, amendment, reargument or reconsideration of this Final Order.

(ii)    *Business Judgment and Good Faith Pursuant to Bankruptcy Code Section 364(e).*  The terms and conditions set forth in the DIP Term Sheet and the DIP Credit

---

[5] The Approved Budget is attached hereto as Exhibit A.

7

Documents are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Term Sheet and the DIP Credit Documents were negotiated in good faith and at arms' length among the Debtors and the DIP Lender. Any credit to be extended by the DIP Lender as set forth in the DIP Term Sheet and the DIP Credit Documents shall be deemed to have been so allowed, advanced, made, used or extended in "good faith" as such term is used in Bankruptcy Code section 364(e), for valid business purposes and uses, within the meaning of section 364(e), and in express reliance upon the protections set forth herein, and the DIP Lender is therefore entitled to the protection and benefits of section 364(e) in the event that this Final Order or any provision hereof is vacated, reversed, modified on appeal, or otherwise.

I.   Notice.   The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors by facsimile (where facsimile numbers were available), email (where email addresses were available), and overnight courier or hand delivery to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) counsel to the Committee; (iv) counsel to Atari, S.A.; (v) counsel to the DIP Lender and (vi) all parties in interest that have filed a request for notices pursuant to Bankruptcy Rule 2002. The Debtors have made reasonable efforts to afford notice that was, in the Debtors' belief, the best notice available under the circumstances, and such notice is proper and sufficient to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion, the DIP Term Sheet, the DIP Credit Documents and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    <u>Motion Granted.</u>    The Motion is granted in accordance with the terms and conditions set forth in this Final Order, the DIP Term Sheet and the DIP Credit Documents.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are denied and overruled.

2.    <u>Ratification of the Interim Order; Approval of DIP Credit Documents.</u>  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order and the DIP Credit Documents, and all DIP Obligations (as defined below) incurred and borrowings and payments made thereunder are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Term Sheet and the DIP Credit Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized on a final basis to perform under the DIP Term Sheet and the DIP Credit Documents and to incur the DIP Obligations in accordance with, and subject to, the terms and conditions of this Final Order, the DIP Term Sheet, and the DIP Credit Documents, and to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary or otherwise requested by the DIP Collateral Agent or the DIP Lender pursuant to the terms of the DIP Credit Documents for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order, the DIP Term Sheet and the DIP Credit Documents.  The

9

Debtors are hereby authorized and directed on a final basis to do and perform all acts and pay the principal, interest, fees, expenses and other amounts described in the DIP Term Sheet and the DIP Credit Documents as such become due pursuant to the DIP Term Sheet, the DIP Credit Documents and this Final Order.  The DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each responsible officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Credit Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

3.    <u>DIP Obligations.</u>  Upon execution and delivery, and subject to the satisfaction of the DIP Financing Conditions, the DIP Credit Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors or assigns thereto, including, but not limited to, any trustee or other estate representative appointed in any of these Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases (each a "<u>Successor Case</u>" and, together, "<u>Successor Cases</u>").  The "DIP Obligations" include, but are not limited to, all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by the Debtors to the DIP Lender under the DIP Term Sheet or DIP Credit Documents, including, but not limited to, all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Term Sheet or DIP Credit Documents.

4.    <u>DIP Liens and Collateral.</u>

(a)    *DIP Liens.*  To secure the prompt and complete payment and performance of the DIP Facility and other liabilities and obligations of the Debtors to the DIP Lender under or in connection with the DIP Term Sheet, the DIP Credit Documents and this Final Order,

effective and perfected upon the entry of this Final Order and without the necessity of (x)

execution by the Debtors (or recordation or other filing) of security agreements, control

agreements, pledge agreements, financing statements, mortgages or similar documents, or (y) the

possession or control by the DIP Lender of any property of the Debtors, the following security

interests and liens (collectively the "DIP Liens") are hereby granted to the DIP Collateral Agent

for the benefit of the Secured Parties on the following property:

> (i)      pursuant to Bankruptcy Code section 364(c)(2), secured by a perfected first-priority lien on the Collateral, subject only to (i) valid, perfected and non-avoidable liens as of the Petition Date and (ii) the Carveout (the "First Priority DIP Liens");

> (ii)      pursuant to Bankruptcy Code section 364(c)(3), secured by a perfected second priority lien on the Collateral, to the extent that such Collateral is subject to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by Bankruptcy Code section 546(b), and to the extent such liens are expressly permitted in writing by the DIP Lender in its sole and absolute discretion, subject only to the Carveout (the "Second Priority DIP Liens"); and

> (iii)      pursuant to Bankruptcy Code section 364(d), secured by a perfected first priority, priming and senior security interest and lien granted to the DIP Lender on the Collateral to the extent that such Collateral is subject to any lien or security interest as of the Petition Date, subject only to the Carveout (the "Priming DIP Liens").

Except as otherwise provided herein, the DIP Term Sheet or the DIP Credit Documents, the DIP

Liens shall not be subject to or *pari passu* with any security, mortgage, collateral interest, lien or

claim heretofore or hereinafter granted in any of the Cases or any Successor Cases.

         (b)      *Treatment of DIP Liens.* The DIP Liens shall be valid and enforceable

against the Debtors, the Collateral, any trustee or other estate representative appointed in any of

the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under

chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of

any of the Cases or any Successor Cases. The DIP Liens shall not be subject to challenge,

including, but not limited to, under Bankruptcy Code sections 510, 549, or 550. Except as

otherwise provided herein, the DIP Term Sheet or the DIP Credit Documents, no security,

mortgage, collateral interest, lien, claim, or interest avoided and preserved for the benefit of the

Debtors' estates shall be *pari passu* with or senior to the DIP Liens.

5.    Approved Budget. The Debtors' use of the credit extended under this Final

Order, the DIP Term Sheet and the DIP Credit Documents is on a final basis, shall at all

times be in compliance with the Approved Budget, and may be utilized until the earlier of (x)

180 days after the Petition Date, (y) upon the occurrence of an Event of Default (as defined in the

DIP Credit Agreement), or (z) the date of sale of all or substantially all of the Debtor's assets

outside the ordinary course of business or any Debtor's emergence from chapter 11 pursuant to

a plan of reorganization (the "Termination Date"). Nothing in this Final Order shall authorize the

Debtors' disposition of any of their assets or the assets of their estates outside the ordinary

course of business (which shall be subject to further orders of this Court), or the Debtors'

use of any proceeds resulting therefrom, except as permitted in this Final Order and in accordance

with the Approved Budget. Any modification to, or amendment or update of, the Approved

Budget shall be in form and substance acceptable to the DIP Lender.

6.    DIP Superpriority Claim.

(a)    *Superpriority Claim of DIP Lender.* The DIP Lender is hereby granted,

pursuant to Bankruptcy Code section 364(c)(1), an allowed superpriority administrative expense

claim in the Cases and any Successor Cases for all DIP Obligations (the "DIP Superpriority Claim").

The DIP Superpriority Claim shall be subordinate only to the Carveout, and shall otherwise have

priority over any and all chapter 11 administrative expenses, whether heretofore or hereafter

12

incurred, of the kinds specified in or ordered pursuant to Bankruptcy Code sections 503(b) and 507(b).

(b)     *Priority of DIP Superpriority Claim.*   Subject to the Carveout, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition assets of the Debtors and their estates, and all proceeds thereof, including any and all claims and causes of action under chapter 5 of the Bankruptcy Code.

7.     <u>No Obligation to Extend Credit.</u>   The DIP Lender shall have no obligation to make loans or advances under the DIP Facility until the DIP Financing Conditions have been satisfied and the conditions precedent to the making of such extension of credit under the DIP Term Sheet or the DIP Credit Documents have been satisfied in full, in each case in the sole discretion of the DIP Lender.

8.     <u>Adequate Protection</u>.

(a)     *Adequate Protection Lien.*   To the extent of the diminution in value of the Prepetition Secured Parties' interests in their respective Prepetition Collateral, from and after the Petition Date, resulting from the use, sale or lease by the Debtors of the Prepetition Collateral, the subordination of the Prepetition Secured Parties' respective liens in the Prepetition Collateral to the Carveout and the DIP Liens, and the imposition or enforcement of the automatic stay of Bankruptcy Code section 362(a) (collectively, the "<u>Diminution in Value</u>"), (1) Alden, as assignee of the Blue Bay Debt and the Blue Bay Lien, is hereby granted (i) a valid and perfected replacement security interest in, and lien on the Blue Bay Collateral, subordinate and subject only to (a) the DIP Liens and (b) the Carveout, and (ii) a valid and perfected priority security interest in, all other Collateral, subject to and subordinate to the First Priority DIP Liens and the Second Priority DIP Liens, as applicable and (2) the Parent is hereby granted (i) a valid

13

and perfected replacement security interest in, and lien on the Parent Collateral, subordinate and subject only to (a) the DIP Liens and (b) the Carveout, and (ii) a valid and perfected priority security interest in, all other Collateral, subject to and subordinate to the First Priority DIP Liens and the Second Priority DIP Liens, as applicable (collectively, the "<u>Adequate Protection Liens</u>").

(b)     *Adequate Protection Superpriority Claim.*  To the extent the Adequate Protection Liens are insufficient to adequately protect against the Diminution in Value of the Prepetition Secured Parties' interests in their respective Prepetition Collateral, the Prepetition Secured Parties shall also have priority in payment afforded by Bankruptcy Code section 507(b) in an amount equal to the amount by which such diminution exceeds the value of the Adequate Protection Liens (the "<u>Adequate Protection Superpriority Claim</u>").  Notwithstanding anything to the contrary contained herein or otherwise, the Adequate Protection Superpriority Claims shall be junior and subordinate in all respects to the DIP Liens, DIP Superpriority Claim, the Carveout, and Adequate Protection Liens, but shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 503(b) and 507(b).

(c)     *Adequate Protection Limitations.*  To the extent a Challenge (as defined below) is timely filed in accordance with this Final Order and successfully pursued by entry of a final, non-appealable order, the Adequate Protection Liens shall be automatically vacated, and nothing in this Final Order, the DIP Term Sheet, or the DIP Credit Documents shall prevent the Court from granting appropriate relief with respect thereto, and any adequate protection payments made to the Prepetition Secured Parties (or their assignees) subsequent to the entry of this Final Order shall be subject to disgorgement.

9.      Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy

Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions

of this Final Order, the DIP Term Sheet and the DIP Credit Documents, to permit the Debtors to

grant the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the

Adequate Protection Superpriority Claim.

10.      Credit Bid.  The DIP Lender (or the DIP Collateral Agent on behalf of the DIP

Lender) shall have the unqualified right to credit bid up to the full amount of the outstanding DIP

Obligations in any sale of any Collateral under or pursuant to (i) Bankruptcy Code section 363, (ii)

a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a

sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.

11.      Automatic Perfection of Liens.  This Final Order shall be sufficient and conclusive

evidence of the validity, perfection, and priority of all liens granted herein, including the DIP

Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or

other instrument or document which may otherwise be required under any law or regulation of

any jurisdiction or the taking of any other action to validate or perfect (including, but not limited to,

in accordance with applicable non-bankruptcy law) the DIP Liens, and to entitle the DIP

Collateral Agent and other Secured Parties to the priorities granted herein.

12.      Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with

enlarged powers, any responsible officer or any other estate representative subsequently

appointed in any of the Cases or any Successor Cases shall obtain credit or incur debt pursuant

to Bankruptcy Code section 364(b, c, or d) at any time prior to the repayment in full in cash of

all DIP Obligations, including subsequent to the confirmation of any plan of reorganization or

liquidation with respect to a Debtor or Debtor's estate, then all the proceeds derived from such

15

credit or debt shall immediately be turned over to the DIP Lender to be applied to the DIP

Obligations.

13.     <u>Financial Information and Reporting Requests.</u>  The Debtors shall allow the DIP

Lender reasonable access during business hours to the premises, books and records, officers,

employees, auditors, appraisers, legal advisors and financial advisors of the Debtors, upon

reasonable advance notice in order to conduct appraisals, analyses and/or audits of the Collateral

and the Debtors' financial affairs, and shall otherwise cooperate in providing any other financial

information reasonably requested by the DIP Lender, each at the cost and expense of the Debtors.

The Debtors shall deliver to the DIP Lender by (i) 12:00 p.m. (ET) on Wednesday of each week,

a reconciliation for (a) the most recent Saturday through Friday period (a "<u>Weekly Report</u>"), (b)

the prior two-week operating period, and (c) the cumulative period from the Petition Date to the

date of determination, as to each, of the Debtors' actual cash receipts and disbursements as

compared to the DIP Budget, with a breakdown by line-item in the same format as the DIP

Budget for such periods; (ii) a copy of each monthly operating report as and when submitted to

the U.S. Trustee; and (iii) such other reports and information as reasonably requested by the DIP

Lender.  Copies of all reports provided to the DIP Lender in accordance with subsections (i)

through (ii) of this Section 13 shall be contemporaneously delivered to counsel to the Committee.

14.     <u>Disposition of Collateral; Rights of DIP Lender.</u>  Unless otherwise authorized by the

Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the

Collateral except to the extent permitted under the DIP Credit Documents.  Nothing provided

herein shall limit the rights of the Secured Parties to object to any proposed disposition of the

Collateral.

15.    <u>Termination Date.</u>  All of the DIP Obligations are due and payable in full in cash upon the occurrence of a Termination Event (as defined below) or the Termination Date, and the DIP Lender may thereafter exercise any rights and remedies provided in this Final Order, the DIP Term Sheet or the DIP Credit Documents, at law or equity, including all rights and remedies provided under the Bankruptcy Code.

