AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Kristine G. Manoukian

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
Scott L. Alberino (*Admitted Pro Hac Vice*)

*Attorneys for the Debtors*

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 610-6300
Facsimile:  (212) 610-6399
Ken Coleman
Jonathan Cho

*Attorneys for the Sponsor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ATARI, INC. et al.,[1] | ) Case No. 13-10176 (JMP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors are Atari, Inc., Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

**ARTICLE I.**

          DEFINITIONS AND INTERPRETATION ....................................................1

| | | |
|---|---|---|
| **1.1.** | Accrued Professional Compensation | 1 |
| **1.2.** | Administrative Claim | 2 |
| **1.3.** | Administrative Claims Bar Date | 2 |
| **1.4.** | Administrative Claims Objection Deadline | 2 |
| **1.5.** | Affiliate | 2 |
| **1.6.** | Alden | 2 |
| **1.7.** | Alden Limited Waiver | 2 |
| **1.8.** | Alden Secured Claim | 2 |
| **1.9.** | Alden Secured Credit Facility | 2 |
| **1.10.** | Allowed | 2 |
| **1.11.** | Atari Europe | 3 |
| **1.12.** | Atari Europe Secured Claim | 3 |
| **1.13.** | Atari, Inc. | 3 |
| **1.14.** | Ballot | 3 |
| **1.15.** | Bankruptcy Code | 3 |
| **1.16.** | Bankruptcy Court | 3 |
| **1.17.** | Bankruptcy Rules | 3 |
| **1.18.** | Blanket Lien | 3 |
| **1.19.** | Business Day | 3 |
| **1.20.** | Cases | 3 |
| **1.21.** | Cash | 3 |
| **1.22.** | Causes of Action | 4 |
| **1.23.** | Claim | 4 |
| **1.24.** | Claims Agent | 4 |
| **1.25.** | Claims Bar Date Order | 4 |
| **1.26.** | Claims Objection Deadline | 4 |
| **1.27.** | Claims Waivers | 4 |
| **1.28.** | Class | 4 |
| **1.29.** | Collateral | 4 |
| **1.30.** | Company | 4 |
| **1.31.** | Confirmation Date | 4 |
| **1.32.** | Confirmation Hearing | 4 |
| **1.33.** | Confirmation Objection Deadline | 4 |
| **1.34.** | Confirmation Order | 4 |
| **1.35.** | Confirmation Scheduling Order | 5 |
| **1.36.** | Contingent Claim | 5 |
| **1.37.** | Cooley | 5 |
| **1.38.** | Creditors' Committee | 5 |
| **1.39.** | Cure Amount | 5 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| **1.40.** | CUSH | 5 |
| **1.41.** | Debtors | 5 |
| **1.42.** | Debtors in Possession | 5 |
| **1.43.** | DIP Lender | 5 |
| **1.44.** | DIP Loan | 5 |
| **1.45.** | DIP Loan Agreement | 5 |
| **1.46.** | DIP Loan Claims | 5 |
| **1.47.** | DIP Loan Collateral Agent | 5 |
| **1.48.** | DIP Loan Documents | 5 |
| **1.49.** | DIP Loan Motion | 6 |
| **1.50.** | DIP Loan Order | 6 |
| **1.51.** | Disbursing Agent | 6 |
| **1.52.** | Disclosure Statement | 6 |
| **1.53.** | Disclosure Statement Order | 6 |
| **1.54.** | Disputed | 6 |
| **1.55.** | Distribution Record Date | 6 |
| **1.56.** | Duff & Phelps | 6 |
| **1.57.** | Effective Date | 6 |
| **1.58.** | Estate | 6 |
| **1.59.** | Exculpated Parties | 6 |
| **1.60.** | Executory Contracts | 7 |
| **1.61.** | Final Order | 7 |
| **1.62.** | General Unsecured Claim | 7 |
| **1.63.** | Guarantor | 7 |
| **1.64.** | GUC Escrow Account | 7 |
| **1.65.** | Humongous | 7 |
| **1.66.** | Impaired | 7 |
| **1.67.** | Initial GUC Distribution | 7 |
| **1.68.** | Initial Objection | 7 |
| **1.69.** | Insurance Policy | 7 |
| **1.70.** | Insured Claim | 8 |
| **1.71.** | Insurer | 8 |
| **1.72.** | Interactive | 8 |
| **1.73.** | Interest | 8 |
| **1.74.** | Intercompany Claim | 8 |
| **1.75.** | Intercompany Interest | 8 |
| **1.76.** | Interim Compensation Order | 8 |
| **1.77.** | Lien | 8 |
| **1.78.** | Local Bankruptcy Rules | 8 |
| **1.79.** | Person | 8 |
| **1.80.** | Petition Date | 8 |
| **1.81.** | Plan | 8 |
| **1.82.** | Plan Supplement | 8 |
| **1.83.** | Postconfirmation Organizational Documents | 8 |
| **1.84.** | Prepetition Period | 9 |
| **1.85.** | Priority Non-Tax Claim | 9 |

ii

# TABLE OF CONTENTS
## (continued)

**1.86.** Priority Tax Claim ..............................................................9
**1.87.** Professional ...................................................................9
**1.88.** Professional Fee Budget ....................................................9
**1.89.** Professional Fee Claim .....................................................9
**1.90.** Professional Fee Escrow Account .........................................9
**1.91.** Proponents ....................................................................9
**1.92.** Pro Rata Share ...............................................................9
**1.93.** Other Secured Claim ........................................................9
**1.94.** Rejection Damage Claim ....................................................9
**1.95.** Rejection Damage Claim Bar Date .........................................9
**1.96.** Released Parties ............................................................10
**1.97.** Reorganized Debtors .......................................................10
**1.98.** Schedules ....................................................................10
**1.99.** Second GUC Distribution ..................................................10
**1.100.** Secured Claim ..............................................................10
**1.101.** Secured Tax Claim .........................................................10
**1.102.** Securities Act ..............................................................10
**1.103.** Security .....................................................................10
**1.104.** Sponsor .....................................................................10
**1.105.** Sponsor Analysis ..........................................................10
**1.106.** Sponsor Atari, Inc. Intercompany Claims ...............................10
**1.107.** Sponsor Commitment Letter ..............................................11
**1.108.** Sponsor Cash Contribution ...............................................11
**1.109.** Sponsor Contributions ....................................................11
**1.110.** Sponsor Interactive Intercompany Claim ................................11
**1.111.** Sponsor Intercompany Claims Waivers ...................................11
**1.112.** Sponsor Intercompany Claims .............................................11
**1.113.** Sponsor Management Fee Claim ..........................................11
**1.114.** Sponsor Secured Claim ....................................................11
**1.115.** Sponsor Value Contributions ..............................................11
**1.116.** Tax Code ....................................................................11
**1.117.** Test Drive IP ...............................................................11
**1.118.** Test Drive Lien .............................................................11
**1.119.** Third GUC Distribution ...................................................11
**1.120.** Unimpaired .................................................................11
**1.121.** Unliquidated Claim ........................................................12
**1.122.** U.S. Trustee ................................................................12
**1.123.** Voting Record Date ........................................................12

**ARTICLE II.**

　　　　PLAN CONSOLIDATION ...........................................12

**2.1.** Limited Plan Consolidation ...................................................12
**2.2.** Order Granting Plan Consolidation ..........................................12

**ARTICLE III.**

　　　　CLASSIFICATION OF CLAIMS AND INTERESTS ...................13

# TABLE OF CONTENTS
## (continued)

**3.1.** Unclassified Claims ....................................................................................13
**3.2.** Classification of Claims and Interests....................................................13

## ARTICLE IV.
### TREATMENT OF CLAIMS AND INTERESTS .........................................13
**4.1.** Unclassified Claims ....................................................................................13
**4.2.** Classified Claims ........................................................................................15
**4.3.** Intercompany Claims..................................................................................18
**4.4.** Reservation of Rights Regarding Claims..................................................18

## ARTICLE V.
### FILING OF ADMINISTRATIVE CLAIMS ................................................18
**5.1.** Professional Fee Claims..............................................................................18
**5.2.** Other Administrative Claims ......................................................................19

## ARTICLE VI.
### ACCEPTANCE OR REJECTION OF THE PLAN ......................................20
**6.1.** Voting of Claims..........................................................................................20
**6.2.** Presumed Acceptance of Plan....................................................................20
**6.3.** Acceptance by Impaired Classes ...............................................................20
**6.4.** Elimination of Vacant Classes....................................................................21
**6.5.** Controversy Concerning Impairment .......................................................21
**6.6.** Nonconsensual Confirmation.....................................................................21

## ARTICLE VII.
### MEANS OF IMPLEMENTATION...............................................................21
**7.1.** Sources of Consideration for Plan Distributions and Sponsor Contributions........21
**7.2.** Continued Corporate Existence..................................................................22
**7.3.** Filing of Postconfirmation Organizational Documents ..........................22
**7.4.** Directors of the Reorganized Debtors........................................................22
**7.5.** Officers of the Reorganized Debtors .........................................................22
**7.6.** D&O Insurance Policy ................................................................................22
**7.7.** Exemption From Securities Laws...............................................................23
**7.8.** Effectuating Documents and Further Transactions..................................23
**7.9.** Exemption from Transfer Taxes ................................................................23
**7.10.** Expedited Tax Determination ....................................................................23
**7.11.** Corporate Action.........................................................................................23

## ARTICLE VIII.
### PROVISIONS GOVERNING DISTRIBUTIONS .........................................24
**8.1.** Date of Distributions...................................................................................24
**8.2.** Disbursing Agent ........................................................................................24
**8.3.** Rights and Powers of Disbursing Agent ...................................................24
**8.4.** Delivery of Distributions ............................................................................24
**8.5.** Undeliverable or Unclaimed Distributions ...............................................25

**TABLE OF CONTENTS**
**(continued)**

8.6.  Manner of Payment............................................................................................25
8.7.  Limitation on Distributions..............................................................................25
8.8.  Setoffs and Recoupment ..................................................................................26
8.9.  Allocation of Plan Distributions Between Principal and Interest ....................26

**ARTICLE IX.**

PROCEDURES FOR TREATING DISPUTED CLAIMS .........................26

9.1.  GUC Escrow Account.......................................................................................26
9.2.  Administrative Reserve.....................................................................................26
9.3.  Objections/Requests for Estimation.................................................................26
9.4.  Adjustment to Certain Claims Without a Filed Objection...............................27
9.5.  No Distributions Pending Allowance...............................................................27
9.6.  Estimation of Claims........................................................................................27
9.7.  Interest..............................................................................................................28
9.8.  Offer of Judgment ............................................................................................28
9.9.  Amendments to Claims.....................................................................................28
9.10. Claims Paid and Payable by Third Parties.......................................................28
9.11. Distributions After Allowance .........................................................................29

**ARTICLE X.**

EXECUTORY CONTRACTS AND UNEXPIRED LEASES.....................29

10.1. Assumption and Rejection of Executory Contracts and Unexpired Leases ..........29
10.2. Cure of Defaults...............................................................................................29
10.3. Objections to Rejection....................................................................................30
10.4. Rejection Damage Claims................................................................................30
10.5. Modifications ...................................................................................................31

**ARTICLE XI.**

CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVE DATE...............................................................................31

11.1. Conditions Precedent to Confirmation............................................................31
11.2. Conditions Precedent to Effective Date ..........................................................31
11.3. Waiver or Satisfaction of Conditions...............................................................32
11.4. Effects of Non-Occurrence of Conditions to Effective Date ..........................33

**ARTICLE XII.**

EFFECT OF CONFIRMATION .................................................................33

12.1. Vesting of Assets and Release of Liens...........................................................33
12.2. Binding Effect..................................................................................................33
12.3. Discharge of Claims.........................................................................................33
12.4. Discharge of Debtors........................................................................................34
12.5. Reservation of Causes of Action/Reservation of Rights.................................34
12.6. Exculpation ......................................................................................................34
12.7. Releases by the Debtors ...................................................................................34
12.8. Third Party Releases ........................................................................................35

v

**TABLE OF CONTENTS**
**(continued)**

**12.9.** Mutual Releases of Released Parties ....................................................................35
**12.10.** Injunction or Stay ...........................................................................................36
**12.11.** Avoidance Actions ..........................................................................................36
**12.12.** Compromise and Settlement of Claims and Controversies ...................................37

## ARTICLE XIII.

RETENTION OF JURISDICTION ................................................................37

**13.1.** Scope of Retention of Jurisdiction ....................................................................37
**13.2.** Failure of the Bankruptcy Court to Exercise Jurisdiction......................................39

## ARTICLE XIV.

MISCELLANEOUS PROVISIONS ..............................................................39

**14.1.** Withholding and Reporting Requirements ..........................................................39
**14.2.** Modification of Plan ........................................................................................39
**14.3.** Revocation or Withdrawal of the Plan................................................................40
**14.4.** Plan Supplement .............................................................................................40
**14.5.** Payment of Statutory Fees ...............................................................................40
**14.6.** Dissolution of the Creditors' Committee.............................................................40
**14.7.** Exhibits/Schedules ..........................................................................................41
**14.8.** Substantial Consummation ...............................................................................41
**14.9.** Closing of Chapter 11 Cases ............................................................................41
**14.10.** Severability of Plan Provisions.........................................................................41
**14.11.** Governing Law ...............................................................................................41
**14.12.** Conflicts........................................................................................................41
**14.13.** Notices ..........................................................................................................42

105016588 v17

## INTRODUCTION[2]

Atari, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "***Debtors***"), together with Atari, S.A. (the "***Sponsor***," and, together with the Debtors, the "***Proponents***"), the direct or indirect parent company of each of the Debtors, propose the following joint chapter 11 plan of reorganization for the resolution of outstanding Claims against and Interests in the Debtors pursuant to section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, assets, and historical financial data, and for a summary and analysis of the Plan and certain related matters, including, among other things, the consideration to be issued and/or distributed under the Plan.

**All holders of Claims against the Debtors are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement, the respective schedules and exhibits attached thereto and referenced therein, and the letter from the Creditors' Committee with respect to the Plan, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all holders of Claims and Interests to the extent required by section 1125 of the Bankruptcy Code.**

### ARTICLE I.
### DEFINITIONS AND INTERPRETATION

**A.    Definitions.**

Except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan shall have the meanings ascribed to them in Article I hereof or any exhibit hereto, and all capitalized terms used but not defined herein that are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meanings ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, the terms defined herein shall include the plural as well as the singular form, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**1.1.    *Accrued Professional Compensation*** means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses, *provided that* to the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

---

[2] All capitalized terms used but not defined in this Introduction shall have the meanings set forth in Article I.

