AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Kristine G. Manoukian

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Scott L. Alberino (*Admitted Pro Hac Vice*)

*Attorneys for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ATARI, INC. et al.,[1] | ) | Case No. 13-10176 (JMP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF EXHIBITS TO PROPOSED DISCLOSURE STATEMENT**
**FOR THE DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on September 20, 2013, the above-captioned debtors and

debtors in possession (the "***Debtors***") and Atari, S.A. (together with the Debtors, the

"***Proponents***") filed the proposed disclosure statement (the "***Disclosure Statement***")[2] [Docket

No. 378] relating to the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the*

*Bankruptcy Code* (the "***Plan***") [Docket No. 379].

---

[1] The Debtors are Atari Inc., Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** on October 18, 2013 the Proponents filed (i) the Creditors' Committee Plan Support Letter, (ii) the Liquidation Analysis and (iii) the Financial Projections, which are **Exhibits B**, **C** and **D** to the Disclosure Statement, respectively (collectively, the "**Exhibits**").  The Exhibits are integral to and part of the Disclosure Statement. The Proponents reserve the right to alter, amend, update or modify any of the exhibits and information contained in the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Disclosure Statement has been scheduled for **October 29, 2013 at 10:00 a.m. (prevailing Eastern time)** before the Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, Room 601, New York, New York 10004 (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Statement, the Plan and the Exhibits are on file with the Clerk of the Bankruptcy Court and may be examined by interested parties at the Office of the Clerk of the Bankruptcy Court between the hours of 8:30 a.m. and 5:00 p.m., Monday through Friday.  These materials may also be downloaded by accessing the Bankruptcy Court's Electronic Case Filing System ("**ECF**"), which can be found on the Bankruptcy Court's official website (located at *www.nysb.uscourts.gov*).  A login and password are required to download materials from this website and can be obtained through the PACER Service Center (located at *www.pacer.psc.uscourts.gov*).  The Disclosure Statement, the Plan and the Exhibits can also be downloaded free of charge from the Debtors' case information website (located at *www.bmcgroup.com/atari*).  Copies of the Disclosure Statement, the Plan and the Exhibits may also be obtained from the Debtors' claims agent, BMC Group, Inc., Attention: Atari, Inc. Claims Processing, P.O. Box 3020, Chanhassen, MN 55317-3020, or by calling the Debtors' case information hotline at (888) 909-0100.

204055770 v2

New York, New York
Dated: October 18, 2013

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Ira S. Dizengoff*
      Ira S. Dizengoff
      Kristine G. Manoukian
      One Bryant Park
      New York, New York 10036
      Telephone:  (212) 872-1000
      Facsimile:   (212) 872-1002
      idizengoff@akingump.com
      kmanoukian@akingump.com

      Scott L. Alberino
      Robert S. Strauss Building
      1333 New Hampshire Avenue, N.W.
      Washington, DC  20036-1564
      Telephone:  (202) 887-4000
      Facsimile:   (202) 887-4288
      salberino@akingump.com

      *Attorneys for the Debtors and Debtors in Possession*

204055770 v2

**<u>Exhibit B to the Disclosure Statement</u>**



October 14, 2013

The General Unsecured Creditors
of Atari, Inc., et al.

**RE: Recommendation of Creditors' Committee in Favor of Chapter 11 Plan of
Reorganization**

Dear Creditor:

      The undersigned are counsel and financial advisors to the official committee of
unsecured creditors (the "<u>Committee</u>") of Atari, Inc. and its affiliated debtors and debtors-in-
possession (the "<u>Debtors</u>").  The Committee supports the Debtors' chapter 11 plan of
reorganization (the "<u>Plan</u>") and urges you to vote to accept the Plan.  Copies of the Plan and
related disclosure statement (the "<u>Disclosure Statement</u>") are being distributed to each holder of
a claim against the Debtors who is entitled to vote to accept or reject the Plan, along with a
ballot with which to cast its vote.

