AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Kristine G. Manoukian

Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
Scott L. Alberino *(Admitted Pro Hac Vice)*

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATARI, INC., *et al.*, | ) | Case No. 13-10176 (JMP) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF PLAN SUPPLEMENT TO THE DEBTORS' JOINT PLAN OF**
**REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE THAT** on September 20, 2013, the Debtors filed the *Debtors'*

*Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 379] (as

amended, supplemented or modified from time to time, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on November 27, 2013, in accordance

with and pursuant to the Plan, the Debtors filed the plan supplement (the "Plan Supplement")

containing the following: (a) the forms of the Postconfirmation Organizational Documents

(Exhibit A); (b) the form of the Secured GUC Note (Exhibit B); (c) the disclosure of the

---

[1] The "***Debtors***" are: Atari, Inc.; Atari Interactive, Inc.; Humongous, Inc.; and California U.S. Holdings, Inc.
[2] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

Committee Designee and the terms of the Committee Designee's engagement (Exhibit C); (d) disclosure of the initial officers and directors of the Reorganized Debtors (Exhibit D); and (e) the schedule of the Executory Contracts and unexpired leases to be assumed and the applicable proposed Cure Amounts (Exhibit E).

**PLEASE TAKE FURTHER NOTICE** that, subject to the terms of the Plan, the Debtors, with the consent of the Sponsor, reserve the right to supplement and amend the Plan Supplement, and each of the documents contained therein and attached hereto.

**PLEASE TAKE FURTHER NOTICE THAT** a copy of the Plan Supplement (including Exhibits A through E hereto), the Plan, or related documents may be obtained upon request by (a) writing to BMC Group, Inc., Attn.:  Atari Claims Processing, PO BOX 3020, Chanhassen, MN 55317-3020, (b) calling the Debtors' bankruptcy hotline at (888) 909-0100 or (c) visiting the Debtors' bankruptcy website at www.bmcgroup.com/atari, or for a fee via PACER at https://ecf.nysb.uscourts.gov.

New York, New York                                AKIN GUMP STRAUSS HAUER & FELD LLP
Dated:  November 27, 2013

                                                        By:  */s/ Ira S. Dizengoff*
                                                              Ira S. Dizengoff
                                                              Kristine G. Manoukian
                                                              One Bryant Park
                                                              New York, New York 10036
                                                              Telephone:  (212) 872-1000
                                                              Facsimile:   (212) 872-1002
                                                              idizengoff@akingump.com
                                                              kmanoukian@akingump.com

                                                              Scott L. Alberino
                                                              Robert S. Strauss Building
                                                              1333 New Hampshire Avenue, N.W.
                                                              Washington, DC 20036-1564
                                                              Telephone:  (202) 887-4000
                                                              Facsimile:   (202) 887-4288
                                                              salberino@akingump.com

                                                        *Counsel to the Debtors and Debtors in Possession*

105297077 v2

## Exhibit A

**Forms of the Postconfirmation Organizational Documents**

<u>**Exhibit A-1**</u>

**Form of Second Amended and Restated Certificate of Incorporation of Atari, Inc.**

# SECOND AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

## ATARI, INC.

Atari, Inc. (the "Existing Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware ("DGCL"), hereby certifies as follows:

1.  The name of the Existing Corporation is Atari, Inc.

2.  The certificate of incorporation of the Existing Corporation was originally filed in the office of the Secretary of State of the State of Delaware on September 1, 1992, under the name of "GT Software Corporation", and which certificate was later restated on April 22, 2010 (the "Restated Certificate of Incorporation").

3.  This Second Amended and Restated Certificate of Incorporation amends and restates in its entirety the Amended and Restated Certificate of Incorporation of the Existing Corporation, as in effect on the date hereof.

4.  On [ ], 2013, the Existing Corporation filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.  This Second Amended and Restated Certificate of Incorporation has been deemed approved without the need for board of directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Joint Chapter 11 Plan of Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

6.  This Second Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by an officer of the Existing Corporation designed by order of the Bankruptcy Court in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.  The text of the Restated Certificate of Incorporation is hereby amended and restated in its entirety to read as follows:

FIRST: The name of the corporation is Atari, Inc. (the "Corporation").

SECOND:    The address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801, county of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

THIRD:        The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

FOURTH: The total number of shares that the Corporation is authorized to issue is 100 shares of common stock, $0.01 par value per share.

FIFTH:        The board of directors of the Corporation is expressly authorized to adopt, amend or repeal bylaws of the Corporation.

SIXTH:        The liability of the directors and stockholders of the Corporation for monetary damages shall be eliminated to the fullest extent permitted by law.  The Corporation is authorized to indemnify (and advance expenses to) its directors and officers to the fullest extent permitted by law.  Neither the amendment, modification or repeal of this Article nor the adoption of any provisions in this Certificate of Incorporation inconsistent with this Article shall adversely affect any right or protection of a director or officer of the Corporation with respect to any act or omission that occurred prior to the time of such amendment, modification, repeal or adoption.

SEVENTH:   Elections of directors need not be by written ballot unless the bylaws of the Corporation shall so provide.

EIGHTH:      The stockholders of the Corporation may remove directors without cause.

NINTH:       Subject to further amendment of this Second Amended and Restated Certificate of Incorporation of the Corporation, as provided by applicable law, the Corporation shall not issue any non-voting equity securities in violation of section 1123(a)(6) of the Bankruptcy Code.

<u>**Exhibit A-2**</u>

**Form of Second Amended and Restated By-Laws of Atari, Inc.**

# SECOND AMENDED AND RESTATED

## BY-LAWS OF

## ATARI, INC.

ARTICLE I

Stockholders

SECTION 1.  Annual Meeting.  The annual meeting of stockholders shall be held at the

hour, date and place within or without the United States which is fixed by the Board of Directors

or an officer designated by the Board of Directors, which time, date and place may subsequently

be changed at any time by vote of the Board of Directors. If no annual meeting has been held for

a period of thirteen months after the Corporation's last annual meeting of stockholders, a special

meeting in lieu thereof may be held if called as provided in these By-Laws, and such special

meeting shall have, for the purposes of these By- Laws or otherwise, all the force and effect of an

annual meeting. Any and all references hereafter in these By-Laws to an annual meeting or

annual meetings also shall be deemed to refer to any special meeting(s) in lieu thereof.

SECTION 2.  Matters to be Considered at Annual Meetings.  At any annual meeting of

stockholders or any special meeting in lieu of annual meeting of stockholders (the "Annual

Meeting" ), only such business shall be conducted, and only such proposals shall be acted upon

as shall have been properly brought before such Annual Meeting.  To be considered as properly

brought before an Annual Meeting, business must be:  (a) specified in the notice of meeting, (b)

otherwise properly brought before the meeting by, or at the direction of, the Board of Directors,

or (c) otherwise properly brought before the meeting by any holder of record (both as of the time

notice of such proposal is given by the stock- holder as set forth below and as of the record date for the Annual Meeting in question} of any shares of capital stock of the Corporation entitled to vote at such Annual Meeting on such business who complies with the requirements set forth in this Section 2.

In addition to any other applicable requirements, for business to be properly brought before an Annual Meeting by a stockholder of record of any shares of capital stock entitled to vote at such Annual Meeting, such stockholder shall:  (i) give timely notice as required by this Section 2 to the Secretary of the Corporation, and (ii) be present at such meeting, either in person or by a representative.  For the first Annual Meeting following the initial public offering of common stock of the Corporation, a stockholder's notice shall be timely if delivered to, or mailed to and received by, the Corporation at its principal executive office not later than the close of business on the later of (A) the 75th day prior to the scheduled date of such Annual Meeting or (B) the 15th day following the day on which public announcement of the date of such Annual Meeting is first made by the Corporation.  For all subsequent Annual Meetings, a stockholder's notice shall be timely if delivered to, or mailed to and received by, the Corporation at its principal executive office not less than 75 days nor more than 120 days prior to the anniversary date of the immediately preceding Annual Meeting (the "Anniversary Date" );  provided, however, that in the event the Annual Meeting is scheduled to be held on a date more than 30 days before the Anniversary Date or more than 60 days after the Anniversary Date, a stockholder's notice shall be timely if delivered to, or mailed to and received by, the Corporation at its principal executive office not later than the close of business on the later of (A) the 75th day prior to the scheduled date of such Annual Meeting, or {B) the 15th day following the day on which public announcement of the date of such Annual Meeting is first made by the Corporation.

2

For purposes of these By-Laws, "public announcement" shall mean: (i) disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service, {ii} a report or other document filed publicly with the Securities and Exchange Commission {including, without limitation, a Form 8-K), or {iii} a letter or report sent to stockholders of record of the Corporation at the close of business on the day of the mailing of such letter or report.

A stockholder's notice to the Secretary shall set forth as to each matter proposed to be brought before an Annual Meeting: (i) a brief description of the business the stockholder desires to bring before such Annual Meeting and the reasons for conducting such business at such Annual Meeting, (ii) the name and address, as they appear on the Corporation's stock transfer books, of the stockholder proposing such business, (iii) the class and number of shares of the Corporation's capital stock beneficially owned by the stockholder proposing such business, (iv) the names and addresses of the beneficial owners, if any, of any capital stock of the Corporation registered in such stockholder's name on such books, and the class and number of shares of the Corporation's capital stock beneficially owned by such beneficial owners, (v) the names and addresses of other stockholders known by the stockholder proposing such business to support such proposal, and the class and number of shares of the Corporation's capital stock beneficially owned by such other stockholders, and (vi) any material interest of the stockholder proposing to bring such business before such meeting (or any other stockholders known to be supporting such proposal) in such proposal.

If the Board of Directors or a designated committee thereof determines that any stockholder proposal was not made in a timely fashion in accordance with the provisions of this Section 2 or that the information provided in a stockholder's notice does not satisfy the

information requirements of this Section 2 in any material respect, such proposal shall not be presented for action at the Annual Meeting in question. If neither the Board of Directors nor such committee makes a determination as to the validity of any stockholder proposal in the manner set forth above, the presiding officer of the Annual Meeting shall determine whether the stockholder proposal was made in accordance with the terms of this Section 2. If the presiding officer determines that any stockholder proposal was not made in a timely fashion in accordance with the provisions of this Section 2 or that the information provided in a stockholder's notice does not satisfy the information requirements of this Section 2 in any material respect, such proposal shall not be presented for action at the Annual Meeting in question. If the Board of Directors, a designated committee thereof or the presiding officer determines that a stockholder proposal was made in accordance with the requirements of this Section 2, the presiding officer shall so declare at the Annual Meeting and ballots shall be provided for use at the meeting with respect to such proposal.

Notwithstanding the foregoing provisions of these By-Laws, a stockholder shall also comply with all applicable requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act" ), and the rules and regulations thereunder with respect to the matters set forth in this By-Law, and nothing in this By-Law shall be deemed to affect any rights of stockholders to request inclusion of proposals in the Corporation's proxy statement, or the Corporation's right to refuse inclusion thereof, pursuant to Rule 14a-B under the Exchange Act.

SECTION 3. <u>Special Meetings</u>. Except as otherwise required by law and subject to the rights, if any, of the holders of any one or more series of preferred stock, special meetings of the stockholders of the Corporation may be called only by the Chairman of the Board, the President

of the Corporation or the Board of Directors pursuant to a resolution approved by the affirmative

vote of a majority of the Directors then in office.

SECTION 4.    Matters to be Considered at Special Meetings.    Only those matters set

forth in the notice of the special meeting may be considered or acted upon at a special meeting of

stockholders of the Corporation, unless otherwise provided by law.

SECTION 5.    Notice of Meetings; Adjournments.    A written notice of all Annual

Meetings stating the hour, date and place of such Annual Meetings shall be given by the

Secretary (or other person authorized by these By-Laws or by law) not less than 10 days nor

more than 60 days before the Annual Meeting, to each stockholder entitled to vote thereat and to

each stockholder who, by law or under the Amended and Restated Certificate of Incorporation of

the Corporation ("Certificate of Incorporation" ) or under these By-Laws, is entitled to such

notice, by delivering such notice to him or by mailing it, postage prepaid, addressed to such

stockholder at the address of such stockholder as it appears on the Corporation's stock transfer

books.    Such notice shall be deemed to be delivered when hand delivered to such address or

deposited in the mail so addressed, with postage prepaid.

Notice of all special meetings of stockholders shall be given in the same manner as

provided for Annual Meetings, except that the written notice of all special meetings shall state

the purpose or purposes for which the meeting has been called.

Notice of an Annual Meeting or special meeting of stockholders need not be given to a

stockholder if a written waiver of notice is signed before or after such meeting by such

stockholder or if such stockholder attends such meeting, unless such attendance was for the

express purpose of objecting at the beginning of the meeting to the transaction of any business

5

because the meeting was not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any Annual Meeting or special meeting of stockholders need be specified in any written waiver of notice.

The Board of Directors may postpone and reschedule any previously scheduled Annual Meeting or special meeting of stockholders and any record date with respect thereto, regardless of whether any notice or public disclosure with respect to any such meeting has been sent or made pursuant to Section 2 of this Article I or Section 3 of Article II of these By-Laws or otherwise. In no event shall the public announcement of an adjournment, postponement or rescheduling of any previously scheduled meeting of stockholders commence a new time period for the giving of a stockholder's notice under Section 2 of this Article I or Section 3 of Article II of these By-Laws.

When any meeting is convened, the presiding officer may adjourn the meeting if (a) no quorum is present for the transaction of business, (b) the Board of Directors determines that adjournment is necessary or appropriate to enable the stockholders to consider fully information which the Board of Directors determines has not been made sufficiently or timely available to stockholders, or (c) the Board of Directors determines that adjournment is otherwise in the best interests of the Corporation. When any Annual Meeting or special meeting of stockholders is adjourned to another hour, date or place, notice need not be given of the adjourned meeting other than an announcement at the meeting at which the adjournment is taken of the hour, date and place to which the meeting is adjourned, provided, however, that if the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote

6

threat and each stockholder who, by law or under the Corporation's Amended and Restated Certificate of Incorporation or these By-Laws, is entitled to such notice.

SECTION 6.  Quorum.  The holders of shares of voting stock representing a majority of the voting power of the outstanding shares of voting stock issued, outstanding and entitled to vote at a meeting of stockholders, represented in person or by proxy at such meeting, shall constitute a quorum; but if less than a quorum is present at a meeting, the holders of voting stock representing a majority of the voting power present at the meeting or the presiding officer may adjourn the meeting from time to time, and the meeting may be held as adjourned without further notice, except as provided in Section 5 of this Article I.  At such adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally noticed. The stockholders present at a duly constituted meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

SECTION 7.  Voting and Proxies.  Stockholders shall have one vote for each share of stock entitled to vote owned by them of record according to the books of the Corporation, unless otherwise provided by law or by the Certificate of Incorporation. Stockholders may vote either in person or by written proxy, but no proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.  Proxies shall be filed with the Secretary of the meeting before being voted.  Except as otherwise limited therein or as otherwise provided by law, proxies shall entitle the persons authorized thereby to vote at any adjournment of such meeting.  A proxy with respect to stock held in the name of two or more persons shall be valid if executed by or on behalf of any one of them unless at or prior to the exercise of the proxy the Corporation receives a specific written notice to the contrary from any one of them.  A proxy

7

purporting to be executed by or on behalf of a stockholder shall be deemed valid, and the burden of proving invalidity shall rest on the challenger.

SECTION 8.   <u>Action at Meeting</u>.   When a quorum is present, any matter before any meeting of stockholders shall be decided by the vote of a majority of the voting power of shares of voting stock, present in person or represented by proxy at such meeting and entitled to vote on such matter, except where a larger vote is required by law, by the Certificate of Incorporation or by these By-Laws.  Any election by stockholders shall be determined by a plurality of the votes cast, except where a larger vote is required by law, by the Certificate of Incorporation or by these By-Laws.  The Corporation shall not directly or indirectly vote any shares of its own stock; provided, however, that the Corporation may vote shares which it holds in a fiduciary capacity to the extent permitted by law.

SECTION 9.   <u>Stockholder Lists</u>.   The Secretary (or the Corporation's transfer agent or other person authorized by these By-Laws or by law) shall prepare and make, at least 10 days before every Annual Meeting or special meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least 10 days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the hour, date and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

SECTION 10.    <u>Presiding Officer</u>.  The Chairman of the Board or, in his absence, such other officer as shall be designated by the Board of Directors shall preside at all Annual Meetings or special meetings of stockholders and shall have the power, among other things, to adjourn such meeting at any time and from time to time, subject to Sections 5 and 6 of this Article I.  The order of business and all other matters of procedure at any meeting of the stockholders shall be determined by the presiding officer.

SECTION 11.    <u>Voting Procedures and Inspectors of Elections</u>.  The Corporation shall, in advance of, or at, any meeting of stockholders, appoint one or more inspectors to act at the meeting and make a written report thereof.  The Corporation may designate one or more persons as alternate inspectors to replace any inspector who fails to act.  If no inspector or alternate is able to act at a meeting of stockholders, the presiding officer shall appoint one or more inspectors to act at the meeting.  Any inspector may, but need not, be an officer, employee or agent of the Corporation.  Each inspector, before entering upon the discharge of his duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.  The inspectors shall perform such duties as are required by the General Corporation Law of the State of Delaware, as amended from time to time, including the counting of all votes and ballots.  The inspectors may appoint or retain other persons or entities to assist the inspectors in the performance of the duties of the inspectors. The presiding officer may review all determinations made by the inspector(s), and in so doing the presiding officer shall be entitled to exercise his or her sole judgment and discretion and he or she shall not be bound by any determinations made by the inspector(s).  All determinations by the inspector(s) and, if applicable, the presiding officer shall be subject to further review by any court of competent jurisdiction.

ARTICLE II

Directors

SECTION 1.   Powers.   The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors except as otherwise provided by the Certificate of Incorporation or required by law.

SECTION 2.   Number and Terms.   The number of Directors of the Corporation shall not be less than 4 nor more than 15 (plus such number of Directors, if any, who may be elected by the holders of any series of preferred stock), and subject to such limits shall be fixed by resolution duly adopted from time to time by the Board of Directors.

The Directors, other than those who may be elected by the holders of any series of preferred stock, shall be classified, with respect to the term for which they severally hold office, into three classes, as nearly equal in number as possible.  One class of Directors shall be initially elected for a term expiring at the Annual Meeting to be held in 1996, another class shall be initially elected for a term expiring at the Annual Meeting to be held in 1997, and another class shall be initially elected for a term expiring at the Annual Meeting to be held in 1998.  Members of each class shall hold office until their successors are duly elected and qualified or until their earlier death, disqualification, resignation or removal.  At each succeeding Annual Meeting, the successors of the class of Directors whose term expires at that meeting shall be elected by a plurality vote of all votes cast at such meeting to hold office for a term expiring at the Annual Meeting held in the third year following the year of their election.

SECTION 3.   Director Nominations.    Nominations of candidates for election as Directors of the Corporation at any Annual Meeting may be made only (a) by, or at the direction

of, the Board of Directors or (b) by any holder of record (both as of the time notice of such nomination is given by the stockholder as set forth below and as of the record date for the Annual Meeting in question) of any shares of the capital stock of the Corporation entitled to vote for the election of Directors at such Annual Meeting who complies with the timing, informational and other requirements set forth in this Section 3. Any stockholder who seeks to make such a nomination or his representative must be present in person at the Annual Meeting.

Only persons nominated in accordance with the procedures set forth in this Section 3 shall be eligible for election as Directors at an Annual Meeting.

Nominations, other than those made by, or at the direction of, the Board of Directors, shall be made pursuant to timely notice in writing to the Secretary of the Corporation as set forth in this Section 3. For the first Annual Meeting following the initial public offering of the common stock of the Corporation, a stockholder's notice shall be timely if delivered to, or mailed to and received by, the Corporation at its principal executive office not later than the close of business on the later of (A) the 75th day prior to the scheduled date of such. Annual Meeting or (B) the 15th day following the day on which public announcement of the date of such Annual Meeting is first made by the Corporation. For all subsequent Annual Meetings, a stockholder's notice shall be timely if delivered to, or mailed to and received by, the Corporation at its principal executive office not less than 75 days nor more than 120 days prior to the Anniversary Date; provided, however, that in the event the Annual Meeting is scheduled to be held on a date more than 30 days before the Anniversary Date or more than 60 days after the Anniversary Date, a stockholder's notice shall be timely if delivered to, or mailed and received by, the Corporation at its principal executive office not later than the close of business on the later of (i} the 75th day

11

prior to the scheduled date of such Annual Meeting or (ii) the 15th day following the day on which public announcement of the date of such Annual Meeting is first made by the Corporation.

A stockholder's notice to the Secretary shall set forth as to each person whom the stockholder proposes to nominate for election or re-election as a Director: (i) the name, age, business address and residence address of such person, (ii) the principal occupation or employment of such person, (iii) the class and number of shares of the Corporation's capital stock which are beneficially owned by such person on the date of such stockholder notice, (iv) the consent of each nominee to serve as a Director if elected, and (v) such information concerning such person as is required to be disclosed concerning a nominee for election as Director of the Corporation pursuant to the rules and regulations under the Exchange Act.  A stockholder's notice to the Secretary shall further set forth as to the stockholder giving such notice: (i) the name and address, as they appear on the Corporation's stock transfer books, of such stockholder and of the beneficial owners (if any) of the Corporation's capital stock registered in such stockholder's name and the name and address of other stockholders known by such stockholder to be supporting such nominee(s), (ii) the class and number of shares of the Corporation's capital stock which are held of record, beneficially owned or represented by proxy by such stockholder and by any other stockholders known by such stockholder to be supporting such nominee(s) on the record date for the Annual Meeting in question (if such date shall then have been made publicly available) and on the date of such stock-holder's notice, and (iii) a description of all arrangements or understandings between such stockholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by such stockholder or in connection therewith.

12

If the Board of Directors or a designated committee thereof determines that any stockholder nomination was not timely made in accordance with the terms of this Section 3 or that the information provided in a stockholder's notice does not satisfy the informational requirements of this Section 3 in any material respect, then such nomination shall not be considered at the Annual Meeting in question.  If neither the Board of Directors nor such committee makes a determination as to whether a nomination was made in accordance with the provisions of this Section 3, the presiding officer of the Annual Meeting shall determine whether a nomination was made in accordance with such provisions.  If the presiding officer determines that any stockholder nomination was not timely made in accordance with the terms of this Section 3 or that the information provided in a stockholder's notice does not satisfy the informational requirements of this Section 3 in any material respect, then such nomination shall not be considered at the Annual Meeting in question.  If the Board of Directors, designated committee thereof or the presiding officer determines that a nomination was made in accordance with the terms of this Section 3, the presiding officer shall so declare at the Annual Meeting and such nominee shall be eligible for election at the meeting.

No person shall be elected by the stockholders as a Director of the Corporation unless nominated in accordance with the procedures set forth in this Section.  Election of Directors at the Annual Meeting need not be by written ballot, unless otherwise provided by the Board of Directors or the presiding officer at such Annual Meeting.  If written ballots are to be used, ballots bearing the names of all the persons who have been nominated for election as Directors at the Annual Meeting in accordance with the procedures set forth in this Section shall be provided for use at the Annual Meeting.

SECTION 4.  Qualification.  No Director need be a stockholder of the Corporation.

13

SECTION 5.  <u>Vacancies</u>.  Except as otherwise fixed pursuant to the provisions of Article IV of the Certificate of Incorporation relating to the rights of the holders of any one or more series of preferred stock to elect Directors, any and all vacancies occurring on the Board of Directors, including, without limitation, any vacancy created by reason of an increase in the number of Directors, or resulting from death, resignation, disqualification, removal or other causes, may be filled by the affirmative vote of a majority of the remaining Directors then in office, even if such remaining Directors constitute less than a quorum of the Board of Directors, or if such vacancy is not so filled by the remaining Directors, by the stockholders of the Corporation.  Any Director appointed or elected in accordance with the preceding sentence shall hold office for the remainder of the full term of the class of Directors in which the new directorship was created or the vacancy occurred and until such Director's successor shall have been duly elected and qualified or until his or her earlier death, disqualification, resignation or removal.  When the number of Directors is increased or decreased, the Board of Directors shall determine the class or classes to which the increased or decreased number of Directors shall be apportioned; provided, however, that no decrease in the number of Directors shall shorten the term of any incumbent Director unless such Director is removed as permitted in the Certificate of Incorporation. In the event of a vacancy in the Board of Directors, the remaining Directors, except as otherwise provided by law, may exercise the powers of the full Board of Directors until the vacancy is filled.

SECTION 6.  <u>Removal</u>.  Directors may be removed from office in the manner provided in the Certificate of Incorporation.

14

SECTION 7.   _Resignation._   A Director may resign at any time by giving written notice to the Chairman of the Board, the President or the Secretary.   A resignation shall be effective upon receipt, unless the resignation otherwise provides.

SECTION 8.   _Regular Meetings._   The regular annual meeting of the Board of Directors shall be held, without notice- other than this By-Law, on the same date and at the same place as the Annual Meeting following the close of such meeting of stockholders. Other regular meetings of the Board of Directors may be held at such hour, date and place as the Board of Directors may by resolution from time to time determine without notice other than such resolution.

SECTION 9.   _Special Meetings._   Special meetings of the Board of Directors may be called, orally or in writing, by or at the request of a majority of the Directors then in office, the Chairman of the Board or the President.   The person calling any such special meeting of the Board of Directors may fix the hour, date and place thereof.

SECTION 10.   _Notice of Meetings._   Notice of the hour, date and place of all special meetings of the Board of Directors shall be given to each Director by the Secretary or the person calling such meeting, or in case of the death, absence, incapacity or refusal of such person, by the President or such other officer as shall be designated by the Board of Directors.   Notice of any special meeting of the Board of Directors shall be given to each Director in person, by telephone, or by telex, telecopy telegram, or other written form of electronic communication, sent to his business or home address, at least 24 hours in advance of the meeting, or by written notice sent by next-day delivery courier service to his business or home address, at least 48 hours in advance of the meeting.   Such notice shall be deemed to be delivered when hand delivered to such address, read to such Director by telephone, deposited in the mail so addressed, with postage

15

thereon prepaid if mailed, dispatched or transmitted if telexed or telecopied, or when delivered to the telegraph company if sent by telegram.

When any Board of Directors meeting, either regular or special, is adjourned for 30 days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  It shall not be necessary to give any notice of the hour, date or place of any meeting adjourned for less than 30 days or of the business to be transacted thereat, other than an announcement at the meeting at which such adjournment is taken of the hour, date and place to which the meeting is adjourned.

A written waiver of notice signed before or after a meeting by a Director and filed with the records of the meeting shall be deemed to be equivalent to notice of the meeting.  The attendance of a Director at a meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because such meeting is not lawfully called or convened.  Except as otherwise required by law, by the Certificate of Incorporation or by these By-Laws, neither the business to be transacted at, nor the purpose of, any meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

SECTION 11.    Quorum.  At any meeting of the Board of Directors, a majority of the Directors then in office (but in no event less than one-third of the total number of Directors) shall constitute a quorum for the transaction of business, but if less than a quorum is present at a meeting, a majority of the Directors present may adjourn the meeting from time to time, and the meeting may be held as adjourned without further notice, except as provided in Section 10 of this

Article II. Any business which might have been transacted at the meeting as originally noticed may be transacted at such adjourned meeting at which a quorum is present.