16.    <u>Termination Event.</u>  The occurrence of any of the following, unless waived by the DIP Lender, shall constitute a "Termination Event":

(a)    the occurrence of any Event of Default (as defined in the DIP Term Sheet and the DIP Credit Agreement);

(b)    the Debtors shall, without the DIP Lender's prior written consent, file a motion with the Court seeking the authority to liquidate, transfer, or dispose of any of the Debtors' or their estates' assets or capital stock unless the transaction or transactions that are the subject of the applicable motions will result in payment in full in cash of the DIP Obligations upon consummation of such transactions;

(c)    other than in connection with the payment in full in cash of the DIP Obligations, the bringing of a motion, taking of any action or the filing of any plan of reorganization or liquidation (or disclosure statement) by a Debtor in a Case (or any Debtor supports, directly or indirectly, any such actions):  (A) to obtain financing under Bankruptcy Code section 364(c or d) (other than in connection with the DIP Facility), (B) to grant any lien or security interest other than the DIP Liens upon or affecting the Collateral, (C) that seeks to prohibit the DIP Lender from credit bidding on any or all of the Debtors' assets during the pendency of any of the Cases, or (D) any other action or actions materially adverse to the DIP

Lender or its rights and remedies under this Final Order, the DIP Term Sheet, or the DIP Credit

Documents, or its interest in any Collateral;

(d)       other than in connection with the payment in full in cash of the DIP

Obligations, (i) the filing of any plan of reorganization or liquidation (or disclosure statement), or

any direct or indirect amendment to such plan or disclosure statement by the Debtors or, with the

Debtors' direct or indirect consent, the Committee to which the DIP Lender has not consented or

otherwise agreed to the treatment of its claims, or (ii) the entry of any order terminating, or the

expiration of, a Debtor's exclusive right to file a plan of reorganization or liquidation;

(e)       the entry of an order confirming a plan of reorganization or liquidation that (i)

is not in form and substance acceptable to the DIP Lender, and (ii) does not contain a provision

for repayment in full in cash of all of the DIP Obligations on or before the effective date of such

plan and the Termination Date;

(f)       the entry of an order amending, supplementing, staying, vacating or

otherwise modifying the DIP Term Sheet, the DIP Credit Documents, this Final Order or the Final

Order (I) Authorizing Continued Use of Existing Cash Management System, (II) According

Administrative Expense Status for Intercompany Receivables, (III) Authorizing Continued Use of

Existing Business Forms, and (IV) Granting Certain Related Relief entered in these Cases (the

"Cash Management Order") without the written consent of the DIP Lender;

(g)       the DIP Term Sheet, any of the DIP Credit Documents, this Final Order or

the Cash Management Order is not in full force and effect;

(h)       this Final Order is not entered within 50 days of the date on which the

"Conditions Precedent to the Interim Loan" (as set forth in the "Conditions Precedent" section of the

DIP Term Sheet) are satisfied or waived in accordance with the DIP Term Sheet (the "Interim Closing Date");

(i)    the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the DIP Lender's prior written consent unless otherwise approved in the Approved Budget;

(j)    the allowance of any claim or claims under Bankruptcy Code section 506(c) or otherwise against the DIP Lender or any of the Collateral;

(k)    the appointment of an interim or permanent trustee in any of the Cases, or the appointment of a receiver or an examiner in any of the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization or liquidation of a Debtor;

(l)    the dismissal of any of the Cases, the conversion of any of the Cases from chapter 11 to chapter 7 of the Bankruptcy Code, or the filing of a motion or other pleading seeking such relief;

(m)    the entry of an order (other than this Final Order) by the Court granting relief from or modifying the automatic stay of Bankruptcy Code section 362 (i) to allow any creditor to execute upon or enforce a lien on any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority;

(n)    the commencement of a suit or action against the DIP Lender by a Debtor or its estate;

(o)    the entry of an order in any of the Cases avoiding or permitting recovery of any portion of the payments made on account of the DIP Obligations;

(p)    the failure of any Debtor to perform any of its obligations under the DIP Term Sheet, the DIP Credit Documents, the Interim Order, this Final Order, the Cash Management Order, or any of a Debtor's material obligations under any other order of the Court, which is not cured within 5 business days' written notice to the DIP Lender;

(q)    (1) the failure of the Debtors to have filed a motion, within 60 days after the Petition Date, extending the Debtors' time period to assume or reject unexpired leases of real property to a date that is not less than 120 days after the Petition Date, or (2) if such date has been extended by order of the Court, the failure of the Court to, within 5 days prior to such extended deadline, grant an order that is not subject to appeal, reconsideration or review further extending the Debtor's time period to assume or reject unexpired leases of real property; or

(r)    the entry of an order in any Case granting any other superpriority administrative claim or lien equal or superior in priority or priority of payment to that granted to the DIP Lender.

17.    <u>Rights and Remedies Following Termination Event.</u>

(a)    *Termination.*  Immediately upon the occurrence and during the continuance of a Termination Event, the DIP Lender, or the DIP Collateral Agent, as the case may be, may provide the Debtor(s) written notice of such Termination Event to the Debtors, the Committee, and the U.S. Trustee (such notice, a "<u>Termination Notice</u>").  Immediately after the issuance of a Termination Notice, subject to the Remedies Notice Period (as defined below), the DIP Lender, or the DIP Collateral Agent, as the case may be, may exercise all rights and remedies set forth in the DIP Term Sheet, the DIP Credit Documents, the Interim Order, this Final Order, or under applicable law, without further order of or application to the Court notwithstanding Bankruptcy Code section 362.  Without limiting the foregoing, the DIP Lender,

or the DIP Collateral Agent, as the case may be, may, subject to the Remedies Notice Period, enter onto the premises of the Debtors in connection with an orderly liquidation of the Collateral. Upon the issuance of a Termination Notice, and following the termination of any applicable Remedies Notice Period, the Debtors agree to and shall cooperate with the DIP Lender or the DIP Collateral Agent, as the case may be, in a "friendly foreclosure" by the DIP Lender or the DIP Collateral Agent, as the case may be, on the Collateral, the DIP Lender or the DIP Collateral Agent, as the case may be, may require the Debtors to seek authority from the Court to retain an advisor or liquidator for the purpose of conducting a sale or liquidation of the Collateral and, if the Debtor(s) refuses to seek such authority, the DIP Lender or the DIP Collateral Agent, as the case may be, shall be entitled to seek such authority directly.

(b)     *Notice of Termination.*  Any Termination Notice shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "Termination Notice Date").  The DIP Lender or the DIP Collateral Agent, as the case may be, shall not be required to extend credit under the DIP Facility, or otherwise, on and after the Termination Notice Date, and all of the DIP Obligations shall be due and payable in full in cash on the Termination Notice Date.  Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that 7 business days after the Termination Notice Date (the "Remedies Notice Period"), the DIP Lender or the DIP Collateral Agent, as the case may be, shall be entitled to exercise any and all of its rights and remedies against the Collateral in accordance with the DIP Term Sheet, the DIP Credit Documents, or this Final Order, and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject only to the Carveout.  During the Remedies Notice Period, the Debtor(s) shall be entitled to seek an

21

emergency hearing with the Court for the sole purpose of contesting whether a Termination Event

has occurred and/or is continuing.   Unless the Court determines during the Remedies Notice

Period that a Termination Event has not occurred, the automatic stay shall automatically be

terminated at the end of the Remedies Notice Period without further notice or order, and the DIP

Lender or the DIP Collateral Agent, as the case may be, shall be permitted to exercise any and all

rights and remedies set forth in the DIP Term Sheet, the DIP Credit Documents, the Interim Order,

or this Final Order and under any applicable law, without further order of or application or

motion to the Court, and without restriction or restraint by any stay under Bankruptcy Code

sections 105 or 362, or otherwise, against the enforcement of the liens and security interests in the

Collateral or any other rights and remedies granted or available to the DIP Lender or the DIP

Collateral Agent, as the case may be, with respect thereto.

18.    <u>Good Faith Under Bankruptcy Code Section 364; No Modification or Stay of this</u>
<u>Final Order.</u>  The DIP Lender has acted in good faith in connection with the DIP Term Sheet, the

DIP Credit Documents, the Interim Order, and this Final Order, and its reliance on the terms and

effectiveness of this Final Order is in good faith.  Based on the findings set forth in this Final

Order and the record made during the Final Hearing, and in accordance with Bankruptcy Code

section 364(e), in the event any or all of the provisions of this Final Order are hereafter modified,

amended or vacated by this Court or any other court, the DIP Lender and the DIP Collateral

Agent are entitled to the protections provided in Bankruptcy Code section 364(e).  Any such

modification, amendment, or vacatur of this Final Order shall not affect the validity and

enforceability of the DIP Term Sheet, the DIP Credit Documents, the Interim Order, this Final Order,

any DIP Obligations, or any lien, claim or priority authorized or created in any of them, provided that

this Final Order was not stayed by court order after due notice to the DIP Lender and the DIP

Collateral Agent at the time such obligations were incurred or the liens, claims or priorities were authorized and/or created.  The validity and enforceability of the DIP Term Sheet, the DIP Credit Documents, the Interim Order, this Final Order, any DIP Obligations, or any lien, claim or priority authorized or created in any of them prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including the Secured Parties' entitlement to all rights, remedies, privileges and benefits granted herein, provided that this Final Order was not stayed by court order after due notice had been given to the Secured Parties at the time the obligations were incurred or the liens, claims or priorities were authorized and/or created.

19.    Carveout.

(a)    *Carveout.*  As used in this Final Order, the "Carveout" means: (i) all statutory fees required to be paid to the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) (A) allowed, accrued and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of professionals retained by order of the Court (collectively, the "Case Professionals"), incurred on or prior to the occurrence of a Termination Event, and (B) reimbursement of out-of-pocket expenses outstanding and allowed by the Court incurred by the Committee members in the performance of their duties (but excluding fees and expenses of professionals employed by such members) (collectively, the "Committee Expenses"), (iii) upon the occurrence of any Termination Event and delivery of a written notice by the DIP Lender to lead counsel for the Debtors, the Committee, and the U.S. Trustee (a "Carveout Trigger Notice"), an aggregate amount equal to no more than $200,000 to pay allowed fees and expenses of Case Professionals (the "Professional Fees") incurred after the delivery of a Carveout Trigger Notice, and (iv) upon the conversion of the Cases to cases under chapter 7 of the

Bankruptcy Code, an amount not to exceed $50,000 (payable only to the extent the original $200,000 was exhausted prior to conversion) in each case, incurred after the delivery of a Carveout Trigger Notice.  The Carveout shall be funded solely with the Debtors' cash on hand, cash collateral, and with the first proceeds of the Collateral.  No portion of the Carveout may be used in violation of this Final Order, the DIP Term Sheet or the DIP Credit Agreement.  So long as the Carveout Trigger Notice has not been delivered, the Debtors shall be permitted to pay, as the same becomes allowed by the Court, due and payable Professional Fees, and the same shall not reduce the Carveout amount.  Notwithstanding anything to the contrary herein, no portion of the Carveout, proceeds of the DIP Facility, the Collateral, the Prepetition Collateral or the Cash Collateral shall include, apply to, or be available for any fees, costs, or expenses incurred by any party including the Debtors or the Committee or any Case Professionals, in connection with (x) the initiation or prosecution of any claims, causes of action, adversary proceedings or litigation against the DIP Lender, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or DIP Liens or (b) challenging the amount, validity, extent, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to the Waived Claims; provided, further, that up to $75,000 shall be made available to the Committee for investigation costs in respect of the Waived Claims.

(b)      *No Direct Obligation to Pay Professional Fees or Committee Expenses.*  The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with a Case or any Successor Case.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender in any way to pay compensation to or

to reimburse expenses of any of the Case Professionals (including any Professional Fees or Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Nothing in this Final Order or otherwise shall be construed to increase the Carveout if actual Professional Fees or Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Approved Budget.

(c)    *Payment of Carveout After Carveout Trigger Notice.*  Any payment or reimbursement made on or after the delivery of the Carveout Trigger Notice in respect of any Professional Fees (exclusive of the application of any retainers by any of the Case Professionals), and/or Committee Expenses shall permanently reduce the Carveout amount on a dollar-for-dollar basis.

20.    <u>Committee Investigation Rights</u>.  The Committee shall have until 120 days from the entry of this Final Order, unless the DIP Lender consents, in its sole discretion, to the extension of such time (the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, and enforceability of the Waived Claims or to assert any other claims or cause of action with respect to the Waived Claims.  If the Committee, subject to having obtained the requisite standing, determines that there may be a challenge to the Waived Claims by the Investigation Termination Date, then upon 3 days' written notice to the Debtors and the DIP Lender, the Committee hereafter vested with authority by this Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "<u>Challenge</u>"), and shall have until the applicable Investigation Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action; <u>provided</u>, <u>however</u>, that nothing contained in the DIP Term Sheet, the DIP Credit Documents, or this Final Order, shall be deemed to confer standing on the Committee

or any other party in interest to commence a Challenge.  If a Challenge is not filed on or before the Investigation Termination Date, then without further action by any party or any further order of this Court, the Debtors' waiver of the Waived Claims shall be deemed to be immediately and irrevocable binding on the Debtors and the Debtors' estates, the Committee and any other party-in-interest and any and all successors-in-interest thereto, shall thereafter be forever barred from bringing any Challenge.  Notwithstanding anything to the contrary herein:  (a) if any such Challenge is timely commenced, the Debtors' waiver of the Waived Claims shall nonetheless remain binding and preclusive except to the extent of a successful Challenge and (b) the DIP Lender reserve all of its rights to contest on any grounds any Challenge.