**1.2.**    ***Administrative Claim*** means any right to payment constituting a cost or expense of administration of the Cases Allowed under sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Cases, (d) Claims, pursuant to section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' businesses, (e) any compensation for professional services rendered and reimbursement of expenses incurred during the Cases, (f) all reasonable and customary fees and expenses of the DIP Lender (including, without limitation, all reasonable fees and expenses of DIP Lender's legal counsel), as provided in the DIP Loan Agreement, without the need for application to or approval of the Bankruptcy Court, (g) all actual and documented reasonable fees and expenses of the Sponsor's counsel relating to the preparation of the Plan, Disclosure Statement, and documents related thereto, and (h) fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

**1.3.**    ***Administrative Claims Bar Date*** means 5:00 p.m. (prevailing Eastern Time) on the first Business Day occurring after the thirtieth (30th) day following the Effective Date.

**1.4.**    ***Administrative Claims Objection Deadline*** means ninety (90) days following the Administrative Claims Bar Date, or such other date as may be established by a Final Order of the Bankruptcy Court.

**1.5.**    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.6.**    ***Alden*** means Alden Global Value Recovery Master Fund, L.P.

**1.7.**    ***Alden Limited Waiver*** means the agreement of Alden to waive, on a limited basis, its right to enforce the Test Drive Lien and the Alden Secured Claim solely for the purposes of the Plan, as set forth in Section 4.2(c) hereof.

**1.8.**    ***Alden Secured Claim*** means the Claim held by Alden on account of the Alden Secured Credit Facility.

**1.9.**    ***Alden Secured Credit Facility*** means the credit facility established by the Credit Facility Agreement among Atari Europe, the Sponsor and Banc of Americas Securities Limited dated April 21, 2006, as amended from time to time, assigned to Blue Bay Value (Master) Fund Limited, and further assigned to Alden on February 5, 2013.

**1.10.**    ***Allowed*** means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or a Contingent Claim, and for which no contrary proof of Claim has been filed, (b) any timely filed proof of Claim as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or as to which an objection has been interposed and such

2

Claim has been allowed in whole or in part (only with respect to that portion of such Claim that has been allowed) by a Final Order, (c) any Claim expressly allowed by a Final Order or under the Plan, or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or the authority granted to the Reorganized Debtors under Section 9.4 hereof; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims. Unless otherwise specified in the Plan or by order of the Bankruptcy Court, (i) Allowed Claims shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date, and (ii) Allowed Claims shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy and nonbankruptcy law.

    **1.11.**   ***Atari Europe*** means Atari Europe SAS.

    **1.12.**   ***Atari Europe Secured Claim*** means the Secured Claim of Atari Europe against Atari, Inc. arising under that certain Credit Agreement, dated as of April 30, 2008, as amended, between Atari, Inc. and Infogrames Entertainment S.A. and secured by the Blanket Lien, and reflected in the Debtors' books and records as an obligation of approximately $25.3 million.

    **1.13.**   ***Atari, Inc.*** means Debtor Atari, Inc., a Delaware corporation.

    **1.14.**   ***Ballot*** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated an acceptance or rejection of the Plan.

    **1.15.**   ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Cases.

    **1.16.**   ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York or any other court of the United States having jurisdiction over the Cases.

    **1.17.**   ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

    **1.18.**   ***Blanket Lien*** means the security interest evidenced by the financing statement filed by the Sponsor on all assets of Atari, Inc. except for the Test Drive IP.

    **1.19.**   ***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday," as set forth in Bankruptcy Rule 9006(a).

    **1.20.**   ***Cases*** means the jointly administered cases commenced by the Debtors under chapter 11 of the Bankruptcy Code.

    **1.21.**   ***Cash*** means legal tender of the United States of America.

**1.22.    *Causes of Action*** means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims, whether Disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, and whether arising in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Cases, including through the Effective Date.

**1.23.    *Claim*** means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

**1.24.    *Claims Agent*** means BMC Group, Inc.

**1.25.    *Claims Bar Date Order*** means the Debtors' *Motion for Entry of an Order (A) Establishing the Deadline for Filing Proofs of Claim Against the Debtors, Including Administrative Claims Pursuant to Bankruptcy Code Section 503(b)(9); (B) Approving the Form and Manner for Filing Such Proofs of Claim; and (C) Approving the Form and Manner of Notice Thereof* [Docket No. 138].

**1.26.    *Claims Objection Deadline*** shall have the meaning set forth in <u>Section 9.3</u> hereof.

**1.27.    *Claims Waivers*** means, collectively, the Alden Limited Waiver and the Sponsor Intercompany Claims Waivers.

**1.28.    *Class*** means a category of holders of Claims or Interests set forth in ARTICLE III through ARTICLE IV hereof.

**1.29.    *Collateral*** means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.30.    *Company*** means, collectively, the Debtors.

**1.31.    *Confirmation Date*** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.32.    *Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.33.    *Confirmation Objection Deadline*** means the deadline to be established by the Bankruptcy Court pursuant to the Confirmation Scheduling Order for the filing and service by any and all parties in interest of objections to confirmation of the Plan.

**1.34.    *Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance satisfactory to the Proponents.

**1.35.    *Confirmation Scheduling Order*** means the order to be entered by the Bankruptcy Court (a) scheduling the Confirmation Hearing, (b) establishing the deadline to accept or reject the Plan, and (c) establishing the Confirmation Objection Deadline.

**1.36.    *Contingent Claim*** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

**1.37.    *Cooley*** means Cooley LLP, in its capacity as counsel to the Creditors' Committee.

**1.38.    *Creditors' Committee*** means the committee of unsecured creditors appointed in the Cases pursuant to section 1102(a) of the Bankruptcy Code.

**1.39.    *Cure Amount*** means all amounts required to cure any monetary defaults under any Executory Contract or unexpired lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

**1.40.    *CUSH*** means Debtor California U.S. Holdings, Inc., a California corporation.

**1.41.    *Debtors*** shall have the meaning set forth in the Introduction.

**1.42.    *Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

**1.43.    *DIP Lender*** means the lenders, including all successors and assigns, to the Debtors pursuant to the DIP Loan Agreement.

**1.44.    *DIP Loan*** means the borrowings by, and any other extensions of credit provided to, the Debtors under the DIP Loan Agreement, the DIP Loan Order, or any of the other DIP Loan Documents.

**1.45.    *DIP Loan Agreement*** means the Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated March 27, 2013, together with all amendments, modifications and supplements thereto, executed by, among others, the DIP Lender, the Debtors, and the DIP Loan Collateral Agent.

**1.46.    *DIP Loan Claims*** means all Claims arising under or related to the DIP Loan or any of the DIP Loan Documents.

**1.47.    *DIP Loan Collateral Agent*** means Imperial Capital Loan Trading, LLC, in its capacity as Collateral Agent under the DIP Loan Agreement.

**1.48.    *DIP Loan Documents*** means the DIP Loan Agreement, together with all other documents and order related to any of the DIP Loan and DIP Loan Claims, including, to the

extent relating to any of the foregoing, the DIP Loan Order, and any and all other amendments, supplements, or modification to the foregoing.

**1.49.     *DIP Loan Motion*** means the *(Corrected) Motion of Debtors and Debtors-in-Possession Pursuant to 11 U.S.C. §§ 105, 361, 362, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 for Entry of Interim and Final Orders (I) Authorizing the Debtors to Incur Post-Petition Secured Indebtedness, (II) Granting First Priority Priming Liens and Providing Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Scheduling a Final Hearing*, filed on January 22, 2013 [Docket No. 17].

**1.50.     *DIP Loan Order*** means the Final Order entered on March 7, 2013, approving the DIP Loan Motion [Docket No. 125].

**1.51.     *Disbursing Agent*** means any entity in its capacity as a disbursing agent under this Plan.

**1.52.     *Disclosure Statement*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.53.     *Disclosure Statement Order*** means the order of the Bankruptcy Court, in form and substance satisfactory to the Proponents, approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**1.54.     *Disputed*** means, with reference to any Claim or portion thereof, any Claim against any Debtor which such Debtor believes, subject to the reasonable consent of the Sponsor, is unliquidated, disputed or contingent, and which has not become Allowed in accordance with the Plan.

**1.55.     *Distribution Record Date*** means December 20, 2013.

**1.56.     *Duff & Phelps*** means Duff & Phelps Securities, LLC, in its capacity as financial advisor to the Creditors' Committee.

**1.57.     *Effective Date*** means a Business Day selected by the Debtors and the Sponsor on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan specified in <u>Section 11.2</u> hereof shall have been satisfied or waived as provided in <u>Section 11.3</u> hereof.

**1.58.     *Estate*** means, with respect to each Debtor, the estate created in its respective Case pursuant to section 541 of the Bankruptcy Code.

**1.59.     *Exculpated Parties*** means (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Sponsor, (iv) Atari Europe, (v) the Guarantor, (vi) Alden, (vii) the Creditors' Committee, and (viii) each present or former member of the Creditors' Committee (but solely in their respective capacities as such) and (ix) for each of (i) through (viii), their respective predecessors, successors

and assigns, subsidiaries, Affiliates, and their current and former officers, directors, partners, principals, shareholders, members, employees, agents, financial advisors, attorneys, counsel, accountants, investment bankers, financial advisors, consultants, representatives, and other Professionals (in each case, solely in their capacity as such), as applicable.

**1.60.    *Executory Contracts*** means the various executory contracts and agreements within the meaning of section 365 of the Bankruptcy Code to which the Debtors are a party.

**1.61.    *Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

**1.62.    *General Unsecured Claim*** means any Claim against the Debtors that is not a DIP Loan Claim, Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Other Secured Claim, Alden Secured Claim, or Sponsor Intercompany Claim, but shall not include any claim that is disallowed or released, whether by operation of law, Final Order, written agreement, the provisions of this Plan or otherwise.

**1.63.    *Guarantor*** shall mean Frederic Chesnais.

**1.64.    *GUC Escrow Account*** shall have the meaning set forth in <u>Section 9.1</u> hereof.

**1.65.    *Humongous*** means Debtor Humongous, Inc., a Delaware corporation.

**1.66.    *Impaired*** means, with respect to a Class of Claims or Interests, that such Class is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.67.    *Initial GUC Distribution*** shall have the meaning set forth in <u>Section 4.2(d)</u> hereof.

**1.68.    *Initial Objection*** shall have the meaning set forth in <u>Section 9.3</u> hereof.

**1.69.    *Insurance Policy*** means any policy of insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any Claim, together with any other contracts which pertain or relate to such policy (including, by way of example and not limitation, any insurance settlement agreements or coverage-in-place agreements).

105016588 v17

**1.70.** ***Insured Claim*** means that portion of any Claim arising from an incident or occurrence that occurred prior to the Effective Date:  (i) as to which any Insurer is obligated pursuant to the terms, conditions, limitations, and exclusions of its Insurance Policy, to pay any cost, expense, judgment, settlement, or contractual obligation with respect to the Debtors or (ii) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Policy.

**1.71.** ***Insurer*** means any company or other entity that issued, or is responsible for, an Insurance Policy.

**1.72.** ***Interactive*** means Debtor Atari Interactive, Inc., a Delaware corporation.

**1.73.** ***Interest*** means the legal, equitable, contractual, or other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, subscribe for, or otherwise acquire or receive an ownership interest or other equity security in any Debtor.

**1.74.** ***Intercompany Claim*** means any Claim held by a Debtor against another Debtor.

**1.75.** ***Intercompany Interest*** means any Interest held by a Debtor in another Debtor.

**1.76.** ***Interim Compensation Order*** means the *Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals*, entered by the Bankruptcy Court on February 15, 2013 [Docket No. 81].

**1.77.** ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.78.** ***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the Southern District of New York, as amended from time to time.

**1.79.** ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

**1.80.** ***Petition Date*** means January 21, 2013, the date on which the Debtors commenced the Cases.

**1.81.** ***Plan*** means this Joint Plan of Reorganization, including, without limitation, the exhibits and schedules hereto including the Plan Supplement, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.82.** ***Plan Supplement*** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan specified in Section 14.4 hereof.

**1.83.** ***Postconfirmation Organizational Documents*** means the certificates of incorporation, bylaws, and other organizational documents for the Reorganized Debtors, the

8

forms of which shall be in form and substance reasonably acceptable to the Sponsor and consistent with section 1123(a)(6) of the Bankruptcy Code. The Postconfirmation Organizational Documents shall be included in the Plan Supplement.

**1.84.    *Prepetition Period*** means the time period prior to the Petition Date.

**1.85.    *Priority Non-Tax Claim*** means a Claim entitled to priority in payment as specified in section 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.

**1.86.    *Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.87.    *Professional*** means a Person: (i) employed pursuant to a Final Order of the Bankruptcy Court in accordance with section 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered on or before the Effective Date, pursuant to section 327, 328, 329, 330, 363, or 331 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.88.    *Professional Fee Budget*** means the budget, included as part of the Sponsor Analysis, that has been agreed upon between the Sponsor and each Professional setting forth the maximum amount of fees and expenses to be incurred by each Professional for the period beginning August 1, 2013, through the Effective Date.

**1.89.    *Professional Fee Claim*** means a Claim of a Professional for Accrued Professional Compensation.

**1.90.    *Professional Fee Escrow Account*** shall have the meaning set forth in <u>Section 4.1(c)</u> hereof.

**1.91.    *Proponents*** shall have the meaning set forth in the Introduction.

**1.92.    *Pro Rata Share*** means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class, including, without limitation, Disputed Claims that have not been disallowed by a Final Order.

**1.93.    *Other Secured Claim*** means any Secured Claim other than a Secured Tax Claim, Alden Secured Claim, Atari Europe Secured Claim, or Sponsor Secured Claim.

**1.94.    *Rejection Damage Claim*** means a Claim for damages arising from the rejection by any Debtor of any Executory Contract or unexpired lease pursuant to section 365 or 1123 of the Bankruptcy Code.

**1.95.    *Rejection Damage Claim Bar Date*** means the date that is the first Business Day that is thirty (30) days after the date the Debtors serve notice of the entry of an order authorizing the rejection of an Executory Contract or unexpired lease, except as otherwise set forth in any order (including, without limitation, the Confirmation Order) authorizing rejection of an Executory Contract or unexpired lease, as provided in the Claims Bar Date Order.

105016588 v17

13-10176-jmp    Doc 379    Filed 09/20/13    Entered 09/20/13 17:04:35    Main Document
Pg 17 of 76

**1.96.** *Released Parties* means (a) the DIP Lender; (b) Alden; (c) the Creditors' Committee and its members; (d) the Sponsor; (e) Atari Europe; (f) the Guarantor; (g) with respect to any entities in the foregoing clauses (a) through (f), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and their current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other Professionals (in each case, solely in their capacity as such); and (h) the Debtors' and the Reorganized Debtors' current and former employees, their current and former directors, officers, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees (in each clause (a) through (h), solely in their capacity as such).

**1.97.** *Reorganized Debtors* means, collectively, Atari, Inc., CUSH, Humongous, and Interactive, on or after the Effective Date.

**1.98.** *Schedules* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and unexpired leases and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Cases, as the same may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rules 1007 and 1009. For the avoidance of doubt, Schedules do not include any schedules or exhibits to this Plan or any Plan Supplement.

**1.99.** *Second GUC Distribution* shall have the meaning set forth in Section 4.1(d) hereof.

**1.100.** *Secured Claim* means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**1.101.** *Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein and including any related Secured Claim for penalties).