      Since its appointment on February 6, 2013, the Committee has participated in all
aspects of these bankruptcy cases, including the sale and marketing processes related to the
Debtors' assets.  In addition, the Committee has been integrally involved in negotiations with the
Debtors and Atari, S.A. (the "<u>Plan Sponsor</u>") regarding the Plan.  The Debtors' Plan
accomplishes several significant goals for the Committee's constituency, which consists of
vendors of goods, service providers and litigation claimants, including the following:

(i)      the Plan Sponsor, whose own claims against the Debtors will not be repaid under
the Debtors' Plan, agrees to make a cash contribution (the "<u>Sponsor Cash
Contribution</u>") in the amount of $3,419,000 in addition to contributing various non-
monetary consideration totaling an additional $1,749,000;

(ii)      a portion of the Sponsor Cash Contribution will be used to fund an initial
distribution to holders of allowed general unsecured claims in an amount equal to
the lesser of (a) 8% of such holder's allowed general unsecured claim and (b)
such holder's pro rata share of $560,000;

(iii)      the Sponsor also agrees to make a cash payment on the first anniversary of the
Effective Date to be distributed to holders of allowed general unsecured claims in
an amount equal to the lesser of (a) eight percent (8%) of such holder's allowed
general unsecured claim and (b) such holder's pro rata share of $560,000.00 (the
"<u>Second GUC Distribution</u>");

(iv)      the Sponsor also agrees to make a cash payment on the second anniversary of the
Effective Date to be distributed to holders of allowed general unsecured
claims in an amount equal to the lesser of (a) nine percent (9%) of such holder's
allowed general unsecured claim and (b) such holder's pro rata share of
$630,000.00 (the "<u>Third GUC Distribution</u>");



October 14, 2013
Page Two

(v)     in support of its obligations under the Plan to make the Second GUC Distribution and Third GUC Distribution, the Sponsor will enter into a promissory note secured by a first priority lien on all assets of the Reorganized Debtors;

(vi)    the Plan Sponsor has further agreed to fund $50,000 to the Committee Designee who will be responsible for making the Second GUC Distribution and the Third GUC Distribution as well as for monitoring and enforcing the obligations of the Reorganized Debtors under the Secured GUC Note;

(vii)   the Plan Sponsor has also agreed to waive any right to receive distributions on account of its intercompany claims totaling in excess of $260 million;

(viii)  the Reorganized Debtors and the Plan Sponsor agree <u>not</u> to pursue avoidance actions, including preference actions, against any current or former trade creditors; and

(ix)    rather than face a protracted and uncertain litigation over the validity, extent and priority of the liens and claims against the Debtors' estates held by the Plan Sponsor and other parties, unsecured creditors are guaranteed a distribution on account of their allowed claims as set forth above and more fully in the Plan.

The beneficial aspects of the Plan described above are fully contingent on acceptance of the Plan by the Debtors' general unsecured creditors. If the class of general unsecured creditors does not vote to accept the Plan, the Debtors and Plan Sponsor will preserve the ability to pursue avoidance actions against current and former vendors, and no amounts will be contributed to fund the distributions described above.

As a result of the Plan, the Reorganized Debtors' will retain Atari's classic intellectual property, among other assets not previously sold to third parties. In addition, if the Plan is approved, preference and other avoidance actions will not be pursued against the Debtors' current and former trade creditors, except as otherwise noted in the Plan. Finally, as stated above, the Plan Sponsor has agreed to fund distributions to general unsecured creditors. The Debtors believe that there were approximately $6.2 million in general unsecured claims outstanding as of the Petition Date, excluding potential duplicative claims. If the amount of general unsecured claims ultimately allowed is $7 million or less, then holders of allowed general unsecured claims will stand to receive distributions, over the course of the next 2 years, totaling approximately 25% of the allowed amount of such claims.

The Committee voted to support the Plan because it believes that acceptance of the Plan is in the best interests of the holders of general unsecured claims. The Committee concluded that the relief provided for in the Plan, including the meaningful distribution to unsecured creditors, represents a substantial improvement over the recovery that unsecured creditors might expect under chapter 7 of the Bankruptcy Code. **Accordingly, the Committee recommends that creditors vote in favor of the Plan by so indicating on the enclosed ballot.** However, you should make your own determination on whether to accept or reject the Plan after reading and giving careful consideration to both the Plan and Disclosure Statement, and in consultation with your own advisors and professionals.



October 14, 2013
Page Three

      In order to count, ballots must be returned to:

Via first class mail:

BMC Group, Inc.
Attn: Atari Claims Processing
P.O. Box 3020
Chanhassen, MN 55317-3020

and be received no later than **November 25, 2013 at 5:00 p.m. (prevailing Eastern Time).**

      If you have any questions, please contact the undersigned.