SECTION 12.    Action at Meeting.  At any meeting of the Board of Directors at which a quorum is present, a majority of the Directors present may take any action on behalf of the Board of Directors, unless otherwise required by law, by the Certificate of Incorporation or by these By-Laws.

SECTION 13.    Action by Consent.  Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if all members of the Board of Directors consent thereto in writing.  Such written consent shall be filed with the records of the meetings of the Board of Directors and shall be treated for all purposes as a vote at a meeting of the Board of Directors.

SECTION 14.    Manner of Participation.  Directors may participate in meetings of the Board of Directors by means of conference telephone or similar communications equipment by means of which all Directors participating in the meeting can hear each other, and participation in a meeting in accordance herewith shall constitute presence in person at such meeting for purposes of these By-Laws.

SECTION 15.    Committees.  The Board of Directors, by a vote of a majority of the Directors then in office, may (and, to the extent required by law or by the rules of any governmental agency or any securities exchange or securities quotation system on which securities of the Corporation are listed, shall) elect from its number, one or more committees, including but not limited to, an Executive Committee, a Compensation Committee, an Audit Committee and a Nominations Committee.  To the extent required by law, or by the rules of any

17

governmental agency or any securities exchange or securities quotation system on which securities of the Corporation are listed, the members of the Committee will be entirely or partly independent directors, as that term is defined in the applicable law or rules.  The Board of Directors may (and to the extent required by law or by the rules of any governmental agency or securities exchange or securities quotation system on which securities of the Corporation are listed, shall) delegate to those committees some or all of its powers except those which by law, by the Certificate of Incorporation or by these By-Laws may not be delegated.  Except as the Board of Directors may otherwise determine, any such committee may make rules for the conduct of its business, but unless otherwise provided by the Board of Directors or in such rules, its business shall be conducted so far as possible in the same manner as is provided by these By-Laws for the Board of Directors.  All members of such committee shall serve at the pleasure of the Board of Directors.  Except as required by law or the rules of any governmental agency or any securities exchange or securities quotation system on which securities of the corporation are listed, the Board of Directors may abolish any such committee at any time.  Any committee to which the Board of Directors delegates any of its powers or duties shall keep records of its meetings and shall report its action to the Board of Directors.  The Board of Directors shall have power to rescind any action of any committee, to the extent permitted by law and not inconsistent with the rules of any governmental agency or any securities exchange or securities quotation system on which securities of the Corporation are listed, but no such rescission shall have retroactive effect.

SECTION 16.   Related Party Transactions. The Corporation shall review all related party transactions for potential conflict of interest situations on an ongoing basis.  All related party transactions must be approved by the Audit Committee or another independent body of the

18

Board of Directors.   A transaction will be a "related party transaction" if it, or a series of transactions of which it is a part, is required to be disclosed pursuant to Securities and Exchange Commission Regulation S-K, Item 404 or any successor to that Item, or otherwise constitutes a related party transaction under the rules of any securities exchange or securities quotation system on which securities of the Corporation are listed.   A related party transaction that takes place in the ordinary course of the Corporation 's or a subsidiary's business will be deemed to have been approved by the Audit Committee or another independent body of the Board of Directors if its pricing and other material terms are in accordance with an agreement or arrangement that has been approved by the Audit Committee or another independent body of the Board of Directors.

SECTION 17.   Compensation of Directors.  Directors shall receive such compensation for their services as shall be determined by a majority of the Directors then in office provided that Directors who are serving the Corporation as employees and who receive compensation for their services as such, shall not receive any salary or other compensation for their services as Directors of the Corporation.

ARTICLE III

Officers

SECTION 1.   Enumeration.  The officers of the Corporation shall consist of a Chairman of the Board, a President and Chief Executive Officer, a Chief Financial Officer, a Secretary and such other officers, including, without limitation, a Chairman Emeritus of the Board of Directors, a Treasurer and one or more Vice-Presidents (including Executive Vice Presidents or Senior Vice Presidents), Assistant Vice Presidents, Assistant Treasurers and Assistant Secretaries, as the Board of Directors may determine.

SECTION 2.   <u>Election</u>.   At the regular annual meeting of the Board following the annual meeting of stockholders, the Board of Directors shall elect the Chairman of the Board, the President and Chief Executive Officer, the Chief Financial Officer, the Treasurer and the Secretary.   Other officers may be elected by the Board of Directors at such regular annual meeting of the Board of Directors or at any other regular or special meeting.

SECTION 3.   Qualification.   No officer need be a stockholder or a Director. Any person may occupy more than one office at the Corporation at any time. Any officer may be required by the Board of Directors to give bond for the faithful performance of his duties in such amount and with such sureties as the Board of Directors may determine.

SECTION 4.   Tenure.   Except as otherwise provided by the Certificate of Incorporation or by these By-Laws, each of the officers of the Corporation shall hold office until the regular annual meeting of the Board of Directors following the next Annual Meeting and until his successor is elected and qualified or until his earlier death, disqualification, resignation or removal.

SECTION 5.   Resignation.   Any officer may resign by delivering his or her written resignation to the Corporation addressed to the President or the Secretary, and such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

SECTION 6.   Removal.   Except as otherwise provided by law, the Board of Directors may remove any officer with or without cause by the affirmative vote of a majority of the Directors then in office.

SECTION 7.  <u>Absence or Disability</u>.  In the event of the absence or disability of any officer, the Board of Directors may designate another officer to act temporarily in place of such absent or disabled officer.

SECTION 8.  <u>Vacancies</u>.  Any vacancy in any office may be filled for the unexpired portion of the term by the Board of Directors.

SECTION 9.  <u>Chairman of the Board</u>.  The Chairman of the Board shall preside at all meetings of the Board of Directors and of the stockholders at which he shall be present and exercise and perform such powers and duties as generally pertain to his office as well as such powers and duties as may be from time to time assigned to him by the Board of Directors or prescribed by the By-Laws.

SECTION 10.  <u>President and Chief Executive Officer</u>.  Unless otherwise provided by the Board of Directors or the Certificate of Incorporation, the President and Chief Executive Officer of the Corporation shall, subject to the direction of the Board of Directors, manage the affairs of the Corporation's business and have general supervision and control of the Corporation's day-to- day business activities.  In the absence of the Chairman of the Board, the President and Chief Executive Officer shall preside, when present, at all meetings of stockholders and of the Board of Directors.  The President and Chief Executive Officer shall have such other powers and perform such other duties as the Board of Directors may from time to time designate.

SECTION 11.  <u>Chief Financial Officer</u>.  Unless otherwise provided by the Board of Directors or the Certificate of Incorporation, the Chief Financial Officer of the Corporation shall,

subject to the direction of the Board of Directors, have general charge of the financial affairs of the Corporation and shall cause to be kept accurate books of account.

SECTION 12.   <u>Vice Presidents and Assistant Vice Presidents</u>.   Any Vice President (including any Executive Vice President or Senior Vice President) and any Assistant Vice President shall have such powers and shall perform such duties as the Board of Directors or the President and Chief Executive Officer may from time to time designate.

SECTION 13.   <u>Treasurer and Assistant Treasurers; Controller</u>.   The Treasurer shall, subject to the direction of the Board of Directors and except as the Board of Directors or the President and Chief Executive Officer may otherwise provide, assist the Chief Financial Officer with the financial affairs of the Corporation and the books of account.  The Treasurer shall have custody of all funds, securities, and valuable documents of the Corporation.  He or she shall have such other duties and powers as may be designated from time to time by the Board of Directors or the President and Chief Executive Officer.

Any Controller or Assistant Treasurer shall have such powers and 'perform such duties as the Board of Directors or the President and Chief Executive Officer may from time to time designate.

SECTION 14.   <u>Secretary and Assistant Secretaries</u>.   The Secretary shall record all the proceedings of the meetings of the stockholders and the Board of Directors (including committees of the Board) in books kept for that purpose.  In his absence from any such meeting, a temporary secretary chosen at the meeting shall record the proceedings thereof.  The Secretary shall have charge of the stock ledger (which may, however, be kept by any transfer or other agent of the Corporation).  The Secretary shall have custody of the seal of the Corporation, and

22

the Secretary, or an Assistant Secretary, shall have authority to affix it to any instrument requiring it, and, when so affixed, the seal may be attested by his or her signature or that of an Assistant Secretary. The Secretary shall have such other duties and powers as may be designated from time to time by the Board of Directors or the President and Chief Executive Officer. In the absence of the Secretary, any Assistant Secretary or any officer designated by the Board of Directors may perform his duties and responsibilities.

Any Assistant Secretary shall have such powers and perform such duties as the Board of Directors or the President and Chief Executive Officer may from time to time designate.

SECTION 15. Other Powers and Duties. Subject to these By-Laws and to such limitations and restrictions as the Board of Directors may from time to time prescribe, the officers of the Corporation shall each have such powers and duties as generally pertain to their respective offices, as well as such powers and duties as from time to time may be conferred by the Board of Directors or the President and Chief Executive Officer.

## ARTICLE IV

### Capital Stock

SECTION 1. Certificates of Stock. Shares of capital stock of the Corporation may be certificated or uncertificated, as provided under the Delaware General Corporation Law. The stock certificates of the Corporation shall be numbered and registered in the stock ledger and transfer books of the Corporation as they are issued. The stock certificates of the Corporation shall be signed by the Chairman of the Board, or the President and Chief Executive Officer or a Vice President and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer, and shall bear the corporate seal, which may be a facsimile, engraved or printed. Any

of or all of the signatures upon such certificate may be facsimiles, engraved or printed.  In case any officer, transfer agent or registrar who has signed, or whose facsimile signature has been placed upon, any share certificate shall have ceased to be such officer, transfer agent or registrar, before the certificate is issued, it may be issued with the same effect as if he were such officer, transfer agent or registrar at the date of its issue.  Stock certificates of the Corporation shall be in such form as provided by statute and approved by the Board of Directors.  The stock record books and the blank stock certificates books shall be kept by the Secretary or by any agency designated by the Board of Directors for that purpose.

The Board of Directors may direct that (i) a new certificate or certificates or (ii) uncertificated shares in place of any certificate or certificates previously issued by the Corporation, be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of such (i) new certificate or certificates or (ii) uncertificated shares, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

SECTION 2.  <u>Transfers</u>.  Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares, if such shares are certificated, duly endorsed or accompanied by proper evidence of succession, assignation or authority to transfer, it shall be the

24

duty of the Corporation to issue a new certificate or to register the issuance of uncertificated shares to the person entitled thereto, cancel the old certificate and record the transaction upon its books. Upon the receipt of proper transfer instructions from the registered owner of uncertificated shares, such uncertificated shares shall be cancelled, issuance of new equivalent uncertificated shares or certificated shares shall be made to the person entitled thereto and the transaction shall be recorded upon the books of the Corporation. No transfer shall be made which would be inconsistent with the provisions of Article 8, Title 6 of the Delaware Uniform Commercial Code-Investment Securities.

SECTION 3. Record Holders. Except as may otherwise be required by law, by the Certificate of Incorporation or by these By-Laws, the Corporation shall be entitled to treat the record holder of stock as shown on its books as the owner of such stock for all purposes, including the payment of dividends and the right to vote with respect thereto, regardless of any transfer, pledge or other disposition of such stock, until the shares have been transferred on the books of the Corporation in accordance with the requirements of these By-Laws.

It shall be the duty of each stockholder to notify the Corporation of his or her post office address and any changes thereto.

SECTION 4. Record Date. In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof or entitled to receive payments of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is

25

adopted by the Board of Directors, and which record date: (1) in the case of determination of stockholders entitled to vote at any meeting of stockholders, shall, unless otherwise required by law, not be more than sixty nor less than ten days before the date of such meeting, and (2) in the case of any other action, shall not be more than sixty days prior to such other action. If no record date is fixed: (1) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which the meeting is held, and (2) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

ARTICLE V

Indemnification

SECTION 1.  Indemnification.  The Corporation shall to the fullest extent permitted by Delaware law, as in effect from time to time (but, in the case of any amendment of the Delaware General Corporation Law, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), indemnify each person who is or was a director or officer of the Corporation or of any of its wholly-owned subsidiaries who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, or was or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a director, officer, employee or agent of the Corporation or of any of its subsidiaries, or is or was at any time serving, at the request of the Corporation, any other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against all expense, liability and loss

26

(including, but not limited to, attorneys' fees, judgments, fines, excise taxes or penalties with respect to any employee benefit plan or otherwise, and amounts paid or to be paid in settlement) incurred or suffered by such director or officer in connection with such proceeding; provided, however, that, except as provided in Paragraph (e) of Article Seventh of the Certificate of Incorporation of the Corporation, the Corporation shall not be obligated to indemnify any person under this Article in connection with a proceeding (or part thereof) if such proceeding (or part thereof) was not authorized by the Board of Directors of the Corporation and was initiated by such person against (i) the Corporation or any of its subsidiaries, (ii) any person who is or was a director, officer, employee or agent of the Corporation or any of its subsidiaries and/or (iii) any person or entity which is or was controlled, controlled by, or under common control with the Corporation or has or had business relations with the Corporation or any of its subsidiaries.

Subject to the Certificate of Incorporation, expenses incurred by a Director or officer of the Corporation in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of.an undertaking by or on behalf of such Director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation.  Such expenses incurred by other employees or agents of the Corporation may be so paid upon such terms and conditions, if any, as the Board of Directors deems appropriate.

For purposes of this Article V, the term "Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent} absorbed by the Corporation in a consolidation or merger; the term "other enterprise" shall include any corporation, partnership, joint venture, limited liability company, trust or employee benefit plan; service "at the request of the Corporation" shall include service as a Director,

27

officer or employee of the Corporation which imposes duties on, or involves service by, such Director, officer or employee with respect to an employee benefit plan, its participants or beneficiaries; any excise taxes assessed on a person with respect to an employee benefit plan shall be deemed to be indemnifiable expenses; and action by a person with respect to any employee benefit plan which such person reasonably believes to be in the interest of the participants and beneficiaries of such plan shall be deemed to be action in or not opposed to the best interests of the Corporation.

## ARTICLE VI

### Miscellaneous Provisions

SECTION 1.   Fiscal Year.   Except as otherwise determined by the Board of Directors, the fiscal year of the Corporation shall end on the last day of December of each year.

SECTION 2.   Seal.   The Board of Directors shall have power to adopt and alter the seal of the Corporation.

SECTION 3.   Execution of Instruments.   All deeds, leases, transfers, contracts, bonds, notes and other obligations to be entered into by the Corporation in the ordinary course of its business without Board of Directors action may be executed on behalf of the Corporation by the Chairman of the Board, the President and Chief Executive Officer, the Chief Financial Officer, any Executive Vice President, or any other officer, employee or agent of the Corporation as the Board of Directors may authorize.

SECTION 4.   Voting of Securities.   Unless the Board of Directors otherwise provides, the Chairman of the Board, the President and Chief Executive Officer or the Chief Financial

28

Officer may waive notice of and act on behalf of the Corporation, or appoint another person or persons to act as proxy or attorney in fact for the Corporation with or without discretionary power and/or power of substitution, at any meeting of security-holders or holders of any interest in any corporation or other enterprise or organization, any of whose securities or other interests therein are held by the Corporation.

SECTION 5.    Resident Agent.    The Board of Directors may appoint a resident agent upon whom legal process may be served in any action or proceeding against the Corporation.

SECTION 6.    Corporate Records.    The original or attested copies of the Certificate of Incorporation, By-Laws and records of all meetings of the incorporators, stockholders and the Board of Directors and the stock transfer books, which shill contain the names of all stockholders, their record addresses and the amount of stock held by each, may be kept outside the State of Delaware and shall be kept at the principal office of the Corporation, at the office of its counsel or at an office of its transfer agent or at such other place or places as may be designated from time to time by the Board of Directors.

SECTION 7.    Certificate of Incorporation.    All references in these By-Laws to the Certificate of Incorporation shall be deemed to refer to the Amended and Restated Certificate of Incorporation of the Corporation, as amended, or amended and restated, and in effect from time to time (including all certificates and other instruments which are filed with the Secretary of State of the State of Delaware pursuant to the provisions of the Delaware General Corporation Law and which have the effect of amending or supplementing in some respect the Certificate of Incorporation of the Corporation).

SECTION 8.    Amendment of By-Laws.

29

(a)     <u>Amendment by Directors</u>.  Except as provided otherwise by law, these By-Laws may be amended or repealed or new By-Laws (not inconsistent with any provision of law or the Certificate of Incorporation) may be adopted, by the affirmative vote of a majority of the Directors then in office.

(b)     <u>Amendment by Stockholders</u>.   These By-Laws may be amended or repealed at any annual meeting of stockholders, or special meeting of stockholders called for such purpose, by the affirmative vote of at least sixty percent (60\) of the total votes eligible to be cast on such amendment or repeal by holders of voting stock, voting together as a single class; provided, however, that if the Board of Directors recommends that stockholders approve such amendment or repeal at such meeting of stockholders, such amendment or repeal shall only require the affirmative vote of a majority of the total votes eligible to be cast on such amendment or repeal by holders of voting stock, voting together as a single class.

30

## Exhibit A-3

**Form of Second Amended and Restated Certificate of Incorporation of Atari Interactive, Inc.**

# SECOND AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### OF

## ATARI INTERACTIVE, INC.

Atari Interactive, Inc. (the "Existing Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware ("DGCL"), hereby certifies as follows:

1.     The name of the Existing Corporation is Atari Interactive, Inc.

2.     The certificate of incorporation of the Existing Corporation was originally filed in the office of the Secretary of State of the State of Delaware on December 8, 1995, under the name of "Hasbro Interactive, Inc.", and which certificate was later amended (the "Amended Certificate of Incorporation").

3.     This Second Amended and Restated Certificate of Incorporation amends and restates in its entirety the Amended Certificate of Incorporation of the Existing Corporation, as in effect on the date hereof.

4.     On [  ], 2013, the Existing Corporation filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.     This Second Amended and Restated Certificate of Incorporation has been deemed approved without the need for board of directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Joint Chapter 11 Plan of Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

6.     This Second Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by an officer of the Existing Corporation designed by order of the Bankruptcy Court in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.     The text of the Amended Certificate of Incorporation is hereby amended and restated in its entirety to read as follows:

### Article I

### Name

The name of the corporation is Atari Interactive, Inc. (the "Corporation").

ARTICLE II

Capital Stock

The total number of shares of capital stock which the Corporation shall have authority to issue is 3,000 shares, consisting of (a) 2,961 shares of Common Stock, par value $1.00 per share (except as otherwise provided in Part B of this Article III, the "Common Stock"), and (b) 39 shares of Preferred Stock, par value $.01 per share (the "Preferred Stock").

A.    Common Stock.  Except as otherwise provided by the General Corporation Law of the State of Delaware or by Part B of this Article III fixing the relative powers, preferences and rights and the qualifications, limitations or restrictions of the Preferred Stock, the entire voting power of the shares of the Corporation for the election of Directors and for all other purposes, as well as all other rights pertaining to shares of the Corporation, shall be vested exclusively in the Common Stock.  Each share of Common Stock shall have one vote upon all matters to be voted on by the holders of the Common Stock, and shall be entitled to participate equally in all dividends payable with respect to the Common Stock and to share equally, subject to the rights and preferences of the Preferred Stock, in all assets of the Corporation, in the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation, or upon any distribution of the assets of the Corporation.

B.    Preferred Stock.  The powers, preferences and rights, and the qualifications, limitations or restrictions of the Preferred Stock are as follows;

1.    Definitions.  For purposes of this Part B of this Article III, the following terms shall have the following meanings:

"Closing Date" means the Closing Date under the Contribution Agreement, dated as of December 6, 2000, by and among Infogrames Entertainment SA, Hasbro, Inc., Hasbro U.K. Limited and Hasbro Internet Holdings, Inc.

"Common Stock" means any equity security of any kind which the Corporation shall at any time issue or be authorized to issue other than the Preferred Stock.

"Liquidation Event" means any liquidation (complete or partial), dissolution or winding up of the affairs of the Corporation, whether voluntary or involuntary.

"Liquidation Price" means the sum of (i) all accrued but unpaid dividends, whether or not declared, on the Preferred Stock and (ii) $25,641.03 per share of Preferred Stock.

"Seventh Anniversary Date" means the date which is the seventh annual anniversary of the Closing Date.

"Stated Rate" means (i) during the period through and including the 29th day following the Seventh Anniversary Date, 5% per annum, (ii) during the period beginning on the 30th day following the Seventh Anniversary Date and ending on the 44th day following the Seventh Anniversary Date, 20% per annum, (iii) during the period beginning on the 45th day following the Seventh Anniversary Date and ending on the 59th day following the Seventh Anniversary

Date, 30% per annum, and (iv) during the period beginning on the 60th day following the Seventh Anniversary Date and for all periods thereafter, 40% per annum.

2.      Dividends.

a.      The holders of the Preferred Stock shall be entitled to receive out of funds legally available therefore cumulative cash dividends at the Stated Rate of the Liquidation Price of such Preferred Stock before any dividend is declared and paid on shares of Common Stock.

b.      The Preferred Stock dividends will accrue annually from the Closing Date in arrears and will compound annually (to the extent not paid). Such dividends will accrue whether or not such dividends have been declared and whether or not there shall be (at the time such dividend shall accrue or become due or at any other time) funds legally available for the payment of dividends. Accrued and unpaid dividends shall be paid when, as and if declared by the Board of Directors out of funds legally available for such purpose. The Corporation shall not pay dividends on or make any other distribution on the Common Stuck until all accrued but unpaid dividends on the Preferred Stock have been declared and paid.

3.      Liquidation Rights.

a.      Subject to Section 3(b), upon any Liquidation Event no distribution or payment shall be made to holders of the Common Stock unless, prior to the first such distribution or payment, the holders of the Preferred Stock shall have received an amount in cash equal to the Liquidation Price. The holders of the Preferred Stock shall not be entitled to any payment upon a Liquidation Event in addition to payment of the Liquidation Price.

b.      If the assets distributable in any such event to the holders of the Preferred Stock are insufficient to permit the payment to such holders of the full preferential amounts, if any, to which they may be entitled, such assets shall be distributed ratably among the holders of the Preferred Stock in proportion to the full preferential amount each such holder would otherwise be entitled to receive.

4.      Redemption.

a.      The Preferred Stock shall not be redeemable by the Corporation prior to the Seventh Anniversary Date. On the Seventh Anniversary Date, the Corporation shall redeem for cash out of any funds legally available therefore, not less than 100% of the Preferred Stock held by each holder on that date. Redemptions of each share of Preferred Stock made pursuant to this Section 4 shall be made at the Liquidation Price.

b.      For the purpose of determining whether funds are legally available for redemption of Preferred Stock as provided herein, the Corporation shall value its assets at the highest amount permissible under applicable law. If on the Seventh Anniversary Date funds of the Corporation legally and otherwise available for redemption pursuant to Section 4(a) shall be insufficient to redeem all the Preferred Stock required to be redeemed as provided herein, funds to the extent so available shall be used for such purpose and the Corporation shall effect such redemption pro rata according to the number of shares held by each holder of Preferred Stock. The redemption requirements provided hereby shall be continuous, so that if at any time after the Seventh

Anniversary Date such redemption requirements shall not he fully discharged, then without further action by any holder of Preferred Stock, legally available funds shall be applied therefor until such redemption requirements in respect of the Preferred Stock are fully discharged. Dividends will continue to accrue on shares of Preferred Stock until the date on which such shares are redeemed as provided herein.

5.      Voting Rights.  Except as otherwise required by law or in Section 6 of this Part B, shares of Preferred Stock shall not have any voting rights.  Subject to further amendment of this Second Amended and Restated Certificate of Incorporation of the Corporation, as provided by applicable law, the Corporation shall not issue any non-voting equity securities in violation of section 1123(a)(6) of the Bankruptcy Code.

6.      Amendment and Waiver.   No amendment, modification or waiver of any provision of this Part B of this Article III shall be binding or effective without the prior written consent of the holders of a majority of the shares of Preferred Stock outstanding as of the time of the proposed amendment, modification or waiver.

## Exhibit A-4

**Form of Amended and Restated By-Laws of Atari Interactive, Inc.**

# AMENDED AND RESTATED BY-LAWS

## OF

## ATARI INTERACTIVE, INC.

## (A DELAWARE CORPORATION)

ARTICLE 1

DEFINITIONS

As used in these By-Laws, unless the context otherwise requires, the term:

1.1 "Assistant Secretary" means an Assistant Secretary of the corporation.

1.2 "Assistant Treasurer" means an Assistant Treasurer of the Corporation.

1.3 "Board" means the Board of Directors of the Corporation.

1.4 "By-Laws" means the initial Corporation, as amended from time to time.

1.5 "Certificate of Incorporation" by-laws of the means the initial certificate of incorporation of the Corporation, as amended, supplemented or restated from time to time.

1.6 "Chairman" means Chairman of the Board of the Corporation.

1.7 "Corporation" means ATARI INTERACTIVE, INC.

1.8 "Directors" means directors of the Corporation.

1.9 "General Corporation Law" means the General Corporation Law of the State of Delaware, as amended from time to time.

1.10 "Office of the Corporation" means the executive office of the Corporation, anything in Section 131 of the General Corporation Law to the contrary notwithstanding.

1.11 "President" means the President of the Corporation.

1.12 "Secretary" means the Secretary of the Corporation.

1.13 "Stockholders" means stockholders of the Corporation.

1.14    "Total number of directors" means the total number of directors determined in accordance with Section 141(b) of the General Corporation Law and Section 3.2 of the By-Laws.

1.15    "Treasurer" means the Treasurer of the Corporation.

1.16    "Vice President" means a Vice President of the Corporation.

1.17    "Whole Board" means the total number of directors of the Corporation.

## ARTICLE 2

## STOCKHOLDERS

2.1    Place of Meetings.  Every meeting of stockholders shall be held at the office of the Corporation or place within or without the State of Delaware at such other as shall be specified or fixed in the notice of such meeting or in the waiver of notice thereof.

2.2    Annual Meeting.  A meeting of stockholders shall be held annually for the election of directors and the transaction of other business at such hour and on such business day in May or June, as may be determined by the Board and designated in the notice of meeting.

2.3    Deferred Meeting for Election of Directors, Etc.  If the annual meeting of stockholders for the election of directors and the transaction of other business is not held within the months specified in Section 2.2, the Board shall call a meeting of stockholders for the election of directors and the transaction of other business as soon thereafter as convenient.

2.4    Other Special Meetings.  A special meeting of stockholders (other than a special meeting for the election of directors), unless otherwise prescribed by statute, may be called at any time by the Board or by the Chairman, President or Secretary. At any special meeting of stockholders only such business may be transacted as is related to the purpose or

purposes of such meeting set forth in the notice thereof given pursuant to Section 2.6 of the By-Laws or in any waiver of notice thereof given pursuant to Section 2.7 of the By-Laws.

2.5    <u>Fixing Record Date</u>.  For the purpose of determining the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or for the purpose of determining stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix, in advance, a date as the record date for any such determination of stockholders. Such date shall not be more than sixty nor less than ten days before the date of such meeting, nor more than sixty days prior to any other action. If no such record date is fixed:

2.5.1    The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held;

2.5.2    The record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board is necessary, shall be the day on which the first written consent is expressed;

2.5.3    The record date for determining stockholders for any purpose other than those specified in Sections 2.5.1 and 2.5.2 shall be at the close of business on the day on which the Board adopts the resolution relating thereto.  When a determination of stockholders entitled to notice of or to vote at any meeting of stockholders has been made as provided in this

3

Section 2.5 such determination shall apply to any adjournment thereof, unless the Board fixes a new record date for the adjourned meeting.