21.    <u>Prohibited Use of Cash Collateral, DIP Facility Proceeds, Carveout, Etc.</u>  The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal, premium, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and obligations authorized under the Approved Budget.  Except for the Committee Investigation Rights with respect to Waived Claims, the DIP Facility, the Collateral and the Carveout may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of any DIP Lender or its rights and remedies under the DIP Term Sheet, the DIP Credit Documents, or this Final Order, including, but not limited to, for the payment of any services rendered by the professionals retained by any Debtor or the Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or

subordinating, in whole or in part, the DIP Obligations, (iii) invalidating, setting aside, avoiding

or subordinating, in whole or in part, the Waived Claims, (iv) for monetary, injunctive or other

affirmative relief against the DIP Lender or the Collateral, (v) preventing, hindering or otherwise

delaying the exercise by the DIP Lender of any rights and remedies under the DIP Term Sheet, the

DIP Credit Documents, this Final Order, or applicable law, or the enforcement or realization

(whether by foreclosure, credit bid, further order of the Court, or otherwise) by the DIP Lender

upon the Collateral, or (vi) to pursue litigation against the DIP Lender; (b) to make any

distribution under a plan of reorganization or liquidation or any agreement regarding sale of a

Debtor's assets in any of these Cases; (c) to make any payment in settlement of any claim, action or

proceeding before any court, arbitrator or other governmental body without the prior written consent

of the DIP Lender unless otherwise ordered by this Court; (d) to pay any fees or similar amounts to

any person or entity who has proposed or may propose to purchase interests in a Debtor without

the prior written consent of the DIP Lender; (e) objecting to, contesting, or interfering with, in any

way, the DIP Lender's enforcement or realization upon any of the Collateral once a Termination

Event has occurred, or seeking to prevent the DIP Lender from credit bidding in connection with any

proposed plan of reorganization or liquidation, or any proposed transaction pursuant to Bankruptcy

Code section 363; (f) using or seeking to use the DIP Facility in a manner inconsistent with the

DIP Budget; (g) using or seeking to use any insurance proceeds (which constitute Collateral)

without the consent of the DIP Lender; (h) incurring any indebtedness, obligation or liability

outside the ordinary course of business without the prior consent of the DIP Lender, except as

permitted under the DIP Credit Documents; (i) objecting to or challenging in any way the

claims, liens, or interests held by or on behalf of the DIP Lender; (j) asserting, commencing

or prosecuting any claims or causes of action whatsoever, including, but not limited to, any

actions under chapter 5 of the Bankruptcy Code, against the DIP Lender; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other rights, remedies or interests of the DIP Lender.

22.    <u>Pleadings</u>.    The Debtors shall provide copies of all pleadings, orders and stipulations to the DIP Lender no later than 5 days before filing such documents with the Court.

23.    <u>Payment of Compensation.</u>  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Lender or the DIP Collateral Agent to object to the allowance and payment of such fees and expenses.  So long as no Termination Event has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been reversed, modified, vacated or stayed, unless the stay has been vacated) under Bankruptcy Code sections 330 and 331 to the extent set forth in the DIP Budget.

24.    <u>Fees, Costs and Expenses.</u>  The Debtors are authorized and directed to pay all reasonable fees, costs and expenses of the DIP Lender and the DIP Collateral Agent in connection with the DIP Term Sheet, the DIP Credit Documents, or this Final Order, whether or not the transactions contemplated by this Final Order are consummated, including, but not limited to, legal, financial advisory, consulting, accounting, collateral examination, monitoring and appraisal fees, costs and expenses of the DIP Lender and the DIP Collateral Agent, and indemnification and reimbursement of such fees, costs and expenses shall be payable without need to comply with the U.S. Trustee fee guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, that all requests by the DIP Lender and the DIP Collateral Agent for reimbursement shall be provided to

counsel to the Debtors, the U.S. Trustee and counsel to the Committee and shall include copies of

invoices (redacted, as necessary, to protect any applicable privilege) with respect to such fees,

costs and expenses, and each such party shall have 10 days from the date of such notice within

which to object in writing to such payment, and the Court shall have jurisdiction to determine any

dispute concerning the payment of any such fess, costs and expenses sought by the DIP Lender or

the DIP Collateral Agent.

25.      <u>No Third Party Rights.</u>  Except as explicitly provided for in this Final Order, this

Final Order does not create any rights for the benefit of any third party, creditor (other than the DIP

Lender, the DIP Collateral Agent and Blue Bay), equityholder or any direct, indirect, or incidental

beneficiary.

26.      <u>Section 506(c) Claims.</u>  No costs or expenses of administration which have been

or may be incurred in any of the Cases at any time shall be charged against the DIP Lender and

the DIP Collateral Agent or the Collateral pursuant to Bankruptcy Code sections 105 or 506(c), or

otherwise, without the prior written consent of the DIP Lender or the DIP Collateral Agent, as

the case may be, and no such consent shall be implied from any action, inaction, or acquiescence

by the DIP Lender or the DIP Collateral Agent, as the case may be, or their agents.

27.      <u>No Marshaling/Applications of Proceeds.</u>  Neither the DIP Lender nor the DIP

Collateral Agent shall be subject to the equitable doctrine of "marshaling" or any other similar

doctrine with respect to any of the Collateral.

28.      <u>Section 552(b).</u>  The "equities of the case" exception under Bankruptcy Code section

552(b) shall not apply to the DIP Lender or the DIP Collateral Agent, as the case may be, with

respect to proceeds, products, offspring or profits of any of the Collateral.

29.     <u>Discharge Waiver.</u>  The Debtors expressly stipulate, and the Court finds and holds that none of the DIP Obligations, the DIP Superpriority Claims or the DIP Liens shall be discharged by any order confirming any plan or reorganization or liquidation, or any plan of reorganization or liquidation, notwithstanding the provisions of Bankruptcy Code section 1141(d), unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization or liquidation.  The Debtors shall not propose or support any plan of reorganization or liquidation, sale of all or substantially all of any Debtor's assets, or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan or closing of such sale, of all DIP Obligations. The DIP Superpriority Claims and the DIP Liens shall not be affected in any manner by the entry of an order confirming a plan of reorganization or liquidation in any of the Cases or any Successor Cases that is not conditioned upon the payment in full in cash, on the effective date of such plan or closing of such sale, of all DIP Obligations.

30.     <u>Rights Preserved.</u>  Notwithstanding anything in this Final Order to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lender's or the DIP Collateral Agent's right to seek any other or supplemental relief in respect of a Debtor; (b) any of the rights of the DIP Lender or the DIP Collateral Agent under the Bankruptcy Code or other applicable law, including, but not limited to, the right to (i) request further modification of or relief from the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Cases or any of the Successor Cases, conversion of any of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans of reorganization or liquidation.   Other than as

expressly set forth in this Final Order, any other rights, remedies, claims, causes of action, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the DIP Collateral Agent are reserved and preserved.

31.    <u>No Waiver by Failure to Seek Relief.</u>    The failure of a DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Term Sheet, the DIP Credit Documents, the Interim Order, this Final Order, or applicable law shall not constitute a waiver of any of the rights or remedies hereunder, thereunder, or otherwise of the DIP Lender.

32.    <u>Binding Effect of Final Order.</u>    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, all other creditors and equityholders of the Debtors, the Committee, any other committee appointed in the Cases, all other parties in interest, and each of their successors and assigns, including any trustee, examiner or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon or after dismissal of any of the Cases or any Successor Cases.

<u>No Modification of Final Order.</u>    The Debtors irrevocably waive any right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Lender the DIP Collateral Agent, acting at the direction of Required Lenders (as defined in the DIP Credit Agreement), (i) any modification, stay, vacature or amendment to this Final Order, or (ii) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, but not limited to, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a) or 507(b)) equal or superior in priority or priority of payment to the DIP Superpriority Claim, other than the Carveout; (b) without the prior written consent of the DIP

Lender or the DIP Collateral Agent, acting at the direction of the Required Lenders, any order allowing use of the DIP Facility other than this Final Order; and (c) without the prior written consent of the DIP Lender, any lien on any of the Collateral equal or superior in priority or priority of payment to the DIP Liens.   The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order that the DIP Lender or the DIP Collateral Agent reasonably believes is material or adverse to the DIP Lender without the prior written consent of the DIP Lender or DIP Collateral Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the any DIP Lender or the DIP Collateral Agent.

33.    <u>Final Order Controls.</u>   In the event of any express inconsistency between the terms and conditions of the DIP Term Sheet, the DIP Credit Documents, the Motion and this Final Order, the provisions of this Final Order shall govern and control except for the express satisfaction or waiver by Alden of any conditions precedent under the DIP Credit Agreement.

34.    <u>Survival.</u>   The provisions of this Final Order and any actions taken pursuant to this Final Order shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization or liquidation in the Cases, (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (c) approving the sale of a Debtor's assets, (d) dismissing any of the Cases or any Successor Cases, or (e) pursuant to which this Court abstains from hearing any of the Cases or any Successor Cases; <u>provided</u>, <u>however</u>, that the DIP Superpriority Claims shall survive only to the extent permitted by applicable law.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Lender and the DIP Collateral Agent pursuant to this Final Order and/or the DIP Credit Documents shall continue in each of these cases, in any Successor Cases, or

following dismissal of any of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been paid in full in cash.

35.    <u>Effect of the Final Order.</u>    This Final Order shall take effect immediately, notwithstanding anything to the contrary under applicable law.

36.    <u>Retention of Jurisdiction.</u>    The Court has and will retain jurisdiction to enforce this Final Order, the DIP Term Sheet and the DIP Credit Documents according to their terms, including, without limitation, the Secured Parties' rights and remedies contained in the DIP Term Sheet, the DIP Credit Documents and granted by the Interim Order or this Final Order and the Secured Parties' enforcement of such rights and remedies and, in accordance with the Interim Order or this Final Order, the DIP Term Sheet and the DIP Credit Documents, foreclosure on the Collateral.

Dated: March __, 2013
     New York, New York

                                         _____
                                         THE HONORABLE JAMES M. PECK
                                         UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

**Approved Budget**

Atari, Inc.
FINAL DIP Order
13 Week Cash Flow Projections

**Exhibit A**

| ($000s) | | Week 5 2/22 | Week 6 3/1 | Week 7 3/8 | Week 8 3/15 | Week 9 3/22 | Week 10 3/29 | Week 11 4/5 | Week 12 4/12 | Week 13 4/19 | Week 14 4/26 | Week 15 5/3 | Week 16 5/10 | Week 17 5/17 | 13-Weeks Ending 5/17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I. | Receipts | 17 | 786 | 206 | 96 | 188 | - | 475 | 70 | 140 | 99 | 320 | 100 | 223 | 2,720 |
| II. | Permitted Disbursements | | | | | | | | | | | | | | |
| | 1) Operating Disbursements | | | | | | | | | | | | | | |
| | Payroll and Benefits | 77 | 297 | - | 280 | 77 | 275 | - | 17 | 340 | 17 | 258 | 17 | 340 | 1,995 |
| | Royalties | - | - | 136 | 90 | - | - | - | - | 94 | - | 140 | 20 | 78 | 558 |
| | Publishing and Marketing | 2 | 7 | 2 | 2 | 2 | 2 | 7 | 2 | 2 | 2 | 7 | 2 | 2 | 35 |
| | Other Operating Expenses | 83 | 240 | 20 | 66 | 78 | 24 | 171 | 104 | 60 | 80 | 196 | 19 | 60 | 1,198 |
| | | 161 | 543 | 158 | 438 | 156 | 300 | 177 | 122 | 495 | 99 | 601 | 57 | 479 | 3,785 |
| | 2) Net Investment-New Games | (86) | - | - | (159) | - | - | (137) | - | (119) | - | - | - | (147) | (648) |
| | Net Cash From Operations | (230) | 243 | 49 | (501) | 32 | (300) | 161 | (52) | (473) | 0 | (281) | 43 | (403) | (1,712) |
| | 3) Restructuring / Other | | | | | | | | | | | | | | |
| | Restructuring - General | 220 | 17 | (30) | - | 953 | - | (13) | (30) | 763 | (30) | (13) | - | 1,141 | 2,977 |
| | Trustee Fees | - | - | - | - | - | - | - | - | 13 | - | - | - | - | 13 |
| | | 220 | 17 | (30) | - | 953 | - | (13) | (30) | 776 | (30) | (13) | - | 1,141 | 2,990 |
| III. | Net Change in Cash b/f DIP | (450) | 226 | 79 | (501) | (921) | (300) | 174 | (22) | (1,249) | 30 | (267) | 43 | (1,544) | (4,702) |
| IV. | Cash Balance | | | | | | | | | | | | | | |
| | Beginning Cash Bal. (Book) | 3,083 | 2,633 | 2,859 | 2,938 | 2,437 | 1,516 | 1,216 | 1,390 | 1,368 | 170 | 200 | 157 | 200 | 3,083 |
| | Net change in Cash b/f DIP | (450) | 226 | 79 | (501) | (921) | (300) | 174 | (22) | (1,249) | 30 | (267) | 43 | (1,544) | (4,702) |
| | DIP Draw/(Paydown) | - | - | - | - | - | - | - | - | 50 | - | 224 | - | 1,445 | 1,719 |
| | Ending Cash Bal. (Book) | 2,633 | 2,859 | 2,938 | 2,437 | 1,516 | 1,216 | 1,390 | 1,368 | 170 | 200 | 157 | 200 | 101 | 101 |
| | Add: Estimated O/S Checks | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| | Ending Cash Bal. (Bank) | 2,683 | 2,909 | 2,988 | 2,487 | 1,566 | 1,266 | 1,440 | 1,418 | 220 | 250 | 207 | 250 | 151 | 151 |
| V. | DIP Facility Balance | | | | | | | | | | | | | | |
| | Beginning DIP Facility Bal. | 2,000 | 2,017 | 2,017 | 2,017 | 2,017 | 2,033 | 2,033 | 2,033 | 2,033 | 2,101 | 2,101 | 2,325 | 2,325 | 2,000 |
| | Interest Accrual | 17 | - | - | - | 17 | - | - | - | 17 | - | - | - | - | 50 |
| | Draws / (Paydowns) | - | - | - | - | - | - | - | - | 50 | - | 224 | - | 1,445 | 1,719 |
| | Ending DIP Facility Bal. | 2,017 | 2,017 | 2,017 | 2,017 | 2,033 | 2,033 | 2,033 | 2,033 | 2,101 | 2,101 | 2,325 | 2,325 | 3,770 | 3,770 |