**1.102.** *Securities Act* means the Securities Act of 1933, as amended.

**1.103.** *Security* means any instrument that qualifies as a "security" under section 2(a)(l) of the Securities Act.

**1.104.** *Sponsor* shall have the meaning set forth in the Introduction.

**1.105.** *Sponsor Analysis* means the analysis attached hereto as Schedule 1.

**1.106.** *Sponsor Atari, Inc. Intercompany Claims* means, collectively, (i) the Atari Europe Secured Claim, (ii) the Sponsor Management Fee Claim, and (iii) the Sponsor Secured Claim.

10

**1.107.** ***Sponsor Commitment Letter*** means that certain commitment letter executed by and between the Debtors and the Sponsor in connection with the Sponsor Contributions, which is attached hereto as <u>Schedule 2</u>.

**1.108.** ***Sponsor Cash Contribution*** shall have the meaning set forth in <u>Section 7.1</u> hereof.

**1.109.** ***Sponsor Contributions*** means the Sponsor Cash Contribution and the Sponsor Value Contributions identified in the Sponsor Analysis.

**1.110.** ***Sponsor Interactive Intercompany Claim*** means the approximately $260.7 million in net obligations of Interactive to the Sponsor based on the Debtors' books and records.

**1.111.** ***Sponsor Intercompany Claims Waivers*** means the agreement of the Sponsor and Atari Europe to waive, with respect to the Sponsor Intercompany Claims, their right to recover from the assets of the Debtors, as set forth in <u>Section 4.2(e)</u> hereof.

**1.112.** ***Sponsor Intercompany Claims*** means, collectively, the Sponsor Atari, Inc. Intercompany Claims and the Sponsor Interactive Intercompany Claim.

**1.113.** ***Sponsor Management Fee Claim*** means the approximately $16.4 million Claim of the Sponsor against Atari, Inc. pursuant to that certain Management Agreement, effective as of April 1, 2010, among the Sponsor, Atari, Inc., Atari Europe, Eden S.A.S., Atari U.K. Publishing Ltd, and Cryptic.

**1.114.** ***Sponsor Secured Claim*** means the Claim in the approximate amount of $4.9 million owed by Atari, Inc. to the Sponsor arising under that certain Credit Agreement, dated as of April 30, 2008, as amended, between Atari, Inc. and Infogrames Entertainment S.A. and secured by the Blanket Lien.

**1.115.** ***Sponsor Value Contributions*** shall have the meaning set forth in <u>Section 7.1</u> hereof.

**1.116.** ***Tax Code*** means the Internal Revenue Code of 1986, as amended.

**1.117.** ***Test Drive IP*** means that certain intellectual property known as the "Test Drive Unlimited" franchise.

**1.118.** ***Test Drive Lien*** means the lien on the Test Drive IP evidenced by a UCC-1 financing statement dated April 24, 2009, securing the Alden Secured Credit Facility.

**1.119.** ***Third GUC Distribution*** shall have the meaning set forth in <u>Section 4.2(d)</u> hereof.

**1.120.** ***Unimpaired*** means, with respect to a Class of Claims or Interests, that such Class is not Impaired.

105016588 v17

**1.121.** ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.122.** ***U.S. Trustee*** means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in Region 2.

**1.123.** ***Voting Record Date*** means October 29, 2013.

**B.    Rules of Interpretation and Computation of Time**

Unless otherwise specified, for the purposes of this Plan:  (a) references to sections, articles, schedules, or exhibits in the Plan are to the sections, articles, schedules, or exhibits of or to the Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (b) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan; (c) the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan; (d) the headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; and (e) the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed by the Plan.

**ARTICLE II.**
**PLAN CONSOLIDATION**

**2.1.    *Limited Plan Consolidation***

The Plan provides for the substantive consolidation of the Debtors' Estates, solely with respect to holders of Allowed General Unsecured Claims, for the limited purposes of voting, confirmation, and making distributions under the Plan. For the avoidance of doubt, and other than for the purposes of effectuating the Plan, such consolidation shall not affect (a) the legal or organizational structure of each of the Debtors, (b) pre- or post-Effective Date guarantees, liens, and security interests that are required to be maintained pursuant to the Plan, (c) any obligations under any leases or Executory Contracts assumed or entered into pursuant to the Plan or otherwise after the Petition Date, (d) Interests between and among the Debtors, or (e) the vesting of assets in the separate Reorganized Debtors upon the Effective Date.

**2.2.    *Order Granting Plan Consolidation***

The Plan shall serve as a motion seeking the entry of an order consolidating the Debtors, solely with respect to holders of Allowed General Unsecured Claims, for the purposes set forth in Section 2.1 above. Unless an objection to such consolidation is made in writing by an affected creditor and filed by the Confirmation Objection Deadline, the Bankruptcy Court may enter an order approving such consolidation. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1.    *Unclassified Claims*

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Loan Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified within any Classes and are not entitled to vote on the Plan.

### 3.2.    *Classification of Claims and Interests*

The following table (i) designates the Classes of Claims against and Interests in the Debtors, (ii) specifies the Classes of Claims and Interests against the Debtors that are Impaired by the Plan and are therefore deemed to reject the Plan or are entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) specifies the Classes of Claims and Interests in the Debtors that are Unimpaired by the Plan and are therefore deemed to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purposes of receiving distributions pursuant to the Plan only to the extent that such Claim is Allowed in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| 3 | Alden Secured Claim Against Atari, Inc. | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Sponsor Intercompany Claims | Impaired | Yes |
| 6 | Interests | Unimpaired | No (deemed to accept) |

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS

### 4.1.    *Unclassified Claims*

(a)    **DIP Loan Claims**

13

All DIP Loan Claims shall be Allowed, and shall not be not subject to offsets, defenses, counterclaims, reductions or credits of any kind whatsoever, and on the Effective Date, or as soon as practicable thereafter, each holder of an Allowed DIP Loan Claim shall receive subject to the Carveout, as such term is defined in the DIP Loan Order (i) payment in full in Cash of such Allowed DIP Loan Claim in full and final satisfaction thereof, other than the obligations under the indemnity and other provisions of the DIP Loan Agreement that by their terms survive the termination of the DIP Loan Agreement or the payment of other Allowed DIP Loan Claims, or (ii) such other treatment as to which the Proponents and the holder of such Allowed DIP Loan Claim may agree in writing. Also, on the Effective Date, all commitments under the DIP Loan Agreement shall terminate and shall be treated in accordance with the terms of the DIP Loan Agreement.

(b)     **Administrative Claims**

Except with respect to Administrative Claims that are Professional Fee Claims, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for its Allowed Administrative Claim, on the later of (i) the Effective Date, or as soon as practicable thereafter, (ii) the date such Claim becomes Allowed, or as soon as practicable thereafter, and (iii) such other date as may be agreed upon between the holder of such Claim and the Reorganized Debtors, (x) Cash equal to the unpaid portion of its Allowed Administrative Claim, (y) such other treatment as to which the Proponents and the holder of such Allowed Administrative Claim may agree, or (z) such other treatment as may otherwise be required under applicable law.

(c)     **Professional Fee Claims**

(i)     Claims for Accrued Professional Compensation

On the Effective Date, the Reorganized Debtors shall establish an interest-bearing escrow account (the "***Professional Fee Escrow Account***"), funded with Cash in the aggregate amount established for the fees and expenses of Professionals in the Professional Fee Budget, less any agreed-upon reductions in the amounts set forth for the Professional Fee Claims (in the sole discretion of each Professional) in the Professional Fee Budget, for the purposes of paying Allowed Professional Fee Claims. The Professional Fee Escrow Account shall be maintained in trust for Professionals with respect to accrued and unpaid fees or expenses as of the Effective Date, and funds therein shall not be considered property of the Debtors or Reorganized Debtors. Except to the extent that a holder of an Allowed Professional Fee Claim agrees to a different treatment, each holder of such an Allowed Professional Fee Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Professional Fee Claim, Cash, up to the amount set forth for such Professional in the Professional Fee Budget, from funds held in the Professional Fee Escrow Account on the later of (1) the date such Claim becomes Allowed, or as soon as practicable thereafter, and (2) such other date as may be agreed upon between the holder of such Claim and the Reorganized Debtors.

14

For the avoidance of doubt, if the Allowed Professional Fee Claims of a Professional are less than the amounts set forth in the Professional Fee Budget for such Professional, holders of General Unsecured Claims shall not be entitled to a distribution of such unused amounts and such amounts shall be returned to the Sponsor. As soon as practicable after all Professional Fee Claims have been either Allowed (and paid in full in accordance with the Plan) or disallowed by the Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, the Reorganized Debtors shall determine the amount of the excess funds in the Professional Fee Escrow Account and return such funds to the Sponsor.

(ii)    The Sponsor's Fees

The actual and documented reasonable fees and expenses of the Sponsor's counsel shall be paid in full as Allowed Administrative Claims (or reimbursed if previously paid by the Sponsor, as the case may be, but solely to the extent such amounts relate to the preparation of the Plan, Disclosure Statement and documents related thereto) in Cash on the Effective Date, without the need to obtain further approval of the Bankruptcy Court or to comply with sections 327 through 331 of the Bankruptcy Code or any U.S. Trustee guidelines, as applicable, in the aggregate amount not to exceed the amounts set forth for such professionals in the Sponsor Analysis.

(d)    **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive in full settlement, satisfaction, and release of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim on the later of (a) the Effective Date, or as soon as practicable thereafter, (b) the date such Claim becomes Allowed, or as soon as practicable thereafter, (c) the date such Claim would have been due if the Cases had not been commenced, and (d) such other date as may be agreed upon between the holder of such Claim and the Reorganized Debtors; *provided*, *however*, that the Reorganized Debtors, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by section 1129(a)(9) of the Bankruptcy Code, and in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the federal statutory rate.

**4.2.    *Classified Claims***

(a)    **Priority Non-Tax Claims (Class 1)**

(i)    Impairment and Voting

Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(ii)    Treatment

15

Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment, each holder of such an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of (a) the Effective Date, or as soon as practicable thereafter, (b) the date such Claim becomes Allowed, or as soon as practicable thereafter, and (c) such other date as may be agreed upon between the holder of such Claim and the Reorganized Debtors.

(b)    **Secured Tax Claims (Class 2)**

(i)    Impairment and Voting

Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(ii)    Treatment

Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a different treatment, each holder of such an Allowed Secured Tax Claim shall receive Cash in an amount equal to such Allowed Secured Tax Claim on the later of (a) the Effective Date, or as soon as practicable thereafter, (b) the date such Claim becomes Allowed, or as soon as practicable thereafter, and (c) such other date as may be agreed upon between the holder of such Claim and the Reorganized Debtors.

(c)    **Alden Secured Claim Against Atari, Inc. (Class 3)**

(i)    Impairment and Voting

Class 3 is Impaired by the Plan. Each holder of the Allowed Alden Secured Claim will be entitled to vote to accept or reject the Plan.

(ii)    Treatment

The holder of the Allowed Alden Secured Claim will waive its rights to (a) enforce the Test Drive Lien and the Alden Secured Claim and (b) receive distributions in respect of such Claim, solely for the purposes of the Plan, following the payment in full of the DIP Loan Claims. For the avoidance of doubt, the holder of the Allowed Alden Secured Claim shall retain the Test Drive Lien and the Alden Secured Claim following the Effective Date. Neither the Test Drive Lien nor the Alden Secured Claim shall be deemed waived, released or discharged under the Plan.

(d)    **General Unsecured Claims (Class 4)**

(i)    Impairment and Voting

Class 4 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim will be entitled to vote to accept or reject the Plan.

16

(ii)    Treatment

Each holder of an Allowed General Unsecured Claim against each of the Debtors shall receive the following distributions under the Plan:

(1)    a cash payment on the Effective Date, or as soon as practicable after such holder's General Unsecured Claim becomes Allowed, in an amount equal to the lesser of (a) eight percent (8%) of such holder's Allowed General Unsecured Claim and (b) such holder's Pro Rata Share of $560,000.00 (the "***Initial GUC Distribution***");

(2)    a cash payment on the first anniversary of the Effective Date in an amount equal to the lesser of (a) eight percent (8%) of such holder's Allowed General Unsecured Claim and (b) such holder's Pro Rata Share of $560,000.00 (the "***Second GUC Distribution***"); and

(3)    a cash payment on the second anniversary of the Effective Date in an amount equal to the lesser of (a) nine percent (9%) of such holder's Allowed General Unsecured Claim and (b) such holder's Pro Rata Share of $630,000.00 (the "***Third GUC Distribution***").

On the Effective Date, Interactive shall issue a global promissory note (the "***Secured GUC Note***"), substantially in the form included in the Plan Supplement, to a person or entity designated by the Creditors' Committee (the "***Committee Designee***"), which Committee Designee shall be disclosed in the Plan Supplement, obligating the Reorganized Debtors to fund the Second GUC Distribution and Third GUC Distribution pursuant to the terms of the Plan. The Secured GUC Note will be secured by a first priority lien on all assets of the Reorganized Debtors and shall be senior on such assets in all respects, including, but not limited to, any interests of Alden, the Sponsor, Atari Europe, or their Affiliates. The Second GUC Distribution and the Third GUC Distribution are contingent upon the Reorganized Debtors' compliance with their payment obligations under the Plan and/or the enforcement value of the Secured GUC Note in the event of a default by the Reorganized Debtors.

The Committee Designee shall be entitled to enforce the Secured GUC Note against the Reorganized Debtors for the benefit of holders of Allowed General Unsecured Claims. Upon the Effective Date, the Committee Designee shall be funded with $50,000.00 to cover the costs and expenses associated with making the Second GUC Distribution and the Third GUC (if not made by the Reorganized Debtors) and monitoring and enforcing the obligations of the Reorganized Debtors under the Secured GUC Note. The Committee Designee's unpaid costs and expenses shall be considered obligations under the Secured GUC Note, and the Reorganized Debtors shall have no obligation to pay such costs and expenses beyond the initial funding of $50,000.00. Following the Third GUC Distribution, any funds not expended by the Committee Designee shall be returned to the Sponsor.

    (e)    **Sponsor Intercompany Claims (Class 5)**

        (i)    Impairment and Voting

Class 5 is Impaired by the Plan, and each holder of Allowed Sponsor Intercompany Claims will be entitled to vote to accept or reject the Plan.

        (ii)    Treatment

Each holder of Allowed Sponsor Intercompany Claims will waive its right to receive distributions in respect of such Claims.

    (f)    **Interests (Class 6)**

        (i)    Impairment and Voting

Class 6 is Unimpaired by the Plan. Each holder of an Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

        (ii)    Treatment

Each holder of an Interest will retain such Interest on the Effective Date.

**4.3.**    *Intercompany Claims*

Intercompany Claims will be released, waived, and discharged as of the Effective Date.

**4.4.**    *Reservation of Rights Regarding Claims*

Except as otherwise explicitly provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any rights, counterclaims, or defenses the Debtors or Reorganized Debtors, as applicable, or the Sponsor may have, whether at law or in equity, with respect to any Claims.