Very truly yours,

Counsel to the Committee

Cooley LLP

| Jay R. Indyke | Cathy Hershcopf | Jeffrey L. Cohen |
|---|---|---|
| jindyke@cooley.com | chershcopf@cooley.com | jochen@cooley.com |
| Tel. (212) 479-6080 | Tel. (212) 479-6138 | Tel. (212) 479-6218 |

Financial Advisor to the Committee

Duff & Phelps Securities, LLC

Brent Williams

Committee Members

Tom Gross, CDV Software Entertainment, USA, Inc.
Michal Nowakowski, CD Projeckt S.A.
Holly Newman, Liquid Entertainment
Sesha Devana, Tavant Technologies, Inc.

**<u>Exhibit C to the Disclosure Statement</u>**

Atari, Inc.
Hypothetical Liquidation Analysis as of the Effective Date

($000s)

| | Ref | Estimated Low Recovery Proceeds | | | | Estimated High Recovery Proceeds | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Atari, Inc. | Interactive | CUSH | Humongous | Atari, Inc. | Interactive | CUSH | Humongous |
| **I. Assets Available for Distribution** | | | | | | | | | |
| Humongous | | $ - | $ - | $ - | $ 900 | $ - | $ - | $ - | $ 900 |
| Backyard Sports | | - | - | - | 1,000 | - | - | - | 1,000 |
| Total Annihilation | | 960 | - | - | - | 960 | - | - | - |
| Battlezone | | - | 566 | - | - | - | 566 | - | - |
| Master of Orion | | - | 1,220 | - | - | - | 1,220 | - | - |
| Moonbase Commander | | 100 | - | - | - | 100 | - | - | - |
| Star Control | | 305 | - | - | - | 305 | - | - | - |
| Atari Classics | [1] | - | 4,000 | - | - | - | 5,600 | - | - |
| Test Drive Unlimited | [1] | 200 | - | - | - | 280 | - | - | - |
| Roller Coaster Tycoon | [1] | - | 800 | - | - | - | 1,120 | - | - |
| | | 1,565 | 6,586 | - | 1,900 | 1,645 | 8,506 | - | 1,900 |
| | | | | | | | | | |
| Cash | [2] | 2,955 | - | - | - | 2,955 | - | - | - |
| Accounts Receivable | [3] | 497 | - | - | - | 596 | - | - | - |
| PP&E | [4] | 9 | - | - | - | 18 | - | - | - |
| Amounts due from Insiders | [5] | - | - | - | - | 302 | - | - | - |
| Other Assets | | - | - | - | - | - | - | - | - |
| Total Assets b/f inter debtor admin claims | | 5,026 | 6,586 | - | 1,900 | 5,516 | 8,506 | - | 1,900 |
| | | | | | | | | | |
| *Allocation %* | | *37.2%* | *48.7%* | *0.0%* | *14.1%* | *34.6%* | *53.4%* | *0.0%* | *11.9%* |
| | | | | | | | | | |
| Add: Inter-debtor claim Prof. Fees | [6] | 1,856 | - | - | - | 1,931 | - | - | - |
| | | | | | | | | | |
| Less: Prospective Fees and Expenses (allocated) | | | | | | | | | |
| Disbursing Agent | | (19) | (24) | - | (7) | (17) | (27) | - | (6) |
| Chapter 7 Trustee Fees (3% of disbursements) | | (151) | (198) | - | (57) | (165) | (255) | - | (57) |
| Chapter 7 Fees and Wind-down costs: | | (930) | (1,219) | - | (352) | (520) | (801) | - | (179) |
| *Substantive Consolidation Litigation | | | | | | | | | |
| *Intercompany Claim Litigation | | | | | | | | | |
| *Secured Claim Litigation | | | | | | | | | |
| **Proceeds Available to Pay Secured Claims** | | **5,783** | **5,146** | **-** | **1,485** | **6,745** | **7,423** | **-** | **1,658** |
| | | | | | | | | | |
| **II. Secured Claims** | | | | | | | | | |
| Projected DIP Facility as of the Effective Date | [7] | 1,408 | 1,845 | - | 532 | 1,311 | 2,022 | - | 452 |
| Class 3 - Subordinate Lien - TDU Pledge | [8] | 200 | - | - | - | 280 | - | - | - |
| Atari Inc. Loan Payable to Atari SA | [9] | 4,958 | - | - | - | 4,958 | - | - | - |
| Atari Inc. Loan Payable to Atari Europe | [9] | 25,351 | - | - | - | 25,351 | - | - | - |
| | | 31,917 | 1,845 | - | 532 | 31,900 | 2,022 | - | 452 |
| **Proceeds Available to Pay Admin. Claims** | | **-** | **3,301** | **-** | **952** | **-** | **5,401** | **-** | **1,206** |
| | | | | | | | | | |
| **III. Administrative Claims** | | | | | | | | | |
| Professional Fees (unpaid as of effective date) | [10] | 1,874 | 2,456 | - | 708 | 1,745 | 2,691 | - | 601 |
| Inter-debtor Prof. Fees (paid - post peition) | | - | 1,440 | - | 416 | - | 1,579 | - | 353 |
| Chairman Compensation | [11] | 149 | 195 | - | 56 | 139 | 214 | - | 48 |
| | | 2,023 | 4,091 | - | 1,180 | 1,884 | 4,484 | - | 1,002 |
| | | | | | | | | | |
| **IV Priority Claims** | | | | | | | | | |
| Class 1 - Loyalty Payments | [12] | 64 | 83 | - | 24 | 59 | 91 | - | 20 |
| Class 2 - Secured Tax Claim | | 1 | 2 | - | 1 | 1 | 2 | - | 0 |
| | | 65 | 85 | - | 25 | 60 | 93 | - | 21 |
| **Proceeds Available to Pay Unsecured Claims** | | **-** | **-** | **-** | **-** | **-** | **824** | **-** | **184** |
| | | | | | | | | | |
| **V. General Unsecured Claims** | | | | | | | | | |
| Atari SA Intercompany | | 16,410 | 261,844 | 824 | - | 16,410 | 261,844 | 824 | - |
| Atari Europe Intercompany | | - | - | - | 17 | - | - | - | 17 |
| Atari Inc. Intercompany | | - | - | - | 1,903 | - | - | - | 1,903 |
| Atari Interactive Intercompany | | 2,755 | - | - | 14,176 | 2,755 | - | - | 14,176 |
| Humongous Intercompany | | - | - | 2,876 | - | - | - | 2,876 | - |
| CUSH Intercompany | | 178 | 186 | - | - | 178 | 186 | - | - |
| Other Trade Claims | | 4,013 | 728 | - | 30 | 4,013 | 728 | - | 30 |
| Contract Rejection Claims | | TBD | TBD | TBD | TBD | TBD | TBD | TBD | TBD |
| | | 23,356 | 262,757 | 3,699 | 16,125 | 23,356 | 262,757 | 3,699 | 16,125 |
| **Return to Unsecured Creditors** | | **0%** | **0%** | **0%** | **0%** | **0%** | **0%** | **0%** | **1%** |