2.6    Notice of Meetings of Stockholders.    Except as otherwise provided in Sections 2.5 and 2.7 of the By-Laws, whenever, under the General corporation Law or the Certificate of Incorporation or the By-Laws, stockholders are required or permitted to take any action at a meeting, written notice shall be given stating the place, date and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called. A copy of the notice of any meeting shall be given, personally or by mail, not less than ten nor more than sixty days before the date of the meeting, to each stockholder entitled to notice of or to vote at such meeting.  If mailed, such notice shall be deemed to be given when deposited in the United States mail, with postage prepaid, directed to the stockholder at his address as it appears on the records of the Corporation.  An affidavit of the Secretary or an Assistant Secretary or of the transfer agent of the Corporation that the notice required by this Section has been given shall, in the absence of fraud, be prima facie evidence of the facts stated therein.  When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken, and at the adjourned meeting any business may be transacted that might have been transacted at the meeting as originally called. If, however, the adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.7    Waivers of Notice.    Whenever notice is required to be given to any stockholder under any provision of the General Corporation Law or the certificate of Incorporation or the By-Laws, a written waiver thereof, signed by the stockholder entitled to

notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a stockholder at a meeting shall constitute a waiver of notice of such meeting, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice.

2.8    List of Stockholders.  The Secretary shall prepare and make, or cause to be prepared and made, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the time and place of the meeting during the whole time thereof and may be inspected by any stockholder who is present.

2.9    Quorum of Stockholders; Adjournment.  The holders of one-half of the shares of stock entitled to vote at any meeting of stockholders, present in person or represented by proxy, shall constitute a quorum for the transaction of any business at such meeting. When a quorum is once present to organize a meeting of stockholders, it is not broken by the subsequent withdrawal of any stockholders. The holders of a majority of the shares of stock present in person or represented by proxy at any meeting of stockholders, including quorum is present, may place. an adjourned meeting, whether or not a adjourn such meeting to another time and place.

2.10   <u>Voting; Proxies</u>.   Unless otherwise provided in the Certificate of Incorporation every stockholder of record shall be entitled at every meeting of stockholders to one vote for each share of capital stock standing in his name on the record of stockholders determined in accordance with Section 2.5 of the By-Laws. If the Certificate of Incorporation provides for more or less than one vote for any share, on any matter, every reference in the By-Laws or the General Corporation Law to a majority or other proportion of stock shall refer to such majority or other proportion of the votes of such stock.  The provisions of Sections 212 and 217 of the General Corporation Law shall apply in determining whether any shares of capital stock may be voted and the persons, if any, entitled to vote such shares; but the Corporation shall be protected in treating the persons in whose names shares of capital stock stand on the record of stockholders as owners thereof for all purposes.  At any meeting of stockholders (at which a quorum was present to organize the meeting), all matters, except as otherwise provided by law or by the Certificate of Incorporation or by the By-Laws, shall be decided by a majority of the votes cast at such meeting by the holders of shares present in person or represented by proxy and entitled to vote thereon, whether or not a quorum is present when the vote is taken.  All elections of directors shall be by written ballot unless otherwise provided in the Certificate of Incorporation.  In voting ballot is required by on any other question on which a vote by law or is demanded by any stockholder entitled to vote, the shall be signed by the voting shall be by ballot.  Each ballot stockholder voting or by his proxy and shall state the number of shares voted.  On all other questions, the voting may be <u>viva voce</u>.  Every stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for him by proxy.  The validity and

enforceability of any proxy shall be determined in accordance with Section 212 of the General Corporation Law.

2.11    Selection and Duties of Inspectors at Meetings of Stockholders.    The Board, in advance of any meeting of stockholders, may appoint one or more inspectors to act at the meeting or any adjournment thereof.  If inspectors are not so appointed, the person presiding at such meeting may, and on the request of any stockholder entitled to vote thereat shall, appoint one or more inspectors. In case any person appointed fails to appear or act, the vacancy may be filled by appointment made by the Board in advance of the meeting or at the meeting by the person presiding thereat. Each inspector, before entering upon the discharge of his duties, shall take and sign an oath faithfully to execute the duties of inspector at such meeting with strict impartiality and according to the best of his ability. The inspector or inspectors shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the validity and effect of proxies and shall receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the result and do such acts as are proper to conduct the election or vote with fairness to all stockholders. On request of the person presiding at the meeting or any stockholder entitled to vote thereat, the inspector or inspectors shall make a report in writing of any challenge, question or matter determined by him or them and execute a certificate of any fact found by him or them. Any report or certificate made by the inspector or inspectors shall be prima facie evidence of the facts stated and of the vote as certified by him or them.

2.12    Organization.  At every meeting of stockholders, the Chairman, or in the absence of the Chairman, the President or, in the absence of the President, a Vice President, and

in case more than one Vice President shall be present, that Vice President designated by the Board (or in the absence of any such designation, the most senior Vice President, based on age, present), shall act as chairman of the meeting. The Secretary or, in his absence, one of the Assistant Secretaries, shall act as secretary of the meeting. In case none of the officers above designated to act as chairman or secretary of the meeting, respectively, shall be present, a chairman or a secretary of the meeting, as the case may be, shall be chosen by a majority of the votes cast at such meeting by the holders of shares of capital stock present in person or represented by proxy and entitled to vote at the meeting.

2.13    Order of Business.  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting, but the order of business to be followed at any meeting at which a quorum is present may be changed by a majority of the votes cast at such meeting by the holders of shares of capital stock present in person or represented by proxy and entitled to vote at the meeting.

2.14    Written Consent of Stockholders Without a Meeting.  Unless otherwise provided in the Certificate of In- corporation, any action required by the General Corporation Law to be taken at any annual or special meeting of stockholders of the Corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having no less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

8

ARTICLE 3

DIRECTORS

3.1    General Powers.    Except as otherwise provided in the Certificate of Incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board. The Board may adopt such rules and regulations, not inconsistent with the Certificate of Incorporation or the By-Laws or applicable laws, as it may deem proper for the conduct of its meetings and the management of the Corporation. In addition to the powers expressly conferred by the By-Laws, the Board may exercise all powers and perform all acts which are not required by the By-Laws or the Certificate of Incorporation or by law to be exercised and performed by the stockholders.

3.2    Number; Qualification; Term of Office.    The shall consist of one or more members. The total number Board of directors shall be fixed initially by the incorporator and may thereafter be changed from time to time by action of the stockholders or by action of the Board. Directors need not be stockholders. Each director shall hold office until his successor is elected and qualified or until his earlier death, resignation or removal.

3.3    Election.    Directors shall, except as otherwise required by law or by the Certificate of Incorporation, be elected by a plurality of the votes cast at a meeting of stockholders by the holders of shares entitled to vote in the election.

3.4    Newly Created Directorships and Vacancies.    Unless otherwise provided in the Certificate of Incorporation, newly created directorships resulting from an increase in the number of directors and vacancies occurring in the Board for any other reason, including the removal of directors without cause, may be filled by vote of a majority of the directors then in office, although less than a quorum, or by a sole remaining director or may be elected by a

9

plurality of the votes cast by the holders of shares of capital stock entitled to vote in the election at a special meeting of stockholders called for that purpose. A director elected to fill a vacancy shall be elected to hold office until his successor is elected and qualified, or until his earlier death, resignation or removal.

3.5     Resignations.  Any director may resign at anytime by written notice to the Corporation. such resignation shall take effect at the time therein specified, and, unless otherwise specified the acceptance of such resignation shall not be necessary to make it effective.

3.6     Removal of Directors.  Subject to the provisions of Section 14l(k) of the General corporation Law, any or all of the directors may be removed with or without cause by the holders of a majority of the shares then entitled to vote at an election of directors.

3.7     Compensation.  Each director, in consideration of his service as such, shall be entitled to receive from the Corporation such amount per annum or such fees for attendance at directors meetings, or both, as the Board may from time to time determine, together with reimbursement for the reasonable expenses incurred by him in connection with the performance of his duties. Each director who shall serve as a member of any committee of directors in consideration of his serving as such shall be entitled to such additional amount per annum or such fees for attendance at committee meetings, or both, as the Board may from time to time determine, together with reimbursement for the reasonable expenses incurred by him in the performance of his duties. Nothing contained in this section shall preclude any director from serving the Corporation or its subsidiaries in any other capacity and receiving proper compensation therefor.

3.8     Place and Time of Meetings of the Board.  Meetings of the Board, regular or special, may be held at any or without the State of Delaware.  The times and holding meetings

of the Board may be fixed from time place within places for to time by resolution of the Board or (unless contrary to resolution of the Board) in the notice of the meeting.

3.9    3.9 Annual Meetings. On the day when and at the place where the annual meeting of stockholders for the election of directors is held, and as soon as practicable thereafter, the Board may hold its annual meeting, without notice of such meeting, for the purposes of organization, the election of officers and the transaction of other business. The annual meeting of the Board may be held at any other time and place specified in a notice given as provided in Section 3.11 of the By-Laws for special meetings of the Board or in a waiver of notice thereof.

3.10    3.10 Regular Meetings. Regular meetings of the Board may be held at such times and places as may be fixed from time to time by the Board. Unless otherwise required by the Board, regular meetings of the Board may be held without notice. If any day fixed for a regular meeting of the Board shall be a Saturday or Sunday or a legal holiday at the place where such meeting is to be held, then such meeting shall be held at the same hour at the same place on the first business day thereafter which is not a Saturday, Sunday or legal holiday.

3.11    3.11 Special Meetings.  Special meetings of the Board shall be held whenever called by the Chairman, the President, the Secretary or an Assistant Secretary or by any two or more directors.  Notice of each special meeting of the Board shall, if mailed, be addressed to each director at the address designated by him for that purpose or, if none is designated, at his last known address at least two days before the date on which the meeting is to be held; or such notice shall be sent to each director at such address by telegraph, cable or wireless, or be delivered to him personally, not later than the day before the date on which such meeting is to be held. Every such notice shall state the time and place of the meeting, but need not state the purposes of the meeting, except to the extent required by law. If mailed, each notice

11

shall be deemed given when deposited, with postage thereon prepaid, in a post office or official depository under the exclusive care and custody of the United States Postal Service. Such mailing shall be by first-class mail.

3.12    Adjourned Meetings.  A majority of the directors present at any meeting of the Board, including an adjourned meeting, whether or not a quorum is present, may adjourn such meeting to another time and place. Notice of any adjourned meeting of the Board need not be given to any director whether or not present at the time of the adjournment. Any business may be transacted at any adjourned meeting that might have been transacted at the meeting as originally called.

3.13    Waiver of Notice.  Whenever notice is required to be given to any director or member of a committee of directors under any provision of the General Corporation Law or of the Certificate of Incorporation or By-Laws, a written waiver thereof, signed by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the not lawfully transacted at, of directors, transaction of any business because the meeting is called or convened.  Neither the business to be nor the purpose of, any regular or special meeting or members of a committee of directors, need be specified in any written waiver of notice.

3.14    Organization. At each meeting of the Board, the Chairman, or in the absence of the Chairman, the President, or in the absence of the President, a chairman chosen by a majority of the directors present, shall preside.  The Secretary shall act as secretary at each meeting of the Board.  In case the Secretary shall be absent from any meeting of the Board, an

12

Assistant Secretary shall perform the duties of secretary at such meeting; and in the absence from any such meeting of the Secretary and all Assistant Secretaries, the person presiding at the meeting may appoint any person to act as secretary of the meeting.

      3.15    <u>Quorum of Directors</u>.    One-half of the total number of directors shall constitute a quorum for the transaction of business or of any specified item of business at any meeting of the Board.

      3.16    <u>Action by the Board</u>.    All corporate action taken by the Board or any committee thereof shall be taken at a of the Board, or of such committee, as the case may be, that any action required or permitted to be taken at any meeting except meeting of the Board, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee. Members of the Board, or any committee designated by the Board, may participate in a meeting of the Board, or of such committee, as the case may be, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 3.16 shall constitute presence in person at such meeting.  Except as otherwise provided by the Certificate of Incorporation or by law, the vote of a majority of the directors present (including those who participate by means of conference telephone or similar communications equipment) at the time of the vote, if a quorum is present at such time, shall be the act of the Board.

ARTICLE 4

COMMITTEES OF THE BOARD

The Board may, by resolution passed by the Board, designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Corporation and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to amending the Certificate of Incorporation, adopting an agreement of merger or consolidation, recommending to the stockholders the sale, lease or exchange of all or substantially all of the Corporations property and assets, recommending to the stockholders a dissolution of the Corporation or a revocation of a dissolution, or amending the By-Laws of the Corporation; and, unless the resolution designating it expressly so provides, no such committee shall have the power or authority to declare a dividend or to authorize the issuance of stock.

ARTICLE 5

OFFICERS

14

5.1    <u>Officers</u>.  The Board shall elect a Chairman, a President, a Secretary and a Treasurer and may elect or appoint one or more Vice Presidents and such other officers as it may determine. The Board may designate one or more Vice Presidents as Executive Vice Presidents and may use descriptive words or phrases to designate the standing, seniority or area of special competence of the Vice Presidents elected or appointed by it.  Each officer shall hold his office until his successor is elected and qualified or until his earlier death, resignation or removal in the manner provided in Section 5.2 of the By-Laws. Any two or more offices may be held by the same person.  The Board may require any officer to give a bond or other security for the faithful performance of his duties, in such amount and with such sureties as the Board may determine. All officers as between themselves and the Corporation shall have such authority and perform such duties in the management of the Corporation as may be provided in the By-Laws or as the Board may from time to time determine.

5.2    <u>Removal of Officers</u>.  Any officer elected or appointed by the Board may be removed by the Board with or without cause. The removal of an officer without cause shall be without prejudice to his contract rights, if any. The election or appointment of an officer shall not of itself create contract rights.

5.3    <u>Resignations</u>.  Any officer may resign at any time by so notifying the Board, the Chairman, the President or the Secretary in writing. Such resignation shall take effect at the date of receipt of such notice or at such later time as is therein specified, and, unless otherwise specified, the acceptance of such resignation shall not be necessary to make it effective. The resignation of an officer shall be without prejudice to the contract rights of the Corporation, if any.

5.4    <u>Vacancies</u>.    A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled for the unexpired portion of the term in the manner prescribed in the By-Laws for the regular election or appointment to such office.

5.5    <u>Compensation</u>.    Salaries or other compensation of the officers may be fixed from time to time by the Board. No officer shall be prevented from receiving a salary or other compensation by reason of the fact that he is also a director.

5.6    <u>Chairman</u>.    The Chairman shall be the chief executive officer of the Corporation and shall have general supervision over the business of the Corporation, subject, however, to the control of the Board and of any duly authorized committee of directors. The Chairman shall, if present, preside at all meetings of the stockholders and at all meetings of the Board. He may, with the Secretary or the Treasurer or an Assistant or an Assistant Treasurer, sign certificates for shares Secretary of capital stock of the Corporation.  He may sign and execute in the name of the Corporation deeds, mortgages 1 bonds 1 contracts and other instruments, except in cases where the signing and execution thereof shall be expressly delegated by the Board or by the By-Laws to some other officer or agent of the Corporation, or shall be required by law otherwise to be signed or executed; and, in general, he shall perform all duties incident to the office of Chairman and such other duties as from time to time may be assigned to him by the Board.

5.7    <u>President</u>.    The President shall be the chief operating officer of the Corporation and shall have general supervision over the business of the Corporation, subject, however, to the control of the Board, the Chairman and of any duly authorized committee of directors.  The President shall, in the absence of the Chairman, preside at all meetings of the stock holders and at all meetings of the Board.  He may, with the Secretary or the Treasurer or an

Assistant Secretary or an Assistant Treasurer, sign certificates for shares of capital stock of the Corporation. He may sign and execute in the name of the Corporation deeds ,mortgages, bonds, contracts and other instruments, except in cases where the signing and execution thereof shall be expressly delegated by the Board or by the By- Laws to some other officer or agent of the Corporation, or shall be required by law otherwise to be signed or executed; and, in general, he shall perform all duties incident to the office of President and such other duties as from time to time may be assigned to him by the Board and the Chairman.

5.8    Vice President.  At the request of the Chairman or the President, or, in their absence, at the request of the Board, the Vice Presidents shall (in such order as may be designated by the Board or, in the absence of any such designation, in order of seniority based on age) perform all of the duties of the President and so acting shall have all the powers of and be subject to all restrictions upon the President. Any Vice President may also, with the Secretary or the Treasurer or an Assistant Secretary or an Assistant Treasurer, sign certificates for shares of capital stock of the Corporation; may sign and execute in the name of the Corporation deeds, mortgages, bonds, contracts or other instruments authorized by the Board, except in cases where the signing and execution thereof shall be expressly delegated by the Board or by the By-Laws to some other officer or agent of the Corporation, or shall be required by law otherwise to be signed or executed; and shall perform such other duties as from time to time may be assigned to him by the Board or by the President.

5.9    Secretary.  The Secretary, if present, shall act as secretary of all meetings of the stockholders and of the Board and shall keep the minutes thereof in the proper book or books to be provided for that purpose; he shall see that all notices required to be given by the Corporation are duly given and served; he may, with the Chairman, the President or a Vice

17

President, sign certificates for shares of capital stock of the Corporation; he shall be custodian of the seal of the Corporation and may seal with the seal of the Corporation, or a facsimile thereof, all certificates for shares of capital stock of the all documents the execution of which on behalf of corporation and the Corporation Under its corporate seal is authorized in accordance with the provisions of the By-Laws; he shall have charge of the stock ledger and also of the other books, records and papers of the Corporation relating to its organization and management Corporation and shall see that the reports, statements and documents required by law are properly kept and filed; and as a other shall, in general, perform all the duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the Board, the Chairman or the President.

5.10    <u>Treasurer</u>.    The Treasurer shall have charge and custody of, and be responsible for, all funds, securities and notes of the Corporation; receive and give receipts for moneys due and payable to the Corporation from any sources whatsoever; deposit all such moneys in the name of the corporation in such banks, trust companies or other depositaries as shall be selected in accordance with these By-Laws; against proper vouchers, cause such funds to be disbursed by checks or drafts on the authorized depositaries of the Corporation signed in such manner as shall be determined in accordance with any provisions of the By-Laws, and be responsible for the accuracy of the amounts of all moneys so disbursed; regularly enter or cause to be entered in books to be kept by him or under his direction full and adequate account of all moneys received or paid by him for the account of the Corporation; have the right to require, from time to time, reports or statements giving such information as he may desire with respect to any and all financial transactions of the Corporation from the officers or agents transacting the same; render to the Chairman, the President or the Board, whenever the Chairman, the President

18

or the Board, respectively, shall require him so to do, an account of the financial condition of the Corporation and of all his transactions as Treasurer; exhibit at all reasonable times his books of account and other records to any of the directors upon application at the office of the Corporation where such books and records are kept; and, in general, perform all the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the Board, the Chairman or the President; and he may sign with the Chairman, the President or a Vice President certificates for shares of capital stock of the Corporation.

      5.11    <u>Assistant Secretaries and Assistant Treasurers</u>.   Assistant Secretaries and Assistant Treasurers shall perform such duties as shall be assigned to them by the Secretary or by the Treasurer, respectively, or by the Board, the Chairman or the President. Assistant Secretaries and Assistant Treasurers may, with the Chairman, the President or a Vice President, sign certificates for shares of capital stock of the Corporation.

ARTICLE 6

<u>CONTRACTS, CHECK S, DRAFTS, BANK ACCOUNTS, ETC.</u>

      6.1    <u>Execution of Contracts</u>.   The Board may authorize any officer, employee or agent, in the name and on behalf of the Corporation, to enter into any contract or execute and satisfy any instrument, and any such authority may be general or confined to specific instances, or otherwise limited.

      6.2    <u>Loans</u>.   The Chairman, the President or any other officer, employee or agent authorized by the By-Laws or by the Board may effect loans and advances at any time for the Corporation from any bank, trust company or other institutions or from any firm, corporation or individual and for such loans and advances may make, execute and deliver promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation and, when authorized by the Board so do to, may pledge and hypothecate or transfer any securities or other property of

19

the Corporation as security for any such loans or advances. Such authority conferred by the Board may be general or confined to specific instances or otherwise limited.

6.3    Checks. Drafts, Etc. All checks, drafts and other orders for the payment of money out of the funds of the Corporation and all notes or other evidences of indebtedness of the Corporation shall be signed on behalf of the Corporation in such manner as shall from time to time be determined by resolution of the Board.

6.4    Deposits. The funds of the Corporation not otherwise employed shall be deposited from time to time to the order of the Corporation in such banks, trust companies or other depositaries as the Board may select or as may be selected by an officer, employee or agent of the Corporation to whom such power may from time to time be delegated by the Board.

ARTICLE 7

STOCK AND DIVIDENDS

7.1    Certificates Representing Shares. The shares of capital stock of the Corporation shall be represented by certificates in such form (consistent with the provisions of Section 158 of the General Corporation Law) as shall be approved by the Board. Such certificates shall be signed by the Chairman, the President or a Vice President and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer and may be sealed with the seal of the Corporation or a facsimile thereof. The signatures of the officers upon a certificate may be facsimiles, if the certificate is countersigned by a transfer agent or registrar other than the Corporation itself or its employee. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon any certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, otherwise

ordered by the Board, be such certificate may, unless issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.

7.2    <u>Transfer of Shares</u>.  Transfers of shares of capital stock of the Corporation shall be made only on the books of the Corporation by the holder thereof or by his duly authorized attorney appointed by a power of attorney duly executed and filed with the Secretary or a transfer agent of the Corporation and on surrender of the certificate or certificates representing such shares of capital stock properly endorsed for transfer and upon payment of all necessary transfer tax.es. Every certificate exchanged, returned or surrendered to the corporation shall be marked "Cancelled", with the date of cancellation, by the Secretary or an Assistant Secretary or the transfer agent of the Corporation. A person in whose name shares of capital stock shall stand on the books of the Corporation shall be deemed the owner thereof to receive dividends, to vote as such owner and for all other purposes as respects the Corporation. No transfer of shares of capital stock shall be valid as against the Corporation, its stockholders and creditors for any purpose, except to render the transferee liable for the debts of the Corporation to the extent provided by law, until such transfer shall have been entered on the books of the Corporation by an entry showing from and to whom transferred.

7.3    <u>Transfer and Registry Agents</u>.  The Corporation may from time to time maintain one or more transfer offices or agents and registry offices or agents at such place or places as may be determined from time to time by the Board.

7.4    <u>Lost, Destroyed, Stolen and Mutilated Certificates</u>.  The holder of any shares of capital stock of the Corporation shall immediately notify the corporation of any loss, destruction, theft or mutilation of the certificate representing such shares, and the corporation may issue a new certificate to replace the certificate alleged to have been lost, destroyed, stolen

21

or mutilated. The Board may, in its discretion, as a condition to the issue of any such new certificate, require the owner of the lost, destroyed, stolen or mutilated certificate, or his legal representatives, to make proof satisfactory to the Board of such loss, destruction, theft or mutilation and to advertise such fact in such manner as the Board may require and to give the Corporation and its transfer agents and registrars, or such of them as the Board may require, a bond in such form, in such sums and with such surety or sureties as the Board may direct, to indemnify the Corporation and its transfer agents and registrars against any claim that may be made against any of them on account of the continued existence of any such certificate so alleged to have been lost, destroyed, stolen or mutilated and against any expense in connection with such claim.

7.5    Regulations.  The Board may make such rules and regulations as it may deem expedient, not inconsistent with the By-Laws or with the Certificate of Incorporation, concerning the issue, transfer and registration of certificates representing shares of its capital stock.

7.6    Restriction on Transfer of Stock.  A written restriction on the transfer or registration of transfer of capital stock of the corporation, if permitted by Section 202 of the General Corporation Law and noted conspicuously on the certificate representing such capital stock, may be enforced against the holder of the restricted capital stock or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder. Unless noted conspicuously on the certificate representing such capital stock, a restriction, even though permitted by Section 202 of the General Corporation Law, shall be ineffective except against a person with actual knowledge of the restriction.  A restriction on the transfer or registration

Corporation may be imposed of transfer of capital stock of the either by the Certificate of Incorporation or by an agreement among any number of stockholders or among such stockholders and the Corporation. No restriction so imposed shall be binding with respect to capital stock issued prior to the adoption of the restriction unless the holders of such capital stock are parties to an agreement or voted in favor of the restriction.

      7.7    <u>Dividends, Surplus, Etc</u>. Subject to the provisions of the Certificate of Incorporation and of law, the Board:

      7.7.1    May declare and pay dividends or make other distributions on the outstanding shares of capital stock in such amounts and at such time or times as, in its discretion, the Condition of the affairs of the Corporation shall render advisable;

      7.7.2    May use and apply, in its discretion, any the surplus of the Corporation in purchasing or acquiring any shares of capital stock of the Corporation, or purchase warrants therefor, in accordance with law, or any of its bonds, debentures, notes, scrip or other securities or evidences of indebtedness;

      7.7.3    May set aside from time to time out of such surplus or net profits such sum or sums as, in its discretion, it may think proper, as a reserve fund to meet contingencies, or for equalizing dividends or for the purpose of maintaining or increasing the property or business of the Corporation, or for any purpose it may think conducive to the best interests of the Corporation.

ARTICLE 8

<u>INDEMNIFICATION</u>

      8.1    Indemnification of Officers and Directors. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened,

23

pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director or an officer of the Corporation, against expenses (including attorney's fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding to the fullest extent and in the manner set forth in and permitted by the General Corporation Law, and any other applicable law, as from time to time in effect. Such right of indemnification shall not be deemed exclusive of any other rights to which such maybe entitled apart from the foregoing provisions of this Section 8.1 shall director or officer provisions. The be deemed to be a contract between the Corporation and each director and officer who serves in such capacity at any time while this Article 8 and the relevant provisions of the General Corporation Law and other applicable law, if any, are in effect, and any repeal or modification thereof shall not affect any rights or obligations then existing with respect to any state of facts then or theretofore existing or any action, suitor proceeding theretofore or thereafter brought or threatened based in whole or in part upon any such state of facts.

8.2    Indemnification of Other Persons.  The Corporation may indemnify any person who was or is a party or be made a party to any threatened, pending or The Corporation is threatened to completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (includingattorneys1fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding to the fullest extent and in the manner set forth in and permitted by the General Corporation Law, and any

24

other applicable law, as from time to time in effect. Such right of indemnification shall not be deemed exclusive of any other rights to which any such person may be entitled apart from the foregoing provisions.

8.3    Insurance.    The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of Sections 8.1 and 8.2 of the By-Laws or under Section 145 of the General Corporation Law or any other provision of law.

ARTICLE 9

BOOKS AND RECORDS

9.1    Book and Records.    The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of the stockholders, the Board and any committee of the Board. The Corporation shall keep at the office, designated in the Certificate of Incorporation or at the office of the transfer agent or registrar of the Corporation, a record containing the names and addresses of all stockholders, the number and class of shares held by each and the dates when they respectively became the owners of record thereof.

9.2    Form of Records.    Any records maintained by the Corporation in the regular course of its business, including its stock ledger, books of account, and minute books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs,

25

microphotographs, or any other information storage device, provided that the records so kept can be converted into clearly legible written form within a reasonable time. The Corporation shall so convert any records so kept upon the request of any person entitled to inspect the same.