# <u>Exhibit B</u>

**Comparison of Proposed Final DIP Order to Interim DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ATARI, INC., *et al.*,[1] | Case No. 13-10176 (JMP) |
| Debtors. | (Jointly Administered) |

~~INTERIM~~FINAL **ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 362, 364 AND 507 (I) AUTHORIZING THE DEBTORS TO INCUR ~~INCUR~~ POSTPETITION SECURED INDEBTEDNESS, (II) GRANTING LIENS AND ~~PROVIDING SUPERPRIORITY~~ PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, AND (IV) MODIFYING AUTOMATIC STAY, ~~AND (V) SCHEDULING A FINAL HEARING~~**

Upon the motion (the "Motion") ~~by Atari, Inc., Atari Interactive, Inc., California US Holding, Inc. and Humongous, Inc., as~~ of the above-captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") filed in ~~their Chapter~~ these chapter 11 ~~bankruptcy~~ cases (each, a "Case,") and, collectively, the "Cases"), pursuant to ~~Sections~~ sections 105, 361, 362, 364 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), ~~seeking~~ requesting entry of ~~this~~ an interim order (the "Interim Order") ~~inter alia~~ and a final order (the "Final Order"), authorizing the Debtors, to among other things:

(i) ~~authorizing the Debtors to~~ enter into ~~the~~ that certain term sheet ~~attached hereto as Exhibit A (as amended, supplemented or otherwise modified from time to time,~~ (the "DIP Term

Sheet"), attached to the Interim Order, by and between the Debtors, on the one hand, and by

one or more of Alden Global Distressed Opportunities Master Fund, L.P., Alden Global Value

Recovery Master Fund, L.P. ("Alden" or together with Alden's successors and assigns pursuant to the

DIP Credit Agreement (as defined below) and any other Lender (as defined in the DIP Credit

Agreement) the "DIP Lender"), and Turnpike Limited (collectively, "**Alden**" or the "**DIP Lenders**"),

on the other hand, to obtain, subject to (x) the entry of an order not subject to appeal,

reconsideration or review in form and substance acceptable to the DIP Lenders approving the

superpriority secured postpetition financing of up to $5,000,000 (the "DIP Facility");

(as defined below) and DIP Credit Documents (as defined below) on a final basis (the

"**Final Order**"), (y) the delivery and execution of a post-petition ii) authorizing the Debtors to

execute and deliver the postpetition financing credit agreement upon satisfaction or waiver of

conditions precedent set forth therein (the "DIP Credit Agreement") and other post petitionby and

among the Debtors, Alden and Imperial Capital Loan Trading, LLC (the "DIP Collateral Agent"),

and the other pospetition financing documents ancillary thereto, referenced in the DIP Term

Sheet, the Interim Order or this InterimFinal Order, or requested by the DIP LendersLender

(collectively, and together with the DIP Credit Agreement, the "DIP Credit Documents"), each

consistent and to perform such other acts as may be necessary or desirable to the DIP Lender in

connection with the DIP Term Sheet and in form and substance satisfactory Credit Agreement and

the other DIP Credit Documents;

(iii)    subject to the DIP Lenders, and (z) the satisfaction of each of the terms and

conditions (including the "**Conditions Precedent**" set forth in the DIP Term Sheet) set forth in, the

DIP Term SheetInterim Order, this InterimFinal Order and the DIP Credit Documents (collectively,

---

[1] The Debtors are Atari, Inc., Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

the "DIP Financing Conditions"), ~~superpriority secured postpetition financing, consisting of up to $5.0 million, of which $2.0 million shall be available on an interim basis in accordance with the terms of the DIP Term Sheet and this Interim Order (the~~ **DIP Facility**")[2]

authorizing the Debtors to ~~(ii) authorizing the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Credit Documents, and to perform such other acts as may be necessary or desirable to the DIP Lenders in connection with the DIP Credit Agreement and the other DIP Credit Documents, all of which shall be subject to the Court's approval at the Final Hearing;~~

~~(iii)    subject to the satisfaction of the DIP Financing Conditions, authorizing the Debtors to~~ grant the DIP Facility and all indebtedness, obligations and liabilities owing to the DIP ~~Lenders~~Lender under the DIP Term Sheet, the DIP Facility, the DIP Credit Documents, ~~this~~the Interim Order and ~~the~~this Final Order (collectively, the "DIP Obligations"), allowed superpriority administrative expense claim status in ~~the Cases~~these chapter 11 cases and any Successor Cases (as defined below), and authorizing the Debtors to grant to the DIP ~~Lenders~~Lender and the DIP Collateral Agent for the benefit of Secured Parties (as defined in the DIP Credit Agreement) automatically perfected security interests in and liens on all of the Collateral (as defined below); and

(iv)    vacating and modifying the automatic stay imposed by ~~Section 362 of the~~ Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this ~~Interim~~Final Order, the DIP Term Sheet and, subject to the satisfaction of the DIP Financing Conditions, the DIP Credit Documents~~; and~~.

---

[2]    ~~The Court's approval of the DIP Facility pursuant to this Interim Order shall be limited to the terms of the DIP Term Sheet and this Interim Order. The Debtors are not seeking approval of the DIP Credit Documents, or authority to draw on the DIP Facility *in toto* until the DIP Financing Conditions have been satisfied. The Debtors shall file the DIP Credit Documents in advance of the Final Hearing (as defined below).~~

~~(v)   scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and this Interim Order, and approving the form of notice with respect to the Final Hearing.~~

The Court having considered the Motion, the Declaration of Robert A. Mattes~~,~~ the Debtors' Chief Financial Officer (the "Mattes Declaration"), in support of the ~~Chapter~~chapter 11 petitions and first day motions, including the Motion, the exhibits attached thereto, the DIP Term Sheet, the DIP Facility, the Declaration of Michael Andersen in Support of Entry of a Final Order on Debtors' DIP Financing Motion, and the evidence submitted or adduced and the arguments of counsel made at the ~~hearing~~hearings held ~~to grant the Motion on an interim basis~~and concluded before this Court on January 24, 2013 (the "Interim Hearing") and March [6], 2013 (the "Final Hearing"); and the Court having entered the Interim Order [Docket No. 40] on January 25, 2013; and notice of the Motion, the Interim Hearing, the Interim Order and the Final Hearing having been ~~given~~provided in a sufficient manner and in accordance with the ~~Bankruptcy Rules and Local Rules; and the Interim Hearing to consider the interim~~Interim Order; and it appearing that approval of the relief requested in the Motion ~~and this Interim Order having been held and concluded~~is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for maximizing the value of the Debtors' assets for the benefit of the Debtors' creditors and all parties in interest; and all objections, responses, or reservations of rights, if any, to the ~~interim~~final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and ~~it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm, loss or damage to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and~~

equityholders, and is essential for the continued operation of the Debtors' business; and after due

deliberation and consideration, and for good and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ADJUDGED AND DECREED AS FOLLOWS:[32]**

A.      <u>Petition Date.</u>  On January 21, 2013 (the "<u>Petition Date</u>"), the Debtors filed

voluntary petitions for relief under ~~Chapter~~chapter 11 of the Bankruptcy Code in this Court

commencing the Cases.

B.      <u>Debtors in Possession.</u>  The Debtors are continuing in the management and

operation of their business and assets as debtors in possession pursuant to ~~Sections~~Bankruptcy Code

sections 1107 and 1108 ~~of the Bankruptcy Code~~.  No trustee or examiner has been appointed in

the Cases.  On February 6, 2013, the Office of the United States Trustee for the Southern District

of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the

"Committee") in the Cases, consisting of the following five members: (i) CD Projekt S.A., f/k/a

CD Projekt Red S.A.; (ii) Tavant Technologies, Inc.: (iii) CDV Software Entertainment, USA,

Inc.; (iv) Rackspace Hosting; and (v) Liquid Entertainment.

C.      <u>Jurisdiction and Venue.</u>  This Court has jurisdiction over ~~these proceedings~~the

Cases, and over the persons, entities and assets affected hereby pursuant to 28 U.S.C. § 1334 and

the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.

~~D.      Committee Formation.  As of the date hereof, the Office of the United States~~

~~Trustee for the Southern District of New York (the "**U.S. Trustee**") has not yet appointed any~~

~~official committee in these Cases pursuant to Section 1102 of the Bankruptcy Code (each, a~~

~~"Statutory Committee").~~

~~E.      Prepetition Receivable.   As of the Petition Date, the Debtors' French parent company~~

~~Atari, S.A. (the "**Parent**") owed California U.S. Holdings, Inc. approximately $11 million as an~~

~~intercompany receivable.~~

D.      Interim Order.  Based upon the Motion, the Mattes Declaration, the DIP Term Sheet

and the evidence submitted or proffered at the Interim Hearing, the Court approved the Debtors'

entry into and performance under the DIP Term Sheet and entered the Interim Order.  Pursuant to the

Interim Order, the Debtors were authorized, among other things, to incur secured borrowings up to

$2,000,000 on an interim basis in accordance with the terms of the DIP Term Sheet and the Interim

Order.

~~F~~E.      Prepetition Debt.  As of the Petition Date, Atari Europe SAS, the Debtors'

French affiliate company ("Atari Europe"), had outstanding debt (the "Blue Bay Debt")

guaranteed by the Atari, S.A. (the "Parent") owed to Blue Bay Value Recovery (Master) Fund

Limited ("Blue Bay") ~~and guaranteed by the Parent (~~ and, together with ~~Blue Bay~~the

Parent, the "Prepetition Secured Parties").  Prior to the Petition Date, Blue Bay filed a

financing statement (the "Blue Bay Lien") against certain assets of Atari, Inc. (the "Blue

Bay Collateral").  Further, based on the Debtors' books and records, prior to the Petition

Date, ~~the Parent had provided~~ Atari Interactive Inc. ~~with~~had approximately $~~252~~255

million ~~in intercompany loans, and had provided~~of net obligations due to the Parent and

Atari Inc. ~~with~~had approximately $~~13~~18.9 million in ~~intercompany loans~~net obligations

---

³      ²This ~~Interim~~Final Order shall constitute the Court's findings of fact and conclusions of law as required by
Bankruptcy Rule 7052.  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be
construed as findings of fact, when appropriate.

due to the Parent[3] (together, the "Parent Intercompany ~~Loans~~Obligations").[4]  In addition, ~~Atari Europe had provided~~based on the Debtors' books and records, Atari Inc. ~~with~~had approximately $~~22~~25.3 million ~~in intercompany loans~~of net obligations due to Atari Europe (the "Atari Europe Intercompany ~~Loans~~Obligations," and with the Parent Intercompany ~~Loans~~Obligations, the "Intercompany ~~Loans~~Obligations").  The Parent also filed a financing statement reflecting a ~~blanket~~ lien (the "Parent Lien," and with the Bluebay Lien, the "Prepetition Liens") on all assets of Debtor Atari, Inc., except for certain intellectual property assets (the "Parent Collateral," and with the Blue Bay Collateral, the "Prepetition Collateral").  Subject to the Committee Investigation Rights (defined below) ~~and the assignment of the Blue Bay Debt to the DIP Lenders, if any,~~ the Debtors each hereby irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the Blue Bay Debt, the Prepetition Liens, and the Intercompany ~~Loans~~Obligations (collectively, the "Waived Claims") or the validity or enforceability of the Waived Claims.

~~G~~F.    Findings Regarding Postpetition Financing.

~~(i)    *Request for Postpetition Financing.*  The Debtors seek authority to enter into the DIP Term Sheet.  The Court's approval of the DIP Facility pursuant to this Interim Order shall be limited to the terms of the DIP Term Sheet and this Interim Order.  The DIP Lenders shall have no obligation to make loans or advances under the DIP Facility (other than as set forth in this Interim Order or in the DIP Term Sheet) until the DIP Financing Conditions have been satisfied.~~

---

[3] Pursuant to the Debtors' books and records, the $18.9 million net obligation to the Parent is comprised of a $3.8 interest-bearing obligation and a $16.4 million trade obligation.

[4] The Parent net obligation to Atari, Inc. does not reflect approximately $1.2 million in unamortized intangible assets related to the Test Drive Unlimited Franchise.

(iiii)    *Need for Postpetition Financing.*  The Debtors' need to obtain credit as set forth in the DIP Term Sheet and the DIP Credit Documents is immediate and critical in order to enable the Debtors to continue their operations, and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the credit as set forth in the DIP Term Sheet and the DIP Credit Documents, the absence of which would immediately and irreparably harm the Debtors, and their estates, their creditors and equityholders, and the possibility for a successful reorganization of the Debtorsequity holders.  The Debtors do not have sufficient available sources of working capital or financing to operate their business or to maintain their assets in the ordinary course of business without the authorized use of credit as set forth in the DIP Term Sheet and the DIP Credit Documents.