## ARTICLE V.
## FILING OF ADMINISTRATIVE CLAIMS

**5.1.**    *Professional Fee Claims*

    (a)    **Final Fee Applications**

Each Professional or other Person asserting a Professional Fee Claim must file and serve on the Debtors, the Sponsor, and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order, or other Final Order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than the Administrative Claims Bar Date. Objections to any such Claim must be filed and served on the Debtors, the Sponsor, the U.S. Trustee and the requesting party no later than twenty-one (21) days following the Administrative Claims Bar Date; *provided*, *however*, that (1) neither the

18

Sponsor nor Alden shall object to the allowance of any reasonable Professional Fee Claim on account of fees and expenses incurred by the relevant Professional during the period beginning August 1, 2013 through the Effective Date to the extent such Claim does not exceed the amount established for the relevant Professional in the Professional Fee Budget and (2) any pending objections to Professional Fee Claims of the Creditors' Committee's Professionals shall be withdrawn. If no objections are timely filed and properly served in accordance with the procedures contained in this paragraph with respect to a given request, or all timely objections are subsequently resolved, such Professional will submit to the Bankruptcy Court for consideration a proposed order approving the Professional Fee Claim as an Allowed Professional Fee Claim in the amount requested (or otherwise agreed), and the order may be entered without a hearing or further notice to any party; *provided*, *however*, that as has been agreed between the Sponsor and each Professional, Allowed Professional Fee Claims for fees and expenses incurred by such Professional during the period beginning August 1, 2013 through the Effective Date shall not exceed the amounts set forth for such Professional in the Professional Fee Budget. The Allowed amounts of any Professional Fee Claims subject to unresolved timely objections will be determined by the Bankruptcy Court at a hearing to be held no later than sixty (60) calendar days after the Administrative Claims Bar Date.

(b)    **Payment of Interim Amounts**

Professionals shall be paid pursuant to the monthly fee statement process set forth in the Interim Compensation Order with respect to all calendar months ending prior to the Effective Date.

(c)    **Post-Effective Date Fees and Expenses**

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtors may pay in Cash the reasonable legal fees and expenses incurred by the Reorganized Debtors' professionals in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, *provided that* such fees and expenses may not be incurred without the prior written consent of the Reorganized Debtors. If the Reorganized Debtors dispute the reasonableness of any such invoice, the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

### 5.2.    *Other Administrative Claims*

A notice setting forth the Administrative Claims Bar Date will be (i) filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' case information website at www.bmcgroup.com/atari.   No other notice of the Administrative Claims Bar Date will be provided.

All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of Section 5.1 of the Plan) must be filed with the Claims Agent and served on counsel for the Debtors, the Reorganized Debtors and the Sponsor by the Administrative Claims Bar Date. Any requests for payment of Administrative Claims pursuant to this Section 5.2 that are not properly filed and served by the Administrative Claim Bar Date shall not appear on the register of claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.

The Debtors or Reorganized Debtors, as applicable, and the Sponsor shall have the exclusive right to object to Administrative Claims (other than Administrative Claims that are Allowed as of the Effective Date) on or before the Administrative Claims Objection Deadline, subject to extension from time to time by order of the Bankruptcy Court. Unless such an objection is interposed to a timely-filed and properly-served Administrative Claim and payment request, such Claim shall be deemed Allowed in the amount requested. In the event that the Debtors or Reorganized Debtors, as applicable, or the Sponsor object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall resolve the dispute. The Debtors or Reorganized Debtors, as applicable, and/or the Sponsor, as the case may be, may settle Administrative Claims in the ordinary course of business and without further Bankruptcy Court approval.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1.    *Voting of Claims*

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to ARTICLE III and ARTICLE IV hereof shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order or any other order of the Bankruptcy Court.

### 6.2.    *Presumed Acceptance of Plan*

Priority Non-Tax Claims (Class 1), Secured Tax Claims (Class 2) and Interests (Class 6) are Unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims or Interests, as applicable, in such Classes are conclusively presumed to have accepted the Plan and the votes of such holders will not be solicited.

### 6.3.    *Acceptance by Impaired Classes*

Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept the Plan.

Alden Secured Claims against Atari, Inc. (Class 3), General Unsecured Claims (Class 4) and Sponsor Intercompany Claims (Class 5) are Impaired, and the votes of holders of Claims in

20

such Classes will be solicited. If holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan, but no holders of Claims in such Impaired Class of Claims voted to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

### 6.4.    *Elimination of Vacant Classes*

Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.5.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 6.6.    *Nonconsensual Confirmation*

If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), reserve the right to (i) amend the Plan, (ii) re-classify any Claim or Interest, or (iii) undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE VII.
## MEANS OF IMPLEMENTATION

### 7.1.    *Sources of Consideration for Plan Distributions and Sponsor Contributions*

All payments or distributions under the Plan shall be funded by existing Cash on hand with the Debtors or Reorganized Debtors, as applicable, as of the Effective Date, including any proceeds from the sales of certain assets of the Debtors prior to the Effective Date, and a Cash contribution made by the Sponsor to the Estates on the Effective Date in the maximum aggregate amount of $3,419,000.00 (the "***Sponsor Cash Contribution***"). Further, and in addition to the Sponsor Intercompany Claims Waivers, on the Effective Date, the Sponsor shall make the following non-monetary contributions of value to the Estates in the aggregate amount of approximately $1,749,000.00:  (i) the waiver of the Sponsor's claim on account of certain postpetition royalty payments accrued and payable to the Sponsor from the Debtors' use of the "Dungeons & Dragons" license during the Cases in the amount of approximately $875,000.00; (ii) the assumption of certain salary and rent expenses of the Debtors in the maximum amounts of $240,000.00 and $190,000.00, respectively, to be paid in the ordinary course as such expenses become due and payable; and (iii) the waiver of the Sponsor's right to any claims for errors and omissions and the Sponsor's assumption of liability for business travel-related accidents, resulting in savings of $444,000.00 for the Estates (collectively, the "***Sponsor Value Contributions***").

21

In consideration for the Sponsor Contributions, the existing holders of Interests in the Debtors shall retain such Interests on the Effective Date. Any Cash remaining in the Estates following the completion of all payments or distributions under the Plan shall be repaid to the Sponsor.  Further, the Sponsor Cash Contribution shall be reduced, on a dollar-for-dollar basis, by any funds received by the Debtors from DTI Software, Inc. on or before the Effective Date.

### 7.2.    Continued Corporate Existence

Each Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, in accordance with the applicable laws in the jurisdiction in which each Debtor is incorporated, and pursuant to the relevant certificates or articles of incorporation, memoranda of association, articles of association, and by-laws, as applicable, of each Debtor in effect prior to the Effective Date, except to the extent such documents are amended pursuant to the Plan.

### 7.3.    Filing of Postconfirmation Organizational Documents

On the Effective Date, or as soon thereafter as practicable, to the extent required by law, each Reorganized Debtor will file its Postconfirmation Organizational Documents, substantially in the forms disclosed in the Plan Supplement, as required or deemed appropriate, with the appropriate Persons in its jurisdiction of incorporation.

### 7.4.    Directors of the Reorganized Debtors

The directors of each of the Debtors immediately prior to the Effective Date will serve as the initial directors of the respective Reorganized Debtors on and after the Effective Date. The initial directors shall be disclosed in the Plan Supplement. Such directors will serve, and may be removed or replaced, as the case may be, in accordance with applicable non-bankruptcy law and the Postconfirmation Organizational Documents for each respective Reorganized Debtor.

### 7.5.    Officers of the Reorganized Debtors

The officers of each of the Debtors immediately prior to the Effective Date will serve as the initial officers of the respective Reorganized Debtors on and after the Effective Date. The initial officers shall be disclosed in the Plan Supplement. Such officers will serve, and may be removed or replaced, as the case may be, in accordance with applicable non-bankruptcy law, any employment agreement with the relevant Reorganized Debtor, and the Postconfirmation Organizational Documents of such Reorganized Debtor.

### 7.6.    D&O Insurance Policy

On or prior to November 30, 2013, the Debtors shall purchase a D&O tail policy (the "**D&O Policy**") for the benefit of the Debtors' current and former officers and directors that will remain in force and effect for six (6) years after the Effective Date, as reflected in the Sponsor Analysis.

### 7.7.    *Exemption From Securities Laws*

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the Secured GUC Note and any other securities pursuant to this Plan and any subsequent sales, resales, transfers or other distributions of such Secured GUC Note or other securities shall be exempt from registration under the Securities Act, any other federal or state securities law registration requirements, and all rules and regulations promulgated thereunder.

### 7.8.    *Effectuating Documents and Further Transactions*

On or before the Effective Date, and without the need for any further order or authority, the Debtors or Reorganized Debtors, as applicable, shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance reasonably satisfactory to the Sponsor as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan. The Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 7.9.    *Exemption from Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or equity securities under or in connection with the Plan, the creation, filing or recording of any mortgage, deed of trust or other security interest, the making, assignment filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the issuance of the Secured GUC Note, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any document recording, stamp, real estate transfer, sales and use, mortgage recording or other similar tax.

### 7.10.    *Expedited Tax Determination*

The Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending on or before the Effective Date.

### 7.11.    *Corporate Action*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the managers, directors or shareholders of one or more of the Debtors shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states of Delaware or California, as applicable, without any requirement of further action by the managers, directors or shareholders of the Reorganized Debtors.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1.    *Date of Distributions*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 8.2.    *Disbursing Agent*

Except as otherwise provided in ARTICLE IV with respect to distributions on account of the General Unsecured Claims under the Secured GUC Note, on or after the Effective Date, the Reorganized Debtors shall designate a Person or entity to serve as the Disbursing Agent under the Plan, on terms and conditions mutually agreeable between the Reorganized Debtors and such Person or entity, to make all distributions under the Plan, including without limitation, the Initial GUC Distribution.

### 8.3.    *Rights and Powers of Disbursing Agent*

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby (except for the distributions on account of General Unsecured Claims under the Secured GUC Note), (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. In furtherance of the rights and powers of the Disbursing Agent, the Disbursing Agent shall have no duty or obligation to make distributions to any holder of an Allowed Claim unless and until such holder executes and delivers, in a form acceptable to the Disbursing Agent, any documents applicable to such distributions.

### 8.4.    *Delivery of Distributions*

With respect to all holders of Allowed Claims, distributions shall only be made to the record holders of such Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, the Claims register shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Plan. The Debtors, Reorganized Debtors, Disbursing Agent, and the Committee Designee, and all of their respective agents, successors and assigns, as applicable, shall have no obligation to recognize, for purposes of distributions pursuant to or in any way arising from the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, they shall be entitled to recognize only those record holders set forth in the Claims register as of the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred twenty (20) or fewer calendar days before the Distribution Record Date, the Disbursing Agents or the Committee Designee, as applicable, shall

24

make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

If any dispute arises as to the identity of a holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Plan, the Disbursing Agent or Committee Designee, as applicable, may, in lieu of making such distribution to such person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, as applicable, unless the Debtors have been notified in writing of a change of address by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. Nothing in this Plan shall require the Debtors to attempt to locate any holder of an Allowed Claim.

### 8.5.   *Undeliverable or Unclaimed Distributions*

If any distribution to a holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent or the Committee Designee, as applicable, is notified in writing of such holder's then-current address, at which time the undelivered distribution shall be made to such holder without interest or dividends. Undeliverable distributions shall be returned to the applicable Reorganized Debtor until such distributions are claimed. All distributions under the Plan that remain unclaimed for six (6) months after the Third GUC Distribution shall indefeasibly revert to the applicable Reorganized Debtor. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### 8.6.   *Manner of Payment*

At the option of the Disbursing Agent or the Committee Designee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 8.7.   *Limitation on Distributions*

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors, the Disbursing Agent or the Committee Designee, as applicable, shall have any obligation to make any distributions under the Plan with a value of less than twenty-five (25) dollars, unless a written request therefor is received by the Disbursing Agent or the Committee Designee, as applicable, from the relevant recipient within 120 days after the later of the (a) Effective Date and (b) date such Claim becomes an Allowed Claim.

25

**8.8.** *Setoffs and Recoupment*

The Debtors may, but shall not be required to, with the consent of the Sponsor (which consent shall not be unreasonably withheld), setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any and all claims, rights and Causes of Action of any nature whatsoever that the Debtors may have against the claimant, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by the Debtors of any such claims, rights and Causes of Action that the Debtors may have against such claimant.

**8.9.** *Allocation of Plan Distributions Between Principal and Interest*

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

## ARTICLE IX.
## PROCEDURES FOR TREATING DISPUTED CLAIMS

**9.1.** *GUC Escrow Account*

On the Effective Date, the Reorganized Debtors shall establish an interest-bearing escrow account (the "***GUC Escrow Account***"), funded with $560,000.00, for purposes of paying the Initial GUC Distribution to holders of General Unsecured Claims, including General Unsecured Claims that are Disputed as of the Effective Date. As soon as practicable after all General Unsecured Claims against the Debtors have been either Allowed (and received a distribution in accordance with the Plan) or disallowed by the Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, the Reorganized Debtors shall determine the amount of the excess funds in the GUC Escrow Account and return such funds to the Sponsor.

**9.2.** *Administrative Reserve*

On the Effective Date, the Reorganized Debtors shall establish a reserve (the "***Administrative Reserve***"), funded with $100,000.00, for purposes of paying Administrative Claims that are (i) Disputed as of the Effective Date and (ii) not Professional Fee Claims. As soon as practicable after all such Administrative Claims against the Debtors have been either Allowed (and paid in full in accordance with the Plan) or disallowed by the Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, the Reorganized Debtors shall determine the amount of the excess funds in the Administrative Reserve and return such funds to the Sponsor.

**9.3.** *Objections/Requests for Estimation*

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Reorganized Debtors (or, with respect to General Unsecured Claims, if the Reorganized Debtors refuse to interpose or prosecute an objection to or request for estimation of a specified General Unsecured Claim following written

26

request by the Committee Designee to do so, by the Committee Designee); *provided*, *however*, that neither the Reorganized Debtors nor the Committee Designee shall object to Claims held by a DIP Lender, Alden, the Sponsor, Atari Europe, or Claims that have been expressly allowed by Final Order or under the Plan. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the later of: (i) one hundred twenty (120) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court (the "*Claims Objection Deadline*"); *provided*, *however*, that with respect to Claims that, as of the Claims Objection Deadline, are subject to a pending claim objection, contested matter, or adversary proceeding (an "*Initial Objection*") wherein the Reorganized Debtors' objection to such claim is ultimately denied, the Claims Objection Deadline shall be extended to the latter of: (a) sixty (60) days from the date on which the Bankruptcy Court enters an order denying such Initial Objection or (b) sixty (60) days from the date on which any appellate court enters a Final Order reversing or vacating an order of the Bankruptcy Court granting such Initial Objection, *provided further* that with respect to Claims that (x) are filed (whether as an amended Claim, new Claim, or otherwise) after the Effective Date, and (y) that are not otherwise subject to adjustment, expunction or disallowance pursuant to any other provision of this Plan, the Claims Objection Deadline shall be one hundred twenty (120) days after the date on which such Claim was filed.