**Liquidation Analysis** *(continued)*
Explanatory Footnotes

[1]     **Remaining Game Franchises** - The Debtors attempted to liquidate the remaining three game franchises (Rollercoaster Tycoon ("RCT"), Test Drive Unlimited ("TDU") and Atari Classics ("Classics")) in an orderly auction process which concluded in July 2013.  Ultimately, the Debtors received no qualified bids for the assets.

If these assets were re-marketed and liquidated by a chapter 7 trustee, after several months without product development or marketing support, the Debtors (and its advisors) anticipate that the liquidation proceeds would be less than half of the previously  established minimum bids.  A $5.0 - $7.0 million placeholder value has been incorporated into the liquidation analysis for illustrative purposes only. The Debtors emphasize that no credible estimate of liquidation proceeds would result in a return to creditors that exceeds the 25% payout under the proposed plan.

[2]     **Cash** - Projected cash balance held at Atari, Inc. as of the Effective Date, excluding the auction proceeds of the seven game titles (asset groups) sold in July 2013.  Cash balance reflects the September 2013 payment of the professional fee holdback amounts (through April) and the management incentive plan payments.

[3]     **Accounts Receivable** - Estimated digital segment accounts receivable as of the Effective Date. Adjusted amounts reflect the impact of a chapter 7 conversion and the discounts taken if the receivables portfolio were sold to a collection agency.

[4]     **Property, Plant, & Equipment** - Book value of miscellaneous office equipment and computer hardware as of the Effective Date.  Assets are located in four Atari, Inc. facilities and are mostly comprised of desks, office cubes, filing cabinets and computers.  Auction proceeds are estimated between 5% and 10% of book value (net of disposal cost for unsold equipment.)

[5]     **Amounts Due from Insiders** - Reflect book value amounts due from Atari SA and Atari Europe.  All amounts due from Atari SA and Atari Europe are uncollectable in a chapter 7 scenario because the amounts would be offset by the significant obligations due from the Debtor.  Specifically, Atari SA and Atari Europe together have over $30 million in secured claims and $300 million in unsecured claims.