9.3    Inspection of Books and Records.  Except as otherwise provided by law, the Board shall determine from time to time whether, and, if allowed, when and under what conditions and regulations, the accounts, books, minutes and other records of the Corporation, or any of them, shall be open to the inspection of the stockholders or directors.

ARTICLE 10

SEAL

The Board may adopt a corporate seal which shall be in the form of a circle and shall bear the full name of the Corporation, the year of its incorporation and the word "Delaware".

ARTICLE 11

FISCAL YEAR

The fiscal year of the Corporation shall be determined, and may be changed, by resolution of the Board.

ARTICLE 12

VOTING OF SHARES HELD

Unless otherwise provided by resolution of the Board, the Chairman or the President may, from time to time, appoint one or more attorneys or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes which the Corporation may be entitled to cast as a stockholder or otherwise in any other corporation, any of whose shares or securities may be held by the Corporation, at meetings of the holders of stock or other securities

of such other corporation, or to consent in writing to any action by any such other corporation, and may instruct the person or persons so appointed as to the manner of casting such votes or giving such consent, and may execute or cause to be executed on behalf of the Corporation and under its corporate seal, or otherwise, such written proxies, consents, waivers or other instruments as he may deem necessary or proper in the premises; or the Chairman or the President may himself attend any meeting of the holders of the stock or other securities of any such other corporation.

## ARTICLE 13

### AMENDMENTS

The By-Laws may be altered, amended, supplemented or repealed, or new By-Laws may be adopted, by vote of the holders of the shares entitled to vote in the election of directors. The By-Laws may be altered, amended, supplemented or repealed, or new By-Laws may be adopted, by the Board. Any By-Laws adopted, altered, amended, or supplemented by the Board may be altered, amended, or supplemented or repealed by the stockholders entitled to vote thereon.

## Exhibit A-5

**Form of Amended and Restated Certificate of Incorporation of Humongous, Inc.**

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

## OF

## HUMONGOUS, INC.

Humongous, Inc. (the "Existing Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware ("DGCL"), hereby certifies as follows:

1.    The name of the Existing Corporation is Humongous, Inc.

2.    The certificate of incorporation of the Existing Corporation was originally filed in the office of the Secretary of State of the State of Delaware on August 19, 2005.

3.    This Amended and Restated Certificate of Incorporation amends and restates in its entirety the certificate of incorporation of the Existing Corporation, as in effect on the date hereof.

4.    On [  ], 2013, the Existing Corporation filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5.    This Amended and Restated Certificate of Incorporation has been deemed approved without the need for board of directors or stockholder approval pursuant to Section 303 of the DGCL because it has been adopted pursuant to the Joint Chapter 11 Plan of Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

6.    This Amended and Restated Certificate of Incorporation has been duly executed and acknowledged by an officer of the Existing Corporation designed by order of the Bankruptcy Court in accordance with the provisions of Sections 242, 245 and 303 of the DGCL.

7.    The text of the certificate of incorporation of the Existing Corporation is hereby amended and restated in its entirety to read as follows:

FIRST:        The name of the corporation is Humongous, Inc. (the "Corporation").

SECOND:        The address of the corporation's initial registered office in Delaware and the name of the corporation's initial registered agent at that address are as follows:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

THIRD:    The purpose for which the corporation is formed is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH:    The total number of shares of stock which the corporation will have authority to issue is 100 shares of Common Stock, par value $1.00 per share.

FIFTH:    The name and address of the incorporator are as follows: [ _____ ].

SIXTH:    The directors of the corporation will have the power to amend the by-laws of the corporation.

SEVENTH:    No director will be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

EIGHTH:    Subject to further amendment of this Second Amended and Restated Certificate of Incorporation of the Corporation, as provided by applicable law, the Corporation shall not issue any non-voting equity securities in violation of section 1123(a)(6) of the Bankruptcy Code.

**Exhibit A-6**

**Form of Amended and Restated By-Laws of Humongous, Inc.**

AMENDED AND RESTATED BY-LAWS

of

HUMONGOUS, INC.

A Delaware Corporation

## ARTICLE I

### Offices

1.1.    The registered office of the Corporation will be in the City of Wilmington, County of New Castle, State of Delaware.

1.2.    The Corporation may also have offices at such other places, within or outside of the State of Delaware, as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE II

### Meeting of Stockholders

2.1.    Meetings of stockholders will be held at such places within or outside of the State of Delaware as may be fixed from time to time by the Board of Directors.

2.2.    Annual Meetings of Stockholders will be held on the third Wednesday of each year, or if that is a legal holiday, on the next following business day, at 10:00 a.m., or at such other date and time as may be fixed by the Board of Directors.    At each annual meeting of stockholders the stockholders will elect directors and transact such other business as may properly be brought before the meeting.

2.3.    Special meetings of stockholders may be called at any time for any purpose or purposes by the Board of Directors or by the President, and must be called by the President or

the Secretary upon the written request of a majority of the directors or upon the written request of the holders of at least 50% of all the outstanding shares of any class entitled to vote on the action proposed to be taken. Each written request must state the time, place and purpose or purposes of the proposed meeting. A special meeting of stockholders called by the Board of Directors or the President, other than one required to be called by reason of a written request of stockholders, may be cancelled by the Board of Directors at any time not less than 24 hours before the scheduled commencement of the meeting.

2.4.    Written notice of each annual or special meeting of stockholders, stating the date, time and place of the meeting and the matters to be voted upon at it, must be given in the manner set forth in Article VI of these By-Laws not less than ten nor more than sixty days before the date of the meeting, to each stockholder entitled to vote at the meeting.

2.5.    Except as otherwise required by law or the Certificate of Incorporation, the presence in person or by proxy of holders of a majority in voting power of the shares entitled to vote at a meeting of stockholders will be necessary, and will constitute a quorum, for the transaction of business at such meeting. If a matter to be voted upon at a meeting requires the affirmative vote of the holders of any class of stock voting separately, the presence in person or by proxy of holders of a majority in voting power of the shares of that class also will be necessary to constitute a quorum with regard to that matter. If a quorum is not present or represented by proxy at any meeting of stockholders, the holders of a majority of the shares entitled to vote at the meeting who are present in person or represented by proxy may adjourn the meeting from time to time until a quorum is present. An adjourned meeting may be held later without notice other than announcement at the meeting, except that if the adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned

meeting, notice of the adjourned meeting must be given in the manner set forth in Article VI to each stockholder of record entitled to vote at the adjourned meeting. Any business that could have been transacted at a meeting that is adjourned may be transacted at the adjourned meeting.

2.6.    At any meeting of stockholders each stockholder having the right to vote may vote in person or by proxy. Except as otherwise provided by law or in the Certificate of Incorporation, each stockholder will be entitled to one vote for each share of stock entitled to vote standing in that stockholder' s name on the books of the Corporation. All elections will be determined by plurality votes. Except as otherwise provided by law or in the Certificate of Incorporation or By-Laws, any other matter will be determined by the vote of a majority in voting power of the shares which are voted with regard to it.

2.7.    Whenever the vote of stockholders at a meeting is required or permitted in connection with any corporate action, the meeting and vote may be dispensed with if the action taken is consented to in writing or by electronic transmission (if permitted by law) by the holders of shares having at least the minimum number of votes that would be required to authorize the action at a meeting at which all shares entitled to vote were present and voted.

ARTICLE III

Directors

3.1.    The Board of Directors will manage the business of the Corporation, except as otherwise provided by law, the Certificate of Incorporation or these By-Laws.

3.2.    The number of directors which will constitute the entire Board of Directors will be such number, not less than one nor more than twenty, as is determined by the Board of Directors from time to time. Until further action by the Board of Directors, the number of directors which will constitute the entire Board of Directors will be three. As used in these By-

3

Laws, the term "entire Board of Directors" means the total number of directors which the Corporation would have if there were no vacancies.

3.3.    Except as provided in Section 5 of this Article, the directors will be elected at each annual meeting of stockholders.  Except as otherwise provided by law, the Certificate of Incorporation, or these By-Laws, each director elected will serve until the next succeeding annual meeting of stockholders and until his successor is elected and qualified.

3.4.    Except as otherwise required by law or in the Certificate of Incorporation, any of the directors may be removed for cause by vote of a majority of the entire Board.  Any or all of the directors may be removed for cause or without cause by vote of the holders of a majority in voting power of the outstanding shares that are entitled to be voted in the election of directors, except that if a director is elected by the holders of one or more classes or series of stock, that director may be removed without cause only by vote of holders of a majority in voting power of the outstanding shares of that class or series, or those classes or series.

3.5.    Newly created directorships resulting from an increase in the number of directors and vacancies occurring in the Board may be filled by vote of a majority of the directors then in office, even if less than a quorum exists.  A director elected to fill a vacancy, including a vacancy created by a newly created directorship, will serve until the next succeeding annual meeting of stockholders and until his or her successor is elected and qualified.

3.6.    The Board of Directors, by the affirmative vote of a majority of the directors then in office or of the members of a committee that has as one of its purposes determining the compensation of directors, officers or employees, and irrespective of any personal interest of any of its members, may establish reasonable compensation of any or all directors for services to the Corporation as directors, officers, employees or otherwise.

## ARTICLE IV

### Meetings of the Board of Directors

4.1.    The first meeting of each newly elected Board of Directors will be held immediately following the annual meeting of the stockholders.  If the meeting is held at the place of the meeting of stockholders, no notice of the meeting need be given to the newly elected directors.  If the first meeting is not held at that time and place, it will be held at a time and place specified in a notice given in the manner provided for notice of special meetings of the Board of Directors.

4.2.    Regular meetings of the Board of Directors may be held upon such notice, or without notice, at such times and at such places within or outside of the State of Delaware, as is determined from time to time by the Board of Directors.

4.3.    Special meetings of the Board of Directors may be called by the Chairman of the Board, if there is one, or by the President or the Secretary, on at least two days' notice to each director and must be called by the President or the Secretary on at least two days' notice at the written request of any two directors (or of the sole director if there is only one director).

4.4.    Whenever notice of a meeting of the Board of Directors is required, the notice must be given in the manner set forth in Article VI of these By-Laws and must state the place, date and hour of the meeting.  Except as provided by law, the Certificate of Incorporation, or other provisions of these By-Laws, neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of the meeting.

4.5.    Except as otherwise required by law or the Certificate of Incorporation or other provisions of these By-Laws, a majority of the directors in office, but in no event less than one-

third of the entire Board of Directors, will constitute a quorum for the transaction of business, and the vote of a majority of the directors present at any meeting at which a quorum is present will be the act of the Board of Directors. If a quorum is not present at any meeting of directors, a majority of the directors present at the meeting may adjourn the meeting from time to time, without notice of the adjourned meeting other than announcement at the meeting. To the extent permitted by law, a director participating in a meeting by conference telephone or similar communications equipment by which all persons participating in the meeting can hear each other will be deemed present in person at the meeting and all acts taken by him during his participation will be deemed taken at the meeting.

4.6.    To the extent permitted by law, a director participating in a meeting by conference telephone or similar communications equipment by which all persons participating in the meeting can hear each other will be deemed present in person at the meeting and all acts taken by the director during his or her participation will be deemed taken at the meeting.

4.7.    Any action of the Board of Directors may be taken without a meeting if all the members of the Board of Directors consent to the action in writing or by electronic transmission and the writings or electronic transmissions are filed with the minutes of the Board of Directors.

ARTICLE V

Committees

5.1.    If the Board of Directors consists of more than two directors, the Board of Directors may designate from among its members an Executive Committee and other committees, each consisting of two or more directors, and may also designate one or more of its members to serve as alternates on these committees. To the extent permitted by law, the Executive Committee will have all the authority of the Board of Directors, except as the Board

6

otherwise provides, and the other committees will have such authority as the Board grants them. The Board of Directors will have power at any time to change the membership of any committees, to fill vacancies in their membership and to discharge any committees. All resolutions establishing or discharging committees, designating or changing members of committees, or granting or limiting authority of committees, may be adopted only by the affirmative vote of a majority of the entire Board of Directors.

5.2.    Each committee must keep regular minutes of its proceedings and report to the Board of Directors as and when the Board requires. Unless the Board otherwise provides, a majority of the members of any committee may determine how actions are taken and the procedures to be followed at its meetings and may fix the time and place of its meetings. Unless a majority of the members of a committee determine otherwise with respect to that committee, the procedures of each committee will include permitting members to participate in meetings by conference telephone or similar communications equipment by which all persons participating in the meeting can hear each other.

5.3.    Any action of a committee may be taken without a meeting if all the members of .the committee consent to the action in writing or by electronic transmission and the writings or electronic transmissions are filed with the minutes of the committee.

ARTICLE VI

Notices

6.1.    Any notice to a stockholder may be given personally or by mail. If mailed, a notice will be deemed given when it is deposited in the United States mail, postage prepaid, directed to the stockholder at his address as it appears on the records of stockholders.

6.2.    Any notice to a director may be given personally, by telephone or by mail, facsimile transmission, telegram, cable or other electronic transmission.  A notice will be deemed given when it is actually given in person or by telephone, when it is received if it is given by facsimile transmission or other electronic transmission, on the third business day after the day when it is deposited in the United States mail, postage prepaid, or on the day when it is delivered to a telegram, cable or similar communications company, directed to the director at his or her business address or at such other address as the director may have designated to the Secretary in writing as the address to which notices should be sent.

6.3.    Any person may waive notice of any meeting by signing a written waiver, whether before or after the meeting.  In addition, attendance at a meeting will be deemed a waiver of notice unless the person attends for the purpose, expressed to the meeting at its commencement, of objecting to the transaction of any business because the meeting is not lawfully called or convened.

## ARTICLE VII

### Officers

7.1.    The officers of the Corporation will be a President, a Secretary and a Treasurer, and the Board of Directors may also elect a Chairman of the Board, a Vice Chairman of the Board, one or more Vice Presidents (one or more of whom may be designated an Executive Vice President or a Senior Vice President), one or more Assistant Secretaries or Assistant Treasurers, and such other officers as it may from time to time deem advisable.  Any two or more offices, except the offices of President and Secretary, may be held by the same person.  No officer except the Chairman of the Board need be a director of the Corporation.

7.2.    Each officer will be elected by the Board of Directors and will hold office for such term, if any, as the Board of Directors shall determine.  Any officer may be removed at any time, either with or without cause, by the vote of a majority of the entire Board of Directors.

7.3.    The compensation of officers will be fixed by the Board of Directors or in such manner as it may provide.

7.4.    The Chairman of the Board, if any, will preside at all meetings of the stockholders and of the Board of Directors and will have such other duties as from time to time may be prescribed by the Board of Directors.

7.5.    The President will be the Chief Executive Officer of the Corporation, will have general charge of management of the business and affairs of the Corporation, subject to the control of the Board of Directors, and will see that all orders and resolutions of the Board of Directors are carried into effect.  The President will preside over any meeting of the stockholders or the Board of Directors at which neither the Chairman of the Board nor a Vice Chairman of the Board is present.

7.6.    The officers of the Corporation, other than the Chairman of the Board and the President, will have such powers and perform such duties in the management of the property and affairs of the Corporation, subject to the control of the Board of Directors and the President, as generally pertain to their respective offices, as well as such powers and duties as from time to time may be prescribed by the Board of Directors.

7.7.    The Board of Directors may assign to officers or others descriptive titles (such as chief executive officer, chief operating officer, chief financial officer, principal accounting officer or general counsel) and may assign to vice presidents designations of priority (such as

executive vice president, senior vice president or first vice president) or function (such as vice president -finance or a regional vice president).

7.8.    The Board of Directors may require any officer, agent or employee to give security for the faithful performance of his duties.

## ARTICLE VIII

### Certificates for Shares

8.1.    The shares of stock of the Corporation will be represented by certificates, in such form as the Board of Directors may from time to time prescribe, signed by the President or a Vice-President and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary.

8.2.    Any or all signatures upon a certificate may be a facsimile.  Even if an officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate ceases to be that officer, transfer agent or registrar before the certificate is issued, that certificate may be issued by the Corporation with the same effect as if he, she or it were that officer, transfer agent or registrar at the date of issue.

8.3.    The Board of Directors may direct that a new certificate be issued in place of any certificate issued by the Corporation which is alleged to have been lost, stolen or destroyed. When doing so, the Board of Directors may prescribe such terms and conditions precedent to the issuance of the new certificate as it deems expedient, and may require a bond sufficient to indemnify the Corporation against any claim that may be made against it with regard to the allegedly lost, stolen or destroyed certificate or the issuance of the new certificate.

8.4.    The Corporation or a transfer agent of the Corporation, upon surrender to it of a certificate representing shares, duly endorsed or accompanied by proper evidence of lawful

10

succession, assignment or authority to transfer, shall issue a new certificate to the person entitled

to it, and shall cancel the old certificate and record the transaction upon the books of the

Corporation.

8.5.    The Board of Directors may fix in advance a date as the record date for

determination of the stockholders entitled to notice of or to vote at any meeting of stockholders,

or to express consent to, or dissent from, any proposal without a meeting, or to receive payment

of any dividend or allotment of any rights, or to take or be the subject of any other action.

Except as otherwise required or permitted by law, that date must be not less than ten nor more

than sixty days before the date of the meeting, nor more than sixty days before any other action.

If no record date is fixed, the record date will be as provided by law.  A determination of

stockholders entitled to notice of or to vote at any meeting of stockholders which has been made

as provided in this Section will apply to any adjournment of the meeting, unless the Board of

Directors fixes a new record date for the adjourned meeting.

8.6.    The Corporation will for all purposes, be entitled to treat a person registered on its

books as the owner of shares as the owner of those shares, with the exclusive right, among other

things, to receive dividends and to vote with regard to those shares, and the Corporation will not

be bound to recognize any equitable or other claim to or interest in shares of its stock on the part

of any other person, whether or not the Corporation has notice of the claim or interest of the

other person, except as otherwise provided by law.

ARTICLE IX

Indemnification

9.1.    The Corporation shall indemnify any person who was or is made a party or is

threatened to be made a party to any threatened, pending or completed action, suit or proceeding,

whether civil, criminal, administrative or investigative (other than an action by or in the right of

11

the Corporation) by reason of the fact that the person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of <u>nolo contendere</u> or its equivalent, will not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the Corporation, or, with respect to any criminal action or proceeding, had reasonable cause to believe that the conduct was unlawful.

9.2.    The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be

12

amount if it shall ultimately be determined that the person is not entitled to be indemnified by the Corporation as authorized in this Article.

9.6.    The Indemnification and advancement of expenses provided by, or granted pursuant to, the other Sections of this Article shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

9.7.    The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

9.8.    The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against the person and incurred by him in any such capacity, or arising out of the person' s status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article.

9.9.    References in this Article to "the Corporation" will include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers and employees or agents so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is

14

or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, will stand in the same position under the provisions of this Article with respect to the resulting or surviving corporation as he would have with respect to the constituent corporation if its separate existence had continued.

9.10.   For purposes of this Article, references to "other enterprises" will include employee benefit plans; references to "fines" will include any excise taxes assessed on a person with respect to an employee benefit plan; and references to "serving at the request of the Corporation" will include any service as a director, officer, employee or agent of a subsidiary of the Corporation and any service as a director, officer, employee or agent of the Corporation which imposes duties on, or involves services by, such director, officer, employee, or agent with respect to an employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner he reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan will be deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article.

9.11.   The provisions of this Article will be deemed retroactive and will include all acts of the officers and directors of the Corporation since the date of incorporation.

ARTICLE X

General Provisions

10.1.   The corporate seal will have inscribed on it the name of the Corporation, the year of its creation, the words "CORPORATE SEAL DELAWARE," and such other appropriate legend as the Board of Directors may from time to time determine.  Unless prohibited by the

Board of Directors, a facsimile of the corporate seal may be affixed or reproduced in lieu of the corporate seal itself.

10.2.    The books of the Corporation, except as such as are required by law to be kept within the State of Delaware, may be kept at such place or places within or outside of the State of Delaware as the Board of Directors may from time to time determine.

10.3.    The fiscal year of the Corporation will end on March 31 of each year.

## ARTICLE XI

### Amendments

11.1.    These By-Laws may be amended or repealed, and new By-Laws may be adopted, amended or repealed (a) at any regular or special meeting of stockholders, or (b) by the affirmative vote of a majority of the entire Board at any regular or special meeting of the Board, except that no By-Law may be adopted or amended by the Board of Directors if the By-Law or amendment is inconsistent with a By-Law, or an amendment to a By-Law, adopted by the stockholders.

**Exhibit A-7**

**Form of Amended and Restated Articles of Incorporation of California U.S. Holdings, Inc.**

# AMENDED AND RESTATED

# ARTICLES OF INCORPORATION

# OF

# CALIFORNIA U.S. HOLDINGS, INC.

A California Corporation

The undersigned certifies that:

1. [He/She] is the [ _____ ] of CALIFORNIA U.S. HOLDINGS, INC. a California corporation (the "Existing Corporation").

2. The name of the Existing Corporation is California U.S. Holdings, Inc.

3. The articles of incorporation of the Existing Corporation were originally filed in the office of the Secretary of State of the State of California on April 9, 1999.

4. This Amended and Restated Articles of Incorporation amends and restates in its entirety the Articles of Incorporation of the Existing Corporation, as in effect on the date hereof.

5. On [ ], 2013, the Existing Corporation filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

6. This Amended and Restated Articles of Incorporation has been deemed approved without the need for board of directors or stockholder approval pursuant to Section 1400 of the California Corporations Code because it has been adopted pursuant to the Joint Chapter 11 Plan of Atari Interactive, Inc., Humongous, Inc., and California U.S. Holdings, Inc.

7. This Amended and Restated Articles of Incorporation has been duly executed and acknowledged by an officer of the Existing Corporation designed by order of the Bankruptcy Court in accordance with the provisions of Sections 1400 and 1401 of the California Corporations Code.

8. The text of the Articles of Incorporation is hereby amended and restated in its entirety to read as follows:

## ARTICLE I

The name of the corporation is California U.S. Holdings, Inc. (the "Corporation").

## ARTICLE II

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

## ARTICLE III

The name and complete business address in the State of California of the Corporation's initial agent for service of process is: [ _____ ]

## ARTICLE IV

This Corporation is authorized to issue only one class of stock, to be designated "Common Stock." The total number of shares which this Corporation is authorized to issue is One Thousand (1,000).

Subject to further amendment of this Amended and Restated Articles of Incorporation of the Corporation, as provided by applicable law, the Corporation shall not issue any non-voting equity securities in violation of section 1123(a)(6) of the Bankruptcy Code.

## ARTICLE V

a)  The liability of directors of the Corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

b)  The Corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) through bylaw provisions, agreements with agents, vote of shareholders or disinterested directors, or otherwise, to the fullest extent permissible under California law.

c)  Any amendment, repeal or modification of any provision of this Article IV shall not adversely affect any right or protection of an agent of the Corporation existing at the time of such amendment, repeal or modification.

## <u>Exhibit A-8</u>

**Form of Bylaws of California U.S. Holdings, Inc.**

## BYLAWS OF
## CALIFORNIA U.S. HOLDINGS, INC.
## (A CALIFORNIA CORPORATION)

## ARTICLE I
## CORPORATE OFFICES

Section 1.    PRINCIPAL EXECUTIVE OFFICE.  The principal executive office of the corporation is hereby fixed and located at:

[  _____  ]

The Board is hereby granted full power and authority to change the principal executive office from one location to another.  Any such change shall be noted in the Bylaws opposite this Section, or this Section may be amended to state the new location.

Section 2.    OTHER OFFICES.  Branch or subordinate business offices may at any time be established by the Board at any place or places.

## ARTICLE II
## SHAREHOLDERS MEETINGS

Section 1.    PLACE OF MEETINGS.  Meetings of the shareholders shall be held at the principal executive office of the corporation, or at any other place within or without the State of California as may from time to time be designated for that purpose either by the Board or by the written consent of all persons entitled to vote thereat and not present at the meeting, given either before or after the meeting and filed with the Secretary of the corporation.

Section 2.    ANNUAL MEETINGS.  The annual meeting of shareholders shall be held on such date and time as may be fixed by the Board; provided, however, that if such day is a legal holiday, then at the same time and place in the next day thereafter ensuing which is a full business day.  At the annual meeting the shareholders shall elect directors, consider reports of the affairs of the corporation, and transact any other proper business.

Section 3.    SPECIAL MEETINGS.  Special meetings of the shareholders for the purpose of taking any action which the shareholders are permitted to take under the General Corporation Law of the State of California (herein, as the same may from time to time hereafter be amended, referred to as the "General Corporation Law") may be called at any time by the Chairman of the Board or the President, or by the Board, or by any Vice President, or by one or more shareholders entitled to cast not less than 10 percent of the votes of the meeting.  Upon request in writing to the Chairman of the Board, President, Vice President or Secretary by any person (other than the Board) entitled to call a special meeting of shareholders that a special meeting be held for any proper purpose, the officer receiving the request shall forthwith cause notice to be given to the shareholders entitled to vote that a meeting will be held at the time requested by the person or persons calling the meeting, not less than 35 nor more than 60 days after the receipt of the request.  If the notice is not given within 20 days after receipt of the request, the persons entitled to call the meeting may give the notice.

Section 4.        NOTICE AND REPORTS TO SHAREHOLDERS.  Written notice of
each meeting of shareholders, annual or special, shall be given to each shareholder entitled to
vote thereat, not less than 10 nor more than 60 days before the date of the meeting.  The notice of
each such annual or special meeting of shareholders shall state the place, the date, and the hour
of the meeting, and (1) in the case of a special meeting, the general nature of the business to be
transacted at the meeting (and no other business may be transacted at the meeting), or (2) in the
case of the annual meeting, those matters which the Board, at the time of the mailing of the
notice, intend to present for action by the shareholders, and any proper matter may be presented
at the meeting for action, provided, however, that the notice shall specify the general nature of a
proposal, if any, to take action with respect to approval of (i) a contract or other transaction with
an interested director pursuant to Section 310 of the General Corporation Law, (ii) amendment of
the Articles of Incorporation pursuant to Section 902 of the General Corporation Law, (iii) a
reorganization of the corporation pursuant to Section 1201 of the General Corporation Law, (iv)
voluntary dissolution of the corporation pursuant to Section 1900 of the General Corporation
Law or (v) a distribution in dissolution other than in accordance with the rights of outstanding
preferred shares, if any, pursuant to Section 2007 of the General Corporation Law.  The notice of
any meeting at which directors are to be elected shall include the names of nominees intended at
the time of the notice to be presented by management for election.

Notice of a shareholders' meeting or any report shall be given either personally or by
first-class mail (or in the case the corporation's outstanding shares are held of record by 500 or
more persons on the record date for the shareholders' meeting,  notice may be sent by third-class
mail) or other means of written communication, charges prepaid, addressed to such shareholder
at the address of such shareholder appearing on the books of the corporation or given by the
shareholder to the corporation for the purpose of notice.  If no such address appears on the
corporation's books or is given, the notice or report shall be deemed to have been given if sent to
that shareholder by mail or other means of written communication addressed to the place where
the principal executive office of the corporation is situated, or if published at least once in some
newspaper of general circulation in the county in which said principal executive office is located.
The notice or report shall be deemed to have been given at the time when delivered personally or
deposited in the mail or sent by other means of written communication.  An affidavit of mailing
of any notice or report in accordance with the provisions of this Section, executed by the
Secretary, Assistant Secretary or any transfer agent of the corporation shall be *prima facie*
evidence of the giving of the notice.