(iiiiii)    *No Credit Available on More Favorable Terms.*  Given their current financial condition, financing arrangement and capital structure, the Debtors are unable to obtain postpetition financing from sources other than the DIP LendersLender on terms more favorable than those set forth in the DIP Term Sheet and the DIP Credit Documents.  The Debtors have been unable to obtain unsecured credit allowable under SectionBankruptcy Code section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in SectionsBankruptcy Code sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without

granting the DIP ~~Lenders~~Lender (1) perfected security interests in and liens on all of the Debtors'

existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and

(3) the other protections set forth in ~~this~~the Interim Order and in ~~the~~this Final Order.

(~~iv~~iii)    *Use of Proceeds.*  As a condition to the authorization to obtain credit as set

forth in this ~~Interim~~Final Order ~~and,~~ the DIP Term Sheet, ~~and~~ the DIP ~~Lenders require~~Credit

Documents, the DIP Lender requires, and the Debtors have agreed, that any financing provided

pursuant to this ~~Interim~~Final Order and the DIP ~~Term Sheet~~Credit Documents shall be used in

accordance with the ~~DIP~~Approved Budget[45] (as defined in the DIP Term Sheet and the DIP

Credit Documents, as the same may be modified from time to time in accordance with ~~the prior~~

~~written consent of~~ the DIP ~~Lenders~~Credit Agreement), solely for the Permitted Expenditures (as

defined in the DIP Term Sheet and the DIP Credit Documents).

~~H~~G.    Section 506(c).    In light of the DIP ~~Lenders'~~Lender's agreement to

subordinate the DIP Liens (as defined below) and DIP Superpriority Claim (as defined below)

to the Carveout (as defined below) pursuant to the terms of the DIP Term Sheet, the DIP

Credit Documents and this ~~Interim Order, upon entry of the~~ Final Order, the DIP ~~Lenders~~

~~are~~Lender is entitled to a waiver of the provisions of ~~Section~~Bankruptcy Code section

506(c) ~~of the Bankruptcy Code~~.

~~I~~H.    Good Faith of the DIP ~~Lenders~~Lender.

(i)    *Willingness to Provide Financing.*  The DIP ~~Lenders have~~Lender has

indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this

~~Interim~~Final Order; (b) the satisfaction of the DIP Financing Conditions; (c) Court approval of

the terms and conditions of the DIP Term Sheet and the DIP Credit Documents; and (d) entry of

---

[4] [5] The ~~initial DIP~~Approved Budget is attached hereto as Exhibit ~~B~~A.

findings by this Court that such financing is essential to the Debtors' estates, that the DIP ~~Lenders are~~ Lender is extending credit to the Debtors as set forth in the DIP Term Sheet and the DIP Credit Documents in good faith, and that the DIP ~~Lenders'~~ Lender's and DIP Collateral Agent's claims, superpriority claims, security interests, liens, protections, rights and remedies will have the protections provided in ~~Section~~ Bankruptcy Code section 364(e) ~~of the Bankruptcy Code~~ and will not be affected by any subsequent reversal, modification, stay, vacatur, amendment, reargument or reconsideration of this ~~Interim~~ Final Order ~~or any other order~~.

(ii)    *Business Judgment and Good Faith Pursuant to Bankruptcy Code Section 364(e).*  The terms and conditions ~~of~~ set forth in the DIP Term Sheet and the DIP Credit Documents are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Term Sheet ~~was~~ and the DIP Credit Documents were negotiated in good faith and at arms' length among the Debtors and the DIP ~~Lenders~~ Lender.  Any credit to be extended by the DIP ~~Lenders~~ Lender as set forth in the DIP Term Sheet and the DIP Credit Documents shall be deemed to have been so allowed, advanced, made, used or extended in "good faith" as such term is used in ~~Section~~ Bankruptcy Code section 364(e) ~~of the Bankruptcy Code~~, for valid business purposes and uses, within the meaning of ~~Section~~ section 364(e) ~~of the Bankruptcy Code~~, and in express reliance upon the protections set forth herein, and the DIP ~~Lenders are~~ Lender is therefore entitled to the protection and benefits of ~~Section~~ section 364(e) ~~of the Bankruptcy Code~~ in the event that this ~~Interim~~ Final Order or any provision hereof is vacated, reversed, modified on appeal, or otherwise.

~~J~~I.    Notice.    The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the ~~DIP Term Sheet, this Interim Order, the Interim~~ Final

Hearing and the ~~emergency~~ relief requested in the Motion has been provided by the Debtors by facsimile (where facsimile numbers were available), email (where email addresses were available), and overnight courier or hand delivery to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) ~~the parties included on the Debtors' list of 30 largest unsecured creditors~~counsel to the Committee; (iv) counsel to Atari, S.A.; (v) counsel to ~~Blue Bay; (vi) counsel to~~ the DIP ~~Lenders;~~Lender and (~~vii~~vi) all parties in interest that have filed a request for notices pursuant to Bankruptcy Rule 2002~~, and (viii) counsel for any Statutory Committee~~.  The Debtors have made reasonable efforts to afford notice that was, in the Debtors' belief, the best notice available under the circumstances, and such notice is proper and sufficient to permit the relief set forth in this ~~Interim~~Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion, the DIP Term Sheet, the DIP Credit Documents and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED ~~that~~THAT:**

1.    Motion Granted.  The Motion is granted in accordance with the terms and conditions set forth in this Final Order, the DIP Term Sheet and the DIP Credit Documents.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are denied and overruled.

2.    Ratification of the Interim Order; Approval of DIP Credit Documents.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order and the DIP Credit Documents, and all DIP Obligations (as defined below) incurred and borrowings and payments made thereunder are ratified and confirmed on a final basis

and shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Term Sheet and the DIP Credit Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized on a final basis to perform under the DIP Term Sheet and the DIP Credit Documents and to incur the DIP Obligations in accordance with, and subject to, the terms and conditions of this Final Order, the DIP Term Sheet, and the DIP Credit Documents, and to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary or otherwise requested by the DIP Collateral Agent or the DIP Lender pursuant to the terms of the DIP Credit Documents for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order, the DIP Term Sheet and the DIP Credit Documents.  The Debtors are hereby authorized and directed on a final basis to do and perform all acts and pay the principal, interest, fees, expenses and other amounts described in the DIP Term Sheet and the DIP Credit Documents as such become due pursuant to the DIP Term Sheet, the DIP Credit Documents and this Final Order.  The DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each responsible officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Credit Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

1.    DIP Term Sheet Approved.  The Motion  is GRANTED and the DIP Term Sheet is APPROVED.  The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Term Sheet, to incur and to perform thereunder, and to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Term Sheet and the creation and perfection of the DIP Liens described in and

provided for by this Interim Order and the DIP Term Sheet.  Each term and provision of the DIP Term Sheet is valid, binding and enforceable as though set forth in this Interim Order.  The failure to specifically include or reference any particular term or provision of the DIP Term Sheet in this Interim Order shall not diminish or impair the effectiveness of such term or provision, it being the intent of this Court that the DIP Term Sheet be approved in its entirety.

2.    Objections Overruled. All objections, responses or reservations of rights to the Motion or DIP Term Sheet that have not been withdrawn or otherwise resolved, are overruled on their merits.

3.    <u>DIP Obligations.</u>  Upon execution and delivery, and subject to the satisfaction of the DIP Financing Conditions, the DIP Credit Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors or assigns thereto, including, but not limited to, any trustee or other estate representative appointed in a Caseany of these Cases or in any case under Chapterchapter 7 of the Bankruptcy Code upon the conversion of a Caseany of these Cases (each a "Successor Case" and, together, "Successor Cases").  The "DIP Obligations" include, but are not limited to, all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by the Debtors to the DIP LendersLender under the DIP Term Sheet or DIP Credit Documents, including, but not limited to, all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Term Sheet or DIP Credit Documents.

4.    <u>DIP Liens and Collateral.</u>

(a)    *DIP Liens.*  To secure the prompt and complete payment and performance of the DIP LoansFacility and other liabilities and obligations of the BorrowersDebtors to the DIP LendersLender under or in connection with the DIP Term Sheet, the DIP Loan

~~Documentation~~Credit Documents and this ~~Interim~~Final Order, effective and perfected upon the entry of this ~~Interim~~Final Order and without the necessity of (x) execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or similar documents, or (y) the possession or control by the DIP ~~Lenders~~Lender of any property of the Debtors, the following security interests and liens (collectively the "DIP Liens") are hereby granted to the DIP Collateral Agent for the benefit of the Secured Parties on the following property:

> (i)  pursuant to Bankruptcy Code section 364(c)(2) ~~of the Bankruptcy Code~~, secured by a perfected first-priority lien on the Collateral, subject only to (i) valid, perfected and non-avoidable liens as of the Petition Date and (ii) the Carveout (the "First Priority DIP Liens");

> (ii)  pursuant to Bankruptcy Code section 364(c)(3) ~~of the Bankruptcy Code~~, secured by a perfected second priority lien on the Collateral, to the extent that such Collateral is subject to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by Bankruptcy Code section 546(b) ~~of the Bankruptcy Code~~, and to the extent such liens are expressly permitted in writing by the DIP ~~Lenders~~Lender in ~~their~~its sole and absolute discretion, subject only to the Carveout (the "Second Priority DIP Liens"); and

> (iii)  pursuant to Bankruptcy Code section 364(d) ~~of the Bankruptcy Code~~, secured by a perfected first priority, priming and senior security interest and lien granted to the DIP ~~Lenders~~Lender on the Collateral to the extent that such Collateral is subject to any lien or security interest as of the Petition Date, subject only to the Carveout (the "Priming DIP Liens")~~; provided that, until entry of the Final Order, such Priming DIP Liens will not prime any lien in favor of (a) The Bluebay Value Recovery (Master) Fund Limited pursuant to the Credit Facility Agreement dated April 21, 2006 as amended, restated, supplemented or otherwise modified as of the date hereof and (b) Atari S.A. to the extent such liens are determined to be valid and enforceable, and all rights are reserved with respect to the entry of the Final Order~~.

Except as otherwise provided herein, the DIP Term Sheet, ~~the DIP Loan Documentation~~ or the ~~Final Order~~DIP Credit Documents, the DIP Liens shall not be subject to or *pari passu* with any

security, mortgage, collateral interest, lien or claim heretofore or hereinafter granted in ~~a Case~~any of the Cases or any Successor ~~Case~~Cases.

       (b)    *Treatment of DIP Liens.*  The DIP Liens shall be valid and enforceable against the Debtors, the Collateral, any trustee or other estate representative appointed in ~~a Case~~any of the Cases or any Successor ~~Case~~Cases, upon the conversion of any of ~~a Case~~the Cases to a case under ~~Chapter~~chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of ~~a Case~~the Cases or ~~a~~any Successor ~~Case~~Cases.  The DIP Liens shall not be subject to challenge, including, but not limited to, under ~~Sections~~Bankruptcy Code sections 510, 549, or 550~~ of the Bankruptcy Code~~.  Except as otherwise provided herein, the DIP Term Sheet~~, the DIP Loan Documentation~~ or the ~~Final Order~~DIP Credit Documents, no security, mortgage, collateral interest, lien, claim, or interest avoided and preserved for the benefit of the Debtors' estates shall be *pari passu* with or senior to the DIP Liens.

     5.    ~~DIP~~Approved Budget.  The Debtors' use of the credit extended under this ~~Interim~~Final Order ~~and~~, the DIP Term Sheet and the DIP Credit Documents is on ~~an interim~~a final basis, shall at all times be in compliance with the ~~DIP~~Approved Budget, and may be utilized until the earlier of (x) 180 days after the Petition Date, ~~subject to entry of the Final Order, (y) the date of written notice from the DIP Lenders of~~(y) upon the occurrence of an Event of Default (as defined in the DIP ~~Term Sheet~~Credit Agreement), or (z) the date of sale of ~~any~~all or substantially all of the Debtor's assets outside the ordinary course of business or any Debtor's emergence from ~~Chapter~~chapter 11 pursuant to a plan of reorganization (the "Termination Date").  Nothing in this ~~Interim~~Final Order shall authorize the Debtors' disposition of any of their assets or the assets of their estates outside the ordinary course of business (which shall be subject to further orders of this Court), or the Debtors' use of any proceeds

resulting therefrom, except as permitted in this ~~Interim~~Final Order and in accordance with the ~~DIP~~Approved Budget. Any modification to, or amendment or update of, the ~~DIP~~Approved Budget shall be in form and substance acceptable to the DIP ~~Lenders~~Lender.

6.  <u>DIP Superpriority Claim.</u>

(a)  *Superpriority Claim of DIP ~~Lenders~~Lender.* The DIP ~~Lenders are~~Lender is hereby granted, pursuant to ~~Section~~Bankruptcy Code section 364(c)(1) ~~of the Bankruptcy Code~~, an allowed superpriority administrative expense claim in the Cases and any Successor ~~Case~~Cases for all DIP Obligations (the "<u>DIP Superpriority Claim</u>"). The DIP Superpriority Claim shall be subordinate only to the Carveout, and shall otherwise have priority over any and all ~~Chapter~~chapter 11 administrative expenses, whether heretofore or hereafter incurred, of the kinds specified in or ordered pursuant to ~~Sections~~Bankruptcy Code sections 503(b) and 507(b) ~~of the Bankruptcy Code~~.