The Reorganized Debtors shall prosecute all claims objections pending as of the Effective Date, and shall not withdraw or compromise any such objections without the approval of the Committee Designee, which approval shall not be unreasonably withheld, provided that such approval (i) shall not be required for the withdrawal or compromise of objections to Claims filed for less than $150,000, and (ii) shall no longer be required after the aggregate amount of outstanding General Unsecured Claims is reduced below $7,000,000.

Nothing herein shall affect the Debtors' ability to amend the Schedules in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### 9.4.    *Adjustment to Certain Claims Without a Filed Objection*

Any Claim that has been settled, paid and satisfied, or amended and superseded, may be adjusted or expunged on the Claims register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 9.5.    *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

### 9.6.    *Estimation of Claims*

The Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, regardless of whether any of the Debtors previously objected to such

Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distribution), as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), may pursue supplementary proceedings to object to the ultimate allowance of such Claim.

All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 9.7. *Interest*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon, except as specifically provided for herein, or as may be required by Final Order, the Confirmation Order or applicable bankruptcy and non-bankruptcy law.

### 9.8. *Offer of Judgment*

The Reorganized Debtors are authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs incurred by the Debtors after the making of such offer, the Debtors are entitled, in consultation with the Sponsor, to set off such amounts against the amount of any distribution to be paid to such holder without any further notice to or action, order or approval of the Bankruptcy Court.

### 9.9. *Amendments to Claims*

Except for Administrative Claims, on or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim filed without prior authorization shall be deemed disallowed in full and expunged without any further action.

### 9.10. *Claims Paid and Payable by Third Parties*

A Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or

28

more of the Debtors' Insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such Insurers' agreement, such Claim may be expunged from the Claims register without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 9.11.   *Distributions After Allowance*

With respect to Disputed Claims, from and after the Effective Date, the Disbursing Agent will make distributions, if any, from the GUC Escrow Account or Administrative Reserve, as the case may be, quarterly (i) on account of any Disputed Claims that have become Allowed Claims during the preceding calendar quarter, and (ii) on account of previously Allowed Claims that would have been distributed to holders of such Claims on the dates distributions were previously made to holders of Allowed Claims in such Class had the Disputed Claims that have become Allowed Claims been Allowed on such dates. Such distributions will be made pursuant to the applicable provisions of ARTICLE VIII hereof.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1.   *Assumption and Rejection of Executory Contracts and Unexpired Leases*

All Executory Contracts and unexpired leases to which any of the Debtors is a party shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, except for those Executory Contracts or unexpired leases that:  (a) have already been assumed or rejected pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (b) have previously expired or been terminated pursuant to their own terms (and were not otherwise extended); (c) are the subject of a separate motion to assume or reject pending on the Effective Date; or (d) are specifically designated in the Plan Supplement as contracts or leases to be assumed by the Reorganized Debtors pursuant to the Plan.

Subject to and upon the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above. All assumptions and assignments or rejections of Executory Contracts and unexpired leases in the Plan will be effective as of the Effective Date. To the extent any provision of an Executory Contract or unexpired lease to be assumed by any of the Reorganized Debtors under the Plan limits such Reorganized Debtor's ability to assign such Executory Contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

Notwithstanding the foregoing, the Debtors reserve the right to alter, amend, modify, or supplement the list of the Executory Contracts and unexpired leases identified in the Plan Supplement prior to the Effective Date.

### 10.2.   *Cure of Defaults*

105016588 v17

Except as may otherwise be agreed to by the parties, any default under an Executory Contract or unexpired lease to be assumed pursuant to the Plan shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the payment of the applicable Cure Amount in Cash within thirty (30) days of the later of: (i) the Effective Date or (ii) in the case of a disputed default, the date such dispute is resolved, whether by agreement or by the entry of a Final Order, *provided that* the Debtors or Reorganized Debtors, as applicable, shall be authorized to reject any Executory Contract or unexpired lease to the extent the Debtors or Reorganized Debtors, in the exercise of their sound business judgment, conclude that the amount of the cure obligation as determined by such Final Order renders the assumption of such Executory Contract or unexpired lease unfavorable to the Debtors or Reorganized Debtors, as applicable.

The proposed Cure Amount for each Executory Contract or unexpired lease to be assumed under the Plan shall be set forth in the Plan Supplement. Any party that fails to object to the applicable Cure Amount listed in the Plan Supplement within thirty (30) days of the filing thereof shall be forever barred, estopped, and enjoined from disputing such amount and/or from asserting any Claim against the applicable Debtor under section 365(b)(1) of the Bankruptcy Code in excess of such Cure Amount.

### 10.3.    *Objections to Rejection*

Any non-Debtor party to an Executory Contract or unexpired lease that wishes to object to the rejection of such Executory Contract or unexpired lease, shall file an objection with the Bankruptcy Court prior to the Confirmation Objection Deadline and serve such objection on counsel to the Proponents. The failure to properly file and serve an objection to the rejection on or before the Confirmation Objection Deadline shall result in the non-Debtor party to the applicable Executory Contract or unexpired lease being (a) deemed to consent to such rejection and (b) barred, estopped, and permanently enjoined from (i) objecting to such rejection and precluded from being heard at the Confirmation Hearing with respect to such objection and (ii) asserting against the Debtors, the Estates, or any of the Debtors' property any default existing as of the Effective Date or any counterclaim, defense, setoff, or any other interest. With respect to any timely-filed and properly-served objection to the proposed rejection, the Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), may settle or otherwise resolve such objection, or respond to such objection (in which case the Bankruptcy Court shall determine such objection at the Confirmation Hearing).

### 10.4.    *Rejection Damage Claims*

Any proofs of claim with respect to Rejection Damage Claims shall be filed with the Bankruptcy Court and served on the Reorganized Debtors on or before (a) the first Business Day that is thirty (30) calendar days after the Effective Date, with respect to the Executory Contracts and unexpired leases rejected pursuant to the Plan, (b) the first Business Day that is thirty (30) calendar days after entry of an order authorizing the rejection of the relevant Executory Contract or unexpired lease, with respect to the Executory Contracts and unexpired leases rejected other than pursuant to the Plan, or (c) such other date as is ordered by the Bankruptcy Court. The failure to properly file and serve a proof of claim with respect to a Rejection Damage Claim by the applicable deadline set forth in this <u>Section 10.4</u> shall result in such Claim being deemed forever barred and disallowed as of the Effective Date without the need for any objection by the

Reorganized Debtors or further notice to, or action, order or approval of, the Bankruptcy Court. All Rejection Damage Claims shall be classified as General Unsecured Claims, and may be objected to in accordance with the provisions of ARTICLE IX of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

### 10.5.  *Modifications*

Any modifications, amendments, supplements, and restatements to prepetition Executory Contracts and unexpired leases that have been executed by the Debtors during the Cases and actions taken in accordance therewith, (a) do not alter in any way the prepetition nature of the Executory Contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtors that may arise under such Executory Contracts or unexpired leases, (b) are not and do not create postpetition contracts or leases, (c) do not elevate to Administrative Claims status any Claims of the counterparties to the Executory Contracts and unexpired leases against any of the Debtors, and (d) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition Executory Contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

### 11.1.  *Conditions Precedent to Confirmation*

The following are conditions precedent to confirmation of the Plan, each of which must be satisfied or waived in accordance with Section 11.3 hereof:

(a)    The Plan and Disclosure Statement shall be in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor;

(b)    The Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance reasonably satisfactory to the Proponents, on or before October 30, 2013;

(c)    The occurrence of the deadline to vote on the Plan on or before November 25, 2013;

(d)    The occurrence of the Confirmation Objection Deadline on or before November 27, 2013; and

(e)    The Sponsor Commitment Letter shall be in full force and effect.

### 11.2.  *Conditions Precedent to Effective Date*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 11.3 hereof:

(a)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor, on or prior to

31

December 6, 2013, and such order shall not have been stayed, modified or vacated on appeal; *provided*, *however*, that the form and substance of the Confirmation Order shall not be found unsatisfactory solely by reason of the Bankruptcy Court declining to approve the third party releases discussed in <u>Section 12.8</u>;

(b)    The final version of the Plan, the Plan Supplement and all of the documents and exhibits contained therein shall have been filed and approved in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor;

(c)    All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor;

(d)    All governmental, regulatory, and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated herein shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose any conditions on such transactions;

(e)    All conditions set forth in the Sponsor Commitment Letter shall have been satisfied or waived by the Sponsor, the Guarantor, or the Debtors, as applicable;

(f)    Each of the GUC Escrow Account, the Professional Fee Escrow Account and the Administrative Reserve shall have been established and funded up to their respective caps and in accordance with the terms and conditions hereof; and

(g)    The D&O Policy shall have been purchased.

### 11.3.    *Waiver or Satisfaction of Conditions*

Each of the conditions precedent in <u>Sections 11.1</u> and <u>11.2</u> hereof may be waived in writing, in whole or in part, by the Proponents. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decide, with the consent of the Sponsor (which consent shall not be unreasonably withheld), that one of the conditions precedent to confirmation or the Effective Date cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the inability to satisfy such condition prior to confirmation or the Effective Date, as applicable, with the Bankruptcy Court.

The failure of the Debtors or Reorganized Debtors, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

### 11.4.    *Effects of Non-Occurrence of Conditions to Effective Date*

Each of the conditions precedent to the Effective Date must be satisfied or duly waived, and the Effective Date must occur on or before December 20, 2013. If the Effective Date does not so occur, then:  (a) the Confirmation Order shall be vacated and all provisions contained therein, including without limitation, any provisions relating to discharge, shall be null and void; (b) no distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

**ARTICLE XII.**
**EFFECT OF CONFIRMATION**

### 12.1.    *Vesting of Assets and Release of Liens*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, each of the Debtors, their respective properties and interests in property shall be released from the custody and jurisdiction of the Bankruptcy Court, and the property of each Debtor shall vest in the relevant Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided in the Plan. As of the Effective Date, each Reorganized Debtor may operate its business, use, acquire and dispose of its property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

### 12.2.    *Binding Effect*

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

### 12.3.    *Discharge of Claims*

Except as provided in the Plan the Confirmation Order, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts, Claims and Causes of Action of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims and Causes of Action against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims (and all representatives, transferees or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Debtors, their successors or assigns, or against any of the assets or properties of the Debtors, any other or further Claim or Cause of Action based upon any act or omission, transaction or other activity of any kind or nature that

105016588 v17

occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

### 12.4.   *Discharge of Debtors*

Upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any representatives, trustees and agents on behalf of each holder) of a Claim, Interest or Cause of Action and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests and Causes of Action that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claims and Causes of Action against, or terminated Interests in, the Debtors.

### 12.5.   *Reservation of Causes of Action/Reservation of Rights*

Except as expressly released or exculpated hereunder, nothing contained in the Plan shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors, the Reorganized Debtors or the Sponsor may have or may choose to assert against any Person.

### 12.6.   *Exculpation*

**Pursuant to the Plan and to the maximum extent permitted by applicable law, none of the Exculpated Parties shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.**

### 12.7.   *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, to the maximum extent permitted by applicable law, and except as otherwise specifically provided in the Plan, on and after the Effective Date, for good and valuable consideration provided by the Released Parties, the Released Parties shall be deemed released and discharged by each of the Debtors, the Reorganized Debtors and their Estates from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, their Estates and/or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity or that any holder of a**

34

Claim or Interest or other entity would have been legally entitled to assert for or on behalf of the Debtors, their Estates or the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party excluding any assumed Executory Contract or lease, the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.

### 12.8.    *Third Party Releases*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, to the maximum extent permitted by applicable law, holders of Claims shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged each of the Debtors, the Reorganized Debtors and the Released Parties from any and all claims, equity interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, their Estates and/or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the restructuring, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party excluding any assumed Executory Contract or lease, the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct or gross negligence.

### 12.9.    *Mutual Releases of Released Parties*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, to the maximum extent permitted by applicable law, each Released Party shall release and discharge and shall be deemed released and discharged by each of the other Released Parties from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Released Party, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Released Party or its Affiliates, as applicable, would have been legally entitled to assert in its own right or on behalf of the holder of any

35

Claim or Interest or other entity or that any holder of a Claim or Interest or other entity would have been legally entitled to assert for or on behalf of the Released Party, based on or relating to, or in any manner arising from, in whole or in part, the Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party excluding any assumed Executory Contract or lease, the restructuring of Claims and Interests prior to or in the Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided, however*, that nothing contained in this paragraph shall (a) release any Released Party from claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence, (b) release any liens and claims that Alden or its affiliates may have, under or in connection with the Alden Secured Credit Facility, against any of (i) the Sponsor, Atari Europe, or any co-borrower or guarantor under the Alden Secured Credit Facility, (ii) the Debtors, or (iii) the Reorganized Debtors, or (c) preclude enforcement of parties' rights under the Plan and the related documents.

### 12.10. *Injunction or Stay*

Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold or may hold Claims, Causes of Action or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, Cause of Action or Interest against any of the Debtors, the Reorganized Debtors or property of any Debtor or Reorganized Debtor, other than to enforce any right to a distribution under the Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, the Reorganized Debtors or property of any Debtor or Reorganized Debtor, other than to enforce any right to a distribution under the Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against any of the Debtors or Reorganized Debtors or against the property or interests in property of any Debtor or Reorganized Debtor other than to enforce any right to a distribution under the Plan or (iv) asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from any of the Debtors or Reorganized Debtors or against the property or interests in property of any Debtor or Reorganized Debtor, with respect to any such Claim, Cause of Action or Interest. Such injunction shall extend to any successors or assignees of each of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date; *provided, however*, that no such injunction or stay shall preclude enforcement of parties' rights under the Plan and the related documents.

### 12.11. *Avoidance Actions*

36

Except as explicitly set forth in this Plan, any Plan Supplement, or any Final Order, on the Effective Date, the Reorganized Debtors shall be deemed to have waived and released all the avoidance actions arising under chapter 5 of the Bankruptcy Code.

### 12.12. *Compromise and Settlement of Claims and Controversies*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan will constitute a good faith compromise of all Claims, Causes of Action and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such an Allowed Claim. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, except as set forth in the Plan, the provisions of the Plan will also constitute a good faith compromise of all Claims, Causes of Action and controversies by any Debtor against any other Debtor. In each case, the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and the holders of such Claims and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors with the consent of the Sponsor (which consent shall not be unreasonably withheld) may compromise and settle Claims against them and Causes of Action against other Entities, in their sole and absolute discretion, and after the Effective Date, such right will pass to the Reorganized Debtors.