[6]     **Inter-Debtor Professional Fee Claim** - Atari, Inc. has made payments for post-petition professional fees on behalf of the other three Debtor estates.  In a chapter 7 scenario, Atari, Inc. would have an inter-Debtor claim against the other Debtors for the ratable portion of the professional fee payments.  The allocation is determined by the total assets held in each Debtor estate.

[7]     **DIP Loan** - The projected DIP Loan balance as of the Effective Date includes a principal balance of $3.5 million and accrued interest of $286 thousand.  The DIP Loan is secured by substantially all assets of the Debtors and is paid ratably based on the total assets held in each estate.

[8]     **TDU Pledge** - The Sponsor and its European subsidiary, Atari Europe, are guarantor and borrower, respectively, under that certain Credit Facility Agreement with Banc of America Securities Limited dated April 21, 2006, as amended from time to time (the "Secured Credit Facility"). In 2009, the Secured Credit Facility was assigned to BlueBay Value (Master) Fund Limited, which, together with an affiliated fund (collectively, "BlueBay"), were the largest shareholders of the Sponsor on a fully diluted basis. On February 5, 2013, Alden Global Capital, on behalf of Alden, entered into an agreement with BlueBay to acquire the Secured Credit Facility and certain remaining mandatory convertible debt instruments issued by the Sponsor. Borrowings of approximately 24 million Euro, in principal amount, are currently outstanding under the Secured Credit Facility.

**Liquidation Analysis** *(continued)*
Explanatory Footnotes Continued

[9]     **Atari SA and Atari Europe Secured Debt** - Atari, Inc. and the Sponsor are parties to that certain Credit
Agreement, dated as of April 30, 2008, originally between Atari, Inc. and Infogrames Entertainment S.A.
(the "Sponsor Credit Agreement"), pursuant to which the Sponsor made loans to Atari, Inc. directly or
through a domestic or French affiliate. Amounts currently outstanding under the Sponsor Credit
Agreement include (i) approximately $4.9 million owed to the Sponsor and (ii) approximately $25.3 million
owed to Atari Europe. The obligations of Atari, Inc. under the Sponsor Credit Agreement are secured by all
assets of Atari, Inc. other than the Test Drive IP.

[10]    **Professional Fees** - Projected amounts outstanding for the period beginning May 1, 2013 through the
Effective Date. Assumes holdback amounts through April 30, 2013 are paid prior to Effective Date and that
outstanding balances are paid ratably by each estate.

[11]    **Chairman Compensation** - Reflects accrued monthly compensation due to the Chairman of the Board
paid ratably based on the total assets held in each estate.

[12]    **Loyalty Payments** - Estimated amount of the court-approved loyalty payments (and unused vacation)
outstanding to non-management employees as of the Effective Date.

**<u>Exhibit D to the Disclosure Statement</u>**

Exhibit D

**Atari, Inc.**
Consolidated Financial Projections
For the Two-Year Period Beginning as of the Effective Date
*$ in 000s*

|  | Effective Date | Year 1 | Year 2 |
|---|---|---|---|
| **I. Sources of Cash** | | | |
| Beginning Cash | $    2,955 | $    417 | $    1,769 |
| Game sale proceeds | 5,051 | - | - |
| Sponsor Funding | 3,419 | - | - |
| Accounts Receivable | - | 662 | - |
| RCT Cash Generated | - | 344 | - |
| Cash Receipts from Operations | - | 6,804 | 6,007 |
| Cash on hand at effective date | 11,425 | 8,225 | 7,776 |
| **II)    Uses:  Required funding** | | | |
| Operating Disbursements [1] | - | 5,247 | 5,137 |
| DIP Loan | 3,786 | - | - |
| Professional Fees | 5,413 | - | - |
| Cure Costs | 301 | - | - |
| Administrative reserve - non-professionals | 100 | - | - |
| Trade payables - Post petition | - | 500 | - |
| Tax preparation | - | 150 | - |
| D&O tail policy | 227 | - | - |
| Chairman fee | 400 | - | - |
| Disbursing Agent | 50 | - | - |
| Priority Tax Claims | - | - | - |
| Priority Non-Tax claims (remaining loyalty) | 172 | - | - |
| General Unsecured Claims | 560 | 560 | 630 |
| Total Uses | 11,009 | 6,457 | 5,767 |
| Ending Cash | $    417 | $    1,769 | $    2,009 |

[1]    Annual operating disbursements include a $1.0 million per year management fee payable to the Plan Sponsor which may be
        deferred to enhance feasibility of the Plan.