Written notice shall include an "electronic transmission" which is defined as (i) a
communication delivered by facsimile or electronic mail when directed to the facsimile number
of email address of the recipient on record with the corporation; (ii) posting on an electronic
message board or network which the corporation has designated for such communications; or
(iii) other means of electronic communication – in each case: (a) to a recipient who has provided
unrevoked consent to the use of that means of communication; (b) that creates a record capable
of retention, retrieval and review; and (c) that may be converted into a clearly legible tangible
form (e.g., printed in readable form).

If any notice or any report addressed to the shareholder at the address of that shareholder
appearing on the books of the corporation is returned to the corporation by the United States
Postal Service marked to indicate that the United States Postal Service is unable to deliver the
notice or report to the shareholder at such address, all future notices or reports shall be deemed to
have been duly given without further mailing if the same shall be available for the shareholder

upon written demand of the shareholder at the principal executive office of the corporation for a period of one year from the date of the giving of the notice or report to all other shareholders.

Section 5.     QUORUM.  A majority of the shares entitled to vote, present in person or by proxy, shall constitute a quorum for the transaction of business at any meeting of shareholders.  Except as provided in the next sentence, the affirmative vote of a majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute at least a majority of the required quorum) shall be the act of the shareholders, unless a vote of a greater number is required by the General Corporation Law or the Articles of Incorporation.  The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

Section 6.     ADJOURNED MEETING AND NOTICE THEREOF.  Any shareholders' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the shares present, either in person or by proxy, but in the absence of a quorum no other business may be transacted at such meeting, except as expressly provided in Section 5 of this Article with respect to the right of the shareholders present at a duly called or held meeting to continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

When any shareholders' meeting, either annual or special, is adjourned to another time and place, it shall not be necessary to give any notice of the time and place of the adjourned meeting or of the business to be transacted thereat, other than by announcement of the time and place thereof at the meeting at which such adjournment is taken; provided, however, that if any such shareholders' meeting is adjourned for 45 days or more, or if after adjournment a new record date is fixed for the adjourned meeting, notice of the adjourned meeting shall be given as in the case of an original meeting.  At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.

Section 7.     VOTING.  The shareholders entitled to notice of any meeting or to vote at any such meeting shall only be persons in whose names shares stand on the stock records of the corporation on the record date determined in accordance with Section 12 of this Article; provided, however, that if no such record date shall be fixed by the Board, only persons in whose names shares stand on the stock records of the corporation at the close of business on the business day next preceding the day on which notice of the meeting is given or if such notice is waived, at the close of business on the business day next preceding the day on which the meeting of shareholders is held, shall be entitled to vote at such meeting, and such day shall be the record date for such meeting.

Voting shall in all cases be subject to the provisions of Sections 702 through 704, inclusive, of the General Corporation Law (relating to voting of shares held by fiduciaries, held in the name of a corporation, or held in joint ownership).

The shareholders' vote may be *viva voce* or by ballot; provided, however, that all elections for directors must be by ballot upon demand made by a shareholder at the meeting and before the voting begins.

At a shareholders' meeting at which directors are to be elected, no shareholder shall be entitled to cumulate votes for any one or more candidates unless the candidate's or candidates' names have been placed in nomination prior to the voting and the shareholder has given notice at the meeting prior to the voting of such shareholder's intention to cumulate votes; provided, that if any shareholder has given such notice, then every shareholder entitled to vote at the election may cumulate votes for candidates in nomination and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which that shareholder's shares are entitled,  or distribute the shareholder's votes on the same principle among any or all of the candidates, as the shareholder thinks fit.  The candidates receiving the highest number of votes, up to the number of directors to be elected, shall be elected.

Section 8.    VALIDATION OF DEFECTIVELY CALLED OR NOTICED MEETINGS.  The transactions of any meeting of shareholders, either annual or special, however called and noticed, and wherever held, shall be as valid as though had at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy, and if, either before or after the meeting, each of the persons entitled to vote, not present in person or by proxy, or who, although present, has, at the beginning of the meeting, properly objected to the transaction of any business because the meeting was not lawfully called or convened or to particular matters of business legally required to be included in the notice, but not so included, signs a written waiver of notice, or a consent to the holding of such meeting, or an approval of the minutes thereof.  The waiver of notice or consent need not specify either the business to be transacted or the purpose of any annual or special meeting of shareholders, except that the waiver of notice or consent shall state the general nature of the proposal of any action taken or proposed to be taken with respect to approval of (i) a contract or other transaction with an interested director pursuant to Section 310 of the General Corporation Law, (ii) amendment of the Articles of Incorporation pursuant to Section 902 of the General Corporation Law, (iii) a reorganization of the corporation pursuant to Section 1201 of the General Corporation Law, (iv) voluntary dissolution of the corporation pursuant to Section 1900 of the General Corporation Law, or (v) a distribution and dissolution other than in accordance with the rights of outstanding preferred shares, if any, pursuant to Section 2007 of the General Corporation Law.  If such statement is not included in such written waiver of notice or consent, then any shareholder approval at the meeting, other than unanimous approval of those entitled to vote, to any such matters shall be invalid.  All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Attendance by a person at a meeting shall also constitute a waiver of notice of and presence at the meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened, and except that attendance at a meeting is not a waiver of any right to object to the consideration of any matter legally required to be included in the notice of meeting, but not so included, if that objection is expressly made at the meeting and before any vote is taken on such matter.

Section 9.    ACTION WITHOUT MEETING.  Any action which may be taken at any annual or special meeting of shareholders may be taken without a meeting and without prior notice, except as hereinafter set forth, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all shares entitled to vote on that action were present and voted.  Notwithstanding the foregoing, directors may not be elected without a meeting by written consent except by unanimous written consent of

all shares entitled to vote for the election of directors; provided, however, that a director may be elected at any time to fill a vacancy on the Board (other than a vacancy created by the removal of a director) that has not been filled by the directors, by the written consent of the holders of a majority of the outstanding shares entitled to vote for the election of directors. Any shareholder giving a written consent, or the shareholder's proxy holder, or a transferee of the shares, or a personal representative of the shareholder or their respective proxy holders, may revoke the consent by a writing received by the Secretary of the corporation before written consents of the number of shares required to authorize the proposed action have been filed with the Secretary, but not thereafter. Such revocation is effective upon its receipt by the Secretary of the corporation. If the consents of all shareholders entitled to vote have not been solicited in writing, or if the unanimous written consent of all such shareholders shall not have been received, the Secretary shall give prompt notice of the corporate action approved by the shareholders without a meeting to those shareholders entitled to vote and who have not consented in writing to the action authorized by such approval. Such notice shall be given, and shall be deemed to have been given, in the same manner as provided in Section 4 of this Article. In the case of approval of (i) contracts or transactions in which a director has a direct or indirect financial interest, pursuant to Section 310 of the General Corporation Law, (ii) indemnification of agents of the corporation pursuant to Section 317 of the General Corporation Law, (iii) a reorganization of the corporation pursuant to Section 1201 of the General Corporation Law, or (iv) a distribution and dissolution other than in accordance with the rights of outstanding preferred shares pursuant to Section 2007 of the General Corporation Law, the notice shall be given at least 10 days before the consummation of any action authorized by such approval.

Consent in writing shall include an "electronic transmission" which is defined as (i) a communication delivered by facsimile or electronic mail when directed to the facsimile number of email address of the recipient on record with the corporation; (ii) posting on an electronic message board or network which the corporation has designated for such communications; or (iii) other means of electronic communication – in each case: (a) to a recipient who has provided unrevoked consent to the use of that means of communication; (b) that creates a record capable of retention, retrieval and review; and (c) that may be converted into a clearly legible tangible form (e.g., printed in readable form).

Unless, as provided in Section 12 of this Article, the Board has fixed a record date for the determination of shareholders entitled to notice of and to give such written consent, the record date for such determination shall be the day on which the first written consent is given. All such written consents shall be filed with the Secretary of the corporation and shall be maintained in the corporate records.

Section 10.    PROXIES. Every person entitled to vote shares shall have the right to do so either in person or by one or more persons authorized by a written proxy executed by such shareholder or his duly authorized agent and filed with the Secretary of the corporation. Any proxy duly executed which does not state that it is irrevocable shall continue in full force and effect until (i) an instrument revoking it is filed with the Secretary of the corporation or a duly executed proxy bearing a later date is presented to the meeting prior to the vote pursuant thereto, (ii) the person executing the proxy attends the meeting and votes in person, or (iii) written notice of the death or incapacity of the maker of such proxy is received by the corporation before the vote pursuant thereto is counted; provided, however, that no proxy shall be valid after the expiration of 11 months from the date of its execution, unless otherwise provided in the proxy.

The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 705(e) and Section 705(f) of the General Corporation Law.

Section 11.   INSPECTORS OF ELECTION.  In advance of any meeting of shareholders, the Board may appoint any persons other than nominees for office as inspectors of election to act at such meeting or any adjournment thereof.  If no inspectors of election are so appointed, the chairman of any such meeting may, and on the request of any shareholder or his proxy shall, make such appointment at the meeting. The number of inspectors shall be either one or three.  If appointed at a meeting on the request of one or more shareholders or proxies, the majority of shares present in person or by proxy shall determine whether one or three inspectors are to be appointed.  In case any person appointed as inspector fails to appear or refuses to act, the vacancy may, and on the request of any shareholder or a shareholder's proxy shall, be filled by appointment by the Board in advance of the meeting, or at the meeting by the chairman of the meeting.

The duties of such inspector shall be as prescribed by Section 707 of the General Corporation Law and shall include: determining the number of shares outstanding and voting power of each; the shares represented at the meeting; the existence of a quorum; the authenticity, validity and effect of proxies; receiving votes, ballots or consents; hearing and determining all challenges and questions in any way arising in connection with the right to vote; counting and tabulating all votes or consents; determining when the polls shall close; determining the result; and performing such acts as may be proper to conduct the election or vote with fairness to all shareholders.  If there are three inspectors of election, the decision, act or certificate of a majority is effective in all respects as the decision, act or certificate of all.

Section 12.   RECORD DATE.  The Board may fix, in advance, a record date for the determination of the shareholders entitled to notice of any meeting or to vote or entitled to give consent to corporate action in writing without a meeting, to receive any report, to receive any dividend or distributions or any allotment of rights, or to exercise rights in respect of any other lawful action.  The record date so fixed shall be not more than 60 days nor less than 10 days prior to the date of any meeting nor more than 60 days prior to any other event for the purposes of which it is fixed.  When a record date is so fixed, only shareholders of record at the close of business on that date are entitled to notice of and to vote at any such meeting, to give consent without a meeting, to receive any report, to receive dividends, distributions or allotments of rights, or to exercise the rights, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date.

# ARTICLE III
## DIRECTORS

Section 1.   POWERS.  Subject to the provisions of the General Corporation Law and any limitations in the Articles of Incorporation and these Bylaws as to action required to be approved by the shareholders or by the outstanding shares, the business and affairs of the corporation shall be managed and all corporate power shall be exercised by or under the direction of the Board.  The Board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other persons, provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the Board.  Without prejudice to such powers, but

subject to the same limitation, it is hereby expressly declared that the directors shall have the following powers in addition to other powers enumerated in these Bylaws:

(a)     To select and remove all officers, agents and employees of the corporation; prescribe any powers and duties for them that are consistent with law, with the Articles of Incorporation, and with these Bylaws; fix their compensation; and require from them security for faithful service;

(b)     To conduct, manage and control the affairs and business of the corporation, and to make rules and regulations therefor consistent with law, with the Articles of Incorporation and with these Bylaws;

(c)     To change the principal executive office or the principal business office in the State of California from one location to another; to fix and locate from time to time one or more other offices of the corporation within or without the State of California; to cause the corporation to be qualified to do business and to conduct business in any other state, territory, dependency or country; and to designate any place within or without the State of California for the holding of any shareholders' meeting or meetings, including annual meetings;

(d)     To adopt, make and use a corporate seal; to prescribe the forms and certificates of stock; and to alter the form of the seal and certificates;

(e)     To authorize the issuance of shares of stock of the corporation from time to time, upon such terms and for such consideration as may be lawful;

(f)     To borrow money and incur indebtedness for the purposes of the corporation, and to cause to be executed and delivered therefor, in the corporate name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, and other evidences of debt and securities therefor.

Section 2.     NUMBER AND QUALIFICATIONS. The number of directors shall be such number to be determined by the resolutions of the Board, until changed by a duly adopted amendment to the Articles of Incorporation or by a Bylaw amending this Section 2 approved by the affirmative vote of a majority of the outstanding shares entitled to vote. The actual number of directors shall at all times be in accordance with Section 212 of the General Corporation Law of the State of California. The initial number of directors shall be one (1).

Section 3.     ELECTION AND TERM OF OFFICE. The directors shall be elected at each annual meeting of the shareholders but if such annual meeting is not held or the directors are not elected thereat, the directors may be elected at a special meeting of shareholders held for that purpose. Each director shall hold office until the next annual meeting and until a successor has been elected and qualified.

Section 4.     VACANCIES. A vacancy or vacancies in the Board shall be deemed to exist in case of the death, resignation or removal of any director, or if the authorized number of directors be increased, or if the shareholders fail, at any annual or special meeting of shareholders at which any director or directors are elected, to elect the full authorized number of directors to be voted for at that meeting.

Any director may resign effective upon giving written notice to the Chairman of the Board, the President, the Secretary or the Board, unless the notice specifies a later date for the effectiveness of such resignation. If the Board accepts the resignation of a director tendered to take effect at a future time, the Board or the shareholders shall have the power to elect a successor to take office when the resignation is to become effective.

Vacancies in the Board (other than a vacancy created by the removal of a director) may be filled by a majority of the remaining directors, though less than a quorum, or by a sole remaining director, and each director so elected shall hold office until the next annual meeting and until such director's successor has been elected; subject, however, to the right of any shareholder or shareholders of the corporation holding at least 5% in the aggregate of the outstanding voting shares of the corporation, in accordance with the provisions of Section 305(c) of the General Corporation Law, to a special meeting to elect the entire Board in the event that after the filling of any such vacancy by the directors, the directors elected by the shareholders shall constitute less than a majority of the directors then in office.

The shareholders may elect a director or directors at any time to fill any vacancy or vacancies not filled by the directors, and shall have the right, to the exclusion of the directors, to fill any vacancy or vacancies created by the removal of one or more directors. The election of any director or directors to fill a vacancy or vacancies created by the removal of one or more directors shall require the affirmative vote of a majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute at least a majority of the required quorum) or the unanimous written consent of all shares entitled to vote for the election of directors.

No reduction of the authorized number of directors shall have the effect of removing any directors prior to the expiration of his term of office.

Subject to the provisions of Section 303(a) of the General Corporation Law, any or all of the directors may be removed from office, without cause, if such removal is approved by a vote of a majority of the outstanding shares entitled to vote.

Section 5.    MEETINGS.  Regular and special meetings of the Board shall be held at any place within or without the State of California which has been designated from time to time by resolution of the Board or by written consent of the members of the Board. In the absence of such designation, regular meetings shall be held at the principal executive office of the corporation. Regular and special meetings may be held by webcast, video conferencing or other electronic means, provided that each director has consented to such meeting mechanism and a procedure to establish authenticity of those attending is in place.

Section 6.    REGULAR MEETINGS.  Immediately following each annual meeting of shareholders, the Board shall hold a regular meeting at the place of that annual meeting or at such other place as shall be fixed by the Board for the purpose of organization, election of officers and the transaction of other business, or by webcast, video conferencing or other electronic means.

Other regular meetings of the Board shall be held without call at such time and place as the Board may from time to time deem appropriate; provided, however, should the day fall upon a legal holiday, then said meeting shall be held at the same time on the next day thereafter

ensuing which is a full business day.  Call and notice of regular meetings of the Board are hereby dispensed with.

Section 7.    SPECIAL MEETINGS.  Special meetings of the Board for any purpose or purposes may be called at any time by the Chairman of the Board, the President, any Vice President, the Secretary or by any two directors.

Written notice of the time and place of special meetings shall be delivered personally to each director or communicated to each director by telephone, by telegraph, by mail, charges prepaid, by email or by facsimile, addressed to each director at that director's mailing address, email address or facsimile number as it is shown on the records of the corporation or, if it is not so shown on such records or is not readily ascertainable, at the place at which the meetings of the directors are regularly held.  In case such notice is mailed, it shall be deposited in the United States mail in the place in which the principal executive office of the corporation is located at least four days prior to the time of the holding of the meeting.  In case such notice is delivered personally, by telephone, by telegraph, by email or by facsimile, it shall be delivered at least 48 hours before the time of the holding of the meeting.  The notice need not specify the place of the meeting or the purpose of the meeting, if the meeting is to be held at the principal executive office of the corporation, or if the meeting is to be held by webcast, video conferencing or other electronic means.

Section 8.    QUORUM AND REQUIRED VOTE.  Presence of a majority of the authorized number of directors at a meeting of the Board constitutes a quorum for the transaction of business, except to adjourn as hereinafter provided.  Members of the Board may participate in a meeting through use of conference telephone or similar communications equipment, and such members shall be considered present in person, as long as all members participating in such meeting can hear one another.  Subject to the provisions of Section 5(a) of Article V of these Bylaws, every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be regarded as the act of the Board.  A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of a director or directors, provided that any action taken is approved by at least a majority of the required quorum for such meeting.

Section 9.    VALIDATION OF DEFECTIVELY CALLED OR NOTICED MEETINGS.  The transactions of any meeting of the Board, however called and noticed or wherever held, shall be as valid as though made or performed at a meeting duly held after regular call and notice, if a quorum is present and if, either before or after the meeting, each of the directors not present or who, though present, has prior to the meeting or at its commencement protested the lack of proper notice to such director, signs a written waiver of notice or a consent to holding such meeting or approval of the minutes thereof.  All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Section 10.    ADJOURNMENT.  A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place.  Notice of the time and place of holding an adjourned meeting need not be given to absent directors if the time and place is fixed at the meeting adjourned; provided, however, that if the meeting is adjourned for more than 24 hours, notice of adjournment to another time or place shall be given prior to the time of the adjourned meeting to the directors who are not present at the time of the adjournment.

Section 11.    ACTION WITHOUT MEETING.  Any action by the Board may be taken without a meeting if all members of the Board shall individually or collectively consent in writing to such action.  Such written consent or consents shall be filed with the minutes of the proceedings of the Board and shall have the same force and effect as a unanimous vote of the Board.

Consent in writing shall include an "electronic transmission" which is defined as (i) a communication delivered by facsimile or electronic mail when directed to the facsimile number of email address of the recipient on record with the corporation; (ii) posting on an electronic message board or network which the corporation has designated for such communications; or (iii) other means of electronic communication – in each case: (a) to a recipient who has provided unrevoked consent to the use of that means of communication; (b) that creates a record capable of retention, retrieval and review; and (c) that may be converted into a clearly legible tangible form (e.g., printed in readable form).

Section 12.    FEES AND COMPENSATION.  Directors and members of committees may receive such compensation, if any, for their services, and such reimbursement for expenses, as may be fixed or determined by resolution of the Board.

Section 13.    COMMITTEES.  The Board may appoint one or more committees, each consisting of two or more directors, and delegate to such committees any of the authority of the Board except with respect to:

(a)    The approval of any action for which the General Corporation Law, the Articles of Incorporation or these Bylaws also require shareholders' approval or approval of the outstanding shares;

(b)    The filling of vacancies on the Board or on any committee;

(c)    The fixing of compensation of the directors for serving on the Board or on any committee;

(d)    The amendment or repeal of Bylaws or the adoption of new Bylaws;

(e)    The amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable;

(f)    A distribution to the shareholders of the corporation except at a rate or in a periodic amount or within a price range determined by the Board; or

(g)    The appointment of other committees of the Board or the members thereof.

Any such committee must be designated by resolution adopted by a majority of the authorized number of directors and may be designated an Executive Committee or by such other name as the Board shall specify.  The appointment of members and alternate members of any such committee shall require the affirmative vote of a majority of the authorized number of directors.  The Board shall have the power to prescribe the manner in which proceedings of any such committee shall be conducted.  In the absence of any such prescription, such committee shall have the power to prescribe the manner in which its proceedings shall be conducted.

Unless the Board or such committee shall otherwise provide, the regular and special meetings and other actions of any such committee shall be governed by the provisions of this Article applicable to meetings and actions of the Board. Minutes shall be kept of each meeting of each committee in written form or an electronic form certified by the secretary and shall have equal weight as hard copies as *prima facie* evidence of such minutes.

**ARTICLE IV**
**OFFICERS**

Section 1.    OFFICERS. The officers of the corporation shall be a President or Co-Presidents, a Chief Operating Officer or Co-Chief Operating Officers, a Chief Executive Officer or Co-Chief Executive Officers, a Secretary and a Chief Financial Officer. The corporation may also have, at the discretion of the Board, a Chairman of the Board, one or more Vice Presidents or Executive Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers, and such other officers as may be appointed in accordance with the provisions of Section 3 of this Article. Any number of offices may be held by the same person.

Section 2.    ELECTION OF OFFICERS. The officers of the corporation, except such officers as may be appointed in accordance with the provisions of Section 3 or Section 5 of this Article, shall be chosen annually by the Board, and each shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment.

Section 3.    SUBORDINATE OFFICERS. The Board may appoint, and may empower the President to appoint, such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are provided in these Bylaws or as the Board may from time to time determine.

Section 4.    REMOVAL AND RESIGNATION OF OFFICERS. Without prejudice to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by the Board, at any regular or special meeting of the Board, or, except in case of an officer chosen by the Board, by any officer upon whom such power of removal may be conferred by the Board.

Any officer may resign at any time by giving written notice to the corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the corporation under any contract to which the officer is a party.

Section 5.    VACANCIES IN OFFICES. A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for regular election or appointment to such office.

Section 6.    EXECUTIVE CHAIRMAN OF THE BOARD. The Executive Chairman of the Board, shall, if present, preside at all meetings of the Board and exercise and perform such other powers and duties as may be from time to time assigned to him by the Board. If there is no President, the Executive Chairman of the Board shall in addition be Chief Executive Officer of the corporation and shall have the powers and duties prescribed in Section 7 of this Article.

Section 7.    PRESIDENT.  Subject to such supervisory powers, if any, as may be given by the Board to the Chairman of the Board, if there be such an officer, the President or a Co-President shall be the General Manager and Chief Executive Officer of the corporation and shall, subject to the control of the Board, have general supervision, direction and control of the business and the officers of the corporation.  The President or either Co-President shall preside at all meetings of the shareholders and, in the absence of the Chairman of the Board, or if there be none, at all meetings of the Board.  The President or either Co-President shall have the general powers and duties of management usually vested in the office of president and general manager of a corporation, and shall have such other powers and duties as may be prescribed by the Board.

Section 8.    VICE PRESIDENTS.  In the absence or disability of the President, Executive Vice Presidents or Vice Presidents, if any, in order of their rank as fixed by the Board, shall perform all the duties of the President, and when so acting shall have all the powers of, and be subject to all the restrictions upon the President.  The Executive Vice Presidents or Vice Presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the Board, the President or the Chairman of the Board.

Section 9.    SECRETARY.  The Secretary shall keep, or cause to be kept, at the principal executive office or such other place as the Board may direct, a book of minutes of all meetings and actions of directors, committees of directors, and shareholders, in written or electronic form, with the time and place of holding, whether regular or special, and, if special, how authorized, the notice given, the names of those present at directors' meetings or committee meetings, the number of shares present or represented at shareholders' meetings, and the proceedings.

The Secretary shall keep, or cause to be kept, at the principal executive office or at the office of the corporation's transfer agent or registrar, as determined by resolution of the Board, a share register, in written or electronic form, or a duplicate share register, showing the names of all shareholders and their addresses, the number and classes of share held by each, the number and date of certificates issued for the same, and the number and date of cancellation of every certificate surrendered for cancellation.

The Secretary shall give, or cause to be given, notice of all meetings of the shareholders and of the Board required by the Bylaws or by law to be given, and he shall keep the seal of the corporation, if one be adopted, in safe custody, and shall have such other powers and perform such other duties as may be prescribed by the Board.

The Secretary shall duly certify all minutes of all meetings and actions of directors, committees of directors, and shareholders, as true and correct copies, and deliver such minutes of all meetings and actions of directors, committees of directors, and shareholders, to any director or shareholder requesting copies of such proceeding in written or electronic form. in person, by mail, email or facsimile.

Section 10.    CHIEF FINANCIAL OFFICER.  The Chief Financial Officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings and shares, and shall send or cause to be sent to the shareholders of the corporation such financial statements and

reports as are bylaw or these Bylaws required to be sent to them. The books of account shall at all reasonable times be open to inspection by any director.

The Chief Financial Officer shall deposit all monies and other valuables in the name and to the credit of the corporation with such depositories as may be designated by the Board. The Chief Financial Officer shall disburse the funds of the corporation as may be ordered by the Board, shall render to the President and directors, whenever they request it, an account of all transactions undertaken as Chief Financial Officer and of the financial condition of the corporation, and shall have such other powers and perform such other duties as may be prescribed by the Board.

### ARTICLE V
### INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND OTHER AGENTS

Section 1.    AGENTS, PROCEEDINGS AND EXPENSES. For the purposes of this Article, "agent" means any person who is or was a director, officer, employee or other agent of the corporation, or is or was a director, officer, employee or other agent of the corporation as a director, officer, employee or agent of another foreign or domestic corporation, partnership, joint venture, trust or other enterprise, or was a director, officer, employee or agent of a foreign or domestic corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation; "proceeding" means any threatened, pending or complete action or proceeding, whether civil, criminal, administrative, or investigative; and "expenses" includes, without limitation, attorneys' fees and any expenses of establishing a right to indemnification under Section 4 or Section 5(c) of this Article.

Section 2.    ACTIONS OTHER THAN BY THE CORPORATION. The corporation shall indemnify any person who was or is a party, or is threatened to be made a party, to any proceeding (other than an action by or in the right of the corporation to procure a judgment in its favor) by reason of the fact that such person is or was an agent of the corporation, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding if that person acted in good faith and in a manner that person reasonably believed to be in the best interests of the corporation, and in the case of a criminal proceeding, had no reasonable cause to believe the conduct of that person was unlawful. The termination of any proceeding by judgment, order, settlement, conviction or upon a plea of *nolo contendere* or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in the best interests of the corporation or that the person had reasonable cause to believe that the person's conduct was unlawful.

Section 3.    ACTIONS BY THE CORPORATION. The corporation shall indemnify any person who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action by or in the right of the corporation to procure a judgment in its favor by reason of the fact that that person is or was an agent of the corporation, against expenses actually and reasonably incurred by that person in connection with the defense or settlement of that action if that person acted in good faith, in a manner that person believed to be in the best interests of the corporation and its shareholders. No indemnification shall be made under this Section 3 for any of the following:

(a)      In respect of any claim, issue or matter as to which that person shall have been adjudged to be liable to the corporation in the performance of that person's duty to the corporation and its shareholders, unless and only to the extent that the court in which that proceeding is or was pending shall determine upon application that, in view of all the circumstances of the case, that person is fairly and reasonably entitled to indemnification for expenses and then only to the extent that the court shall determine;

(b)      Of amounts paid in settling or otherwise disposing of a pending action, without court approval; or

(c)      Of expenses incurred in defending a pending action which is settled or otherwise disposed of without court approval.