(b)  *Priority of DIP Superpriority Claim.* ~~The~~Subject to the Carveout, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition assets of the Debtors and their ~~estate~~estates, and all proceeds thereof, ~~subject only to the Carveout. Upon entry of the Final Order, the DIP Superpriority Claim shall be payable from or have recourse to~~including any and all claims and causes of action under ~~Chapter~~chapter 5 of the Bankruptcy Code.

7.  <u>No Obligation to Extend Credit.</u> The DIP ~~Lenders~~Lender shall have no obligation to make loans or advances under the DIP Facility until the DIP Financing Conditions have been satisfied and the conditions precedent to the making of such extension of credit under the DIP Term Sheet or the DIP Credit Documents have been satisfied in full, in each case in the sole discretion of the DIP Lender.

8.    <u>Adequate Protection</u>.

(a)    *Adequate Protection Lien.*  ~~Upon entry of the Final Order, to~~<u>To</u> the extent

of the diminution in value of the Prepetition Secured Parties' interests in their respective

Prepetition Collateral, from and after the Petition Date, resulting from the use, sale or lease by

the Debtors of the Prepetition Collateral, the subordination of the Prepetition Secured Parties'

respective liens in the Prepetition Collateral to the ~~Carve Out and, subject to the entry of the~~

~~Final Order,~~<u>Carveout and</u> the DIP Liens, and the imposition or enforcement of the automatic

stay of <u>Bankruptcy Code</u> section 362(a) (collectively, the "<u>Diminution in Value</u>"), (1) <u>Alden, as</u>

<u>assignee of the</u> Blue Bay <u>Debt and the Blue Bay Lien,</u> is hereby granted (i) a valid and perfected

replacement security interest in, and lien on the Blue Bay Collateral, subordinate and subject

only to (a) the DIP Liens and (b) the ~~Carve Out~~<u>Carveout</u>, and (ii) a valid and perfected priority

security interest in, all other Collateral, subject to and subordinate to the First Priority DIP Liens

and the Second Priority DIP Liens, as applicable and (2) the Parent is hereby granted (i) a valid

and perfected replacement security interest in, and lien on the Parent Collateral, subordinate and

subject only to (a) the DIP Liens and (b) the ~~Carve Out~~<u>Carveout</u>, and (ii) a valid and perfected

priority security interest in, all other Collateral, subject to and subordinate to the First Priority

DIP Liens and the Second Priority DIP Liens, as applicable (collectively, the "<u>"</u><u>Adequate</u>

<u>Protection Liens</u>").

(b)    *Adequate Protection Superpriority Claim.*  ~~Upon entry of the Final Order,~~

~~to~~<u>To</u> the extent the Adequate Protection Liens are insufficient to adequately protect against the

Diminution in Value of the Prepetition Secured Parties' interests in their respective Prepetition

Collateral, the Prepetition Secured Parties shall also have priority in payment afforded by

<u>Bankruptcy Code</u> section 507(b) ~~of the Bankruptcy Code~~ in an amount equal to the amount by

which such diminution exceeds the value of the Adequate Protection Liens (the "Adequate Protection Superpriority Claim").  Notwithstanding anything to the contrary contained herein or otherwise, the Adequate Protection Superpriority Claims shall be junior and subordinate in all respects to the DIP Liens, DIP Superpriority Claim, the Carveout, and Adequate Protection ~~Lien~~Liens, but shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to ~~Section~~Bankruptcy Code sections 503(b) and 507(b) ~~of the Bankruptcy Code~~.

(c)    *Adequate Protection Limitations.  To the extent a Challenge (as defined below) is timely filed in accordance with this Final Order and successfully pursued by entry of a final, non-appealable order, the Adequate Protection Liens shall be automatically vacated, and nothing in this Final Order, the DIP Term Sheet, or the DIP Credit Documents shall prevent the Court from granting appropriate relief with respect thereto, and any adequate protection payments made to the Prepetition Secured Parties (or their assignees) subsequent to the entry of this Final Order shall be subject to disgorgement.*

9.    Modification of Automatic Stay.    The automatic stay imposed under ~~Section~~Bankruptcy Code section 362(a) ~~of the Bankruptcy Code~~ is hereby modified as necessary to effectuate all of the terms and provisions of this ~~Interim~~Final Order ~~and~~, the DIP Term Sheet~~, including, but not limited to~~ and the DIP Credit Documents, to permit the Debtors to grant the DIP Liens, the DIP Superpriority Claim, ~~and upon entry of the Final Order,~~ the Adequate Protection ~~Lien~~Liens and the Adequate Protection Superpriority Claim.

10.    Credit Bid.  The DIP ~~Lenders~~Lender (or the DIP Collateral Agent on behalf of the DIP Lender) shall have the unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of any Collateral under or pursuant to (i) ~~section 363 of the~~

Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under ~~section 1129 of the~~ Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under ~~section 725 of the~~ Bankruptcy Code section 725.

11.    <u>Automatic Perfection of Liens.</u>  This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under any law or regulation of any jurisdiction or the taking of any other action to validate or perfect (including, but not limited to, in accordance with applicable non-bankruptcy law) the DIP Liens, and to entitle the DIP ~~Lenders~~Collateral Agent and other Secured Parties to the priorities granted herein.

12.    <u>Proceeds of Subsequent Financing.</u>  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in ~~a Case~~any of the Cases or any Successor ~~Case~~Cases shall obtain credit or incur debt pursuant to ~~Section~~Bankruptcy Code section 364(b, c, or d) ~~of the Bankruptcy Code~~ at any time prior to the repayment in full in cash of all DIP Obligations, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to a Debtor or Debtor's estate, then all the proceeds derived from such credit or debt shall immediately be turned over to the DIP ~~Lenders~~Lender to be applied to the DIP Obligations.

13.    <u>Financial Information and Reporting Requests.</u>  The Debtors shall allow the DIP ~~Lenders~~Lender reasonable access during business hours to the premises, books and records, officers, employees, auditors, appraisers, legal advisors and financial advisors of the Debtors, upon reasonable advance notice in order to conduct appraisals, analyses and/or audits of the Collateral

and the Debtors' financial affairs, and shall otherwise cooperate in providing any other financial information reasonably requested by the DIP ~~Lenders~~Lender, each at the cost and expense of the Debtors.   The Debtors shall deliver to the DIP ~~Lenders~~Lender by (i) 12:00 p.m. (ET) on Wednesday of each week, a reconciliation for (a) the most recent Saturday through Friday period (a "Weekly Report"), (b) the prior ~~four-week~~two-week operating period ~~(if less than four weeks have elapsed since the Petition Date, such shorter period)~~, and (c) the cumulative period from the Petition Date to the date of determination, as to each, of the Debtors' actual cash receipts and disbursements as compared to the DIP Budget, with a breakdown by line-item in the same format as the DIP Budget for such periods; (ii) a copy of each monthly operating report as and when submitted to the U.S. Trustee; ~~(iii) monthly, no later than the thirtieth (30th) day of each month, the prior month's income statement, cashflow statement, and balance sheet for the Debtors; (iv) a Weekly Report of accounts payable and accounts receivable agings; and (v~~and (iii)) such other reports and information as reasonably requested by the DIP ~~Lenders.~~Lender.  Copies of all reports provided to the DIP Lender in accordance with subsections (i) through (ii) of this Section 13 shall be contemporaneously delivered to counsel to the Committee.

14.    Disposition of Collateral; Rights of DIP Lender.  Unless otherwise authorized by the Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral except to the extent permitted under the DIP Credit Documents.   Nothing provided herein shall limit the rights of the ~~DIP Lenders~~Secured Parties to object to any proposed disposition of the Collateral.

15.    Termination Date.  All of the DIP Obligations are due and payable in full in cash upon the occurrence of a Termination Event (as defined below) or the Termination Date, and the DIP ~~Lenders~~Lender may thereafter exercise any rights and remedies provided in this ~~Interim~~Final

Order or, the DIP Term Sheet or the DIP Credit Documents, at law or equity, including all rights
and remedies provided under the Bankruptcy Code.

16.    Termination Event.  The occurrence of any of the following, unless waived by the
DIP Lenders Lender, shall constitute a "Termination Event":

(a)    the occurrence of any Event of Default (as defined in the DIP Term Sheet and
the DIP Credit Agreement);

(b)    the Debtors shall, without the DIP Lenders' Lender's prior written consent,
file a motion with the Court seeking the authority to liquidate, transfer, or dispose of any of the
Debtors' or their estates' assets or capital stock unless the transaction or transactions that are the
subject of the applicable motions will result in immediate payment in full in cash of the DIP
Obligations upon consummation of such transactions;

(c)    other than in connection with the payment in full in cash of the DIP
Obligations, the bringing of a motion, taking of any action or the filing of any plan of
reorganization or liquidation (or disclosure statement) by or on behalf of a Debtor in a Case (or
any Debtor supports, directly or indirectly, any such actions):   (A) to obtain financing under
Section Bankruptcy Code section 364(c or d) of the Bankruptcy Code (other than in connection with
the DIP Facility), (B) to grant any lien or security interest other than the DIP Liens upon or
affecting the Collateral, (C) that seeks to prohibit the DIP Lenders Lender from credit bidding on
any or all of the Debtors' assets during the pendency of a Case any of the Cases, or (D) any other
action or actions materially adverse to the DIP Lenders Lender or their its rights and remedies under
this Interim Final Order or, the DIP Term Sheet, or their the DIP Credit Documents, or its interest in
any Collateral;

(d)        other than in connection with the payment in full in cash of the DIP Obligations, (i) the filing of any plan of reorganization or liquidation (or disclosure statement), or any direct or indirect amendment to such plan or disclosure statement, by the Debtors or any other person, entity, or Statutory, with the Debtors' direct or indirect consent, the Committee to which the DIP Lenders have Lender has not consented or otherwise agreed to the treatment of their its claims, or (ii) the entry of any order terminating, or the expiration of, a Debtor's exclusive right to file a plan of reorganization or liquidation;

(e)        the entry of an order in a Case confirming a plan of reorganization or liquidation that (i) is not in form and substance acceptable to the DIP Lenders Lender, and (ii) does not contain a provision for repayment in full in cash of all of the DIP Obligations on or before the effective date of such plan and the Termination Date;

(f)        the entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Term Sheet, the DIP Credit Documents, this Interim Order, the Final Order or the Debtors' "first-day" cash management order Final Order (I) Authorizing Continued Use of Existing Cash Management System, (II) According Administrative Expense Status for Intercompany Receivables, (III) Authorizing Continued Use of Existing Business Forms, and (IV) Granting Certain Related Relief entered in these Cases (the "Cash Management Order") without the written consent of the DIP Lenders Lender;

(g)        the DIP Term Sheet, any of the DIP Credit Documents, this Interim Order, the Final Order, or the Debtors' "first-day" cash management order Cash Management Order is not in full force and effect;

(h)        the this Final Order is not entered within 45 50 days of the date on which the "Conditions Precedent to the Interim Loan" (as set forth in the "Conditions Precedent" section of the

DIP Term Sheet) are satisfied or waived in accordance with the DIP Term Sheet (the "Interim Closing Date");

(i)    the payment of, or application for authority to pay, any prepetition indebtedness or prepetition claim without the DIP ~~Lenders'~~Lender's prior written consent unless otherwise approved in the Approved Budget;

(j)    the allowance of any claim or claims under ~~Section~~Bankruptcy Code section 506(c) ~~of the Bankruptcy Code~~ or otherwise against the DIP ~~Lenders~~Lender or any of the Collateral;

(k)    the appointment of an interim or permanent trustee in any ~~Case~~of the Cases, or the appointment of a receiver or an examiner in any ~~Case~~of the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization or liquidation of a Debtor;

~~(l)    the sale (or the filing of a motion to sell) any Debtor's assets without the DIP Lenders' consent, either pursuant to Section 363 of the Bankruptcy Code, a confirmed plan of reorganization or liquidation, or otherwise, that does not provide for payment in full in cash of the DIP Obligations;~~

(~~m~~l)    the dismissal of any ~~Case~~of the Cases, the conversion of any ~~Case~~of the Cases from ~~Chapter~~chapter 11 to ~~Chapter~~chapter 7 of the Bankruptcy Code, or the filing of a motion or other pleading seeking such relief;

(~~n~~m)    the entry of an order (other than this ~~Interim Order or the~~ Final Order) by the Court granting relief from or modifying the automatic stay of ~~Section 362 of the~~ Bankruptcy Code section 362 (i) to allow any creditor to execute upon or enforce a lien on any Collateral ~~having a value of $25,000 or more~~, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority;

(o~~n~~) the commencement of a suit or action against ~~any of~~ the DIP ~~Lenders~~Lender by ~~or on behalf of~~ a Debtor or its estate;

(~~p~~o) the entry of an order in any ~~Case~~of the Cases avoiding or permitting recovery of any portion of the payments made on account of the DIP Obligations;

(~~q~~p) the failure of any Debtor to perform any of its obligations under the DIP Term Sheet, the DIP Credit Documents, ~~this~~the Interim Order, ~~the~~this Final Order, the ~~"first day"~~ ~~cash management order~~Cash Management Order, or any of a Debtor's material obligations under any other order of the Court, which is not cured within ~~3~~5 business days' written notice to the ~~Debtor(s)~~DIP Lender;

(~~r~~q) (1) the failure of the Debtors to have filed a motion, within 60 days after the Petition Date, ~~obtain an order that is not subject to appeal, reconsideration or review~~ extending the Debtors' time period to assume or reject unexpired leases of real property to a date that is not less than ~~one hundred twenty (~~120~~)~~ days after the Petition Date, or (2) if such date has been extended by order of the Court, the failure of the Court to, within 5 days prior to such extended deadline, grant an order that is not subject to appeal, reconsideration or review further extending the ~~Debtors'~~Debtor's time period to assume or reject unexpired leases of real property; or

(~~s~~r) the entry of an order in any Case granting any other superpriority administrative claim or lien equal or superior in priority or priority of payment to that granted to the DIP ~~Lenders~~Lender.