### ARTICLE XIII.
### RETENTION OF JURISDICTION

### 13.1. *Scope of Retention of Jurisdiction*

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Cases and the Plan to the fullest extent permitted by law, including, without limitation:

(a)    to hear and determine all matters with respect to the assumption or rejection of Executory Contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

(b)    to hear and determine any and all adversary proceedings, applications and contested matters pending on or after the Confirmation Date;

(c)    to hear and determine all applications for compensation and reimbursement of expenses under sections 328(a), 330, 331, and 503(b) of the Bankruptcy Code;

(d)    to hear and determine any timely objections to, or requests for estimation of Disputed Claims, in whole or in part or disputes related to the distribution of cash pursuant hereto and to ensure that the distributions contemplated hereunder are accomplished as provided herein;

(e)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)    to issue such orders in aid of execution, enforcement, implementation and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)    to consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    to hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court, including specifically, the GUC Secured Note;

(i)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including, without limitation, any request by the Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), prior to the Effective Date or request by the Reorganized Debtors after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code;

(j)    to hear and determine all disputes involving the existence, scope and nature of the discharges granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(k)    to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n)    to recover all assets of the Debtors and property of the Estates, wherever located;

(o)    to enter a final decree closing the Cases; and

(p)       to hear any other matter not inconsistent with the Bankruptcy Code.

**13.2.**    *Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Cases, including the matters set forth in <u>Section 11.1</u> hereof, the provisions of this ARTICLE XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court have jurisdiction with respect to such matter.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

**14.1.**    *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any U.S. and non-U.S. federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**14.2.**    *Modification of Plan*

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, but only after consultation with and consent (which consent shall not be unreasonably withheld) to such alteration, amendment, or modification by the Sponsor; *provided*, *however*, that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, but only after consultation with and consent (which consent shall not be unreasonably withheld) to such alteration, amendment, or modification by the Sponsor; *provided further*, that the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of such holder's Claim.

105016588 v17

Prior to the Effective Date, the Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld), may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, *provided that* such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

### 14.3.    *Revocation or Withdrawal of the Plan*

The Debtors, with the consent of the Sponsor (which consent shall not be unreasonably withheld) reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors in accordance with this <u>Section 14.3</u>, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 14.4.    *Plan Supplement*

Any Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors and the Sponsor, and shall be filed with the Bankruptcy Court no later than five (5) Business Days before the Confirmation Hearing, *provided that* the documents included therein may thereafter be amended and supplemented, subject to the consent of the Sponsor (which consent shall not be unreasonably withheld), prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

### 14.5.    *Payment of Statutory Fees*

On the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in Cash as Allowed Administrative Claims. Following the Effective Date, all such fees shall be paid by the Reorganized Debtors until the earlier of the conversion or dismissal of the applicable Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Case pursuant to section 350(a) of the Bankruptcy Code.

### 14.6.    *Dissolution of the Creditors' Committee*

On the Effective Date, the Creditors' Committee shall be dissolved automatically and its members shall be released and discharged of all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Cases and under the Bankruptcy Code, *provided further* that the retention or employment of the Creditors' Committee's Professionals shall terminate, except that such Professionals shall be permitted to (i) file and prosecute their respective applications for final allowance of their Professional Fee Claims and (ii) participate in any appeal of the Confirmation Order, which may be filed by a party other than the Creditors' Committee.

105016588 v17

### 14.7. *Exhibits/Schedules*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

### 14.8. *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 14.9. *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Cases.

### 14.10. *Severability of Plan Provisions*

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, at the request of the Debtors, subject to the consent of the Sponsor (which consent shall not be unreasonably withheld), have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 14.11. *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of law.

### 14.12. *Conflicts*

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement conflicts with or is in, any way inconsistent with any provision of the Plan, the Plan shall govern and control.

### 14.13. *Notices*

All notices, requests and demands to or upon the Debtors and the Sponsor must be in writing (including by facsimile transmission or electronic mail) to be effective and, unless otherwise expressly provided under the Plan, will be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

*If to the Debtors*:

> ATARI, INC.
> 475 Park Avenue South, 12th Floor
> New York, New York 10016
> Attn:   Gene Davis
>            Kristen Keller
>            Todd Shallbetter
> Facsimile: (212) 726-4214

with a copy to:

> AKIN GUMP STRAUSS HAUER & FELD LLP
> One Bryant Park
> New York, New York 10036
> Attn:   Ira S. Dizengoff
>            Kristine G. Manoukian
> Facsimile: (212) 872-1002
> Emails: idizengoff@akingump.com
>            kmanoukian@akingump.com


> 1333 New Hampshire Avenue, N.W.
> Washington, DC 20036-1564
> Attn:   Scott L. Alberino
> Facsimile: (202) 887-4288
> Email: salberino@akingump.com

*If to the Sponsor*:

> ALLEN & OVERY LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Attn:   Ken Coleman
>            Jonathan Cho
> Facsimile: (212) 610-6399
> Emails: ken.coleman@allenovery.com
>            jonathan.cho@allenovery.com

42

*If to the Creditors' Committee*:

> COOLEY LLP
> 1114 Avenue of the Americas
> New York, New York 10036
> Attn:   Cathy Hershcopf
>              Jeffrey L. Cohen
> Facsimile: (212) 479-6275
> Email: chershcopf@cooley.com
>              jcohen@cooley.com

*(Signature Pages to Follow)*

Dated:  New York, New York
        September 20, 2013

Respectfully submitted,


***Atari, Inc., et al.***
*(for itself and on behalf of each of the other Debtors)*

By: _____
Name:  Eugene I. Davis
Title:   Chairman of the Boards of Directors

Dated:  New York, New York
         September 20, 2013

Respectfully submitted,

***Atari, S.A.***

By:    */s/ Frederic Chesnais*      
Name: Frederic Chesnais
Title:  President-Director General

## **Schedule 1**

Sponsor Analysis

Schedule 1

Atari, Inc.
Sponsor Analysis
Sources and Uses of Cash at Effective Date
*$ in 000s*

|  |  |  | Amount |
|---|---|---|---:|
| **I)** | **Sources:  Prior to Sponsor Funding** | | |
| | A) | Projected cash on hand at Effective Date | |
| | | From operations | $        2,538 |
| | | From Game sale proceeds | 5,051 |
| | B) | Accounts Receivable (collected after Effective Date) | - |
| | C) | RCT Cash Generated (collected after Effective Date) | - |
| | | Cash on hand at Effective Date | 7,589 |
| | | | |
| **II)** | **Uses:  Required funding on the effective date** | | |
| | A) | DIP Loan | |
| | | Principle Balance | 3,500 |
| | | Interest through Effective Date | 286 |
| | B) | Administrative Expenses | |
| | | Professional Fee Escrow | |
| | | Akin | 2,332 |
| | | Protiviti | 339 |
| | | Cooley | 691 |
| | | Duff | 218 |
| | | Bracewell | 308 |
| | | Perella | 1,150 |
| | | Allen & Overy - Plan | 250 |
| | | Allen & Overy - DS | 125 |
| | | Cure Costs - Atari Games | 122 |
| | | Cure Costs - Test Drive | 179 |
| | | Trade payables (paid after Effective Date) | - |
| | | Royalty payable to Atari SA (waived) | - |
| | | Administrative reserve - non-professionals | 100 |
| | | Tax preparation (paid after Effective Date) | - |
| | | D&O tail policy | 227 |
| | | Chairman compensation | 400 |
| | | Disbursing Agent | 50 |
| | C) | Priority Tax Claims | - |
| | D) | Priority Non-Tax claims (remaining loyalty) | 172 |
| | E) | General Unsecured Claims initial funding | 560 |
| | | Total Uses | 11,009 |
| | | Required Sponsorship Funding (max) | $        (3,419) |

## **Schedule 2**

Sponsor Commitment Letter

*EXECUTION VERSION*

**Atari, S.A.**


September 19, 2013


Atari, Inc.
Atari Interactive, Inc.
California U.S. Holdings, Inc.
Humongous, Inc.
475 Park Avenue South, 12th floor
New York, NY 10016


## EQUITY COMMITMENT LETTER


Ladies and Gentlemen:

Reference is made to that certain Indicative Chapter 11 Plan Term Sheet for Atari, Inc. *et al*. attached as Annex I hereto (together with the schedules thereto, the "Term Sheet") in connection with a proposed joint plan of reorganization (the "Plan") for Atari, Inc., Atari Interactive, Inc., Humongous, Inc. and California U.S. Holdings, Inc. (collectively, the "Debtors").

Capitalized terms not defined herein shall have the meanings assigned to such terms in the Term Sheet.

**Section 1.      Commitment**

Subject to the terms and conditions described in this letter (including the Term Sheet, this "Commitment Letter"),[1] Atari, S.A. (the "Sponsor") hereby commits to support the Plan and to provide to the Debtors funding required by the Debtors pursuant to the Plan as set forth in the Term Sheet, up to a maximum aggregate amount of $3,419,000, subject to the terms and conditions set forth therein (the "Sponsor Cash Contribution").  In connection therewith, the Sponsor also will make, on the Effective Date, the following contributions of value in the aggregate amount of $1,749,000 to the Debtors' estates (collectively, the "Sponsor Value Contributions", and together with the Sponsor Cash Contribution, the "Sponsor Contributions"):

i.     the Sponsor will waive its claim on account of certain postpetition royalty payments accrued and payable to the Sponsor from the Debtors' use of the "Dungeons & Dragons" license during the Cases, which amount is currently estimated to equal $875,000;

ii.    the Sponsor will assume and pay in the ordinary course the following expenses of the Debtors up to a maximum amount of (i) $240,000 for salaries and (ii) $190,000 for rents, as such expenses become due and payable, in accordance with the Term Sheet; and

iii.   the Sponsor will waive its rights to any claims for errors and omissions and will assume liability for business travel-related accidents, resulting in savings of $444,000 for the estates of the Debtors.

The Sponsor Contributions therefore have an aggregate value of $5,168,000.

---

[1] In the event of any inconsistency between the Term Sheet and this Commitment Letter, this Commitment Letter shall control.

The Sponsor Cash Contribution shall be funded by a cash payment by the Sponsor, *provided that* funds received by the Debtors from DTI Software, Inc. on or before the Effective Date, if any, shall reduce the amount of the Sponsor Cash Contribution on a dollar-for-dollar basis.

Provided that the Debtors have not materially breached this Commitment Letter, Frederic Chesnais (the "Guarantor," and together with the Sponsor and the Debtors, the "Parties"), a signatory hereto and the Sponsor's indirect shareholder, irrevocably agrees to guarantee the Sponsor Cash Contribution under this Commitment Letter in the event that the Sponsor breaches its obligations hereunder.

**Section 2.      Conditions Precedent**

The Sponsor's obligations to support the Plan and fund or contribute the Sponsor Contributions, and the Guarantor's obligations to guarantee the Sponsor Cash Contribution, are subject to the prior satisfaction (or waiver by the Sponsor, the Guarantor, and the Debtors) of the following conditions precedent:  (i) the preparation, execution and delivery of documentation with respect to the Plan consistent in all material respects with the Term Sheet, in form and substance mutually acceptable to the Debtors and the Sponsor, and containing the usual terms and conditions for plan sponsor exculpation, release, and indemnification (the "Operative Documents"); (ii) this Commitment Letter remaining in effect and the Debtors' compliance in all material respects with the terms of this Commitment Letter; (iii) the accuracy and completeness in all material respects of all representations that you make to us, as set forth in section 7 of this Commitment Letter; (iv) the approval by the Court of the Disclosure Statement; (v) the entry of an order by the Court confirming the Plan in form and substance acceptable to the Sponsor (the "Confirmation Order") on or prior to December 6, 2013, which date may be extended from time to time by mutual agreement of the Debtors, the Sponsor, and the Guarantor; (vi) the time for an appeal of the Confirmation Order having expired without the Confirmation Order being subject to a stay; and (vii) the satisfaction of all conditions precedent to the occurrence of the Effective Date of the Plan, as set forth in the Term Sheet.

**Section 3.      Commitment Termination**

The Sponsor and the Guarantor may only terminate this Commitment Letter, upon five (5) business days written notice to the Debtors, if:  (a) the Sponsor is not in breach of this Commitment Letter and (b)(i) the Debtors lose the exclusive right to file a plan under section 1121 of the Bankruptcy Code, (ii) any covenant or agreement in this Commitment Letter is materially breached by the Debtors and is not cured within five (5) business days of notice thereof, (iii) any event occurs or information becomes available that results in the failure to satisfy any condition precedent set forth in this Commitment Letter or the Operative Documents, (iv) the Debtors file a plan that has not been approved in form and substance by the Sponsor and the Guarantor, as evidenced in writing, or (v) the Debtors have not filed the Plan, in form and substance acceptable to the Sponsor and the Guarantor, on or prior to September 20, 2013.  The Parties' obligations under Sections 4 through 10 hereof shall survive the expiration or termination of this Commitment Letter.

**Section 4.      Indemnification**

Subject to the Plan becoming effective, the Debtors shall indemnify and hold harmless the Sponsor, the Guarantor, and their respective affiliates, and each of their respective officers, directors, employees, agents, advisors, attorneys and representatives (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with or relating to any investigation, litigation or proceeding or the preparation of a defense in connection therewith), in each case arising out of or in connection with or by reason of this Commitment Letter or the Operative Documents, or the transactions contemplated hereby or thereby, except to the extent such claim, damage, loss, liability or expense results from such

Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this section applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by the Debtors, any of their directors or creditors, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

No Indemnified Party shall have any liability (whether in contract, tort or otherwise) to the Debtors for or in connection with the transactions contemplated hereby, except (i) to the extent such liability results from such Indemnified Party's gross negligence or willful misconduct or (ii) for a breach by such Indemnified Party of this Commitment Letter or any other agreement.

**Section 5.    Costs and Expenses**

Subject to the Plan becoming effective, the Debtors shall pay all costs and expenses of the Sponsor and the Guarantor (including, without limitation, the fees and disbursements of counsel) incurred in connection with the enforcement of any of their rights and remedies under this Commitment Letter.

**Section 6.    Confidentiality**

By accepting delivery of this Commitment Letter, the Debtors agree that this Commitment Letter is for their confidential use only and that neither its existence nor the terms hereof will be disclosed by the Debtors to any person other than (i) their officers, directors, employees, accountants, attorneys and other advisors, and then only on a "need to know" and confidential basis in connection with the transactions contemplated hereby and (ii) in connection with the Debtors seeking approval of the Plan and the Disclosure Statement by the Court. Notwithstanding the foregoing, and in addition to the disclosures permitted above, following acceptance of the provisions hereof as provided below by the Debtors and your return of an executed counterpart of this Commitment Letter to the Sponsor, the Parties may make such other public disclosures of the terms and conditions hereto as the Parties are required by law or compulsory judicial process.

**Section 7.    Representations and Warranties of the Debtors**

The Debtors represent and warrant that (i) all information that has been or will hereafter be made available to the Sponsor by the Debtors or any of their representatives in connection with the transactions contemplated hereby is and will be true and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein not misleading in light of the circumstances under which such statements were or are made, in each case giving effect to the Debtors' limited financial resources and limited employees, and (ii) all financial projections, if any, that have been or will be prepared by the Debtors and made available to the Sponsor have been or will be prepared in good faith based upon assumptions that were reasonable as of the date of the preparation of such financial projections. The Debtors agree to use good faith efforts to supplement the information and projections from time to time until the Operative Documents become effective so that the representations and warranties contained in this paragraph remain correct.