Section 4.      SUCCESSFUL DEFENSE BY AGENT.  To the extent that an agent of the corporation has been successful on the merits in defense of any proceeding referred to in Sections 2 or 3 of this Article, or in defense of any claim, issue or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith.

Section 5.      REQUIRED APPROVAL.  Except as provided in Section 4 of this Article, any indemnification under this Article shall be made by the corporation only if authorized in the specific case on a determination that indemnification of the agent is proper in the circumstances because the agent has met the applicable standard of conduct set forth in Sections 2 or 3 of this Article, by any of the following:

(a)      A majority vote of a quorum consisting of directors who are not parties to the proceeding;

(b)      If a quorum as described in Section 5(a) of this Article is not obtainable, by independent legal counsel in a written opinion;

(c)      Approval by the affirmative vote of a majority of the shares of the corporation represented and voting at a duly held meeting at which a quorum is present (which shares voting also constitute at least a majority of the required quorum) or by the written consent of holders of a majority of the outstanding shares entitled to vote.  For this purpose, the shares owned by the person to be indemnified shall not be considered outstanding or entitled to vote thereon; or

(d)      The court in which the proceeding is or was pending, on application made by the corporation or the agent or the attorney or other person rendering services in connection with the defense, whether or not such application by the agent, attorney or other person is opposed by the corporation.

Section 6.      ADVANCE OF EXPENSES.  Expenses incurred in defending any proceeding may be advanced by the corporation before the final disposition of the proceeding on receipt of an undertaking by or on behalf of the agent to repay the amount of the advance if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this Article.

Section 7.    OTHER CONTRACTUAL RIGHTS.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any agreement, vote of stockholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office, to the extent such additional rights to indemnification are authorized in the Articles of Incorporation of the corporation.  The rights to indemnity hereunder shall continue as to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of the person.  Nothing contained in this Article shall affect any right to indemnification to which persons other than directors and officers of this corporation or any subsidiary hereof may be entitled by contract or otherwise.

Section 8.    LIMITATIONS.  No indemnification or advance shall be made under this Article, except as provided in Section 4 or Section 5(c), in any circumstances where it appears:

    (a)    That it would be inconsistent with a provision of the Articles of Incorporation, a resolution of the shareholders or an agreement in effect at the time of the accrual of the alleged cause of action asserted in the proceeding in which the expenses were incurred or other amounts were paid, which prohibits or otherwise limits indemnification; or

    (b)    That it would be inconsistent with any condition expressly imposed by a court in approving a settlement.

Section 9.    INSURANCE.  The corporation shall, if so authorized by the Board, purchase and maintain insurance on behalf of any agent of the corporation or its subsidiaries selected by the Board in its authorization, or designated in the policy of insurance so purchased, against such liabilities asserted against or incurred by the agent (in his capacity as agent or arising out of his status as such) as may be set forth in such authorization or in such policy of insurance, in each case upon such terms and conditions, and subject to such limitations, as the Board in its sole and absolute discretion determines to be appropriate, its general authorization to purchase or maintain any policy of insurance to conclusively establish that it has determined all of the terms, conditions, and limitations set forth in the policy of insurance in the form so purchased to be appropriate, and the power to purchase and maintain such insurance shall exist regardless of whether the corporation would have the power to indemnify the agent against the insured liabilities under the provision of this Article.  The fact that the corporation owns all or a portion of the shares of the company issuing a policy of insurance shall not render this subdivision inapplicable if either of the following conditions are satisfied:

    (a)    the purchase and maintenance of the policy is authorized by the Articles of Incorporation of the association and is limited to the extent provided in subdivision (d) of Section 204 of the General Corporation Law;

    (b)    (1) the company issuing the insurance policy is organized, licensed and operated in a manner that complies with the insurance laws and regulations applicable to its jurisdiction of organization, (2) the company issuing the policy provides procedures for processing claims that do not permit the company to be subject to the direct control of the corporation, and (3) the policy issued provides for some manner of risk sharing between the issuer and purchaser of the policy, on one hand, and some unaffiliated person

or persons, on the other hand, such as by providing for more than one unaffiliated owner of the company issuing the policy or by providing that a portion of the coverage furnished will be obtained from some unaffiliated insurer or reinsurer.

Section 10.    FIDUCIARIES OF CORPORATE EMPLOYEE BENEFIT PLAN.  The provisions of this Article shall not apply to any proceeding against any trustee, investment manager or other fiduciary of an employee benefit plan in that person's capacity as such, even though that person may also be an agent of the corporation as defined in Section 1 of this Article. Nothing contained in this Article shall limit the power of the corporation, upon and in the event of a determination of the Board to indemnify any trustee, investment manager or other fiduciary of an employee benefit plan, and the corporation may thereupon indemnify and purchase and maintain insurance on behalf of any such trustee, investment manager or other fiduciary.

## ARTICLE VI
## RECORDS AND REPORTS

Section 1.    MAINTENANCE AND INSPECTION OF SHARE REGISTER.  The corporation shall keep at its principal executive office, or at the office of its transfer agent or registrar, if either be appointed and as determined by resolution of the Board, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of shares held by each shareholder.  The Share register may be kept in an electronic form and certified by the secretary and shall have equal weight as hard copies as *prima facie* evidence of the shareholder record.

A shareholder or shareholders of the corporation holding at least 5% in the aggregate of the outstanding voting shares of the corporation may (i) inspect and copy the records of shareholders' names and addresses and shareholdings during usual business hours on five business days' prior written demand on the corporation, and (ii) obtain from the transfer agent, if any, for the corporation, on written demand and on the tender of such transfer agent's usual charges for such list, a list of the shareholders' names and addresses, who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which the list has been compiled or as of a date specified by the shareholder after the date of demand.  This list shall be made available to any such shareholder by the transfer agent on or before the later of 5 days after the demand is received or the date specified in the demand as the date as of which the list is to be compiled.  The record of shareholders shall also be open to inspection on the written demand of any shareholder or holder of a voting trust certificate, at any time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate.  Any inspection and copying under this Section 1 may be made in person or by an agent or attorney of the shareholder or holder of a voting trust certificate making the demand.

Section 2.    MAINTENANCE AND INSPECTION OF BYLAWS.  The corporation shall keep at its principal executive office the original or a copy of the Bylaws as amended to date, which shall be open to inspection by the shareholders at all reasonable times during office hours.  If the principal executive office of the corporation is outside the State of California and the corporation has no principal business office in this state, the Secretary shall, upon the written request of any shareholder, furnish to that shareholder a copy of the Bylaws as amended to date. The Bylaws may be kept in an electronic form and certified by the secretary and shall have equal weight as hard copies as *prima facie* evidence of such bylaws.

Section 3.    MAINTENANCE AND INSPECTION OF OTHER CORPORATE RECORDS.  The accounting books and records and minutes of proceedings of the shareholders and the Board and any committee or committees of the Board shall be kept at such place or places designated by the Board or, in the absence of such designation, at the principal executive office of the corporation.  The minutes shall be kept in written form and the accounting books and records shall be kept either in written form or in any other form capable of being converted into written form. The minutes may be kept in an electronic form and certified by the secretary and shall have equal weight as hard copies as *prima facie* evidence of such minutes.

The minutes and accounting books and records shall be open to inspection upon the written demand of any shareholder or holder of a voting trust certificate, at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate.  The inspection may be made in person or by an agent or attorney, and shall include the right to copy and make extracts.  These rights of inspection shall extend to the records of each subsidiary corporation of the corporation.

Section 4.    INSPECTION BY DIRECTORS.  Every director shall have the absolute right at any reasonable time to inspect all books, records and documents of every kind and the physical properties of the corporation and each of its subsidiary corporations.  This inspection by a director may be made in person or by an agent or attorney and the right of inspection includes the right to copy and make extracts of documents or to receive such documents, duly certified by the secretary, by email or facsimile.

Section 5.    ANNUAL REPORT TO SHAREHOLDERS.  Unless otherwise expressly required by the General Corporation Law or by this Section 5, the annual report to shareholders referred to in Section 1501 of the General Corporation Law is hereby expressly waived and dispensed with; provided, that nothing herein set forth shall be construed to prohibit or restrict the right of the Board to issue such annual or other periodic reports to the shareholders of the corporation as they may from time to time consider appropriate.

In the event that the corporation shall have 100 or more shareholders of record (determined as provided in Section 605 of the General Corporation Law) at the close of any fiscal year of the corporation, the Board shall cause a report to be sent to the shareholders not later than 120 days after the close of said fiscal year, and each fiscal year thereafter ensuing.  The report shall be sent at least 15 days (or 35 days if sent by third-class mail as permitted by Section 4 of Article II) before the annual meeting of shareholders to be held during the next fiscal year in the manner specified in Section 4 of Article II of these Bylaws for reports to shareholders of the corporation.  The annual report shall contain a balance sheet as of the end of the fiscal year and an income statement and statement of changes in financial position for the fiscal year, accompanied by any report of independent accountants or, if there is no such report, the certificate of an authorized officer of the corporation that the statements were prepared without audit from the books and records of the corporation.  The annual report shall also contain a brief description, as required by Section 1501(b) of the General Corporation Law, of (i) any transaction with interested officers, directors or shareholders during the previous fiscal year; and (ii) any indemnification or advance made during the fiscal year to any officer or director of the corporation.

Section 6.    FINANCIAL STATEMENTS.  A copy of any annual financial statement and any income statement of the corporation for each quarterly period of each fiscal year, and

any accompanying balance sheet of the corporation as of the end of each such period, that has been prepared by the corporation shall be kept on file in written or electronic form, in the principal executive office of the corporation for 12 months, and each such statement shall be exhibited at all reasonable times to any shareholder demanding an examination of any such statement or a copy shall be mailed, emailed or faxed to any such shareholder.

If any shareholder or shareholders holding at least 5% of the outstanding shares of any class of stock of the corporation makes a written request to the corporation for an income statement of the corporation for the three-month, six-month or nine-month period of the then current fiscal year ended more than 30 days before the date of the request, and a balance sheet of the corporation as of the end of that period, the Chief Financial Officer shall cause that statement to be prepared, and shall deliver personally, by mail, email or facsimile that statement or statements to the person making the request within 30 days after the receipt of the request. If the corporation has not sent to the shareholders its annual report for the last fiscal year, this report shall likewise be delivered, mailed, emailed or faxed to the requesting shareholder or shareholders within 30 days after the request.

If the corporation has not sent to the shareholders its annual report for the last fiscal year, upon the written request of any shareholder made to the corporation for an income statement for the fiscal year ended more than 120 days before the date of the request, the Chief Financial Officer shall cause that statement to be prepared, together with a statement of change in financial position and a balance sheet as of the end of that period and shall deliver personally or mail all such statements to the person making the request within 30 days after receipt of the request.

The corporation shall also, on the written request of any shareholder, send by mail, email or facsimile to the shareholder a copy of the last annual, semi-annual, or quarterly income statement which it has prepared, and a balance sheet as of the end of that period.

The quarterly income statements and balance sheet referred to in this Section shall be accompanied by the report, if any, of any independent accountants engaged by the corporation or the certificate of an authorized officer of the corporation that the financial statements were prepared without audit from the books and records of the corporation.

Section 7.    CHECKS, DRAFTS, EVIDENCES OF INDEBTEDNESS. All checks, drafts or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the corporation, shall be signed or endorsed by such person or persons and in such manner as, from time to time, shall be determined by resolution of the Board.

Section 8.    CORPORATE CONTRACTS AND INSTRUMENTS; HOW EXECUTED. The Board, except as otherwise provided in these Bylaw, may authorize any officer or officers or agent or agents to enter into any contract or execute any instrument in the name of and on behalf of the corporation, and this authority may be general or confined to specific instances; and, subject to the provisions of Section 313 of the General Corporation Law, unless so authorized or ratified by the Board or within the agency power of an officer, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

Section 9.    CERTIFICATES FOR SHARES. A certificate or certificates for shares of the capital stock of the corporation shall be issued to each shareholder when any of the shares are

fully paid, and the Board may authorize the issuance of certificates for shares as partly paid provided that certificates representing such shares shall state the amount of the consideration to be paid for them and the amount paid. All certificates shall be signed in the name of the corporation by the Chairman of the Board or the President or either Co-President or Vice President and by the Chief Financial Officer or an Assistant Treasurer or the Secretary or any Assistant Secretary, certifying the number of shares and the class or series of shares owned by the shareholder. Any or all of the signatures on the certificate may be facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed on a certificate shall have ceased to be that officer, transfer agent or registrar before that certificate is issued, it may be issued by the corporation with the same effect as if that person were an officer, transfer agent or registrar at the date of issue.

Section 10.    LOST CERTIFICATES. Except as provided in this Section 11, no new certificate for shares shall be issued to replace an old certificate unless the latter is surrendered to the corporation and cancelled at the same time. The Board may, in case any share certificate or certificate for any other security is lost, stolen or destroyed, authorize the issuance of a replacement certificate on such terms and conditions as the Board may require, including provision for indemnification of the corporation secured by a bond or other adequate security sufficient to protect the corporation against any claim that may be made against it, including any expense or liability, on account of the alleged loss, theft or destruction of the certificate or the issuance of the replacement certificate.

Section 11.    REPRESENTATION OF SHARES OF OTHER CORPORATIONS. The Chairman of the Board, the President, any Vice President or any other person authorized by resolution of the Board or by any of the foregoing designated officers, is authorized to vote on behalf of the corporation any and all shares of any other corporation or corporations, foreign or domestic, standing in the name of the corporation. The authority granted to these officers to vote or represent on behalf of the corporation any and all shares held by the corporation in any other corporation or corporations may be exercised by any of these officers in person or by any person authorized to do so by proxy duly executed by these officers.

Section 12.    STOCK PURCHASE PLANS. The corporation may adopt and carry out a stock purchase plan or agreement or stock option plan or agreement providing for the issue and sale for such consideration as may be fixed of its unissued shares, or of issued shares acquired or to be acquired, to one or more of the employees or directors of the corporation or of a subsidiary or to a trustee on their behalf and for the payment for such shares in installments or at one time, and may provide for aiding any such persons in paying for such shares by compensation for services rendered, promissory notes, or otherwise.

Section 13.    CONSTRUCTION AND DEFINITIONS. Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the General Corporation Law shall govern the construction of these Bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

## ARTICLE VII
## AMENDMENT

These Bylaws may be amended or repealed either by approval of the outstanding shares entitled to vote or by the approval of the Board; provided, however, that after the issuance of shares, and subject to the provisions of Section 2 of Article III of these Bylaws, a Bylaw specifying or changing a fixed number of directors or the maximum or minimum number or changing from a fixed to a variable Board or vice versa may be adopted only by approval of a majority of the outstanding shares entitled to vote; and provided further that a Bylaw which authorizes the Board to fill any vacancy or vacancies occurring in the Board by reason of the removal of directors may be adopted only by approval of a majority of the outstanding shares entitled to vote.

## Exhibit B

**Form of Secured GUC Note**

ATARI, INC.
ATARI INTERACTIVE, INC.
CALIFORNIA U.S. HOLDINGS, INC.
HUMONGOUS, INC.

**GLOBAL SECURED PROMISSORY NOTE**

REGISTERED NO. 1
[●], 2013

FOR VALUE RECEIVED,  and subject to the terms and conditions set forth herein, ATARI, INC., a Delaware corporation ("***Atari***"), ATARI INTERACTIVE, INC., a Delaware corporation ("***Interactive***"), CALIFORNIA U.S. HOLDINGS, INC., a California corporation ("***Holding***"), and HUMONGOUS, INC., a Delaware corporation ("***Humongous***", together with Atari, Interactive and Holding each an "***Issuer***" and collectively, the "***Issuers***"), hereby jointly and severally promise to pay to the order of Fred Stevens, as Committee Designee (the "***Holder***"), or its registered assigns, in immediately available funds in the lawful currency of the United States of America, on the dates set forth in Annex A hereto or, if any such date is not a Business Day (as defined below), the first Business Day following such date, the amounts set forth Annex A hereto (the "***Installments***"). For the purposes of this Note, "***Business Day***" means a day on which commercial banks are open for business in New York, New York, other than a Saturday or a Sunday.

This Note is the Secured GUC Note issued pursuant to the Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed on September 20, 2013 (the "***Plan***"), and is subject to the terms and conditions set forth in the Plan.  Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Plan.  All terms defined in the Uniform Commercial Code as from time to time in effect in the State of New York (the "***UCC***") and not defined in this Note shall have the meanings assigned to them in the UCC.

The Issuers may prepay any or both Installments in whole or in part at any time or from time to time without penalty or premium.

To secure their obligations to pay the Installments (collectively, the "***Secured Obligations***"), each Issuer hereby pledges, collaterally assigns and grants to the Holder a first-priority security interest in all of its right, title and interest in, to and under the following personal property, whether now owned by or owing to, or thereafter acquired by or arising in favor of such Issuer (collectively, the "***Collateral***"):

(i)      accounts;

(ii)     chattel paper;

(iii)    goods (including equipment, inventory and fixtures);

(iv)     instruments (including promissory notes);

(v)      investment property;

(vi)     documents;

(vii)    deposit accounts;

(viii)    letter-of-credit rights;

(ix)    general intangibles (including payment intangibles);

(x)    Intellectual Property[1];

(xi)    the commercial tort claims described in Schedule 1;[2]

(xii)    all books and records of each Issuer pertaining to any of the Collateral; and

(xiii)    to the extent not otherwise included, all proceeds of, accessions to, substitutions or replacements for, and products of, any and all of the foregoing and all collateral security and guarantees given by any person with respect to the foregoing.

For the avoidance of doubt, the security interest granted herein to the Holder shall be senior in all respects with respect to the Collateral, including with respect to the Alden Secured Claim.

---

[1] As used herein the term "Intellectual Property" shall mean the following as such may exist or be created in any jurisdiction worldwide: (i) patents, patent applications and statutory invention registrations, including continuations, continuations-in-part, divisions, provisionals, non-provisionals, reexaminations, reissues and extensions; (ii) trademarks, service marks, trade names, brands, brand names, logos and corporate names and other distinctive identification and indicia of source of origin, including characters, symbols, emblems, insignia slogans, trade dress and designs, collective membership marks, certification marks, slogans, 800 numbers, social media pages, hash tags, whether or not registered, including all common law rights thereto and all goodwill associated therewith, and registrations and applications for registration thereof ("***Trademarks***"); (iii) works of authorship, author's rights, mask-works, copyrights, whether registered or unregistered, and registrations and applications for registration thereof; (iv) trade secrets, confidential information, know-how and show-how; (v) domain names and registrations and applications therefor; (vi) rights of publicity and privacy, rights to personal information and moral rights; (vii) shop rights; (viii) inventions (whether patentable or unpatentable), improvements, modifications, invention disclosures, industrial design rights, discoveries, ideas, developments, data, Software, confidential or proprietary technical, business and other information, including processes, techniques, methods, formulae, recipes, drawings, specifications, designs, molds, algorithms, prospect lists, customer lists, customer information, Personal Data, supplier lists, sales and customer information (e.g., presentations and brand awareness charts and research, etc.), research records, test information, market surveys, projections, analyses, and market studies, and all rights therein and thereto; (ix) advertising, marketing and promotional materials, publicity, displays (e.g., showroom, graphics, point-of-sale, etc.), collateral materials, and other forms of identification (whether distributed or made available via any manner, means, platform or method, now known or hereafter developed), and all rights therein and thereto; (x) rights in databases and data collections (including design databases, knowledge databases and customer databases) (xi) websites, apps and other internet connected platforms (including the layout, design, information, look and feel and contents of the pages and underlying programming code) and all rights therein and thereto; (xii) all other proprietary information and intellectual property, in all forms and media, and all goodwill associated therewith, and whether or not subject to patent, copyright, trademark, design or other intellectual property registration or classification, now known or hereafter recognized in any jurisdiction worldwide; (xiii) all rights pertaining to any of the foregoing arising under international treaties and convention rights; (xiv) the right and power to assert, defend and recover title to any of the foregoing; (xv) all rights to assert, defend, sue, and recover damages for any past, present and future infringement, misuse, misappropriation, impairment, unauthorized use or other violation of any rights in or to any of the foregoing; (xvi) all proceeds, income, royalties, damages and payments now and/or hereafter due and payable under and/or in respect of all of the foregoing; and (xvii) all administrative rights arising from the foregoing, including the right to prosecute applications and oppose, interfere with or challenge the applications of others, the rights to obtain renewals, continuations, divisions, and extensions of legal protection pertaining to any of the foregoing.

[2] Schedule 1 to be completed at closing or to be removed if "none" on the date of issuance of this Note.

Notwithstanding anything herein to the contrary, the "Collateral" described above shall not include the following assets: (a) goods securing purchase money indebtedness or capital lease obligations to the extent such purchase money indebtedness or capital lease obligations prohibit the granting of a security interest on such assets; (b) voting capital stock of controlled foreign corporation (as defined in the Internal Revenue Code) in excess of sixty-five percent of the voting rights of such corporations; (c) any assets, including any account, note, contract, lease, financing arrangements, general intangible, equity investment, interests in joint ventures or other agreement to the extent that the grant of a security interest therein would violate applicable requirements of laws, results in the invalidation thereof or provide any party thereto with a right of termination or default with respect thereto (other than to the extent that any such term would be rendered ineffective pursuant to Section 9-406, 9-407, 9-408 or 9-409 of the UCC or any other applicable law (including, without limitation, Title 11 of the United States Code) or principles of equity), (d) any trademark applications filed in the United States Patent and Trademark Office on the basis of such Issuer's "intent-to-use" such trademark to the extent that granting a lien in such trademark application would adversely affect the enforceability of validity of such trademark application, (e) any vehicle covered by a certificate of title or ownership, and (f) any letter-of-credit rights to the extent any Issuer is required by applicable law to apply the proceeds of a drawing of such letter of credit for a specified purpose.

Each Issuer hereby irrevocably authorizes the Holder at any time and from time to time to file at the Holder's expense out of the $50,000 expense deposit funded by the Debtors to the Holder on the Effective Date pursuant to the Plan (the "***Expense Deposit***") in any relevant jurisdiction any initial financing statements with respect to the Collateral or any part thereof and amendments thereto that contain the information required by the Uniform Commercial Code of each applicable jurisdiction for filing of any financing statement or amendment, including (i) whether such Issuer is an organization, the type of organization and any organizational identification number issued to such Issuer, and (ii) a description of collateral that describes such property in any other manner as the Holder may reasonably determine is necessary or advisable to ensure the perfection of the security interest in the Collateral, including describing such property as "all assets" or "all property". Each Issuer agrees to provide such information to the Holder promptly upon request. The Holder is further authorized to file at the Holder's expense out of the Expense Deposit with the United States Patent and Trademark Office or United States Copyright Office such documents as may be reasonably necessary or advisable for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by each Issuer, without the signature of such Issuer, and naming such Issuer or the Issuers as debtors and the Holder as secured party. Notwithstanding anything to the contrary, no Issuer shall be required to enter into any deposit account control agreement or securities account control agreement with respect to any cash, deposit or securities account.

Until such time as all Secured Obligations have been paid in full in cash and this Note has been terminated, Issuers hereby covenant and agree with the Holder that Issuers shall not enter into any agreement, document, instrument or other arrangement with any person that would create, incur, or allow any lien on their right, title and interest in any of the Intellectual Property, or assign or convey any right to receive any Proceeds of the Intellectual Property, senior to the lien of the Holder under this Note. For the avoidance of doubt, nothing in this Note shall prohibit any Issuer from licensing or sublicensing its Intellectual Property in its ordinary course of business.

Each Issuer hereby expressly waives presentment, demand, protest or notice of any kind in connection with this Note and all defenses that might be made because of a failure to make presentment, demand or protest of this Note at the time of its maturity.

Upon the occurrence and during the continuance of any Event of Default[3], the Holder may take any and all of the following actions:  (i) exercise any and all rights, powers and privileges with respect to the Collateral; or (ii) exercise from time to time any other right or remedy available to a Holder under the UCC or as otherwise provided herein, at law or in equity.  All rights and remedies specified herein are cumulative and are in addition to such other rights and remedies as are otherwise available to the Holder under applicable law.

All sales or other dispositions of the Collateral in connection with the Holder's exercise of rights and remedies upon the occurrence and during the continuance of any Event of Default shall be by public sale (not private sale) conducted by the Holder in accordance with this Note and the UCC.  The Holder shall provide written notice of the date, time and location of each such public sale, as well as the general terms thereof consistent with the requirements of the UCC.  The terms of such public sale shall be commercially reasonable, shall convey the Collateral purchased at such sale free and clear of the security interest granted in this Note and shall be the same for each person or entity participating, or proposing to participate in such public sale.

Any cash held by the Holder as Collateral and all cash proceeds received by the Holder in respect of any sale of, collection from, or other realization upon all or any part of the Collateral in connection with Holder's exercise of rights and remedies upon the occurrence and during the continuance of any Event of Default shall be applied by the Holder in satisfaction of the Secured Obligations.  After the discharge of the Secured Obligations, the Holder shall turn over (i) any remaining cash proceeds received in respect of any sale of, collection from, or other realization upon any or any part of the Collateral and (ii) all other Collateral in its possession, (a) to the Security Agent under the Credit Facility Agreement dated as of April 21, 2006 among Atari Europe SAS, Atari SA and Alden Global Value Recover Master Fund, L.P., as amended and in effect from time to time (the "***Parent Facility***") or (b) as directed by a court of competent jurisdiction. The Holder agrees that each Lender and the Security Agent (and their successors and assigns) under the Parent Facility are intended to be third party beneficiaries of the foregoing provision.  In the event the proceeds of Collateral are insufficient to satisfy all of the Secured Obligations in full, Issuers shall remain liable for any such deficiency.

Issuers hereby acknowledge that the Secured Obligations arose out of a commercial transaction, and agree that if an Event of Default shall occur and be continuing Holder shall have the right to an immediate writ of possession without notice of a hearing.  The Holder shall have the right to the appointment of a receiver for the properties and assets of Issuers, and Issuers hereby consent to such rights and such appointment and hereby waive any objection Issuers may have thereto or the right to have a bond or other security posted by the Holder.

Holder shall not be required to marshal any present or future collateral security (including the Collateral) for, or other assurances of payment of, the Secured Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising.  To the extent that they lawfully may, Issuers hereby agree that they will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Holder's rights and remedies

---

[3] As used herein the term "Event of Default" shall mean: (i) the non-payment of either of the Installments by the applicable date set forth in Annex A hereto or, if any such date is not a Business Day (as defined below), the first Business Day following such date and such non-payment shall continue unremedied for a period of five Business Days; or (ii) a grant by any Issuer of a lien on its right, title and interest in the Intellectual Property senior to the lien granted to Holder herein (for the avoidance of doubt, the Issuers may license and sublicense the Intellectual Property in the ordinary course of business).

under this Note, and, to the extent that they lawfully may, Issuers hereby irrevocably waive the benefits of all such laws.

THIS NOTE AND ANY CLAIM, CONTROVERSY, DISPUTE OR CAUSE OF ACTION (WHETHER IN CONTRACT OR TORT OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS NOTE AND THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY (I) AGREES THAT ANY LEGAL ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK AND (II) SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT IN ANY SUCH ACTION, SUIT OR PROCEEDING. FINAL JUDGMENT AGAINST THE ISSUER IN ANY ACTION, SUIT OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT.

EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

This Note may be assigned, transferred or negotiated by the Holder to any person, in whole only, and only upon the prior written consent of the Issuers.  Prior to granting written consent and receiving evidence reasonable satisfactory to the Issuers of any transfer of any beneficial interest in this Note for registration of such transfer, the Issuers shall treat the registered Holder as the owner or beneficial owner, respectively, of this Note for purposes of receiving payments under this Note.