17.    <u>Rights and Remedies Following Termination Event.</u>

(a) *Termination.* Immediately upon the occurrence and during the continuance of a Termination Event, the DIP ~~Lenders~~Lender, or the DIP Collateral Agent, as the case may be, may provide the Debtor(s) written notice ~~as set forth in Paragraph 19(b) of this~~

Interim Order of such Termination Event to the Debtors, the Committee, and the U.S. Trustee (such notice, a "Termination Notice"). Three (3) business days Immediately after the issuance of a Termination Notice, subject to the Remedies Notice Period (as defined below), the DIP LendersLender, or the DIP Collateral Agent, as the case may be, may exercise all rights and remedies set forth in the DIP Term Sheet, the DIP Credit Documents, thisthe Interim Order or the, this Final Order, or under applicable law, without further order of or application to the Court notwithstanding section 362 of the Bankruptcy Code section 362. Without limiting the foregoing, the DIP LendersLender, or the DIP Collateral Agent, as the case may be, may, subject to the Remedies Notice Period, enter onto the premises of the Debtors in connection with an orderly liquidation of the Collateral. Upon the issuance of a Termination Notice, and following the termination of any applicable Remedies Notice Period, the Debtors agree to and shall cooperate with the DIP LendersLender or the DIP Collateral Agent, as the case may be, in a "friendly foreclosure" by the DIP LendersLender or the DIP Collateral Agent, as the case may be, on the Collateral, the DIP LendersLender or the DIP Collateral Agent, as the case may be, may require the Debtors to seek authority from the Court to retain an advisor or liquidator for the purpose of conducting a sale or liquidation of the Collateral and, if the Debtor(s) refuses to seek such authority, the DIP LendersLender or the DIP Collateral Agent, as the case may be, shall be entitled to seek such authority directly.

      (b)    *Notice of Termination.*  Any Termination Notice shall be given by facsimile (or other electronic means) to counsel to the Debtor(s)Debtors, counsel to any Statutorythe Committee, and the U.S. Trustee (the earliest date any such Termination Notice is sent shall be referred to herein as the "Termination Notice Date"). The DIP LendersLender or the DIP Collateral Agent, as the case may be, shall not be required to extend credit under the

DIP Facility, or otherwise, on and after the Termination Notice Date, and all of the DIP Obligations shall be due and payable in full in cash on the Termination Notice Date. Any automatic stay otherwise applicable to the DIP ~~Lenders~~Lender is hereby modified so that 7 business days after the Termination Notice Date (the "Remedies Notice Period"), the DIP ~~Lenders~~Lender or the DIP Collateral Agent, as the case may be, shall be entitled to exercise any and all of ~~their~~its rights and remedies against the Collateral in accordance with the DIP Term Sheet, the DIP Credit Documents, ~~this Interim Order,~~ or ~~the~~this Final Order, and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject only to the Carveout. During the Remedies Notice Period, the Debtor(s) shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether a Termination Event has occurred and/or is continuing. Unless the Court determines during the Remedies Notice Period that a Termination Event has not occurred, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the DIP ~~Lenders~~Lender or the DIP Collateral Agent, as the case may be, shall be permitted to exercise any and all rights and remedies set forth in the DIP Term Sheet, the DIP Credit Documents, ~~this~~the Interim Order, or ~~the~~this Final Order and under any applicable law, without further order of or application or motion to the Court, and without restriction or restraint by any stay under ~~Sections~~Bankruptcy Code sections 105 or 362 ~~of the Bankruptcy Code~~, or otherwise, against the enforcement of the liens and security interests in the Collateral or any other rights and remedies granted or available to the DIP ~~Lenders~~Lender or the DIP Collateral Agent, as the case may be, with respect thereto.

18.    Good Faith Under ~~Section 364 of the~~ Bankruptcy Code Section 364; No Modification or Stay ~~or~~of this ~~Interim~~Final Order. The DIP ~~Lenders have~~Lender has acted in good faith in connection with the DIP Term Sheet ~~and this~~, the DIP Credit Documents, the

Interim Order, and ~~their~~this Final Order, and its reliance on the terms and effectiveness of this ~~Interim~~Final Order is in good faith.  Based on the findings set forth in this ~~Interim~~Final Order and the record made during the ~~Interim~~Final Hearing, and in accordance with ~~Section~~Bankruptcy Code section 364(e) ~~of the Bankruptcy Code~~, in the event any or all of the provisions of this ~~Interim~~Final Order are hereafter modified, amended or vacated by this Court or any other court, the DIP ~~Lenders~~Lender and the DIP Collateral Agent are entitled to the protections provided in ~~Section~~Bankruptcy Code section 364(e) ~~of the Bankruptcy Code~~.  Any such modification, amendment, or vacatur of this ~~Interim~~Final Order shall not affect the validity and enforceability of the DIP Term Sheet, the DIP Credit Documents, ~~this~~the Interim Order, ~~the~~this Final Order, any DIP Obligations, or any lien, claim or priority authorized or created in any of them, provided that this ~~Interim~~Final Order was not stayed by court order after due notice to the DIP ~~Lenders~~Lender and the DIP Collateral Agent at the time such obligations were incurred or the liens, claims or priorities were authorized and/or created.  The validity and enforceability of the DIP Term Sheet, the DIP Credit Documents, ~~this~~the Interim Order, ~~the~~this Final Order, any DIP Obligations, or any lien, claim or priority authorized or created in any of them prior to the effective date of any such modification, amendment or vacatur of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including the ~~DIP Lenders~~Secured Parties' entitlement to all rights, remedies, privileges and benefits granted herein, provided that ~~the Interim~~this Final Order was not stayed by court order after due notice had been given to the ~~DIP Lenders~~Secured Parties at the time the obligations were incurred or the liens, claims or priorities were authorized and/or created.

19.    Carveout.

(a)    *Carveout.*    As used in this ~~Interim~~Final Order, the "Carveout"
means: (i) all statutory fees required to be paid to the Clerk of the Court and the U.S. Trustee
pursuant to 28 U.S.C. § 1930(a), (ii) ~~upon the occurrence of any Termination Event and delivery of a~~
~~written notice by the DIP Lenders to lead counsel for the Debtors, any Statutory Committee, and the~~
~~U.S. Trustee (a "**Carveout Trigger Notice**"), an aggregate amount equal to no more than~~
~~$200,000 to pay (A) outstanding and allowed~~(A) allowed, accrued and unpaid fees and out-of-
pocket expenses (regardless of when such fees and expenses ~~of the Debtors' and any Statutory~~
~~Committee's~~become allowed by order of the Court) of professionals retained by order of the Court
~~not subject to appeal, reconsideration or review under Sections 327 or 1103(a)~~ (collectively, the
"Case Professionals") ~~of the Bankruptcy Code (collectively, the "**Professional Fees**"),~~ incurred
on or prior to the occurrence of a Termination Event, and (B) ~~the~~ reimbursement of out-of-pocket
expenses outstanding and allowed by the Court incurred by the ~~Statutory~~ Committee members in the
performance of their duties (but excluding fees and expenses of professionals employed by such
members) (collectively, the "Committee Expenses"), ~~and~~ (iii) upon the occurrence of any
Termination Event and delivery of a written notice by the DIP Lender to lead counsel for the
Debtors, the Committee, and the U.S. Trustee (a "Carveout Trigger Notice"), an aggregate
amount equal to no more than $200,000 to pay allowed fees and expenses of Case
Professionals (the "Professional Fees") incurred after the delivery of a Carveout Trigger Notice,
and (iv) upon the conversion of the ~~Debtors' cases~~Cases to cases under ~~Chapter~~chapter 7
of the Bankruptcy Code, an amount not to exceed $50,000 (payable only to the extent the
original $200,000 was exhausted prior to conversion) in each case, incurred after the
delivery of a Carveout Trigger Notice.  The Carveout shall be funded solely with the Debtors' cash
on hand, cash collateral, and with the first proceeds of the Collateral.  No portion of the Carveout

may be used in violation of this ~~Interim~~Final Order ~~or,~~ the DIP Term Sheet or the DIP Credit Agreement.  So long as the Carveout Trigger Notice has not been delivered, the Debtors shall be permitted to pay, as the same becomes allowed by the Court, due and payable Professional Fees ~~provided for in the DIP Budget~~, and the same shall not reduce the Carveout amount. Notwithstanding anything to the contrary herein, no portion of the ~~Carve-Out~~Carveout, proceeds of the DIP Facility, the Collateral, the Prepetition Collateral or the Cash Collateral shall include, apply to, or be available for any fees, costs, or expenses incurred by ~~an~~any party including the Debtors or ~~any Statutory~~the Committee or any Case Professionals, in connection with (x) the initiation or prosecution of any claims, causes of action, adversary proceedings or litigation against the DIP ~~Lenders~~Lender, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or DIP Liens or (b) challenging the amount, validity, extent, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to the Waived Claims; provided, further, that up to $~~50,000~~75,000 shall be made available to ~~any Statutory~~the Committee for investigation costs in respect of the Waived Claims.

(b)     *No Direct Obligation to Pay Professional Fees or Committee Expenses.* The DIP ~~Lenders~~Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with a Case or any Successor Case.   Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the DIP ~~Lenders~~Lender in any way to pay compensation to or to reimburse expenses of any of the Case Professionals (including any Professional Fees or Committee Expenses), or to guarantee that the Debtors

have sufficient funds to pay such compensation or reimbursement. Nothing in this ~~Interim~~Final Order or otherwise shall be construed to increase the Carveout if actual Professional Fees or Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the ~~DIP~~Approved Budget.

(c)    *Payment of Carveout After Carveout Trigger Notice.* Any payment or reimbursement made on or after the delivery of the Carveout Trigger Notice in respect of any Professional Fees (exclusive of the application of any retainers by any of the Case Professionals), and/or Committee Expenses shall permanently reduce the Carveout amount on a dollar-for-dollar basis.

20.    <u>Committee Investigation Rights</u>.  The ~~Statutory~~ Committee shall have until ~~sixty (60)~~120 days from the ~~appointment of the Statutory Committee~~entry of this Final Order, unless the DIP Lender consents, in its sole discretion, to the extension of such time (the "<u>Investigation Termination Date</u>") to investigate the validity, ~~perfect~~perfection, and enforceability of the Waived Claims or to assert any other claims or cause of action with respect to the Waived Claims.  If ~~any Statutory~~the Committee, subject to having obtained the requisite standing, determines that there may be a challenge to the Waived Claims by the Investigation Termination ~~date~~Date, then upon ~~three (3)~~ days' written notice to the Debtors and the DIP ~~Lenders, such Statutory~~Lender, the Committee hereafter vested with authority by this Court shall be permitted to file and prosecute an objection or claim related thereto (each, a "<u>Challenge</u>"), and shall have until the applicable Investigation Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action; <u>provided</u>, <u>however</u>, that nothing contained in the DIP Term Sheet, the DIP ~~Loan~~Credit Documents, or this ~~Interim~~Final Order, shall be deemed to confer standing on ~~any Statutory~~the

Committee or any other party in interest to commence a Challenge.  If a Challenge is not filed on or before the Investigation Termination Date, then without further action by any party or any further order of this Court, the Debtors' waiver of the Waived Claims shall be deemed to be immediately and irrevocable binding on the Debtors and the Debtors' estates, the ~~Statutory~~ Committee and any other party-in-interest and any and all successors-in-interest thereto, shall thereafter be forever barred from bringing any Challenge.  Notwithstanding anything to the contrary herein:  (a) if any such Challenge is timely commenced, the Debtors' waiver of the Waived Claims shall nonetheless remain binding and preclusive except to the extent of a successful Challenge and (b) the DIP Lender reserve all of ~~their~~its rights to contest on any grounds any Challenge.

21.    <u>Prohibited Use of Cash Collateral, DIP Facility Proceeds, Carveout, Etc.</u>  The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal, premium, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and obligations authorized under the ~~DIP~~Approved Budget.  Except for the Committee Investigation Rights with respect to Waived Claims, the DIP Facility, the Collateral and the Carveout may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of any DIP Lender or its rights and remedies under the DIP Term Sheet, the DIP Credit Documents, ~~this Interim Order,~~ or ~~the~~this Final Order, including, but not limited to, for the payment of any services rendered by the professionals retained by any Debtor or ~~Statutory~~the Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be

to obtain, any order, judgment, determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, (iii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Waived Claims, (iv) for monetary, injunctive or other affirmative relief against ~~any~~the DIP Lender or the Collateral, (v) preventing, hindering or otherwise delaying the exercise by ~~any~~the DIP Lender of any rights and remedies under the DIP Term Sheet, the DIP Credit Documents, this ~~Interim Order, the~~ Final Order, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court, or otherwise) by ~~any~~the DIP Lender upon the Collateral, or (vi) to pursue litigation against ~~any~~the DIP Lender; (b) to make any distribution under a plan of reorganization or liquidation or any agreement regarding sale of a Debtor's assets in any ~~Case~~of these Cases; (c) to make any payment in settlement of any claim, action or proceeding before any court, arbitrator or other governmental body without the prior written consent of the DIP ~~Lenders~~Lender unless otherwise ordered by this Court; (d) to pay any fees or similar amounts to any person or entity who has proposed or may propose to purchase interests in a Debtor without the prior written consent of the DIP ~~Lenders~~Lender; (e) objecting to, contesting, or interfering with, in any way, ~~a~~the DIP Lender's enforcement or realization upon any of the Collateral once a Termination Event has occurred, or seeking to prevent ~~a~~the DIP Lender from credit bidding in connection with any proposed plan of reorganization or liquidation, or any proposed transaction pursuant to ~~Section 363 of the~~ Bankruptcy Code section 363; (f) using or seeking to use the DIP Facility in a manner inconsistent with the DIP Budget; (g) using or seeking to use any insurance proceeds (which constitute Collateral) without the consent of the DIP ~~Lenders~~Lender; (h) incurring any indebtedness, obligation or liability outside the ordinary course of business without the prior consent of the DIP ~~Lenders~~Lender, except as permitted under the DIP Credit Documents; (i)

objecting to or challenging in any way the claims, liens, or interests held by or on behalf of a~~a~~the DIP Lender; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, but not limited to, any actions under ~~Chapter~~chapter 5 of the Bankruptcy Code, against ~~a~~the DIP Lender; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other rights, remedies or interests of ~~a~~the DIP Lender.