The Debtors acknowledge that the Sponsor has informed the Debtors that, in providing this Commitment Letter, the Sponsor is relying on the accuracy of the information furnished to it by or on behalf of the Debtors (to the extent of the representations contained herein) without independent verification thereof.

**Section 8.    Representations and Warranties of the Sponsor**

Beginning on the date of this Commitment Letter and continuing until the date of termination in accordance with Section 3 hereof, the Sponsor and the Guarantor represent and warrant that each (i) has full power and authority to enter into and perform under this Commitment Letter and (ii) has, as of the

3

date hereof, cash and/or the right to draw down available lines of credit in a combined amount necessary to fund the maximum Sponsor Cash Contribution.

**Section 9.        No Third Party Reliance, etc.**

The agreement of the Sponsor hereunder to provide the Sponsor Contributions is made solely for the benefit of the Debtors and may not be relied upon or enforced by any other person.  For the avoidance of doubt, those matters that are not covered or made clear in this Commitment Letter are subject to mutual agreement of the Parties.   The Debtors may not assign or delegate any of their rights or obligations hereunder to a third party without the Sponsor's prior written consent.  This Commitment Letter may not be amended or modified, or any provisions hereof waived, except by a written agreement signed by the Parties.  This Commitment Letter is not intended to create a fiduciary relationship among the Parties.

**Section 10.        Miscellaneous Provisions**

This Commitment Letter shall be governed by, and construed in accordance with, the laws of the State of New York.  Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Commitment Letter shall be brought exclusively in the Court. The Parties further agree that each of the Parties hereby irrevocably consents to the jurisdiction of the Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in such courts or that any such suit, action or proceeding which is brought in such courts has been brought in an inconvenient forum.  Process in any such suit, action or proceeding may be served on any Party anywhere in the world, whether within or without the jurisdiction of the Court.  This Commitment Letter sets forth the entire agreement between the Parties with respect to the matters addressed herein and supersedes all prior communications, written or oral, with respect hereto.  This Commitment Letter may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Commitment Letter.  Delivery of an executed counterpart of a signature page to this Commitment Letter by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Commitment Letter.   This Commitment Letter may not be amended, modified or supplemented except by an agreement in writing signed by the Parties.

**Section 11.        Waiver of Jury Trial**

**Each party hereto irrevocably waives all rights to trial by jury in any action, proceeding or counterclaim (whether based on contract, tort or otherwise) arising out of or relating to the Commitment Letter the transactions contemplated by the Commitment Letter, or the actions of the Sponsor or any of its affiliates in the negotiation, performance or enforcement of the Commitment Letter.**

**Section 12.        Assignment**

This Commitment Letter is assignable by the Sponsor or the Guarantor upon written notice to the Debtors, *provided that* (i) such assignment shall not discharge the obligations of the Sponsor or the Guarantor under this Commitment Letter and (ii) neither the Sponsor nor the Guarantor may assign this Commitment Letter to an unaffiliated third party without the Debtors' prior written consent (not to be unreasonably withheld) which, if granted, shall not constitute a waiver of this requirement as to any subsequent assignment. Any purported assignment of this Commitment Letter in contravention of this section shall be void.

4

**Section 13.        Amendments**

This Commitment Letter, including any exhibits or schedules hereto, may not be modified, amended or supplemented except in a writing signed by the Parties.

**Section 14.        Sponsor Cooperation**

The Sponsor shall (i) negotiate in good faith the Operative Documents and support confirmation of the Plan, (ii) do all things necessary and appropriate in furtherance of obtaining entry of the Confirmation Order within the time frames contemplated by the Term Sheet and this Commitment Letter, and (iii) act in good faith and use commercially reasonable efforts to consummate the restructuring transactions as contemplated by the Term Sheet and this Commitment Letter.

**Section 15.        Effectiveness**

This Commitment Letter shall become effective as of the date set forth above.

(<em>Signature Pages to Follow</em>)

5

Very truly yours,

ATARI, S.A.

By: _____

Name:  Frederic Chesnais

Title:  *PRESIDENT DIRECTEUR GENERAL*

FREDERIC CHESNAIS


AGREED AND ACCEPTED
on _____, ____:


ATARI, INC.

By: _____
Name:
Title: _____


ATARI INTERACTIVE, INC.

By: _____
Name:
Title: _____


HUMONGOUS, INC.

By: _____
Name:
Title: _____


CALIFORNIA U.S. HOLDINGS, INC.

By: _____
Name:
Title: _____


*[Signature Page to Commitment Letter]*

Very truly yours,

ATARI, S.A.

By: _____
Name:  Frederic Chesnais
Title:

FREDERIC CHESNAIS

_____

AGREED AND ACCEPTED

on Sept. , 19 : 2013

ATARI, INC.

By: _____
Name:  Eugene I. Davis
Title:    Chairman of the Board of Directors

ATARI INTERACTIVE, INC.

By: _____
Name:  Eugene I. Davis
Title:    Chairman of the Board of Directors

HUMONGOUS, INC.

By: _____
Name:  Eugene I. Davis
Title:    Chairman of the Board of Directors

CALIFORNIA U.S. HOLDINGS, INC.

By: _____
Name:  Eugene I. Davis
Title:    Chairman of the Board of Directors

[Signature Page to Commitment Letter]

ANNEX I
TERM SHEET

**INDICATIVE TERM SHEET FOR ATARI, INC. *ET AL.***
**JOINT PLAN OF REORGANIZATION**

*This restructuring term sheet (the "Term Sheet") embodies the terms of an agreement reached between the Debtors, the Sponsor, the DIP Lender and the Committee (each as defined below and a "Party", and collectively, the "Parties") and is attached as an exhibit to an equity commitment letter (the "ECL") to be executed by the Sponsor.*

*This Term Sheet does not include a description of all of the terms, conditions, and other provisions that are to be contained in a Plan (as defined below) and the related definitive documentation contemplated by this Term Sheet (the "Definitive Documents"). The Definitive Documents shall satisfy the requirements of the Bankruptcy Code and be consistent with this Term Sheet. The terms and conditions set forth in this Term Sheet are meant to be part of a comprehensive agreement, each element of which is consideration for the other elements and an integral aspect of the proposed Plan.*

*This Term Sheet is for discussion purposes only, is not an offer for the sale of securities, and is not a solicitation of acceptances or rejections of a chapter 11 plan of reorganization. Any such solicitation will comply with all applicable provisions of the Bankruptcy Code and will be conducted only pursuant to a disclosure statement that has been approved by the Court. The terms of this Term Sheet set forth below are intended to provide a framework for a proposed transaction and do not constitute a binding agreement with respect to the specific transaction structure contemplated herein.*

*This Term Sheet is being distributed subject to the Parties' agreement that it will not be used as evidence in any litigation and is subject to the provisions of Rule 408 of the Federal Rules of Evidence and other similar applicable rules under federal and state law. This Term Sheet is confidential and shall not be shared with any party without the prior written consent of the Debtors and the Sponsor.*

| Transaction Summary: | This Term Sheet describes the principal terms of a joint chapter 11 plan of reorganization (the "**Plan**") for Atari, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**",[1] and after the Effective Date (as defined below), the "**Reorganized Debtors**", proposed by the Debtors and Atari, S.A. (the "**Sponsor**", and together with the Debtors, the "**Proponents**") and supported by the Debtors' debtor in possession lender (the "**DIP Lender**" or "**Alden**") and the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the Debtors' chapter 11 cases (the "**Cases**"). The Proponents will file and seek to confirm and consummate the Plan in the Cases, which were commenced on January 21, 2013 (the "**Petition Date**") and are being jointly administered under Case No. 13-10176 (JMP) in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). |
|---|---|
|  | Distributions under the Plan shall be funded by (i) cash on hand with the Debtors as of the Effective Date (the "**Existing Cash**"), which shall include any remaining proceeds from the pre-Effective Date sales of certain assets of the Debtors and (ii) cash contributions of up to a maximum aggregate amount of $3,419,000 (the "**Sponsor Contribution Limit**") by the Sponsor, pursuant to the ECL (the |

---

[1] Specifically, the Debtors in these chapter 11 cases are Atari, Inc., Atari Interactive, Inc. ("**Interactive**"), California U.S. Holdings, Inc. ("**CUSH**"), and Humongous, Inc. ("**Humongous**").

| | |
|---|---|
| | "**Sponsor Contribution**").<br><br>Pursuant to the Plan, the Sponsor shall retain its Existing Equity Interests in Interactive and CUSH, and CUSH shall retain its Existing Equity Interests in Atari, Inc. and Humongous.<br><br>Pursuant to the Plan, the Existing Cash and the Sponsor Contributions shall be distributed in accordance with the terms described below. |
| **Retention of Assets by Reorganized Debtors:** | Assets not sold prior to the Effective Date – including the Test Drive IP, assets relating to Rollercoaster Tycoon, Airborne Rangers, and the Atari Brand, and certain *de minimis* assets not sold to third parties – will be retained by the respective Debtors or the Reorganized Debtors, as applicable, subject to the Debtors' rights to reject executory contracts under section 365 of the Bankruptcy Code. Such assets will be described in a separate schedule to the Plan.<br><br>Prior to the hearing on the confirmation of the Plan, a plan supplement will be filed listing all executory contracts of the Debtors to be assumed and/or assigned under the Plan. |

<table>
<tr><td colspan="2" align="center"><strong>CERTAIN TERMS UNDER THE PLAN</strong></td></tr>
<tr><td colspan="2">The Proponents agree to seek to confirm a Plan that implements the following distributions:</td></tr>
<tr>
<td><strong>DIP Claims:</strong><br><br><strong>(Estimated Allowed Amount: $3,786,000)</strong></td>
<td>DIP Claims shall be paid in full, in cash, on the Effective Date in accordance with the DIP Financing Order. Subject to the Carveout (as such term is defined in the DIP Financing Order), the DIP Claims shall be paid in full before any other Claims receive distributions under the Plan.<br><br>Following such payment, Alden will waive the enforcement of the Test Drive Lien and the Alden Secured Claim solely for the purposes of the Plan (the "<strong>Alden Limited Waiver</strong>"). For the avoidance of doubt, the Test Drive Lien and the Alden Secured Claim will otherwise remain in place to secure the Alden Facility following the Effective Date.</td>
</tr>
<tr>
<td><strong>Allowed Administrative Claims:</strong><br><br><strong>(Estimated Aggregate Allowed Amount: $[])</strong></td>
<td>Each holder of an Administrative Claim shall be paid in full, in cash, (i) on the later of (a) the date the Plan effectuating the restructuring (the "<strong>Restructuring</strong>") contemplated herein becomes effective (the "<strong>Effective Date</strong>"), (b) the date on which the Court enters an order allowing such Administrative Claim, or (c) the date on which the Reorganized Debtors or the Debtors, as applicable, and the holder of an Allowed Administrative Claim otherwise agree, and (ii) in such amounts as (a) are incurred in the ordinary course of business by the Debtors, (b) are allowed by the Court, (c) may be agreed upon between the holder of such Allowed Administrative Claim and the Reorganized Debtors or the Debtors or (d) may otherwise be required</td>
</tr>
</table>

2

|  | under applicable law. |
|  | The Allowed Administrative Claims shall include costs incurred in the operation of the Debtors' businesses after the Petition Date, the Allowed fees and expenses of professionals retained by the Debtors, and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930. |
|  | As has been agreed upon between the Sponsor and each Professional, Allowed Administrative Claims for fees and expenses incurred by a Professional during the period beginning August 1, 2013 through the Effective Date shall not exceed the amounts set forth for such Professional in the Professional Fee Budget. |
|  | On the Effective Date, the Debtors shall establish and fund a reserve (the "**Administrative Reserve**") to cover any Administrative Claims that are disputed as of the Effective Date. For the avoidance of doubt, the Administrative Reserve shall not cover any Administrative Claims of Professionals. |
|  | Additionally, on the Effective Date, the Debtors shall establish an interest-bearing escrow account (the "**Professional Fee Escrow Account**") and fund the Professional Fee Escrow Account with cash equal to the aggregate Professional Fee Reserve Amount for the sole purpose of paying all allowed and unpaid fees and expenses of Professionals in the Cases. The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order. Such funds shall not be considered property of the Reorganized Debtors or the Debtors. Fees and expenses owing to the Professionals shall be paid in cash to such professionals by the Reorganized Debtors, as applicable, from the Professional Fee Escrow Account when such claims are allowed by the Court order. When all claims of Professionals have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Sponsor. |
| **Treatment of Priority Tax Claims:** | Each holder of a priority tax claim (a "**Priority Tax Claim**") shall be paid in full, in cash, upon the later of (a) the Effective Date, (b) the date upon which there is a final order allowing such claim as an Allowed Priority Tax Claim, (c) the date that such Allowed Priority Tax Claim would have been due if the Cases had not been commenced, or (d) upon such other terms as may be agreed to between the Reorganized Debtors or the Debtors, as applicable, and any holder of an Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors or Debtors, as applicable, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, may make cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by section 1129(a)(9) of the Bankruptcy Code, and in such event, unless otherwise provided herein, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the federal |

3

| | statutory rate. |
|---|---|
| **Treatment of Priority Non-Tax Claims:** | Each holder of a priority non-tax claim (a "**Priority Non-Tax Claim**") that has been allowed shall receive cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, unless the holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtors or the Debtors, as applicable, agree otherwise. |
| **General Unsecured Claims:**<br><br>**(Estimated Aggregate Allowed Amount: $5,000,000 to $7,000,000)** | All holders of Allowed General Unsecured Claims against each of the Debtors shall receive the following treatment under the Plan:<br><br>1. Each holder of an Allowed General Unsecured Claim shall receive a cash payment:  (a) on the Effective Date or as soon as practicable after such claim becomes allowed, in an amount equal to the lesser of (i) 8 percent (8%) of such holder's Allowed General Unsecured Claim and (ii) such holder's pro rata share of $560,000.00 (the "**Initial GUC Distribution**"); (b) on the first anniversary of the Effective Date, in an amount equal to the lesser of (i) 8 percent (8%) of all Allowed General Unsecured Claims and (ii) such holder's pro rata share of $560,000.00 (the "**Second GUC Distribution**"); and (c) on the second anniversary of the Effective Date, in an amount equal to the lesser of (i) 9 percent (9%) of such holder's Allowed General Unsecured Claim and (ii) such holders pro rata share of $630,000.00 (the "**Third GUC Distribution**").<br><br>2. The Initial GUC Distribution amount shall be funded into an escrow account (the "**GUC Escrow Account**") on the Effective Date.  To the extent that all Allowed General Unsecured Claims have received an 8% distribution and there remain no disputed claims, any remaining cash held in escrow will be returned to the Sponsor.<br><br>3. The Debtors shall issue a promissory note (the "**Secured GUC Note**"), secured by a first priority lien on the assets of the Reorganized Debtors, to a person or entity designated by the Committee (the "**Committee Designee**") obligating the Reorganized Debtors to fund the Second GUC Distribution and Third GUC Distribution pursuant to the terms of the Plan.<br><br>The Committee Designee shall be entitled to enforce the Secured GUC Note against the Reorganized Debtors for the benefit of holders of Allowed General Unsecured Claims.  Upon the Effective Date, the Committee Designee shall be funded with $50,000.00 to cover costs and expenses associated with making distributions (if not made by the Reorganized Debtors) and to monitor/enforce the obligations of the Reorganized Debtors under the Secured GUC Note.  The Committee Designee's unpaid costs and expenses shall be considered obligations under the Secured GUC Note, and the Reorganized Debtors shall have |