The Issuer may not assign or transfer this Note or any of its rights hereunder without the prior written consent of the Holder. This Note shall inure to the benefit of and be binding upon the parties hereto and their permitted assigns.

No term of this Note may be waived, modified or amended except by an instrument in writing signed by both of the parties hereto.

ATARI, INC.,


By: _____
Name:
Title:



ATARI INTERACTIVE, INC.,


By: _____
Name:
Title:



CALIFORNIA U.S. HOLDINGS, INC.,

By: _____
Name:
Title:



HUMONGOUS, INC.

By: _____
Name:
Title:

ANNEX A

| PAYMENT DATE | PAYMENT AMOUNT |
|---|---|
| First Anniversary of the Issuance of this Note | An amount equal to the lesser of (i) 8 percent (8%) of Allowed General Unsecured Claims and (ii) $560,000.00 |
| Second Anniversary of the Issuance of this Note | An amount equal to the lesser of (i) 9 percent (9%) of Allowed General Unsecured Claims and (ii) $630,000.00 |

## **<u>Exhibit C</u>**

### **Committee Designee**

The Committee Designee shall be Fred Stevens of Klestadt & Winters LLP.

# Exhibit C-1

**Committee Designee Engagement Letter**



570 SEVENTH AVENUE
17TH FLOOR
NEW YORK, NY 10018-1624
TELEPHONE (212) 972-3000
TELEFAX (212) 972-2245
WWW.KLESTADT.COM

FRED STEVENS
DIRECT: (212) 679-5342
EMAIL: FSTEVENS@KLESTADT.COM

November 27, 2013

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
c/o Cooley LLP
1114 Avenue of the Americas
New York, NY 10036-7798
Attn.: Jeffrey L. Cohen

**Re:      Billing Procedures – Committee Designee in Atari, Inc.**

Dear Committee:

Thank you for giving me the opportunity to serve as the "Committee Designee" with respect to the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Plan</u>")[1] of Atari, Inc., et al. (collectively, the "<u>Debtors</u>"), whose chapter 11 cases are currently pending in the United States Bankruptcy Court for the Southern District of New York under Case No. 13-10176 (JMP) (the "<u>Bankruptcy Case</u>").  It is understood that, pursuant to the Plan, the Creditors' Committee will be disbanded on the Effective Date but that the Creditors' Committee's designation of the Committee Designee shall survive the Creditors' Committee's dissolution pursuant to the Plan.

As part of this engagement, the Committee Designee will perform, among other things, the following tasks in accordance with the Plan:

    i.    Take possession of that certain Global Secured Promissory Note (the "<u>Secured GUC Note</u>") by and between Atari, Inc., Atari Interactive, Inc., California U.S. Holdings, Inc., and Humongous, Inc., as Issuers, and Fred Stevens, as Committee Designee, as Holder, upon the Effective Date;

    ii.    Monitor the Reorganized Debtors' performance under the Secured GUC Note and enforce the terms of the Secured GUC Note as necessary;

    iii.    Monitor the Reorganized Debtors' making of the Second GUC Distribution and the Third GUC Distribution;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
November 26, 2013
Page -2-

    iv.    In the event the Reorganized Debtors fail to make the Second GUC Distribution and/or Third GUC Distribution, making those distributions subject to and in accordance with the Secured GUC Note and applicable law; and

    v.    Review any potential withdrawal or compromise by the Reorganized Debtors of claim objections pending on the Effective Date.

(collectively, the "Committee Designee Duties").

Payment

Pursuant to the Plan, the Reorganized Debtors will transfer to the Committee Designee $50,000.00 (the "Debtor Payment") to compensate the Committee Designee and his professionals[2] for performance of the Committee Designee Duties. The Committee Designee will hold the Debtor Payment in the Klestadt & Winters, LLP ("K&W") attorney trust account. The Committee Designee and K&W intend to bill for services hourly as set forth in the "Terms of Service" section below, and pay for those services monthly from the Debtor Payment held by the Committee Designee. It is understood that the Reorganized Debtors have no obligation to pay for the services of the Committee Designee and his professionals beyond the Debtor Payment. It is also understood that following the Third GUC Distribution, any funds not expended by the Committee Designee shall be returned by the Committee Designee to the Sponsor. The Committee Designee's unpaid costs and expenses shall be considered obligations under the Secured GUC Note, and the Reorganized Debtors shall have no obligation to pay such costs and expenses beyond the Debtor Payment.

Terms of Services

This letter explains the Committee Designee's and K&W's standard billing procedures which apply in all client representations unless alternative arrangements have been agreed upon in writing. These billing procedures will apply to both Committee Designee services and for legal services provided by K&W at the Committee Designee's request.

Our fees for services are influenced by a number of factors, including the time required; the level of expertise and skill demanded; the size and difficulty of the assignment; the time limitations imposed by the client or the circumstances; and the result obtained. The time spent by our attorneys, paralegals and certain administrative personnel will establish the minimum amount of our fees.

---

[2] If any enforcement action is needed, the Committee Designee intends to retain attorneys to perform such work. The Committee Designee reserves the right to retain such other and additional professionals as may be required in his discretion to fulfill the Committee Designee Duties. For the avoidance of doubt, the Reorganized Debtors shall not be obligated to pay any additional amounts beyond the Debtor Payment for the costs and expenses associated with retention of such attorneys or professionals and the Committee Designee shall be solely responsible for such additional amounts.

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
November 26, 2013
Page -3-

Each person is assigned an hourly rate which reflects that person's experience, skill, area of expertise and demand in the marketplace. For certain lawyers, different rates may apply depending upon the nature of the services required. Currently, our hourly rates for our attorneys and paralegals are as follows (they are anticipated to rise January 1, 2014):

| Name of Professional | Rate Effective on Date of Affidavit |
|---|---|
| Tracy L. Klestadt | $625 |
| Ian R. Winters | $525 |
| John E. Jureller, Jr. | $525 |
| Fred N. Stevens | $495 |
| Sean C. Southard | $495 |
| Patrick J. Orr | $425 |
| Joseph C. Corneau | $395 |
| Brendan M. Scott | $395 |
| Maeghan J. McLoughlin | $225 |
| Lauren C. Kiss | $225 |
| Paralegals | $150 |

It is anticipated that most of the work will be performed by partner and Committee Designee Fred Stevens, partner Sean Southard, associate Maeghan McLoughlin, and paralegal Kristen Garofalo.

The costs for which we will seek reimbursement include the costs of perfecting any security interest created by the Secured GUC Note; filing fees; telephone, telecopy, word processing, overnight mail, messenger and other communication costs; staff overtime when appropriate; computer research; court reporters, photographers and other professional fees; travel and meal expenses; and other miscellaneous costs. Certain costs, such as telephone charges, are sometimes not available until subsequent months, in which case a supplemental bill will be rendered, or an estimated amount will be included in the initial bill and an adjustment made when the actual charges are known.

Bills for services will be rendered to the Committee Designee monthly, requesting payment of fees plus reimbursement for costs incurred. Billing statements (redacted where appropriate) will be furnished to the Reorganized Debtors upon request.

Standard of Care; Exculpation

Neither the Committee Designee, nor any employee, employer, professional, agent, or representative of the Committee Designee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be personally liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or

otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing the Plan or this engagement agreement (including these exculpation provisions), as and when imposed on the Committee Designee, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Committee Designee's execution, delivery, and acceptance of or the performance or nonperformance of his powers, duties and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses suffered or incurred by any holder of a Claim entitled to any portion of the Second GUC Distribution or Third GUC Distribution that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, willful misconduct, professional malpractice, criminal conduct, or *ultra vires* act, of such Exculpated Party.  Every act taken or omitted, power exercised, or obligation assumed by the Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Committee Designee or any Exculpated Party acting for and on behalf of the Committee Designee and not otherwise; provided, however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions.  Except as provided in the first provision of the first sentence of this section, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Committee Designee or any Exculpated Party shall have recourse only to the funds held by the Committee Designee in his official capacity for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Committee Designee and the Exculpated Parties shall not be individually liable therefore.  In no event shall the Committee Designee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Committee Designee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Any liability of the Committee Designee under this Agreement will be limited to twice the amount of annual fees paid to the Committee Designee.

Liability, Indemnification

None of the Committee Designee, K&W, their respective members, designees, or professionals, or any duly authorized agent or representative of the Committee Designee, or their respective employees or members, shall be liable for the act or omission of any other member, designee, agent, or representative of such Committee Designee, nor shall the Committee Designee be liable for any act or omission taken or not taken in his capacity as Committee Designee, other than for specific acts or omissions resulting from the Committee Designee's willful misconduct, gross negligence, fraud, actions constituting a willful violation of Federal securities laws or the Internal Revenue Code, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or *ultra vires* acts.  The Committee Designee may, in connection with the performance of the Committee Designee Duties, and in his sole and

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
November 26, 2013
Page -5-

absolute discretion, consult with his attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinion rendered by such entities, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, the Committee Designee shall not be under any obligation to consult with his attorneys, accountants, financial advisors, and agents, and his determination not to do so shall not result in the imposition of liability on the Committee Designee, unless such determination is based on willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or *ultra vires* acts.

<u>Reliance by Committee Designee on Documents or Advice of Counsel</u>

Except as otherwise provided in this Agreement, the Committee Designee, any employee, professional, agent, or representative of the Committee Designee, may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Committee Designee to be genuine and to have been presented by an authorized party.  The Committee Designee shall not be liable for any action taken or omitted or suffered by the Committee Designee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Committee Designee, as applicable, in accordance with this Agreement.

<u>Insurance</u>

The Committee Designee may purchase insurance, using the initial $50,000 payment, and carry all insurance policies and pay all insurance premiums and costs the Committee Designee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses he may incur, arising out of or due to his or her actions or omissions, or consequences of such actions or omissions, other than as a result of fraud or willful misconduct, with respect to the implementation and administration of the Committee Designee's duties under the Plan or this Agreement.

We look forward to working with you on this project and greatly appreciate your hiring Klestadt & Winters, LLP.

Sincerely yours,

Fred Stevens

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
November 26, 2013
Page -6-


AGREED AND ACCEPTED:


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ATARI, INC., ET AL.


_____

By:  Tom Gross, CDV SOFTWARE ENTERTAINMENT, USA, INC.
Title:  Chairperson of the Official Committee of Unsecured Creditors of Atari, Inc., _et al_.

DATED:
_____

Official Committee of Unsecured Creditors
  for Atari, Inc., et al.
November 26, 2013
Page -7-

The initial $50,000 payment can be paid by check, money order or wire.  Here are our wiring
instructions if you find that to be the most convenient method of payment:

Bank:          Signature Bank
Address:       950 Third Avenue NY, NY 10022
Attention:     Marisol Figueroa
Tel.:          (646) 822-1504
Routing #:     026013576
Swift code:    signus33
A/C name:      Klestadt & Winters LLP
A/C #:         1500879854

## Exhibit D

**Initial Officers and Directors of the Reorganized Debtors**

### Directors

| Name | Compensation |
|------|--------------|
| Frederic Chesnais | $0.00 |
| Erick Euvrard | $0.00 |
| Eugene I. Davis | |

### Officers

| Name | Title | Annual Compensation |
|------|-------|---------------------|
| Frederic Chesnais | Chief Executive Officer | $1,000.00, plus reimbursement of medical expenses up to €15,000 |
| Kristen J. Keller | Executive Vice-President, Business Affairs and General Counsel | $310,000.00, exclusive of bonuses, contributions to 401(k) and other employee benefit plans. |
| Todd Shallbetter | Chief Operating Officer | $240,000.00, exclusive of bonuses, contributions to 401(k) and other employee benefit plans. |

## <u>Exhibit E</u>

**Schedule of Contracts and Leases to be Assumed Pursuant to the Plan and
Proposed Cure Amounts**

This Exhibit E lists certain Executory Contracts and unexpired leases that are not scheduled to expire or terminate prior to the Confirmation Date and that the Debtors presently intend to assume pursuant to the Plan as of the Effective Date, and a proposed Cure Amount for each such Executory Contract and unexpired lease (where applicable).

**<u>Notes</u>**:

1. In accordance with article X of the Plan, the Debtors reserve the right to alter, amend, modify or supplement the schedule of Executory Contracts and unexpired leases attached hereto prior to the Effective Date.

2. Each Executory Contract and unexpired lease assumed pursuant to the Plan and the Plan Supplement includes all modifications, amendments, addenda, exhibits and supplements that affect such contract or lease.

3. Subject to the terms of article X of the Plan, the Debtors reserve all rights, claims and defenses under all relevant agreements and applicable law on all issues, including, but not limited to, whether such agreements are executory contracts or unexpired leases.