22.    <u>Pleadings</u>.    The Debtors shall provide copies of all pleadings, orders and stipulations to the DIP ~~Lenders~~Lender no later than ~~five (~~5~~)~~ days before filing such documents with the ~~Bankruptcy~~ Court.

23.    <u>Payment of Compensation.</u>  Nothing herein shall be construed as ~~a~~ consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP ~~Lenders~~Lender or the DIP Collateral Agent to object to the allowance and payment of such fees and expenses.  So long as no Termination Event has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been reversed, modified, vacated or stayed, unless the stay has been vacated) under ~~Sections~~Bankruptcy Code sections 330 and 331 ~~of the Bankruptcy Code~~ to the extent set forth in the DIP Budget.

24.    <u>Fees, Costs and Expenses.</u>  The Debtors are authorized and directed to pay all reasonable ~~out-of-pocket~~ fees, costs and expenses of ~~a~~the DIP Lender and the DIP Collateral Agent in connection with the DIP Term Sheet, the DIP Credit Documents, ~~this Interim Order~~ or ~~the~~this Final Order, whether or not the transactions contemplated by this ~~Interim~~Final Order are consummated, including, but not limited to, legal, financial advisory, consulting, accounting,

collateral examination, monitoring and appraisal fees, costs and expenses of ~~a~~the DIP Lender and the DIP Collateral Agent, and indemnification and reimbursement of such fees, costs and expenses shall be payable without need to comply with the U.S. Trustee fee guidelines~~.~~ and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however*, that all requests by the DIP Lender and the DIP Collateral Agent for reimbursement shall be provided to counsel to the Debtors, the U.S. Trustee and counsel to the Committee and shall include copies of invoices (redacted, as necessary, to protect any applicable privilege) with respect to such fees, costs and expenses, and each such party shall have 10 days from the date of such notice within which to object in writing to such payment, and the Court shall have jurisdiction to determine any dispute concerning the payment of any such fess, costs and expenses sought by the DIP Lender or the DIP Collateral Agent.

25.    <u>No Third Party Rights.</u>  Except as explicitly provided for in this ~~Interim~~Final Order, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor (other than the DIP ~~Lenders~~Lender, the DIP Collateral Agent and Blue Bay), equityholder or any direct, indirect, or incidental beneficiary.

26.    <u>Section 506(c) Claims.</u>  ~~Upon entry of the Final Order, no~~No costs or expenses of administration which have been or may be incurred in any ~~Case~~of the Cases at any time shall be charged against the DIP ~~Lenders~~Lender and the DIP Collateral Agent or the Collateral pursuant to ~~Sections~~Bankruptcy Code sections 105 or 506(c)~~ of the Bankruptcy Code~~, or otherwise, without the prior written consent of the DIP ~~Lenders~~Lender or the DIP Collateral Agent, as the case may be, and no such consent shall be implied from any action, inaction, or acquiescence by ~~any~~the DIP Lender or ~~its agent~~the DIP Collateral Agent, as the case may be, or their agents.

27.    <u>No Marshaling/Applications of Proceeds.</u>    ~~Upon entry of the Final Order, the DIP Lenders shall not~~<u>Neither the DIP Lender nor the DIP Collateral Agent shall</u> be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

28.    <u>Section 552(b).</u>    ~~Subject to the entry of the Final Order, the~~<u>The</u> "equities of the case" exception under ~~Section~~<u>Bankruptcy Code section</u> 552(b) ~~of the Bankruptcy Code~~ shall not apply to the DIP ~~Lenders~~<u>Lender or the DIP Collateral Agent, as the case may be,</u> with respect to proceeds, products, offspring or profits of any of the Collateral.

29.    <u>Discharge Waiver.</u>    The Debtors expressly stipulate, and the Court finds and holds that none of the DIP Obligations, the DIP Superpriority Claims or the DIP Liens shall be discharged by any order confirming any plan or reorganization or liquidation, or any plan of reorganization or liquidation, notwithstanding the provisions of ~~Section~~<u>Bankruptcy Code section</u> 1141(d) ~~of the Bankruptcy Code~~, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization or liquidation.  The Debtors shall not propose or support any plan of reorganization or liquidation, sale of all or substantially all of any Debtor's assets, or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan or closing of such sale, of all DIP Obligations. The DIP Superpriority Claims and the DIP Liens shall not be affected in any manner by the entry of an order confirming a plan of reorganization or liquidation in ~~a Case~~<u>any of the Cases</u> or any Successor ~~Case~~<u>Cases</u> that is not conditioned upon the payment in full in cash, on the effective date of such plan or closing of such sale, of all DIP Obligations.

30.    <u>Rights Preserved.</u>    Notwithstanding anything in this ~~Interim~~<u>Final</u> Order to the contrary, the entry of this ~~Interim~~<u>Final</u> Order is without prejudice to, and does not constitute a

waiver of, expressly or implicitly: (a) ~~any~~the DIP Lender's or the DIP Collateral Agent's right to seek any other or supplemental relief in respect of a Debtor; (b) any of the rights of ~~a~~the DIP Lender or the DIP Collateral Agent under the Bankruptcy Code or other applicable law, including, but not limited to, the right to (i) request further modification of or relief from the automatic stay of ~~Section 362 of the~~ Bankruptcy Code section 362, (ii) request dismissal of ~~a~~ ~~Case~~any of the Cases or any ~~of the~~ Successor ~~Case~~Cases, conversion of ~~a Case~~any of the Cases to a case under ~~Chapter~~chapter 7, or appointment of a ~~Chapter~~chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of ~~Section 1121 of the~~ Bankruptcy Code section 1121, a ~~Chapter~~chapter 11 plan or plans of reorganization or liquidation.  Other than as expressly set forth in this ~~Interim~~Final Order, any other rights, remedies, claims, causes of action, or privileges (whether legal, equitable, or otherwise) of ~~each~~the DIP Lender or the DIP Collateral Agent are reserved and preserved.

31.    <u>No Waiver by Failure to Seek Relief.</u>  The failure of a DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Term Sheet, the DIP Credit Documents, ~~this~~the Interim Order, ~~the~~this Final Order, or applicable law shall not constitute a waiver of any of the rights or remedies hereunder, thereunder, or otherwise of ~~a~~the DIP Lender.

32.    <u>Binding Effect of ~~Interim~~Final Order.</u>  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this ~~Interim~~Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP ~~Lenders~~Lender, all other creditors and equityholders of the Debtors, ~~any Statutory~~the Committee, any other committee appointed in the ~~Case~~Cases, all other parties in interest, and each of their successors and assigns, including any trustee, examiner or other fiduciary hereafter

appointed in ~~a Case~~any of the Cases, any Successor ~~Case~~Cases, or upon or after dismissal of any of the ~~Case~~Cases or any Successor ~~Case~~Cases.

~~33.~~    No Modification of ~~Interim~~Final Order.  The Debtors irrevocably waive any right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Lender the DIP Collateral Agent, acting at the direction of Required Lenders (as defined in the DIP Credit Agreement), (i) any modification, stay, ~~vacatur~~vacature or amendment to this ~~Interim~~Final Order, or (ii) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, but not limited to, any administrative expense of the kind specified in ~~Sections~~Bankruptcy Code sections 503(b), 507(a) or 507(b)~~ of the Bankruptcy Code~~) equal or superior in priority or priority of payment to the DIP Superpriority Claim, other than the Carveout; (b) without the prior written consent of the DIP Lender or the DIP Collateral Agent, acting at the direction of the Required Lenders, any order allowing use of the DIP Facility other than this ~~Interim Order and the~~ Final Order; and (c) without the prior written consent of the DIP ~~Lenders~~Lender, any lien on any of the Collateral equal or superior in priority or priority of payment to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this ~~Interim~~Final Order that a~~the~~ DIP Lender or the DIP Collateral Agent reasonably believes is material or adverse to a~~the~~ DIP Lender without the prior written consent of the DIP ~~Lenders~~Lender or DIP Collateral Agent, and no such consent shall be implied by any other action, inaction or acquiescence of a~~the~~ any DIP Lender or the DIP Collateral Agent.

~~34~~33.    ~~Interim~~Final Order Controls.  In the event of any express inconsistency between the terms and conditions of the DIP Term Sheet, the DIP Credit Documents, the Motion and this

~~Interim~~Final Order, the provisions of this ~~Interim~~Final Order shall govern and control except for the express satisfaction or waiver by Alden of any conditions precedent under the DIP Credit Agreement.

~~35~~34.    Survival.    The provisions of this ~~Interim~~Final Order and any actions taken pursuant to this ~~Interim~~Final Order shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization or liquidation in ~~a Case~~the Cases, (b) converting ~~a Case~~any of the Cases to a case under ~~Chapter~~chapter 7 of the Bankruptcy Code, (c) approving the sale of a Debtor's assets, (d) dismissing ~~a Case~~any of the Cases or any Successor ~~Case~~Cases, or (e) pursuant to which this Court abstains from hearing ~~a Case~~any of the Cases or any Successor ~~Case~~Cases; provided, however, that the DIP Superpriority Claims shall survive only to the extent permitted by applicable law.  The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests and other protections granted to the DIP ~~Lenders~~Lender and the DIP Collateral Agent pursuant to this ~~Interim~~Final Order and/or the DIP Credit Documents shall continue in each ~~Case~~of these cases, in any Successor ~~Case~~Cases, or following dismissal of any ~~Case~~of the Cases or any Successor ~~Case~~Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until all DIP Obligations have been paid in full in cash.

~~36.    Final Hearing.  The Final Hearing to consider entry of the Final Order and approval of the DIP Facility on a final basis is scheduled for **February 14, 2013 at 10:00 a.m. (EST)** before The Honorable James M. Peck, United States Bankruptcy Judge, Courtroom 601, at the United States Bankruptcy Court for the Southern District of New York located at One Bowling Green, New York, New York 10004.~~

37.    Notice of Final Hearing:   Notice of the Final Hearing will be provided in accordance with this Interim Order.  Within two (2) business days of the date this Interim Order is entered, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of this Interim Order upon: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' list of 30 largest unsecured creditors; (iv) counsel to Atari, S.A.; (v) counsel to Blue Bay; (vi) counsel to the DIP Lenders; (vii) all parties in interest that have filed a request for notices pursuant to Bankruptcy Rule 2002, and (viii) counsel for any Statutory Committee.

38.    Objection Deadline:  Objections, responses or reservations of rights, if any, to the relief sought in the Motion or Final Order shall be in writing, shall set forth with particularity the grounds for such objection, response or reservation of rights, shall be filed with the Clerk of the Court, and shall be served upon (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn:  Ira S. Dizengoff, Esq., proposed counsel to the Debtors, (ii) the U.S. Trustee, (iii) counsel to any Statutory Committee, (iv) Bracewell & Giuliani LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn:  Robert G. Burns, Esq. and Goodwin Square, 225 Asylum Street, Suite 2600, Hartford, Connecticut, 06103, Attn: Kurt A. Mayr II, Esq., counsel to the DIP Lenders, and (v) counsel for Blue Bay, so that such objections, responses or reservations of rights are filed with the Court and received by said parties on or before February 7, 2013 at 5:00 p.m. (ET).

39 35.    Effect of this Interim the Final Order.   This Interim Final Order shall take effect immediately, notwithstanding anything to the contrary under applicable law.

40 36.    Retention of Jurisdiction.   The Court has and will retain jurisdiction to enforce this Interim Final Order and, the DIP Term Sheet and the DIP Credit Documents according to their

terms, including, without limitation, the ~~DIP Lenders~~Secured Parties' rights and remedies contained

in the DIP Term Sheet, the DIP Credit Documents and granted by ~~this~~the Interim Order or this Final

Order and the ~~DIP  Lenders~~Secured Parties' enforcement of such rights and remedies and, in

accordance with ~~this~~the Interim Order ~~and~~or this Final Order, the DIP Term Sheet and the DIP

Credit Documents, foreclosure on the Collateral.

Dated: ~~January~~March __, 2013
　　　　New York, New York

---

THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

**Approved Budget**

| Summary Report: Litéra® Change-Pro TDC 7.0.0.360 Document Comparison done on 3/5/2013 2:04:26 PM | |
|---|---|
| **Style Name:** Default Style | |
| **Original DMS:** iw://EASTDMS/EAST/104023500/2 | |
| **Modified DMS:** iw://EASTDMS/EAST/104041421/7 | |
| **Changes:** | |
| Add | 555 |
| Delete | 570 |
| Move From | 23 |
| Move To | 23 |
| Table Insert | 0 |
| Table Delete | 1 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 1172 |