4

| | |
|---|---|
| | no obligation to pay such costs and expenses beyond the initial $50,000.00.<br><br>For the avoidance of doubt, the Secured GUC Note will only be secured by the assets of the Reorganized Debtors, and not by the assets of either the Sponsor or Atari Europe.  The Secured GUC Note will be senior in all respects on the assets of the Reorganized Debtors, including, but not limited to, any interest of Alden, the Sponsor or their affiliates.  Any funds not expended by the Committee Designee shall be returned to the Sponsor after the Third GUC Distribution occurs. |
| **Interactive Intercompany Claims:** | Waived. |
| **Sponsor Intercompany Claims:** | Upon the Effective Date, the Sponsor and Atari Europe will waive their rights to receive distributions on the Sponsor Intercompany Claims (the "**Sponsor Claims Waivers**"). |
| **Sponsor Contribution Limit:** | For the avoidance of doubt, the Sponsor's obligation to make the Sponsor Contribution shall not exceed the Sponsor Contribution Limit. |
| **Global Settlement:** | The Sponsor Contributions and the Claims Waivers described in this Term Sheet will be provided for in the Plan as consideration for a global settlement and compromise among the Parties, which includes the agreement of the Parties to support the Plan, and provide customary waivers and releases with respect to potential Claims and Causes of Action against (i) the Sponsor, the Guarantor (as defined in the ECL), and Atari Europe and their respective affiliates, directors, officers, managers, employees, agents, and professionals, (ii) the Debtors and their directors, officers, employees, agents and professionals, (iii) Alden and its affiliates, directors, officers, employees, agents, and professionals, and (iv) the Committee, its members, and its professionals (the "**Releases**").<br><br>Neither this Term Sheet nor the Plan constitute an admission or waiver by any of the Parties with respect to any purported Claims or Causes of Action, including with respect to substantive consolidation, the validity and enforceability of the Sponsor Intercompany Claims, and the validity and enforceability of the Test Drive Lien. |
| **Avoidance Actions:** | On the Effective Date, all avoidance actions arising under chapter 5 of the Bankruptcy Code shall be deemed waived. |
| **Documentation and Sponsor Expense Reimbursement:** | The Sponsor's counsel shall be responsible for preparing initial drafts of the Plan, the disclosure statement related thereto (the "**Disclosure Statement**") and ancillary documents.  The actual and documented reasonable fees and expenses incurred by the Sponsor's counsel in connection with the Plan shall be paid by the Debtors or the Reorganized Debtors, as applicable, as Allowed Administrative Claims up to the amounts set forth for the Sponsor's counsel in the |

104943764
104943764 v16

| | |
|---|---|
| | Sponsor Analysis. |
| **Waiver of Objections to Professionals' Fees:** | The Sponsor and Alden will not object to the fees and expenses incurred by the Professionals from the Petition Date through July 31, 2013, and for the period beginning August 1, 2013 through the Effective Date to the extent such fees and expenses do not exceed the amounts set forth in the Professional Fee Budget, and will withdraw any pending objections to the Committee's Professionals' fees. |
| **Committee Standstill and Plan Support:** | The Committee will agree to standstill from (i) investigating or challenging the Test Drive Lien, the Sponsor Intercompany Claims, and the Blanket Lien and (ii) pursuing the substantive consolidation of the Cases.<br><br>The Committee will agree to (i) support the Plan; (ii) not object to the confirmation of the Plan; and (iii) include a committee support letter in the solicitation package for the Plan; provided that the Plan is reasonably acceptable to the Committee.<br><br>As a condition to the foregoing standstill, the deadline for the Committee to investigate and challenge the Waived Claims (as defined in the DIP Financing Order) shall be extended until entry of an order approving or denying confirmation of the Plan (the "**Confirmation Order**"), and shall be extended until the Effective Date if the Plan is confirmed. The Committee's deadline to investigate and challenge the Waived Claims shall terminate upon the Effective Date. |
| **Other Plan Provisions:** | The Plan and Disclosure Statement must be consistent with this Term Sheet and such documents, and any other Definitive Documents, must be reasonably acceptable, in form and substance, to each of the Proponents. The Plan will contain such other customary terms and conditions not described herein, including, but not limited to, releases, indemnification, and exculpation to the maximum extent permitted under the Bankruptcy Code. To the extent that the Proponents seek approval of third party releases as part of the Plan, the Proponents shall not be excused from any obligations contained herein in the event the Court does not approve such third party releases.<br><br>On or before November 30, 2013, the Debtors will purchase a D&O tail policy (the "**D&O Policy**") for the benefit of the Debtors' current and former officers and directors that will remain in force for six years after the Effective Date, as reflected in the Sponsor Analysis. |
| **Conditions Precedent to Confirmation:** | The following are conditions precedent to the occurrence of confirmation of the Plan, each of which must be satisfied or waived in writing by the Proponents:<br><br>(a)    The Plan and Disclosure Statement (as defined in the Plan) shall be in form and substance mutually acceptable to the Debtors, the |

6

|  | Sponsor, and the Guarantor; |
|---|---|
|  | (b)   The Court shall have entered the Disclosure Statement Order (as defined in the Plan), in form and substance reasonably satisfactory to the Proponents, on or before October 30, 2013; |
|  | (c)   The occurrence of the deadline to vote on the Plan on or before November 25, 2013; |
|  | (d)   The occurrence of the Confirmation Objection Deadline (as defined in the Plan) on or before November 27, 2013; and |
|  | (e)   The ECL shall be in full force and effect. |
| **Conditions Precedent to the Effective Date:** | The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing by the Proponents:<br><br>(a)   The Court shall have entered the Confirmation Order (as defined in the Plan), in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor, on or prior to December 6, 2013, and such order shall not have been stayed, modified or vacated on appeal; provided, however, that the form and substance of the Confirmation Order shall not be found unsatisfactory solely by reason of the Court declining to approve the third party releases discussed in the Plan;<br><br>(b)   The final version of the Plan, the Plan Supplement (as defined in the Plan) and all of the documents and exhibits contained therein shall have been filed and approved in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor;<br><br>(c)   All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance mutually acceptable to the Debtors, the Sponsor, and the Guarantor;<br><br>(d)   All governmental, regulatory, and material third party approvals and consents, including Court approval, necessary in connection with the transactions contemplated herein shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose any conditions on such transactions;<br><br>(e)   All conditions set forth in the ECL shall have been satisfied or waived by the Sponsor, the Guarantor, or the Debtors, as |

7

applicable;

(f) Each of the GUC Escrow Account, the Professional Fee Escrow Account and the Administrative Reserve (each as defined in the Plan) shall have been established and funded up to their respective caps and in accordance with the terms and conditions hereof; and

(g) The D&O Policy shall have been purchased.

## CERTAIN DEFINED TERMS

| Certain Defined Terms: | |
|---|---|
| | (a) "**Accrued Professional Compensation**" means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses. To the extent there is a final order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation. |
| | (b) "**Administrative Expenses**" means all expenses of administration of the Debtors estates, as defined by section 503(b) of the Bankruptcy Code. |
| | (c) "**Administrative Claims**" mean all Claims arising from Administrative Expenses. |
| | (d) "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code. |
| | (e) "**Alden**" means Alden Global Value Recovery Master Fund, L.P. |
| | (f) "**Alden Facility**" means the credit facility established by the master credit agreement with Banc of America Securities Limited, entered into on April 21, 2006, as amended, assigned to Blue Bay Value Recovery (Master) Fund Limited, which was assigned to Alden on February 5, 2013. |
| | (g) "**Alden Secured Claim**" means the Claim held by Alden on account of the Alden Facility. |
| | (h) "**Allowed**" means, with references to any Claim or interest, (a) any Claim or interest as to which no objection to allowance has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Court, or as to which any objection has been determined by a final |

8

order of the Court to the extent such objection is determined in favor of the respective holder of such Claim or interest, (b) any Claim or interest to which the liability of the Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Court, or (c) any Claim or interest expressly deemed allowed by the Plan.

(i) "**Atari Europe**" means Atari Europe SAS.

(j) "**Atari Europe Atari, Inc. Secured Claim**" means the secured claim of Atari Europe against Atari Inc. arising under that certain Credit Agreement, dated as of April 30, 2008, as amended, between Atari Inc. and Infogrames Entertainment S.A. and secured by the Blanket Lien, and reflected in the Debtors' books and records as a net trade obligation of approximately $25.3 million.

(k) "**Bankruptcy Code**" means title 11 of the United States Code.

(l) "**Bankruptcy Rules**" mean the Federal Rules of Bankruptcy Procedure.

(m) "**Blanket Lien**" means the security interest evidenced by the financing statement filed by Parent on all assets of Atari, Inc. except for the Test Drive IP.

(n) "**Causes of Action**" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter/thereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the commencement of the Cases or during the course of the Cases, including through the Effective Date.

(o) "**Claim**" has the meaning set forth in the Bankruptcy Code.

(p) "**Claims Waivers**" means, collectively, the Alden Limited Waiver and the Sponsor Claims Waivers.

(q) "**DIP Claims**" means the claims of Alden pursuant to the debtor in possession financing facility provided by Alden and approved by the Court on a final basis pursuant to an order entered on March 7, 2013 (the "**DIP Financing Order**").

(r) "**Entity**" has the meaning set forth in section 101(15) of

9

the Bankruptcy Code.

(s)    "**Existing Equity Interests**" means the common stock of each of Interactive, CUSH, Atari, Inc. and Humongous.

(t)    "**General Unsecured Claims**" mean all Claims other than the DIP Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, the Alden Secured Claim, the Interactive Intercompany Claims, and the Sponsor Intercompany Claims.

(u)    "**Interactive Intercompany Claims**" means any Administrative Claims of Interactive against Atari, Inc., CUSH, or Humongous on account of any funds advanced by Interactive to Atari, Inc., CUSH, or Humongous during the course of the Cases.

(v)    "**Interim Compensation Order**" means the *Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Docket No. 81] entered on February 15, 2013.

(w)    "**Parent**" means Atari, S.A. and Atari Europe SAS.

(x)    "**Professional Fee Budget**" means a budget, included as part of the Sponsor Analysis, that has been agreed upon between the Sponsor and each Professional setting forth the maximum amount of fees and expenses to be incurred by each Professional for the period beginning August 1, 2013 through the Effective Date.

(y)    "**Professional**" means an Entity: (a) employed pursuant to the Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Court pursuant to section 503(b)(4) of the Bankruptcy Code.

(z)    "**Professional Fee Reserve Amount**" means Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with the following limitations: to receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors. If a Professional does not provide an estimate, the Debtors or the Reorganized Debtors, as applicable, may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall not be considered an admission with respect to the fees and

10

|  | | |
|---|---|---|
| | | expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount. |
| | (aa) | "**Sponsor Analysis**" means an analysis, attached hereto as **Schedule 1**, setting forth the Sponsor's analysis of the financial requirements of the Plan. |
| | (bb) | "**Sponsor Atari, Inc. Intercompany Claims**" means, collectively, the Atari Europe Atari Inc. Secured Claim, the Sponsor Atari, Inc. Secured Claim, and the Sponsor Management Fee Claim. |
| | (cc) | "**Sponsor Atari, Inc. Secured Claim**" means the secured claim of the Sponsor against Atari Inc. arising under that certain Credit Agreement, dated as of April 30, 2008, as amended, between Atari Inc. and Infogrames Entertainment S.A. and secured by the Blanket Lien. |
| | (dd) | "**Sponsor Interactive Intercompany Claim**" means the unsecured claim of the Sponsor against Interactive in the approximate amount of $252 million. |
| | (ee) | "**Sponsor Intercompany Claims**" means, collectively, the Sponsor Atari, Inc. Intercompany Claims and the Sponsor Interactive Intercompany Claim. |
| | (ff) | "**Sponsor Management Fee Claim**" means, the claim of the Sponsor against Atari, Inc. in the approximate amount of $16 million pursuant to that certain Management Agreement, effective as of April 1, 2010, among the Sponsor, Atari, Inc., Atari Europe, Eden S.A.S., Atari UK Publishing Ltd, and Cryptic. |
| | (gg) | "**Test Drive IP**" means that certain intellectual property known as the "Test Drive Unlimited" franchise. |
| | (hh) | "**Test Drive Lien**" means the lien on the Test Drive IP evidenced by a UCC-1 statement dated April 24, 2009, securing the Alden Facility. |

11

## <u>Schedule 1</u>

**Sponsor Analysis**

Schedule 1

Atari, Inc.
Sponsor Analysis
Sources and Uses of Cash at Effective Date
*$ in 000s*

| | | | Amount |
|---|---|---|---:|
| **I)** | **Sources:  Prior to Sponsor Funding** | | |
| | A) | Projected cash on hand at Effective Date | |
| | | From operations | $      2,538 |
| | | From Game sale proceeds | 5,051 |
| | B) | Accounts Receivable (collected after Effective Date) | - |
| | C) | RCT Cash Generated (collected after Effective Date) | - |
| | | Cash on hand at Effective Date | 7,589 |
| | | | |
| **II)** | **Uses:  Required funding on the effective date** | | |
| | A) | DIP Loan | |
| | | Principle Balance | 3,500 |
| | | Interest through Effective Date | 286 |
| | B) | Administrative Expenses | |
| | | Professional Fee Escrow | |
| | | Akin | 2,332 |
| | | Protiviti | 339 |
| | | Cooley | 691 |
| | | Duff | 218 |
| | | Bracewell | 308 |
| | | Perella | 1,150 |
| | | Allen & Overy - Plan | 250 |
| | | Allen & Overy - DS | 125 |
| | | Cure Costs - Atari Games | 122 |
| | | Cure Costs - Test Drive | 179 |
| | | Trade payables (paid after Effective Date) | - |
| | | Royalty payable to Atari SA (waived) | - |
| | | Administrative reserve - non-professionals | 100 |
| | | Tax preparation (paid after Effective Date) | - |
| | | D&O tail policy | 227 |
| | | Chairman compensation | 400 |
| | | Disbursing Agent | 50 |
| | C) | Priority Tax Claims | - |
| | D) | Priority Non-Tax claims (remaining loyalty) | 172 |
| | E) | General Unsecured Claims initial funding | 560 |
| | | Total Uses | 11,009 |
| | | Required Sponsorship Funding (max) | $      (3,419) |