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 1 | 475 Building Company, LLC | Atari Inc. | Lease | Rent | $18,265 [1] |
| 2 | A&G Records Limited | Atari Inc. | License | Music License - TDU2 | $0 |
| 3 | Aarp Attn: Inside E Street | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 4 | Ac Cars (Usa) LLC | Atari Inc. | License | Car License - TDU 2 | $0 |
| 5 | Activision Publishing, Inc | Atari Inc. | Royalty | Royalty | $0 |
| 6 | Adp Commercial Leasing | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 7 | Alan Palomo | Atari Inc. | License | Music License - TDU2 | $0 |
| 8 | Alfred J. Leonardi | Atari Interactive, Inc. | Royalty | Royalty - Axis & Allies RTS | $0 |
| 9 | Amazon Digital Services, Inc. | Atari Inc. | License Out | Digital Distribution | |
| 10 | Amazon Studios | Atari Interactive | License | Asteroids, Centipede & Pong Decals"; "Asteroids, Centipede, Lunar Lander and Missle Command | $0 |
| 11 | American Express | Atari Inc. | Employee | Employee T&E | $0 |
| 12 | Andrew Gannon | Atari Inc. | License | Music License - TDU2 | $0 |
| 13 | Aol Living | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 14 | Apogee Software Ltd. | Atari Inc. | Publishing | Publishing - Balls of Stell / Nam / World War II | $0 |
| 15 | Apple Inc | Atari Inc | Developer | IOS Developer Agreement | $0 |
| 16 | Apple Inc | Atari Interactive | License | Superbreakout and Breakout | $0 |
| 17 | Ariel Motor Company Limited | Atari Inc. | License | Licensing - TDU | $0 |
| 18 | Arin | Atari Inc. / Humongous, Inc. | Distribution | MIS-Itv - $100 annual IP address fees | $0 |
| 19 | Armadacare, LLC | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 20 | Ascari Cars Ltd. | Atari Inc. | License | Car License - TDU 2 | $5,000 |
| 21 | Ascender Corporation | Atari Inc. | Development | Product Development - TDU2 "fonts" | $0 |
| 22 | Aspyr Media, Inc. | Atari Inc. | License Out | RollerCoaster Tycoon License Agreement | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 23 | Aspyr Media, Inc. | Atari Inc. | License Out | AppUpp Online Distribution | $0 |
| 24 | Aston Martin Lagonda Limited | Atari Inc. | Royalty | Royalty - TDU | $0 |
| 25 | Atari Corp. Licensing Agreement with Atari Games.pdf | | Intercompany | | $0 |
| 26 | Atari Sa | Atari Inc | InterCompany | Assignment and Assumption Agreement | $0 |
| 27 | Atari Sa | Atari Interactive, Inc. | Assignment | Trademark License Agreement | $0 |
| 28 | Atari SA | Atari Interactive, Inc. | License | TDU2 | $0 |
| 29 | Atari, Inc. | Atari Interactive, Inc. | Intercompany | Trademark License Agreement | $0 |
| 30 | Atgames Digital Media, Inc. | Atari Inc. | License Out | License Agreement (TV Plug and Play and Keychain Devices) | $0 |
| 31 | Audi Ag | Atari Inc. | Royalty | Royalty - TDU | $8,494 |
| 32 | Audi Ag | Atari Interactive | License | Pong  (Permission to Use) | $0 |
| 33 | Australian Center For The Moving Image | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 34 | Automobiles Citroen | Atari Inc. | License | Car License - TDU 2 | $5,000 |
| 35 | Bacon Bar Productions | Atari Interactive | License | Asteroids; Centipede & Millipede (Permission to Use) | $0 |
| 36 | Bad Taste Records Ab | Atari Inc. | License | Music License - TDU2 | $0 |
| 37 | Barbican International Enterprises | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 38 | Basic Fun | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 39 | Bbc | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 40 | Beanstalk Group LLC | Atari Inc. | Royalty | Royalty - TDU (see Ford & Land Rover) | $0 |
| 41 | Beanstalk Group LLC | Atari Inc. | Royalty | Royalty - TDU (see Ford & Land Rover) | $0 |
| 42 | Ben Bromley | Atari Inc. | License | Music License - TDU2 | $100 |
| 43 | Benjamin J. Rew | Atari Inc. | Development | Product Development - Pong contestant winner | $0 |
| 44 | Bensussen Deutsch And Associates, Inc | Atari Inc. | License | Permission to Use | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 45 | Bermanbraun Programming, LLC | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 46 | Big Blue Bubble, Inc. | Atari Inc. | Development | Product Development - Act of War | $0 |
| 47 | Big Tuna New Media, LLC | Atari Inc. | Publishing | Publishing | $0 |
| 48 | Bioworld Merchandising | Atari Interactive, Inc. | License | Merchandising License | $0 |
| 49 | Bluehornet Networks, Inc. | Atari Inc. | Services | Consultant | $10,104 |
| 50 | Bmg Music D/B/A Bmg Interactive International | Atari Inc. | Publishing | Publishing | $0 |
| 51 | Brightroll, Inc. | Atari Inc. | Advertising | Web Inventory Advertising | $0 |
| 52 | Brille Records Ltd. | Atari Inc. | License | Music License - TDU2 | $0 |
| 53 | Bug Music Ltd | Atari Inc. | License | Music License - TDU2 | $0 |
| 54 | Bug Music, Inc. | Atari Inc. | License | Music License - TDU2 | $0 |
| 55 | Bugatti International S.A. | Atari Inc. | License | Licensing - TDU 2 | $0 |
| 56 | Carmichael Lynch, and Subaru of America | Atari Interactive | License | Atari Joystick ( Permission to Use) | $0 |
| 57 | Carroll Shelby Licensing Inc. | Atari Inc. | License | Licensing - TDU 2 | $7,500 |
| 58 | Casandra Brown | Atari, Inc. | Services | Consultant | $0 |
| 59 | Caterham Cars Limited | Atari Inc. | License | Car License - TDU 2 | $3,223 |
| 60 | Cbs Productions | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 61 | Cbs Productions C/O Universal Studios | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 62 | Cd Projekt Sp. Z.O.O. | Atari Inc. | License Out | Digital Distribution Atari Titles | $0 |
| 63 | Cengage Learning | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 64 | Cglic | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 65 | Chicago Gaming Company, Inc. | Atari Inc. | License Out | License Agreement | $0 |
| 66 | Chris Sawyer | Atari Interactive | Royalty | Royalty - RCT franchise | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 67 | Chris Sawyer | Atari Interactive, Inc. | Royalty | Royalty - RCT franchise | $0 |
| 68 | Chris Sawyer | Atari Interactive, Inc. | Royalty | RCT4 | $0 |
| 69 | Chris Solarski / Krzysztof Solarski | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 70 | Claire Freeman | Atari Inc. | License | Music License - TDU2 | $0 |
| 71 | Cna Insurance | Atari Inc. | Insurance | Insurance | $0 |
| 72 | Coady Willis | Atari Inc. | License | Music License - TDU2 | $0 |
| 73 | Code Mystics Inc. | Atari Inc. | Development | Product Development - AGH | $0 |
| 74 | Cogent Communications, Inc. | Atari Inc. | Distribution | MIS-Itv - office internet access | $1,510 |
| 75 | Cognitive Technology Journal - Department Of Digital Media | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 76 | Cohen Brothers Realty Corp. | Atari Inc. | Lease | Lease - NYC office cleaning | $954 |
| 77 | Columbia Pictures Industries, Inc. | Atari Interactive, Inc. | License | Videogame Master Use License | $0 |
| 78 | Computer Arts Project Magazine | Atari Interactive | License | Atari Fuji Design (Permission to Use) | $0 |
| 79 | Conitec Datensysteme Gmbh | Atari Inc. | License | License | $0 |
| 80 | Copperheart Entertainment | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 81 | Criativa Informatica D/B/A South Logic Studios | Atari Inc. | Development | Development - Deer Hunter | $0 |
| 82 | Cryptic & Perfect World Transition Services Agreement.pdf | | Intercompany | | $0 |
| 83 | Cryptic Studios, Inc. | Atari Inc. | Distribution | MIS | $25,051 |
| 84 | CT Corporation | Atari Inc. / Atari Interactive / Humongous, Inc. | Taxes | Taxes | $0 |
| 85 | Curious Brain, Inc. | Atari Inc. | Development | Product Development - Super Bunny Breakout | $0 |
| 86 | Cyberfont Corporation | Atari Inc. | License Out | License Agreement | $0 |
| 87 | Cyberlore Studios, Inc. | Atari Inc. | Publishing | Publishing - Star Control asset sale | $0 |
| 88 | Cybersites, Inc. | Atari Inc. | Publishing | Publishing | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 89 | Daimler Chrysler Corp. | Atari Inc. | License | Car License - TDU 2 | $0 |
| 90 | Dann Michael Gallucci | Atari Inc. | License | Music License - TDU2 | $0 |
| 91 | Darlow Smithson Productions / Highgate Studios | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 92 | David Strang | Atari, Inc. | Services | Consultant | $0 |
| 93 | David Strang | Atari Inc. | Release | Termination and Release Agreement | $0 |
| 94 | Dean Michael Whitmore | Atari Inc. | License | Music License - TDU2 | $0 |
| 95 | Dean Whitmore | Atari Inc. | License | Music License - TDU2 | $0 |
| 96 | Dell Corporation | Atari Inc. | Supplies | Office Expense | $0 |
| 97 | Delusions LLC | Atari Inc. | Development | Product Development - Pong contestant winner | $0 |
| 98 | Derek Fudesco | Atari Inc. | License | Music License - TDU2 | $0 |
| 99 | Digital Dreams Entertainment Software (Uk) Ltd. | Atari Inc. | Publishing | Publishing | $0 |
| 100 | Digital Eclipse Software Inc | Atari Interactive, Inc. | Development | Royalty - Atari Arcade, etc. | $407 |
| 101 | Digital River (Blue Hornet) | Atari Inc. | Distribution | Distribution | $0 |
| 102 | Discovery Communications / V2 Films | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 103 | Dolby Laboratories Licensing Corporation | Atari Interactive, Inc. | License | Trademark License Agreement | $0 |
| 104 | Domino Record Co Ltd. | Atari Inc. | License | Music License - TDU2 | $0 |
| 105 | Downtown Music Publishing, LLC | Atari Inc. | License | Music License - TDU2 | $0 |
| 106 | DTI | Atari Inc | Royalty | | $0 |
| 107 | Ducati Motor Holding S.P.A. | Atari Inc. | License | Licensing - TDU | $0 |
| 108 | Edgecast Networks, Inc. | Atari Inc. | Development | Other Product Development | $9,139 |
| 109 | Egencia, LLC | Atari Inc. | Employee | Employee T&E | $0 |
| 110 | Eko Software Sarl | Atari Inc. | Publishing | Publishing | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 111 | Electronic Arts Inc. | Atari Inc. | License Out | Distribution | $0 |
| 112 | Electronic Arts Inc. | Atari Interactive | License | | $0 |
| 113 | Electronic Arts Inc. | Atari Interactive | License | Saboteur-Co Existence | $0 |
| 114 | Electronic Arts Inc. | | Co-Existence | Technology License | $0 |
| 115 | Eli Horowitz | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 116 | Emc Corporation | Atari Inc. | Distribution | MIS-Itv - SCAN support software & Hardware | $8,770 |
| 117 | Emi Entertainment, Inc. | Atari Inc. | License | Music License - TDU2 | $5,000 |
| 118 | Emi Film & Tv Music | Atari Inc. | License | Music License - TDU2 | $5,000 |
| 119 | Emi Music Publishing | Atari Inc. | License | Licensing - Music Ghostbusters | $0 |
| 120 | Entertainment Software Rating | Atari Inc. | Services | Legal | $0 |
| 121 | Epic Games, Inc. | Atari Inc. | Royalty | Royalty - Daggerdale | $15,888 |
| 122 | Epitome Pictures Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 123 | Equity Management Inc. | Atari Inc. / Atari Interactive | Royalty | Royalty - See GM & Nissan (TDU) | $0 |
| 124 | Escalation Studios Inc | Atari Inc. | Development | Product Development - Atari Casino | $0 |
| 125 | Escape Films Ltd | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 126 | Esl Music | Atari Inc. | License | Music License - TDU2 | $0 |
| 127 | Eternal Warriors | Atari Inc. | Publishing | Publishing | $0 |
| 128 | Eurocom | Atari Inc. | Publishing | Publishing | $0 |
| 129 | Evolved Games | Atari Inc. | Publishing | Publishing | $0 |
| 130 | Facebook, Inc. | Atari Inc. | Advertising | Advertising/Marketing | $0 |
| 131 | Farboud Sports Cars Ltd. (Ginetta) | Atari Inc. | License | Car License - TDU 2 | $0 |
| 132 | Fenris Wolf, Ltd. | Atari Inc. | Publishing | Publishing | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 133 | Ferrari S.P.A. | Atari Inc. | Royalty | Royalty - TDU | $0 |
| 134 | Fiat Auto S.P.A. | Atari Inc. | Royalty | Royalty - TDU | $6,564 |
| 135 | Fibermedia Group, LLC. | Atari Inc. | Distribution | MIS-Itv - Secaucus COLO | $5,229 |
| 136 | Fickle Fish Films Ltd | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 137 | Fidelity Investments | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 138 | Firelight Technologies Pty Ltd | Atari Inc. | License | Licensing - Star Raiders | $0 |
| 139 | Fishbowl Productions, Inc. | Atari Inc. | Development | Product Development - Pong contestant winner | $0 |
| 140 | Forbes | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 141 | Ford Motor Company C/O Beanstalk Group | Atari Inc. | License | Car License - TDU 2 | $3,647 |
| 142 | Fort Knox Recordings, LLC | Atari Inc. | License | Music License - TDU2 | $0 |
| 143 | Fox Television Studios | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 144 | Fox Us Productions 2, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 145 | Freeze | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 146 | Freeze Interactive | Atari Inc. | Publishing | Publishing | $0 |
| 147 | Frontier Developments Limited | Atari Interactive | Distribution | Royalty - RCT franchise | $0 |
| 148 | Frontier Developments Limited | Atari Interactive | Developer | RCT3 | $0 |
| 149 | Frontier Developments Limited | Atari Interactive | Developer | RCT3 | $0 |
| 150 | Frontier Developments Limited | Atari Interactive, Inc. | Royalty | RCT3 | $0 |
| 151 | Fs Studios C/O London & Co. | Atari Inc. | License | Music License - TDU2 | $1,000 |
| 152 | Fuji Heavy Industries Limited | Atari Inc. | License | Licensing - TDU | $0 |
| 153 | Fuji Heavy Industries Ltd. (Subaru) | Atari Inc. | License | Car License - TDU 2 | $0 |
| 154 | Future Publishing Computer Arts | Atari Interactive, Inc. | License | Permission to Use | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 155 | Game Center Group, LLC | Atari Inc. | Development | Other Product Development (customer service) | $5,919 |
| 156 | Game Studio 1 Pte Ltd. | Atari Interactive, Inc. | Publishing | Publishing | $0 |
| 157 | Gamefly | Atari Inc. | License Out | Digital Distribution | $0 |
| 158 | Gameplay Hd, A Voom Network | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 159 | Gamer's Gate Ab | Atari Inc. | License Out | Digital Distribution | $0 |
| 160 | Games Production Company, LLC | Atari Inc. | Development | Product Development - Deer Hunter Online | $0 |
| 161 | Gamespy Industries, Inc. | Atari Inc. | License Out | Licensing | $0 |
| 162 | Gamespy Industries, Inc. (Now Gamefly, Inc.) | Atari Inc. | License Out | Digital Distribution | $0 |
| 163 | Gem Distribution Ltd. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 164 | General Motors LLC | Atari Inc. | License | Car License - TDU 2 (claim filed totaled $16,748.35 12/31/2019) less 1,389.29-total | $2,207 |
| 165 | Gerrit Meyer | Atari Inc. | License | Music License - TDU2 | $0 |
| 166 | Getty Images, Incorporated | Atari Inc. | Advertising | Licensing | $0 |
| 167 | Global Software Publishing Ltd. | Atari Inc. | Publishing | Publishing (formerly Avanquest) | $0 |
| 168 | Global Talent Publishing Limited | Atari Inc. | License | Music License - TDU2 | $0 |
| 169 | Glu Mobile Inc. | Atari Inc. | License | License | $0 |
| 170 | Gog Limited (Good Old Games) | Atari Inc. | License Out | Digital Distribution | $0 |
| 171 | Goody. Silverstein & Partners for Motorola Mobility | Atari Interactive | License | Asteroids (Permission to Use) | $0 |
| 172 | Google Admob | Atari Inc. | Advertising | Mobile Inventory Advertising | $0 |
| 173 | Google Inc. (Android Distribution Agreement) | | License Out | | $0 |
| 174 | Google, Inc. | Atari Inc. | Development | Other Product Development | $0 |
| 175 | Google, Inc. | Atari Inc. | Development | Other Product Development | $0 |
| 176 | Great Saints Ltd | Atari Inc. | License | Music License - TDU2 | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 177 | Gril Productions Inc. | Atari Inc. | Development | Product Development | $0 |
| 178 | Griptonite, Inc. | Atari Inc. | Development | Product Development - Warlords | $0 |
| 179 | Gskinner.Com Inc. | Atari Inc. | Development | Product Development - Atari arcade | $0 |
| 180 | Gue Tech | Atari Inc. | License Out | Distribution (Airplanes) | $0 |
| 181 | Gumpert Sportwagenmanufaktur | Atari Inc. | License | Car License - TDU 2 | $0 |
| 182 | Gyldendal | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 183 | Hasbro Incorporated | Assignable to Atari, Interactive, and CUSH | Royalty | Royalty | $0 |
| 184 | Hasbro Incorporated | Assignable to Atari, Interactive, and CUSH | Royalty | Royalty | $0 |
| 185 | Haunter (Copperheart) Productions, Inc | Atari Interactive | License | Permission to Use | $0 |
| 186 | Havok.Com Inc. | Atari Interactive, Inc. | License In | Licensing | $0 |
| 187 | Henry Lowood / Stanford University Libraries | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 188 | Hick Picture Production, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 189 | Home Box Office, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 190 | Horizon Scripted Television, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 191 | Hudson Street Productions Inc. | Atari Interactive | License | Asteroids (Permission to Use) | $0 |
| 192 | Hungry Audio | Atari Inc. | License | Music License - TDU2 | $0 |
| 193 | Hyatt Legal Plans, Inc. | Atari Inc. | Development | Other Product Development | $0 |
| 194 | Ideas Pad Limited | Atari Inc. | Royalty | Royalty | $0 |
| 195 | Ideaspark Labs Inc. (Beamdog) | Atari Interactive, Inc. | License Out | Baldur's Gate Sublicense Agreement | $0 |
| 196 | Igratos International Limited D/B/A Simos | Atari Inc. | License Out | Gamazavr.ru Digital Distribution Agreement | $0 |
| 197 | IGT | Atari Inc. | License Out | Merchandising License Agreement (Gaming Machines) | $0 |
| 198 | ImaginEngine | | Development | Product Development - Haunted House, Atari Ultra | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 199 | Incinerator Studios, LLC | Atari Inc. | Development | Product Development - Star Raiders | $0 |
| 200 | Innerloop Studios | Atari Inc. | Publishing | Publishing (Wayforward / Codemasters) | $0 |
| 201 | Interactive Software Federation Of Europe | Atari Inc. / Atari, S.A. | Advertising | Advertising/Marketing (rating system) | $0 |
| 202 | Interama Jogos Electronicos Ltda-Me | Atari Inc. | Publishing | Product Development - Rainbow Faeries vs. Darklings | $0 |
| 203 | Interama Jogos Eletronicos Ltda-Me | Atari Inc. | Development | Product Development - Rainbow Faeries vs. Darklings | $0 |
| 204 | International Creative Management | Atari Interactive, Inc. | License | Licensing (claim was withdrawn) | $0 |
| 205 | International Development Group | Atari Inc. | Advertising | Advertising/Marketing | $0 |
| 206 | Iocaine Studios | Atari Inc. | Development | Publishing - Star Control / Hyberbol | $0 |
| 207 | Ion Audio LLC | Atari Inc. | License Out | OEM/Bundle License Agreement | $0 |
| 208 | Ion Audio LLC | Atari Inc. | License Out | Trademark License Agreement | $0 |
| 209 | Ipmg Ag | Atari Interactive, Inc. | Settlement | Settlement (Lodsys) | $0 |
| 210 | Island Officials LLC | Atari Inc. | Development | Product Development - Pong contestant winner | $0 |
| 211 | Ismail Azim | Atari Inc. | License | Music License - TDU2 | $0 |
| 212 | Its Been Cool Touring Inc. | Atari Inc. | License | Music License - TDU2 | $0 |
| 213 | Ivan Martin | Atari Inc. | License | Music License - TDU2 | $1,000 |
| 214 | Jaguar Cars Limited | Atari Inc. | License | Car License - TDU 2 | $0 |
| 215 | Jakks Pacific | Atari Interactive | Royalty | | $0 |
| 216 | Jinx, Inc. | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 217 | John Kauderer | Atari, Inc. | Services | Consultant | $0 |
| 218 | John Paul Pitts | Atari Inc. | License | Music License - TDU2 | $0 |
| 219 | Kanine Records LLC | Atari Inc. | License | Music License - TDU2 | $0 |
| 220 | King Of The Jungle Limited | Atari Inc. | Publishing | Publishing (Invasion from Beyond / Galaga / Encore Software) | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 221 | Kobalt Music Publishing | Atari Inc. | License | Music License - TDU2 | $0 |
| 222 | Koenigsegg Automotive Ab | Atari Inc. | License | Car License - TDU 2 | $15,000 |
| 223 | Konica Minolta | Atari Inc. | Distribution | MIS-Itv - NYC office copier | $1,230 |
| 224 | Krzysztof Solarski | Atari Interactive | License | Pong (Permission to Use) | $0 |
| 225 | Kuju Entertainment Limited F/K/A Simis Ltd. | Atari Inc. | Publishing | Publishing | $0 |
| 226 | Kurzweilainetworks, Inc | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 227 | Lamborghini Artimarca S.P.A. | Atari Inc. | Royalty | Royalty - tdU | $0 |
| 228 | Land Rover | Atari Inc. | License | Car License - TDU 2 | $696 |
| 229 | Laurence King Publishing Ltd. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 230 | Lawrence H. Harris | Atari Interactive, Inc. | Royalty | Royalty - Axis & Allies RTS | $0 |
| 231 | LG Software, Ltd. | Atari Inc. | Publishing | Publishing | $0 |
| 232 | Linkshare | Atari Inc. | Publishing | Publisher Membership | $0 |
| 233 | Lion Television Limited | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 234 | Lotus Cars Limited | Atari Inc. | License | Licensing - TDU | $0 |
| 235 | Mailfinance Inc. | Atari Inc. | Supplies | Office Expense | $0 |
| 236 | Man Mountain Music Ltd | Atari Inc. | License | Music License - TDU2 | $0 |
| 237 | Mattel, Inc. | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 238 | Matthew Labunka | Atari, Inc. | Services | Consultant | $0 |
| 239 | Mclaren Group Limited | Atari Inc. | Royalty | Royalty - TDU | $29,294 |
| 240 | Melbourne IT DBS SAS | Atari Inc. / Atari, S.A. | Services | Legal | $253 |
| 241 | Mercedes-Benz Accessories Gmbh | Atari Inc. | License | Licensing - TDU | $825 |
| 242 | Microsoft Advertising | Atari Inc. | Advertising | Advertising/Marketing | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 243 | Microsoft Corporation | Atari Inc. | Development | Other Product Development | $0 |
| 244 | Microsoft Corporation | Atari Inc. | License Out | Collaboration and Marketing Agreement | $0 |
| 245 | Microsoft Corporation | Atari Inc. | Development | Other Product Development | $0 |
| 246 | Microsoft Corporation | Atari Inc. | Royalty | Royalty - TDU | $20,562 |
| 247 | Microsoft Licensing, Gp | Atari Inc. | License Out | Xbox 360 Publisher License Agreement | $0 |
| 248 | Microsoft X-Box | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 249 | Microsoft X-Box | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 250 | Mitarbeit Dramaturgie / Junge Oper Stuttgart | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 251 | Mixtape Music Ltd | Atari Inc. | License | Music License - TDU2 | $0 |
| 252 | Modernsoul Gmbh & Co. | Atari Inc. | License | Music License - TDU2 | $0 |
| 253 | Mofohifi Records Limited | Atari Inc. | License | Music License - TDU2 | $0 |
| 254 | Monolith Productions, Inc. | Atari Inc. | Publishing | Publishing - Blood franchise | $0 |
| 255 | Monotype Imaging, Inc. | Atari Interactive, Inc. | Supplies | Office Expense | $0 |
| 256 | Motorola Mobility / Goodby, Silverstein & Partners | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 257 | Mr. Jeremy Shopf | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 258 | Muh-Tay-Zik \| Hof-Fer | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 259 | Murder City Devils | Atari Inc. | License | Music License - TDU2 | $0 |
| 260 | Myrna Anderson | Atari, Inc. | Services | Consultant | $0 |
| 261 | Nadine Raihani & Stephan Hengst Gbr | Atari Inc. | License | Music License - TDU2 | $0 |
| 262 | Nathan Clark Manny | Atari Inc. | License | Music License - TDU2 | $0 |
| 263 | National Benefit Life Insurance Co | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 264 | Neighbors Working Together LLC | Atari Interactive, Inc. | License | Permission to Use | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 265 | Neopost Inc. | Atari Inc. | Supplies | Office Expense | $0 |
| 266 | Netnames Usa | Atari Inc. | Services | Legal | $9,695 |
| 267 | New Momentum, Inc. | Atari Inc. | Services | Legal | $6,220 |
| 268 | Nextepmedia, Inc. | Atari Inc. | License Out | License and Distribution | $0 |
| 269 | Nickelodeon/Viacom | Atari Interactive | License | Permission to Use | $0 |
| 270 | Nimrod Productions | Atari Inc. | License | Music License - TDU2 | $0 |
| 271 | Nintendo | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 272 | Nissan North America | Atari Inc. | License | Car License - TDU 2 | $1,225 |
| 273 | N-Space, Inc. | Atari Inc. | Publishing | Publishing - RCT NDS | $0 |
| 274 | Oflc | Atari Inc. / Atari, S.A. | Advertising | Advertising/Marketing (rating system) | $0 |
| 275 | Oldenbourg Schulbuchverlag Gmbh / Bayerischer Schulbuch Verlag Gmbh | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 276 | Olivier Dahan | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 277 | Onlive, Inc. | Atari Inc. | License Out | Master Content Publishing Agreement | $0 |
| 278 | Optumhealth Financial Services | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 279 | Oracle America, Inc | Atari Inc. | Distribution | MIS-ITv | $0 |
| 280 | Pagani Automobili Spa | Atari Inc. | License | Licensing - TDU | $0 |
| 281 | Paychex | Atari Inc. | Services | Section 125 - Flexible Spending Accts | $0 |
| 282 | Payday Records, Inc. | Atari Inc. | License | Music License - TDU2 | $0 |
| 283 | Pegi | Atari Inc. / Atari, S.A. | Advertising | Advertising/Marketing (rating system) | $0 |
| 284 | Pegpeg | Atari Inc. | Development | Product Development - Pong contestant winner | $0 |
| 285 | Penn/Bright Entertainment | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 286 | Perfecto Music LLC | Atari Inc. | License | Music License - TDU2 | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 287 | Perfecto Records LLC | Atari Inc. | License | Music License - TDU2 | $0 |
| 288 | Performance Brands Ltd | Atari Inc. | License | Licensing - TDU | $0 |
| 289 | Phil Vassil | Atari Inc. | License | Music License - TDU2 | $0 |
| 290 | Pias Uk | Atari Inc. | License | Music License - TDU2 | $0 |
| 291 | Pixel Multimedia (1991) Ltd. | Atari Inc. | Publishing | Publishing - GTIS AHX-1 | $0 |
| 292 | Playcast Media Systems, Ltd. | Atari Inc. | License Out | Game License | $0 |
| 293 | Pocket Books | Atari Inc. | License | Merchandising | $0 |
| 294 | Pong Research Corp. | Atari Interactive | License | Pong-Co Existence | $0 |
| 295 | Preferred Pension Concepts | Atari Inc. | Services | Consultant | $0 |
| 296 | Presses De L'Université Du Québec | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 297 | Primary Wave Music Publishing | Atari Inc. | License | Music License - TDU2 | $500 |
| 298 | Promotion Software Gmbh | Atari Inc. | Publishing | Publishing -911: First Responders | $0 |
| 299 | Q Entertainment Inc. | Atari Interactive, Inc. | Settlement | Settlement | $0 |
| 300 | Quattro Gmbh | Atari Inc. | Royalty | Royalty - TDU | $8,147 |
| 301 | Rackspace Managed Hosting | Atari Inc. | Distribution | MIS-ITv | $79,130 |
| 302 | Rad Games Tools, Inc | Atari Inc. | License | Licensing | $0 |
| 303 | Rao Sayani | Atari, Inc. | Services | Consultant | $0 |
| 304 | Ratbag Pty Ltd. (2) | Atari Inc. | Publishing | Publishing - Dirt Track Racing, Sprint Cars | $0 |
| 305 | Raydioa Music Corporation | Atari Inc. | License | Licensing - Ghostbusters | $0 |
| 306 | Remote Broadcasting, Inc. | Atari Interactive | License | Permission to Use | $0 |
| 307 | Remote Broadcasting, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 308 | Research in Motion Ltd. (RIM) | Atari Interactive | License | Fuji Design - Co Existence | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 309 | Reverb Music Ltd | Atari Inc. | License | Music License - TDU2 | $0 |
| 310 | Rhode Island Soft Systems | Atari Inc. | Publishing | Publishing - dba Freeze.com | $0 |
| 311 | Rockhard | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 312 | Rombax Games | Atari Inc. | Distribution | 3rd Party - Venetica / TDU Ferrari | $0 |
| 313 | Ruf Vertrieb Gmbh | Atari Inc. | License | Car License - TDU 2 | $0 |
| 314 | Ryan Smith | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 315 | Sandy Mount Elementay School / Christina Mcgann | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 316 | Scavenger, Inc. | Atari Inc. | Publishing | Publishing - GTIS old titles Zyrinx, etc. | $0 |
| 317 | Scientific Games International, Inc. | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 318 | Screen Gems Productions, Inc. | Atari Interactive | License | Permission to Use | $0 |
| 319 | S-Curve Records | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 320 | Security Pro Ny Inc. | Atari Inc. | Services | Restructuring (NYC office security) | $0 |
| 321 | Sights & Sounds Publishing | Atari Inc. | License | Licensing | $0 |
| 322 | Sights And Sounds Publishing | Atari Inc. | License | Music License - TDU2 | $0 |
| 323 | Six Degrees | Atari Interactive, Inc. | License | Music License - TDU2 | $0 |
| 324 | Six Flags Theme Parks, Inc. | Atari Interactive, Inc. | License | License and Sponsorship | $0 |
| 325 | Six Waves, Inc. | Atari Inc. | License Out | Application Distribution Agreement | $0 |
| 326 | Sixhoursoft LLC | Atari Inc. | Development | Master Mobile Development - Breakout Boost | $0 |
| 327 | Smart Balloon Inc. (Heyzap) | Atari Inc. | License Out | Distributor License Agreement - Asteroids Online, Tempest, Adventure Remix, Yar's Revenge, | $0 |
| 328 | Smithsonian Institution | Atari Interactive | License | Adventure, Combat, Haunted House, Missle Command,Star Raiders, Video Chess, Yar's | $0 |
| 329 | Sony | Atari Inc. | Advertising | Advertising/Marketing | $0 |
| 330 | Sony | Atari Inc. | Development | Other Product Development | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 331 | Sony | Atari Inc. | Supplies | Office Expense | $0 |
| 332 | Sony / Atv Music Publishing LLC | Atari Inc. | License Out | Music License - TDU2 | $0 |
| 333 | Sony Computer Entertainment America LLC | Atari Inc. | License Out | Playstation Store Resale Agreement | $0 |
| 334 | Sony Corporation | Atari Interactive, Inc. | Royalty | Royalty | $0 |
| 335 | Sony Dadc Austria Ag | Atari Inc. | Manufacturing | Manufacturing (COGS) | $21,776 |
| 336 | Sony Disc | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 337 | Sony Disc | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 338 | Sony Disc | Atari Inc. | Manufacturing | Manufacturing (COGS) | $0 |
| 339 | Sony Pictures Consumer Products | Atari Inc | License | GhostBusters | $0 |
| 340 | Sony Pictures Entertainment / Screen Gems Productions, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 341 | Spencer E. Moody | Atari Inc. | License | Music License - TDU2 | $0 |
| 342 | Spittn Image | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 343 | Spyker | Atari Inc | License | TDU2 | $0 |
| 344 | Stackmob, Inc. | Atari Inc. | Advertising | Mobile Advertising | $0 |
| 345 | Stainless Games Ltd. | Atari Inc. | Royalty | Royalty - Stainless | $1,414 |
| 346 | Stardock Systems, Inc. (Now Impulse) | Atari Inc. | License Out | Digital Distribution | $0 |
| 347 | Stirling Moss Limited | Atari Inc. | License | Licensing - TDU | $0 |
| 348 | Studio X Productions Incorporated | Atari Inc. | Publishing | Publishing - GTIS old titles | $0 |
| 349 | Sub Pop Records | Atari Inc. | License | Music License - TDU2 | $0 |
| 350 | Sun Life Assurance Co Of Canada | Atari Inc. | Insurance | Insurance | $0 |
| 351 | Sunset International | Atari Interactive, Inc. | License Out | Merchandising License Agreement | $0 |
| 352 | Sunset International / Bioworld | Atari Interactive, Inc. | Supplies | Office Expense | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 353 | Supermarcas Participacoes Ltda | Atari Interactive, Inc. | License Out | Agency Agreement | $0 |
| 354 | Supersonic Software Limited | Atari Interactive, Inc. | Royalty | Royalty - Pong | $1,907 |
| 355 | Symantec Corp. | Atari Inc. | Distribution | MIS-Itv | $400 |
| 356 | Symantec Corporation | Atari Inc. | Distribution | MIS-ITv | $0 |
| 357 | Tachyon Studios Inc. | Atari Inc. | Publishing | Publishing - D&D Blood & Magic | $0 |
| 358 | Target Direct Productions Inc | Atari Interactive | License | Act of War | $0 |
| 359 | Technically Philly and Drexel University | Atari Interactive | License | Pong (Permission to Use) | $0 |
| 360 | Terminal Reality, Inc. | Atari Interactive, Inc. | Development | Development Agreement - Ghostbusters | $0 |
| 361 | The Comedy Unit Limited | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 362 | The Jobs Film, LLC | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 363 | The Joester Loria Group, Inc | Atari Inc. | License | Licensing - TDU (Chrysler) | $0 |
| 364 | The Museum of Modern Art | Atari Interactive | License | Pong, Asteroids, Tempest, Yar's Revenge (Permission to Use) | $0 |
| 365 | The Pharcyde C/O Greg Campbell | Atari Inc. | License | Music License - TDU2 | $500 |
| 366 | Think Music | Atari Inc. | License | Music License - TDU2 | $0 |
| 367 | Thinksync Music Ltd. | Atari Inc. | License | Music License - TDU2 | $0 |
| 368 | Tony Wong | | Development | Product Development - Return to Haunted House | $0 |
| 369 | Transamerica Financial Life Insurance Company | Atari Inc. | Insurance | Insurance | $0 |
| 370 | Transamerica Financial Life Insurance Company | Atari Inc. | Insurance | Insurance | $0 |
| 371 | Transamerica Financial Life Insurance Company | Atari Inc. | Insurance | Insurance | $0 |
| 372 | Transperfect Translations | Atari Inc. | Services | Legal | $0 |
| 373 | Tribeca Interactive, Inc. | Atari Inc. | Publishing | Publishing - GTIS 9: The Last Resort | $0 |
| 374 | TVM Productions | Atari Interactive | License | Centipede, Asteroids, Missle Command (Permission to Use) | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 375 | TVM Productions | Atari Interactive | License | Atari 2600,Air Sea Battle, Asteroids, Combat,Football, Home run, Maze Craze, Missle | $0 |
| 376 | TVM Productions | Atari Interactive | License | Asteroids, Missle Command, Pong & Atari Logo (Permission to Use) | $0 |
| 377 | Tvr Engineering Ltd. | Atari Inc. | License | Car License - TDU 2 | $6,023 |
| 378 | Twentieth Century Fox Tv | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 379 | Twitter, Inc. | Atari Inc. | Advertising | Advertising/Marketing | $0 |
| 380 | Uab On5 | Atari Inc. | Development | Product Development - RCT mobile | $0 |
| 381 | Ubitus, Inc. | Atari Inc. | License Out | Game Cloud Platform Alliance | $0 |
| 382 | United Corporate Service | Atari Inc. / Atari Interactive / Humongous, Inc. | Services | Legal | $0 |
| 383 | United Healthcare | Atari Inc. | Employee | Other Employee Related Expenses | $0 [2] |
| 384 | United Parcel Service (Main) | Atari Inc. | Distribution | Distribution & Freight | $0 |
| 385 | United Parcel Service (Main) | Atari Inc. | Distribution | Distribution & Freight | $1,374 |
| 386 | Universal Music Group | Atari Inc. | License | Music License - TDU2 | $0 |
| 387 | Universal Music Operations Limited | Atari Inc | License | Song | $0 |
| 388 | Universal Music Publishing Group | Atari Inc. | Royalty | Royalty - TDU | $0 |
| 389 | Universal Music Publishing Ltd | Atari Inc. | License | Music License - TDU2 | $10,778 |
| 390 | Universal Pictures | Atari Interactive, Inc. | License Out | Movie Option/Purchase | $0 |
| 391 | Universal Pictures | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 392 | Universal Studios Licensing Llp | Atari Inc. | Distribution | 3rd Party | $0 |
| 393 | Upper Ground Enterprises, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 394 | Valve Corporation | Atari Inc. | License Out | Digital Distribution | $0 |
| 395 | Verizon (Main) | Atari Inc. | Distribution | MIS-ITv | $0 |
| 396 | Verizon (Main) | Atari Inc. | Distribution | MIS-Itv - corporate cellphone | $5,924 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 397 | Versity Rights Ab | Atari Inc. | License | Music License - TDU2 | $0 |
| 398 | Virgin Atlantic | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 399 | Vision Service Plan (Vsp) | Atari Inc. | Employee | Other Employee Related Expenses | $0 |
| 400 | Vital Records Inc | Atari Inc. | Distribution | MIS-Itv - backup tape offsite storage | $4,304 |
| 401 | Volkswagen Ag | Atari Inc. | Royalty | Royalty- TDU | $3,637 |
| 402 | Walker Digital, LLC | Atari Inc. | Settlement | Settlement | $0 |
| 403 | Walt Disney Animation Studios | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 404 | Walt Disney Studios Motion Picture Production | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 405 | Warner Bros. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 406 | Warner Bros. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 407 | Warner Bros. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 408 | Warner Bros. Home Entertainment Inc. | Atari Inc. | License | Payment Agreement | $0 |
| 409 | Warner Bros. Records Inc. | Atari Interactive | License | Asteroids (Permission to Use) | $0 |
| 410 | Warner Bros. Theatrical Clearance Dept. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 411 | Warner Brothers | Atari Interactive, Inc. | Royalty | Royalty | $0 |
| 412 | Warner Music Group Company | Atari Inc. | License | Licensing | $0 |
| 413 | Warner Music Uk Limited | Atari Inc. | License | Music License - TDU2 | $0 |
| 414 | Warner/Chappell Music Limited | Atari Inc. | License | Music License - TDU2 | $0 |
| 415 | Weeks-Lerman Group LLC | Atari Inc. | Supplies | Office Expense | $1,447 |
| 416 | White Bird Productions LLC | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 417 | Wieden + Kennedy/ Delta Airline | Atari Interactive | License | Permission to Use | $0 |
| 418 | Wiesmann Gmbh & Co. Kg | Atari Inc. | License | Car License - TDU 2 | $0 |

Atari, Inc. et al.

Executory Contracts and Unexpired Leases to be Assumed

| # | Contracting Party | Debtor Counterparty | Contract Type | Contract Description | Cure Amount |
|---|---|---|---|---|---|
| 419 | Wildtangent, Inc. | Atari Inc. | License Out | Digital Distribution | $0 |
| 420 | William B Meyer Inc | Atari Inc. | Supplies | Office Expense | $7,779 |
| 421 | William Gallagher Associates | Atari Inc. | Insurance | Insurance | $0 |
| 422 | William Gallagher Associates | Atari Inc. | Insurance | Insurance | $0 |
| 423 | Windswept Holdings, LLC | Atari Inc. | License | Music License - TDU2 | $0 |
| 424 | Wixen Music Publishing, Inc. | Atari Inc. | License | Music License - TDU2 | $1,000 |
| 425 | Wolfsonian-Florida International University | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 426 | Workplace Docs, Inc. | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 427 | Worldwide Marketing Partnerships / Paramount Pictures | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 428 | Wunderkind Pictures | Atari Interactive, Inc. | License | Permission to Use | $0 |
| 429 | Yolanda Bulla | Atari Inc. | Release | Termination and Release Agreement | $0 |
| 430 | Zynga Inc. | Atari Interactive, Inc. | License Out | Mobile Publishing Agreement | $0 |
| 431 | Zynga, Inc. | Atari Inc. / Atari Interactive | Distribution | Mobile Publishing | $0 |

Total Proposed Cure Cost                                    $      396,011

[1] As of the date hereof, the Debtors are current on all of their obligations to United Health Care ("United") and believe that no outstanding Cure Amount is owed to United.  Any postpetition amounts that

may arise after the date hereof will be paid in the ordinary course of business.

[2] The Debtors reserve the right to modify this schedule to remove the contract with 475 Building Company LLC (the "Landlord") prior to the Effective Date pending finalization of the amendment to the

lease agreement between the Debtors and the Landlord.