**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------- x
                                                          :
*In re:*                                                  :
                                                          :    Chapter 11
                                                          :
ATARI, INC., *et al.*,                                    :
                                                          :    Case No. 13-10176 (JLG)
        *Debtors*                                         :    (Jointly Administered)
                                                          :
--------------------------------------------------------- x

<u>**MEMORANDUM DECISION GRANTING, IN PART, THE MOTION OF
ALDEN GLOBAL VALUE RECOVERY MASTER FUND, L.P., TO REOPEN
THESE CHAPTER 11 CASES, REQUIRE COMPLIANCE WITH THE CHAPTER
11 PLAN AND CONFIRMATION ORDER, AND ENJOIN FURTHER VIOLATIONS
BY THE DEBTORS AND THEIR AFFILIATES**</u>

<u>**A P P E A R A N C E S**</u>**:**

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
<u>By:</u>    John J. Clarke, Jr., Esq.
        Daniel G. Egan, Esq.

DLA PIPER LLP (US)
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801
<u>By:</u>    R. Craig Martin, Esq.

*Attorneys for Alden Global Capital LLC, for Alden Global Value Recover Master Fund, L.P.*

BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
<u>By:</u>    Daniel J. Saval, Esq.
        Shoshana B. Kaiser, Esq.
        Shivani Poddar, Esq.

*Attorneys for Atari S.A., Atari Europe SAS, and the Reorganized Debtors*

**JAMES L. GARRITY, JR.**
**United States Bankruptcy Judge**

### *Introduction*

Before the Court is the motion (the "**Motion**")[1] of Alden Global Value Recovery Master Fund, L.P. ("**Alden**") to reopen these fully administered chapter 11 cases, enforce the release and exculpation provisions contained in the Debtors' confirmed chapter 11 plan (the "**Plan**") and the order confirming it (the "**Confirmation Order**"), and enjoin further violations of the Plan and Confirmation Order by the Reorganized Debtors and certain of their affiliates; to wit, Atari S.A. ("**Atari S.A.**") and Atari Europe SAS ("**Atari Europe**," together with Atari S.A., the "**Atari Entities**," and collectively with Atari S.A. and the Reorganized Debtors, "**Atari**"). The Motion was precipitated by proceedings commenced by Atari against Alden in the *Tribunal de Commerce de Paris* (the "**Commercial Court of Paris**") to recover alleged overpayments by the Atari Entities under a €20 million credit facility agreement (the "**Credit Agreement**") to which Alden is a party. In those proceedings, Atari contends that the *taux effectif global* (the effective global interest rate, or "**TEG**") specified by the Credit Agreement was improperly stated and that, as a result, French law effectively replaces the improperly stated rate with a lower statutory rate and entitles the Atari Entities to recoup years' worth of alleged overpayments to Alden and its predecessors under the agreement.

In the Motion, Alden contends that any claims Atari may have had relating to the Credit Agreement or the improperly stated TEG are barred by the release and exculpation provisions of the Plan and Confirmation Order. In light of those provisions, and because the Plan and Confirmation Order preserved this Court's jurisdiction to interpret and enforce the releases, Alden asks this Court to reopen these chapter 11 cases, require Atari to comply with the release

---

[1]   *Motion of Alden Global Value Recovery Master Fund, L.P., to Reopen these Chapter 11 Cases, Require Compliance with the Chapter 11 Plan and Confirmation Order, and Enjoin Further Violations by the Debtors and their Affiliates* [ECF No. 579].

and exculpation provisions, direct Atari to dismiss its pending claims against Alden in the

Commercial Court of Paris, and enjoin Atari from taking further legal action that would violate

the Plan and Confirmation Order.

Atari opposes the Motion. In its opposition (the "**Opposition**"),[2] Atari contends that the

proceedings before the Commercial Court of Paris do not violate the Plan and Confirmation

Order because the releases granted under those documents do not extend to Atari's claims under

the Credit Agreement and applicable French law. Moreover, Atari contends that Alden has failed

to establish cause to reopen these chapter 11 cases because, *inter alia*, the Commercial Court of

Paris is an available alternative forum to adjudicate the parties' disputes and Alden will face no

prejudice if it is forced to litigate before that court. In the alternative, Atari argues that this Court

should abstain from reopening these cases and adjudicating whether the releases apply to Atari's

claims in favor of a resolution of that issue in the French proceedings.

Following a prehearing conference with the Court, the parties agreed that the question of

whether Atari's claims are, in fact, barred by the release and exculpation provisions of the Plan

and Confirmation Order will be deferred until the Court has resolved the threshold question of

whether these chapter 11 cases should be reopened. For the following reasons, the Court finds

that Alden has established cause for reopening under § 350(b) of the Bankruptcy Code.

Accordingly, to the extent the Motion seeks entry of an order reopening these cases, the Motion

is **GRANTED.**

---

[2]    *Opposition of Atari, S.A., Atari Europe SAS, and the Reorganized Debtors to Motion of Alden Global Value Recovery Master Fund, L.P., to Reopen these Chapter 11 Cases, Require Compliance with the Chapter 11 Plan and Confirmation Order, and Enjoin Further Violations by the Debtors and their Affiliates* [ECF No. 590].

### *Jurisdiction*

This memorandum decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. The United States District Court for the Southern District of New York has subject matter jurisdiction over this contested matter pursuant to § 1334 of title 28 of the United States Code. This Court exercises authority over the matter pursuant to § 157 of title 28 and the District Court's standing order of reference for bankruptcy cases and related proceedings. *See* Am. Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This matter is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A); *see also infra* note 10.

### *Background*

The facts are largely undisputed. On January 21, 2013, the Debtors each filed voluntary petitions for relief in this Court, thereby initiating these chapter 11 cases. As of the petition date, nondebtors Atari Europe (as borrower) and Atari S.A. (as guarantor) were parties to a €20 million credit facility agreement with Bluebay Value Recovery (Master) Fund Limited, as assignee of Banc of America Securities Limited. None of the Debtors – which are subsidiaries of Atari S.A. and affiliates of Atari Europe – are parties to the Credit Agreement. However, the Atari Entities' obligations under the agreement were secured by liens on, *inter alia*, (1) certain of the Debtors' intellectual property assets, and (2) certain intercompany claims held by the Atari Entities against the Debtors. In February 2013, the Credit Agreement was assigned to Alden, which was also the Debtors' postpetition lender.

In September 2013, the Debtors and Atari S.A. proposed the Plan pursuant to a term sheet (the "**Term Sheet**") by and among the Debtors, Atari S.A., Alden, and the creditors' committee appointed in these cases.[3] As set forth in the Term Sheet, the Plan constituted

> a global settlement and compromise among the Parties, which includes the agreement of the Parties to support the Plan, and provide customary waivers and releases with respect to potential Claims and Causes of Action against (i) [the Atari Entities] and their respective affiliates, directors, officers, managers, employees, agents, and professionals, (ii) the Debtors and their directors, officers, employees, agents, and professionals, [and] (iii) Alden and its affiliates, directors officers, employees, agents and professionals . . . .

(Term Sheet 5.)[4] Accordingly, under the Plan the Debtors agreed to release Atari S.A., Atari Europe, and Alden – and those entities each agreed to release one another – from any and all claims, "whether known or unknown, foreseen or unforeseen, existing or hereafter arising," subject to the caveat that such releases were "to the maximum extent permitted by applicable law." (Plan §§ 12.7, 12.9.) The Plan also provided for this Court to retain exclusive jurisdiction, to the fullest extent permitted by law, to "issue . . . orders in aid of execution, enforcement, implementation, and consummation of the Plan," "hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan [and] the Confirmation Order," and "issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan [and] Confirmation Order." (*Id.* § 13.1(f), (h), (k).) The Confirmation Order approved the releases and the retention of exclusive jurisdiction as set forth in the Plan. (*See* Confirmation Order ¶¶ 29-30, 78, 128.)

---

[3]  A copy of the Term Sheet was attached as Annex I to the Sponsor Commitment Letter, which was attached as Schedule 2 to the Plan.

[4]  "Parties" was defined in the Term Sheet to include the Debtors, Atari S.A., Alden, and the committee.

Although the Debtors were not parties to the Credit Agreement, the Plan provided for various modifications of Alden's rights in connection with that agreement. Under the Plan, Alden waived its right to receive distributions from the Debtors or enforce its security interest in certain of the Debtors' intellectual property assets that secured the Atari Entities' obligations under the Credit Agreement. (*See* Plan § 4.2(c)(ii).) The Plan also provided for the Atari Entities to waive their intercompany claims against the Debtors, which claims had also served as collateral under the agreement. (*See id.* § 4.2(e)(ii).)

After the Plan was confirmed, the parties agreed to further modifications of their rights in furtherance of the global restructuring of the financial relationship between Atari and Alden. Specifically, on December 24, 2013, the effective date under the Plan, Alden and the Atari Entities entered into Amendment No. 16 to the Credit Agreement ("**Amendment No. 16**").[5] Pursuant to that amendment, the parties agreed to extend the final maturity date under the Credit Agreement to September 30, 2015. (*See* Amend. No. 16 ¶ 5.1.) In consideration of that extension and certain other concessions, each of the Reorganized Debtors pledged substantially all of its assets as additional collateral to secure the Atari Entities' obligations under the agreement. (*See id.* ¶ 8(d).) Accordingly, although the Debtors were not themselves parties to the Credit Agreement, the Debtors and these chapter 11 cases were integral to the larger restructuring of the financial relationship between Alden and the Atari Entities.

---

[5]    Amendment No. 16 contains a choice of law and exclusive forum selection provision in favor of French law and the Commercial Court of Paris, respectively:

> This Amendment No. 16 shall form one and single agreement with the [Credit Agreement] and shall be governed by and construed in accordance with the laws of France. The *Tribunal de Commerce de Paris* [*i.e.*, the Commercial Court of Paris] shall have exclusive jurisdiction over any dispute arising out of or in connection with the [Credit Agreement] as modified by this Amendment No. 16 or this Amendment No. 16 . . . .

(Amend. No. 16 ¶ 12.)

In early 2015, after these chapter 11 cases had been closed, a dispute arose between the parties as to whether – and when – payments were due to Alden under the Credit Agreement. According to Alden, Amendment No. 16 required the Atari Entities to begin making quarterly interest payments under the agreement, the first of which was due no later than March 31, 2015. (Motion ¶ 28.) According to Atari, however, a separate letter agreement (the "**Letter Agreement**") that the parties entered into in December 2014 had "suspend[ed] all interest and principal payments under the Credit Agreement until September 30, 2015." (Opp'n ¶ 29.) Thus, according to Atari, no payment was due to Alden on March 31, 2015.

After the Atari Entities failed to make an interest payment under the Credit Agreement by March 31, 2015 – which Atari contends, by application of the Letter Agreement, was not due – Alden declared an event of default under the agreement and accelerated the remaining balance due. (Motion ¶ 32.) On July 7, 2015, Alden notified Atari of its intent to proceed with a public auction sale of the Reorganized Debtors' assets based on the default. (Opp'n ¶ 51.) In response, on July 10, 2015, Atari commenced an action (the "**Grace Period Action**") in the Commercial Court of Paris seeking a statutory grace period under French law with respect to the Atari Entities' obligations under the Credit Agreement. (*Id.* ¶ 42.) On July 23, 2015, that court granted Atari's request for the statutory grace period, thereby deferring payment of any amounts due under the Credit Agreement pursuant to Article 1244-1 of the French Civil Code and staying any enforcement proceedings against Atari or any of the assets of the Reorganized Debtors pursuant to Article 1244-2. (*Id.* ¶¶ 45-46.) Alden has appealed the grant of the grace period, which is currently scheduled to run through July 2017. (*Id.* ¶ 47.)

In addition to the Grace Period Action, Atari initiated two other actions before the Commercial Court of Paris: (1) an action for damages on account of the Atari Entities' alleged

overpayments of interest under the Credit Agreement due to the improperly stated TEG (the

"**TEG Action**"), in which Atari seeks damages of approximately €14.7 million; and (2) an action

against Alden for allegedly breaching the Letter Agreement by pursuing a nonjudicial

foreclosure sale of the Reorganized Debtors' assets when, according to Atari, no payment was

due under the Credit Agreement (the "**Letter Agreement Action**," together with the Grace

Period Action and the TEG Action, the "**French Actions**"). (*Id.* ¶¶ 49-50.) Although the

Reorganized Debtors are not parties to the Credit Agreement, they are named as co-plaintiffs in

the French Actions along with the Atari Entities.[6]

On October 28, 2015, Alden filed the Motion in which it seeks to reopen these chapter 11

cases, enforce the Plan and Confirmation Order in order to bar the continued prosecution of

certain claims asserted by Atari in the French Actions,[7] and enjoin further violations of the Plan

and Confirmation Order by Atari and other associated persons. On January 21, 2016, Atari filed

the Opposition. On February 25, 2016, Alden filed its reply (the "**Reply**").[8] As set forth in a

letter to the Court dated February 25, 2016 [ECF No. 599], the parties have agreed to defer

consideration of whether the release and exculpation provisions of the Plan and Confirmation

Order bar claims asserted against Alden in the French Actions until after this Court resolves the

"threshold question" of whether to reopen these chapter 11 cases.

---

[6]  At oral argument, counsel for Atari argued that the Reorganized Debtors were named as plaintiffs in the French Actions only "in an abundance of caution." (Mar. 30, 2016 Hr'g Tr. 48:11.)

[7]  At oral argument, counsel for Alden stated that the claims subject to the releases are those that "relate to the TEG, which Atari is seeking recovery of damages from Alden for events that are indisputably prepetition events that were released as part of the fundamental compromise that allowed the Reorganized Debtors to emerge from chapter 11 in December 2013." (Mar. 30, 2016 Hr'g Tr. 8:9-13.)

[8]  *Reply in Further Support of Motion of Alden Global Capital LLC, for Alden Global Value Recovery Master Fund, L.P., to Reopen these Chapter 11 Cases, Require Compliance with the Chapter 11 Plan and Confirmation Order, and Enjoin Further Violations* [ECF No. 600].

*Discussion*

**I.       *"Other Cause" Exists to Reopen these Cases***

A bankruptcy case that has been closed may be reopened "to administer assets, to accord

relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The parties concur that only the

"other cause" element of § 350(b) is relevant to the Motion. The Bankruptcy Code does not

specify what constitutes "other cause" to reopen a closed case; thus, the determination of

whether a case should be reopened for other cause is committed to the "broad discretion" of the

bankruptcy court. *Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864 (B.A.P. 2d Cir.

1997). In exercising that discretion, a court "may consider numerous factors including equitable

concerns, and ought to emphasize substance over technical considerations." *Id.* Courts in this

district have identified six factors that may be relevant in determining whether a case should be

reopened for cause:

> (1)      the length of time that the case was closed;
>
> (2)      whether a nonbankruptcy forum has jurisdiction to determine the
>          issue that is the basis for reopening the case;
>
> (3)      whether prior litigation in the bankruptcy court determined that
>          another court would be the appropriate forum;
>
> (4)      whether any parties would suffer prejudice should the court grant
>          or deny the motion to reopen;
>
> (5)      the extent of the benefit to any party by reopening;[9] and

---

[9]   Although some courts specify that the benefit to consider is the benefit *to the debtor* if the case is reopened, *see, e.g.*, *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (stating that courts should consider "the extent of the benefit to the debtor"), other courts consider the benefit to any party, including both the debtor and creditors, *see, e.g.*, *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 571-72 (S.D.N.Y. 2003) (considering the benefit to both the debtor and creditors); *In re Koch*, 229 B.R. 78, 86-87 (Bankr. E.D.N.Y. 1999) (same). Consistent with the principle that the reopening of a case "invoke[s] the exercise of a bankruptcy court's equitable powers," *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996), this Court agrees that it is appropriate to consider the extent of the benefit to *any party*, not just the debtor, in determining whether reopening is appropriate.

      (6)    whether it is clear at the outset that no relief would be forthcoming
if the motion to reopen is granted.

*See In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (applying factors); *In re

PlusFunds Grp., Inc.*, No. 06-10402 (JLG), 2015 WL 1842224, at *6-7 (Bankr. S.D.N.Y. Apr.

21, 2015) (same). The moving party bears the burden of establishing other cause to reopen.

*Easley-Brooks*, 487 B.R. at 406.

For the reasons set forth below, application of the factors weighs in favor of reopening

these cases.

### A.    *Factor One: The Length of Time that the Case Was Closed*

Although "the doctrine of laches may be a basis to deny a motion to reopen," *In re Stein*,

394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008), nothing in the Bankruptcy Code or Federal Rules of

Bankruptcy Procedure proscribes the time within which a motion to reopen a closed case must be

made. However, courts have recognized that, "[a]s the time between closing of a bankruptcy case

and its reopening increases, so must the cause for reopening increase in weight." *In re Lowery*,

398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008).

Here, the Atari Entities argue that they have been prejudiced by Alden's delay in seeking

to reopen these cases because "Alden waited more than seven months – until multiple

proceedings were pending in France, in which both Alden and [the Atari Entities] have actively

participated, and during which time Alden attempt to foreclose on the assets securing the

loan – to file the Motion." (Opp'n ¶ 75.). Atari calculates this seven-month period as the time

between March 2015 – when Atari notified Alden that it believed the Credit Agreement had

improperly stated the TEG – and October 2015 when the Motion was filed. (*Id.*) But this is

incorrect. Alden did not have any reason to seek to reopen these cases until Atari had actually

commenced the French Actions in July 2015. *See In re PlusFunds Grp., Inc.*, 492 B.R. 202, 210

n.7 (Bankr. S.D.N.Y. 2013) (time the case was closed was "not a meaningful factor" during

periods where party did not have any reason to seek reopening). Thus, Alden's delay was, at

most, a mere three months. This was not a meaningful delay. *See, e.g.*, *In re Arana*, 456 B.R.

161, 175-76 (Bankr. E.D.N.Y. 2011) (case existed to reopen a bankruptcy case that had been

closed for nearly five years); *Stein*, 394 B.R. at 16 (same with respect to case that had been

closed for more than eight years).

        Moreover, even if Alden did delay in filing the Motion, Atari must show some prejudice

from the delay for the first *Easley-Brooks* factor to be relevant. *See Emmerling*, 223 B.R. at 865

("In the absence of some meaningful prejudice, a court of equity would abuse its discretion by

barring the reopening of a case."). "The mere lapse of time [between the closing of a case and its

reopening] does not constitute prejudice." *Stein*, 394 B.R. at 16. Atari has failed to show how

Alden's delay in filing the Motion caused any actual prejudice, particularly where the French

Actions remain in their early procedural stages. Thus, the length of time that these cases have

been closed is not a significant factor in the Court's analysis.

## B.    Factor Two: Whether a Nonbankruptcy Forum Has Jurisdiction to Adjudicate the Dispute that Is the Basis for Reopening

        Bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior

orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). Even postconfirmation, such

interpretation and enforcement falls within the bankruptcy court's core jurisdiction. *See Moelis*

*& Co. v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*, 460 B.R. 592, 598 (Bankr.

S.D.N.Y. 2011) (postconfirmation dispute constitutes a core proceeding where it "implicates the

enforcement or construction of a bankruptcy court order"); *In re Portrait Corp. of Am., Inc.*, 406

B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (finding interpretation and enforcement of sale order to be

a core proceeding and stating that "[i]t does not matter that the dispute is now between two

11

nondebtors . . . or that the Debtor's chapter 11 plan has been confirmed"); *accord Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 231 (2d Cir. 2002).[10] Courts have held that the bankruptcy court that issues an order is "undoubtedly the best qualified" to interpret and enforce it. *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995). Atari does not dispute these principles or argue that this Court does not have postconfirmation jurisdiction to interpret and enforce the Plan and Confirmation Order.[11] Instead, it argues that this Court should decline to reopen these cases because another forum – the Commercial Court of Paris – *also* has jurisdiction to interpret and, if necessary, enforce the releases contained in the Plan and Confirmation Order. (Opp'n ¶ 61.)

---

[10] In *Petrie Retail*, the Second Circuit held that the interpretation of a prior order of the bankruptcy court was a core proceeding due to the "combination" of three factors: (1) the dispute involved rights that were established by the prior order; (2) the bankruptcy court had retained jurisdiction to interpret and enforce the prior order; and (3) the issue for which the prior order was being interpreted was before the bankruptcy court in connection with another pending motion. *Petrie Retail*, 304 F.3d at 229-31 (2d Cir. 2002). At oral argument in this case, counsel for Atari attempted to distinguish *Petrie Retail* on the basis that the third factor – whether the issue that is the subject of the dispute is already pending before the bankruptcy court in another form – is not present here. (*See* Mar. 30, 2016 Hr'g Tr. 36:2–37:2.) However, courts interpreting *Petrie Retail* have held that the third factor is not strictly necessary and that a proceeding is core even if only the first two *Petrie Retail* factors are present. *See Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 248 (Bankr. S.D.N.Y. 2011) ("The presence of [the first two *Petrie Retail* factors] renders the dispute core."); *see also NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 317 B.R. 260, 271-72 (Bankr. S.D.N.Y. 2004) (finding dispute to be core based on existence of first two *Petrie Retail* factors). Here, it is undisputed that the rights Alden is seeking to enforce (*i.e.*, the releases) were established by the Plan and Confirmation Order and that this Court expressly retained jurisdiction to interpret and enforce that order. Thus, Alden's request in this case represents a core proceeding.

[11] Atari does, however, argue that if this dispute is core, it is core "in the most technical and formalistic sense." (Mar. 30, 2016 Hr'g Tr. 40:25-41:1.) This is because, according to Atari, the releases at issue are mutual releases that could have been agreed to outside of bankruptcy and were not specifically adjudicated in connection with confirmation of the Plan. (*See id.* at 40:5-9 ("[W]hat we're dealing with here is a mutual release. It was a release by agreement. So when Alden says that what they're seeking is to enforce a confirmation order, what they're talking about in substance is enforcing an agreement between Alden and Atari."); 40:20-22 ("There was no adjudication or merits determination by [the Court] as to those consensual releases within the plan confirmation proceedings.").) Atari is incorrect. In the Confirmation Order, the Court specifically found that the mutual releases between Atari and Alden were "necessary and important" to the Plan, (Confirmation Order ¶ 30), and were "an essential means of implementing the Plan," "an integral element of the transactions incorporated into the Plan, and "important to the overall objectives of the Plan," (*id.* ¶ 35). Thus, this case is unlike *In re Bay Point Associates*, 2008 WL 822122 (E.D.N.Y. Mar. 19, 2008), relied on by Atari, where the bankruptcy court abstained from interpreting its own prior order where that order was a stipulation between the parties that the court had "so ordered" and the proceeding was therefore core "only in form."

In support of their argument, Atari correctly contends that bankruptcy courts "routinely decline to exercise their discretion to reopen bankruptcy cases where the parties are seeking or could seek relief in a competent alternative forum." *In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (collecting cases); *see also Mid-City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club)*, 636 F.3d 467, 472 (8th Cir. 2011) ("[T]he availability of an alternative forum . . . [is] a strong reason not to reopen a closed bankruptcy case."); *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542 (8th Cir. 2005) ("The availability of relief in an alternative forum is a permissible factor upon which to base a decision not to reopen a closed bankruptcy case."); *Elias v. U.S. Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir. 1999) (affirming denial of motion to reopen where "the state court is fully capable of resolving the . . . dispute in this case").

Here, although this Court does not doubt the competence of the Paris Commercial Court to interpret and apply the releases contained in the Plan and Confirmation Order, the Court finds that the availability of that court as an alternative forum for the resolution of the parties' dispute does not provide a basis for refusing to reopen these cases.

As set forth above, the Plan was part of a global settlement of disputes among the Debtors, the Atari Entities, and Alden. Although the Debtors were not parties to the Credit Agreement, the Plan modified Alden's rights in collateral securing its claims under that agreement. (*See* Plan § 4.2(c)(ii), (e).) The Debtors and these chapter 11 cases were therefore integral to the restructuring of the financial relationship between Alden and the Atari Entities, including the parties' rights under the Credit Agreement. Accordingly, in the Plan and Confirmation Order, this Court retained exclusive jurisdiction, to the fullest extent permitted by law, to "issue . . . orders in aid of execution, enforcement, implementation, and consummation of

the Plan," "hear and determine disputes or issues arising in connection with the interpretation,

implementation, or enforcement of the Plan [and] the Confirmation Order, and "issue injunctions

and effect any other actions that may be necessary or appropriate to restrain interference by any

person or entity with the consummation, implementation or enforcement of the Plan [and]

Confirmation Order." (*Id.* § 13.1(f), (h), (k).); *see also* Confirmation Order ¶ 128 (approving the

retention of jurisdiction as set forth in the Plan).) Bankruptcy courts in this district regularly

enforce such exclusive jurisdiction provisions contained in their prior orders. *See, e.g.*, *In re*

*Motors Liquidation Co.*, 457 B.R. 276, 286-88 (Bankr. S.D.N.Y. 2011) (enforcing exclusive

jurisdiction provisions of sale order); *In re Lyondell Chem. Co.*, 445 B.R. 277, 285-88 (Bankr.

S.D.N.Y. 2011) (same with respect to plan and confirmation order); *In re Charter Commnc'ns*,

No. 09-11435 (JMP), 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010) (same with respect

to confirmation order); *see also Petrie Retail*, 304 F.3d at 231-32 (affirming bankruptcy court's

exercise of jurisdiction pursuant to exclusive jurisdiction retention provisions of sale order and

chapter 11 plan).)

The cases on which the Atari Entities rely, (*see* Opp'n ¶ 64), are not to the contrary. In

each of *Skyline Woods*, *Apex Oil*, and *Elias*, the courts were asked to reopen bankruptcy cases

where the bankruptcy court's exercise of jurisdiction would have been concurrent with that of

another court. *See Skyline Woods*, 636 F.3d at 471 ("Assuming the bankruptcy court had

jurisdiction over this postbankruptcy dispute . . . , it was *nonexclusive* jurisdiction . . . .")

(emphasis in original); *Apex Oil*, 406 F.3d at 542 (denying reopening where state court had

concurrent jurisdiction over dispute pursuant to 28 U.S.C. § 1334(b)); *Elias*, 188 F.3d at 1162

(denying reopening where dispute was "ancillary to the bankruptcy court's core function" and

one that state courts were "fully capable" of resolving). Similarly, in *HBLS*, the bankruptcy court

14

denied a request to reopen the case based upon, *inter alia*, the fact that the courts of Anguilla,

where the parties had been litigating before one party sought to reopen the bankruptcy case, were

"available and competent" to address the disputes between the parties if the case were not

reopened. 468 B.R. at 640.

None of these cases involved a request to reopen in order to exercise the exclusive

jurisdiction of the bankruptcy court. In such situations, courts have held that reopening is

appropriate. *See, e.g.*, *In re Padilla*, 84 B.R. 194, 197 (Bankr. D. Colo. 1987) (cause existed to

reopen to permit bankruptcy court to exercise its exclusive jurisdiction to adjudicate

dischargeability dispute under §§ 523(a)). Indeed, courts have specifically held that cause exists

under § 350(b) to reopen a closed case to permit a bankruptcy court to interpret and enforce its

own prior orders. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 422-23 (3d Cir. 2013) (cause

existed to reopen bankruptcy case in order to interpret agreement incorporated into confirmed

chapter 11 plan);[12] *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214,

223-224 (3d Cir. 2005) (cause existed to reopen bankruptcy case in order to interpret order

granting relief from the automatic stay); *accord McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172,

1182 (9th Cir. 2002) (holding that the bankruptcy court abused its discretion by refusing to

reopen a case in order to "protect its exclusive jurisdiction over the enforcement of its own

orders").

---

[12] At oral argument, counsel for Atari attempted to distinguish *Lazy Days* on the basis that, in that case, the court
was interpreting whether the provisions of a contract were valid in light of § 365(f)(3), a federal question which
has "no common law analogue." (Mar. 30, 2016 Hr'g Tr. 49:10-17 (quoting *Lazy Days*, 724 F.3d at 423).) By
contrast, in this case, Atari argues that this Court "doesn't need to determine any issues under the Bankruptcy
Code or . . . to make any bankruptcy specific determination." (*Id.* at 49:19-21.) The Court disagrees. "By
definition, plan-related matters arise only in the context of a chapter 11 bankruptcy case," *Penthouse Media Grp.
v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005), and the postconfirmation
interpretation and enforcement of a chapter 11 plan bears a "significant connection" to a bankruptcy case, *Rahl v.
Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004).

In this case, pursuant to the jurisdiction retention provisions of the Plan and Confirmation Order, this Court is the exclusive forum for interpreting and enforcing the releases that are the subject of the dispute between Atari and Alden.[13] These releases were essential to the consummation of the Plan and an integral part of the parties' bargain – a global resolution of disputes among the Debtors, the Atari Entities, and Alden, which was a lender to both the Debtors (pursuant to Alden's agreement to provide postpetition financing) and the Atari Entities (pursuant to the Credit Agreement). In light of this Court's express retention of exclusive jurisdiction over disputes involving the Plan and Confirmation Order, the Court will not now decline to reopen these cases to exercise that jurisdiction in favor of the Commercial Court of Paris.

Moreover, even if the Plan did not provide that this Court is the *exclusive* forum to interpret and enforce the Plan and Confirmation Order, application of the second *Easley-Brooks* factor favors Alden because this Court is clearly more closely connected to the releases granted pursuant to the Plan and Confirmation Order than the Commercial Court of Paris, making it the *appropriate* forum for such interpretation and enforcement. *See Charter Commnc'ns*, 2010 WL 502764, at *3 ("[A]lthough both this Court and the District Court are clearly competent to rule on the Plan releases as they relate to the action pending in the District Court, the bankruptcy court is more closely connected to the current dispute and is the proper forum to rule with respect to the Enforcement Motion."). This is especially true because the releases contained in the Plan

---

[13] At oral argument, counsel for Atari argued that the Plan and Confirmation Order expressly had retained jurisdiction over disputes regarding the "discharges" provided by the Plan, but not the "releases." (Mar. 30, 2016 Hr'g Tr. 37:25-38:14 (citing Plan § 13.1(j)).) This is of no moment. Section 13.1(k) of the Plan provides that this Court retains exclusive jurisdiction "to issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court." (Plan § 13.1(k). When pressed on this issue, counsel conceded that that he "[was] not saying that enforcing the releases isn't necessarily caught by [§] 13.1." (Mar. 30, 2016 Hr'g Tr. 38:24-25.)

and Confirmation Order prohibit the prosecution of certain claims, and the enforcement of such prohibitions is "critical to the functioning of the bankruptcy process" and "closely tethered to core bankruptcy jurisdiction." *Id.* at *4.

The Court disagrees with Atari that its recent decisions denying a motion to reopen a closed bankruptcy case in *In re PlusFunds Group*, 492 B.R. 202 (Bankr. S.D.N.Y. 2013) ("***PlusFunds I***"), and a renewed motion to reopen the case in *In re PlusFunds Group, Inc.*, No. 06-10402 (JLG), 2015 WL 1842224 (Bankr. S.D.N.Y. Apr. 21, 2015) ("***PlusFunds II***"), compel a different result. (*See* Opp'n ¶¶ 60-61.) There, the trustee of a litigation trust sought to reopen a closed bankruptcy case to extend the term of the trust *nunc pro tunc* to its stated expiration date, which had passed without extension. *PlusFunds I*, 492 B.R. at 206. The trustee did so in response to a motion filed by certain defendants in an action brought against them by the trustee for summary judgment based in part on the argument that the trustee lost standing to prosecute its claims when the trust term expired. *Harbour Trust Co. v. Aaron (In re PlusFunds Grp., Inc.)*, 505 B.R. 419, 423 (S.D.N.Y. 2014), *aff'g PlusFunds I*, 492 B.R. 202). In that litigation and before this Court, the trustee took the position that the extension was not strictly necessary because, *inter alia*, the trust would continue in existence until the trustee had distributed its assets to the trust beneficiaries. *PlusFunds I*, 492 B.R. at 206. In denying the trustee's motion to reopen the case, the Court held that an adequate alternative forum – the district court in which the trust's claims were pending – was available to adjudicate "questions raised as to the ongoing viability of the Trust." *Id.* at 210; *see also PlusFunds II*, 2015 WL 1842224, at *6 (noting that "there is a nonbankruptcy forum capable of addressing issues related to the [trust]"). Those cases are not dispositive here because there – unlike here – no party was seeking to interpret or enforce a prior order over which the bankruptcy court had retained exclusive jurisdiction. Rather, the

parties were litigating over the status of the trust, an issue over which other courts indisputably had concurrent jurisdiction. *See PlusFunds I*, 492 B.R. at 210 (stating that, in that case, "the District Court (or a state court) has the unquestioned authority to decide [the ongoing viability of the trust]").

Based upon the foregoing, the Court finds that the second *Easley-Brooks* factor weighs in favor of reopening these cases.

**C.**     ***Factor Three: Whether the Bankruptcy Court Previously Determined the Appropriate Forum to Adjudicate the Dispute***

Closely related to the second *Easley-Brooks* factor – whether a nonbankruptcy forum has jurisdiction over the dispute that is the basis for reopening – is the third factor, which asks whether the bankruptcy court previously determined the appropriate forum to adjudicate the dispute. In the Plan and Confirmation Order, this Court previously determined that it would be the *exclusive* forum to interpret and enforce the Plan and Confirmation Order. (*See* Plan § 13.1(f), (h), (k); Confirmation Order ¶ 128.) Although neither of the Atari Entities were debtors in these chapter 11 cases, Atari S.A. was a co-proponent of the Plan, and both of the Atari Entities were releasors and released parties under the Plan. At the time of confirmation, neither the Debtors nor either of the Atari Entities objected to the retention of exclusive jurisdiction by the Bankruptcy Court. *See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002) (holding that landlord submitted to bankruptcy court's exclusive jurisdiction over sale order by failing to object to jurisdiction retention provisions included in that order and incorporated into the plan). Accordingly, the third *Easley-Brooks* factor weighs in favor of reopening these chapter 11 cases.

**D.      *Factor Four: Whether Any Party Would Suffer Prejudice if the Court Grants or Denies the Motion to Reopen***

The Court is also required to consider whether any party would be prejudiced by the Court granting or denying the Motion. According to Alden, if the Motion is denied, it will be prejudiced by having to defend Atari's claims – which it contends are barred by the release – before the Commercial Court of Paris. (*See* Motion ¶ 48 ("If these cases are not reopened, Alden faces significant risk of . . . the incurrence of significant legal fees and expenses in needless litigation . . . in France.").) Atari argues that Alden will not be prejudiced because Alden's arguments regarding the application of the releases will be preserved; it will "simply be required to litigate . . . before a French court." (Opp'n ¶ 69.)

Generally, a party's obligation to defend a claim on the merits in another forum is not the type of "legal prejudice" that is relevant to whether a bankruptcy case should be reopened. *See, e.g.*, *PlusFunds II*, 2015 WL 1842224, at *4 ("[C]ourts do not view the obligation to defend a claim on the merits as legal prejudice that weighs against the reopening of the case even when the merits would not be reached but for the reopening of the case."); *In re Arana*, 456 B.R. 161, 174 (Bankr. E.D.N.Y. 2011) (obligation to defend a claim on the merits is "not the kind of legal prejudice" that should be a bar to reopening a case). However, that general rule is not applicable where, as here, the issue is not merely whether the litigation should go forward in another forum, but rather whether the release provisions of the Plan and Confirmation Order bar prosecution of the claims in *any* forum. The Court finds that Alden would be prejudiced by having to litigate issues relating to the scope of the Plan's release provisions in France since, as part of the global restructuring between Atari and Alden effectuated by the Plan, the parties agreed to resolve those issues in this Court. The parties could have agreed not to address these claims under the Plan at all or to resolve those claims in another forum. They did not do so. The Court finds that denying

19

Alden the ability to litigate in this Court – the exclusive forum agreed to by the parties – would

be unduly prejudicial. *Cf. In re Otto*, 311 B.R. 43, 48 (Bankr. E.D. Pa. 2004) (declining to reopen

a closed case based on the availability of an alternative forum but noting that, "[i]f [a party

seeking reopening] had no other forum to [pursue its claims], the prejudice [that party] would

suffer were relief under section 350(b) denied would outweigh countervailing circumstances").

In addition to whether Alden will be prejudiced if the Motion is denied, relevant to the

Court's analysis is whether any party will be prejudiced if the Motion is granted. *See Harbour

Trust Co. v. Aaron (In re PlusFunds Grp., Inc.)*, 589 Fed. App'x 41, 42-43 (2d Cir. 2015)

(reversing *PlusFunds I* based on the Court's failure to "fully consider . . . whether any prejudice

would result from *granting* the Trustee's request [to reopen the case]") (emphasis in original);

*see also PlusFunds II*, No. 06-10402 (JLG), 2015 WL 1842224, at *6-7 (considering the lack of

prejudice to any party that would result from reopening in determining whether a case should be

reopened under § 350(b)).

Here, the Court finds that no party will be prejudiced by granting the Motion and

reopening these cases. As set forth above, Atari S.A. was a co-proponent of the Plan, and both of

the Atari Entities were releasors and released parties under § 12.9 the Plan. None of the Debtors,

Atari S.A., or Atari Europe objected to the jurisdiction retention provisions of the Plan and

Confirmation Order. Thus, they "submitted [themselves] to the jurisdiction of the bankruptcy

court" with respect to the interpretation and enforcement of the Plan and Confirmation Order,

*Petrie Retail*, 304 F.3d at 232, and cannot now claim to be prejudiced by this Court's exercise of

its exclusive jurisdiction as set forth those documents.

Accordingly, the Court finds that the fourth *Easley-Brooks* factor weighs in favor of

reopening these cases.

### E.        *Factor Five: The Extent of the Benefit to Any Party by Reopening*

The next factor for the Court to consider is the extent of the benefit to any party, if any,

by reopening these cases. According to Atari, there can be no benefit to the Reorganized Debtors

because all distributions under the Plan have been made and the estates have been fully

administered. (*See* Opp'n ¶ 74.) In addition, Atari argues that any determination regarding the

application of the releases granted by the Plan to claims arising under the Credit Agreement will

have no effect on the Debtors because they are not parties to that agreement. (*See id.*) These

arguments ignore the fact that, although the Debtors were not actual signatories to the Credit

Agreement, these chapter 11 cases were integral to the larger restructuring of the financial

relationship between Atari and Alden.

As set forth above, the Plan constituted a global settlement and compromise among

various parties including the Debtors, Atari S.A., Atari Europe, and Alden. Pursuant to the Plan,

Alden waived its right to enforce its security interest in the Debtors' intellectual property assets,

which had secured the Atari Entities' obligations under the Credit Agreement. In addition, Alden

consented to the release of certain intercompany claims against the Debtors, which also served as

collateral under the agreement. In exchange, the Debtors released Atari S.A., Atari Europe, and

Alden – and each of those entities released one another – from any and all claims "whether

known or unknown, foreseen or unforeseen, existing or hereafter arising." (Plan §§ 12.7, 12.9.)

Thereafter, upon the effective date of the Plan, each of the Reorganized Debtors pledged all of

their assets to Alden to further secure the Atari Entities' obligations under the Credit Agreement.

Alden's attempts to enforce those pledges and foreclose on the Reorganized Debtors' assets

precipitated the filing of the Grace Period Action by Atari. As a result of this interconnected

relationship in these cases between the Debtors, the Atari Entities, Alden, and the Credit

Agreement, the facts of this case are distinguishable from those in *Neil's Mazel*, a case on which

Atari relies, where the debtor's involvement in the disputes at issue was described by the court as "peripheral" and "almost an afterthought." *In re Neil's Mazel, Inc.*, 492 B.R. 620, 628-29 (Bankr. E.D.N.Y. 2013).

As a result, the Court disagrees with Atari that the reopening of these cases will not provide any benefit. (Opp'n ¶ 74.) Courts have held that the need to enforce rights that were bargained for in a confirmed plan of reorganization constitutes a sufficient "benefit" to justify reopening a bankruptcy case. *See Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 571 (S.D.N.Y. 2003) (affirming order reopening a closed case to allow the debtor to pursue unscheduled causes of action where creditors had "bargained to have the reorganized debtors retain [those causes of action]" in the confirmed chapter 11 plan). The Court agrees with Alden that the enforcement of the global settlement and releases embodied in the Plan and Confirmation Order is sufficiently beneficial to warrant the reopening of these cases. Thus, the fifth *Easley-Brooks* factor weighs in favor of reopening.

**F.      Factor Six: Whether It Is Clear at the Outset that No Relief Would Be Forthcoming If the Case Is Reopened**

Courts routinely decline to reopen cases where there is no merit to the ultimate relief being requested. *See, e.g.*, *Cohen v. CDR Creances S.A.S. (In re Euro-Am. Lodging Corp.)*, 549 Fed. App'x 52, 54 (2d Cir. 2014) (affirming denial of a nondebtor's motion to reopen a closed chapter 11 case in order to enforce his discharge under the confirmed plan where "the plan clearly didn't grant a discharge to [the nondebtor]" and "no order [discharging the nondebtor] could have been issued"); *In re Wilson*, 492 B.R. 691, 695 (Bankr. S.D.N.Y. 2013) (declining to reopen case based on alleged violations of the discharge injunction where postpetition foreclosure action clearly did not violate that injunction). In such a situation, where the ultimate

relief being sought has no merit, reopening the case would be "meaningless." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996).

In its Opposition, Atari argues that it is clear at the outset that no relief will be forthcoming if these cases are reopened because the releases contained in the Plan and Confirmation Order are insufficiently specific to release Atari's claims against Alden based upon the improperly stated TEG in the Credit Agreement. (*See* Opp'n ¶ 78.) According to Atari's French law expert, Mr. David Malamed,[14] Article 1338 of the French Civil Code precludes the release of such claims "unless the claims are known and the waiver is intentional and explicit." (Malamed Decl. ¶ 31 (citing C. civ. art 1338 (Fr.).) Because Atari allegedly did not know of the TEG claims at the time the Plan was confirmed,[15] and because § 12.9 of the Plan does not expressly reference any such claims, Mr. Malamed asserts that the release does not apply to the claims asserted by Atari in the French Actions. (*Id.* ¶ 35.)

Alden's French law expert, Professor Rémy Libchaber,[16] disagrees. Professor Libchaber asserts that Article 1338 of the French Civil Code is "simply irrelevant" in this case. (Libchaber Decl. ¶ 11.) Instead, Professor Libchaber argues that, under French law, "a right can always be waived once it is born." (*Id.* ¶ 23.) Based upon applicable principles of French law and the broad language of § 12.9 of the Plan, Professor Libchaber concludes:

> [R]egarding the question of whether by its agreement to the Plan, Atari has validly – under French law – waived its right to criticize the flaws possibly entering the TEG concerning the [Credit Agreement] and the amendments thereto

---

[14] *See Declaration of David Malamed in Support of Opposition of Atari, S.A., Atari Europe, SAS, and the Reorganized Debtors to Motion of Alden Global Capital Recovery Master Fund, L.P., to Reopen these Chapter 11 Cases, Require Compliance with the Chapter 11 Plan and Confirmation Order, and Enjoin Further Violations by the Debtors and their Affiliates* [ECF No. 592] (the "**Malamed Declaration**").

[15] Alden has disputed Atari's allegation that it did not know of the TEG claims at the time the Plan was confirmed. The parties have agreed to defer a determination of that disputed issue of fact until after the Court has determined whether to reopen these chapter 11 cases.

[16] *See Declaration of Rémy Libchaber* [ECF No. 601] (the "**Libchaber Declaration**").

> entered into before confirmation of the Plan in December 2013, in my opinion,
> the answer is unequivocally yes.

(*Id.* ¶ 52.)

As set forth above, the parties have now agreed to defer consideration of the merits of this question – whether Atari's claims in the French Actions are barred by the Plan release – until after the Court resolves the threshold question of whether these cases should be reopened. Thus, the Court need not determine, at this juncture, whether the ultimate relief Alden is requesting will be forthcoming if the case is reopened. *See PlusFunds I*, 492 B.R. at 210 n.7 (finding sixth *Easley-Brooks* factor irrelevant where it was "unnecessary now to determine whether appropriate relief is available . . . as a result of [re]opening the case"). However, even if the parties had not agreed to defer consideration of the merits, the Court would find that it is not clear at the outset that no relief will be forthcoming if the case is reopened. Courts that have applied this rationale in declining to reopen cases have done so where the ultimate relief being sought was clearly frivolous. *See Euro-Am. Lodging*, 549 Fed. App'x at 54; *Wilson*, 492 B.R. at 695. As demonstrated by the parties' competing interpretations of applicable French law, the Court finds that Alden's contention here that the release applies to the claims asserted in the French Actions is not clearly frivolous.

Atari also argues that it is clear at the outset that no relief can be granted if these cases are reopened because Alden cannot establish its entitlement to the issuance of an antisuit injunction against the continued prosecution of the French Actions.[17] In the Second Circuit, "[i]t is beyond

---

[17] According to Alden, it is not seeking an antisuit injunction because it is seeking relief only against Atari and those acting on its behalf, not against the Commercial Court of Paris itself. (*See* Reply ¶ 46.) This is incorrect. Antisuit injunctions are always directed to the parties, not to the foreign court in which they are litigating. *See Ibeto Petrochem. Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 65 (2d Cir. 2007) (antisuit injunctions "should be directed specifically to the parties, for it is only the parties before a federal court who may be enjoined from prosecuting a suit in a foreign country"). Thus, the fact that Alden is not seeking to directly enjoin the Commercial Court of Paris has no bearing on whether it is seeking an antisuit injunction.

question that a federal court may enjoin a party from pursuing litigation in a foreign forum."

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645,

652 (2d Cir. 2004). However, such an antisuit injunction may be issued only where two threshold

requirements are met: "(1) the parties must be the same in both matters, and (2) resolution of the

case before the enjoining court is dispositive of the action to be enjoined." *China Trade & Dev.*

*Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987). If those threshold requirements are

met, courts determining whether to issue an antisuit injunction must consider additional

"discretionary factors," including (1) whether the foreign action would frustrate a policy in the

enjoining forum, (2) whether the foreign action would be vexatious, (3) whether the foreign

action would be a threat to the enjoining court's jurisdiction, (4) whether the proceedings in the

other forum will prejudice other equitable considerations, and (5) whether adjudication of the

same issues in separate actions will result in delay, inconvenience, expense, inconsistency, or a

race to judgment. *Id.* at 35 (citing *Am. Home Assurance Co. v. Ins. Corp. of Ir. Ltd.*, 603 F. Supp.

636, 643 (S.D.N.Y. 1984)). Although courts should consider all five factors, *see Ibeto*

*Petrochem. Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007), the first and third

factors – the frustration of the enjoining court's public policies and the threat to its

jurisdiction – have a "greater significance" than the other factors, *China Trade*, 837 F.2d at 36.

 Here, Alden has made at least a colorable claim that an antisuit injunction should issue in

order to protect the releases contained in the Plan and Confirmation Order; thus, it is not clear at

the outset that no relief will be forthcoming if these cases are reopened. As to the threshold

requirements, there is no dispute that the parties before this Court are the same as those in the

French Actions and, if the Court ultimately finds that Atari's claims in the French Actions are

barred by the releases contained in the Plan and Confirmation Order, the resolution before this

Court will be dispositive of those issues in the French Actions. As to the remaining discretionary

factors, such factors "will tend to weigh in favor of an anti-foreign-suit injunction that is sought

to protect a federal judgment." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan*

*Gas Bumi Negara*, 500 F.3d 111, 120 (2d Cir. 2007); *accord Paramedics Electromedicina*, 369

F.3d at 654 ("An antisuit injunction may be needed to protect the court's jurisdiction once a

judgment has been rendered."). Here, the Confirmation Order constitutes a final judgment of this

Court; thus, the discretionary factors will tend to weigh in favor of the issuance of an antisuit

injunction. *See Karaha Bodas*, 500 F.3d at 126-27 (antisuit injunction warranted to protect

federal judgment); *Paramedics Electromedicina*, 369 F.3d at 654 (antisuit injunction warranted

to protect federal order compelling arbitration).

 This does not, of course, mean that Alden's arguments will or will not ultimately be

successful once these cases are reopened; only that the relief that Alden is seeking in this Court

is not so plainly meritless that the Court will deny Alden the opportunity to request it by

declining to reopen these cases.

## II. *The Court Will Not Abstain from Resolving this Dispute*

 Finally, in the alternative, Atari argues that, notwithstanding this Court's jurisdiction over

the issues raised in the Motion, the Court should abstain from exercising that jurisdiction in favor

of the Commercial Court of Paris. "[F]ederal courts have the inherent, discretionary power to

abstain from exercising [their] jurisdiction in order to extend comity to related proceedings

pending in other countries." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,

216 F. Supp. 2d 198, 210 (S.D.N.Y. 2002). According to Atari, abstention is appropriate here

because, *inter alia*, the proceedings before the Commercial Court of Paris were filed first, the

parties to each proceeding are the same, the issues raised by the proceedings in that court and this

one are "sufficiently similar," the parties contractually consented to the exercise of jurisdiction

by the Commercial Court of Paris, and the dispute between the parties principally concerns the application of French law. (*See* Opp'n ¶¶ 101-06.) Atari also contends that abstention is appropriate because the Motion "plainly constitutes forum shopping" by Alden. *Id.* ¶ 107.[18]

The Court disagrees. The issue here is not whether French law precludes enforcement of the Plan; it is whether the release and exculpation provisions of the Plan bar Atari's prosecution of certain claims in the French Actions.  Courts in this district have recognized that it is not appropriate for a court to abstain from hearing disputes regarding the interpretation and enforcement of its own prior orders. *See U.S. Home Corp. v. Los Prados Community Ass'n (In re U.S.H. Corp.)*, 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("[T]he policy of this district does not favor abstention in matters involving a court's interpretation of its own orders."); *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders . . . and, therefore, should not abstain from doing so."); *see also In re Motors Liquidation Co.*, 457 B.R. 276, 291 (Bankr. S.D.N.Y. 2011) ("[I]n most instances, whether asked to enforce or construe [its prior orders], [a bankruptcy court] will decline invitations to abstain."); *accord Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp., LLC)*, 517 B.R. 496, 504-05 (Bankr. S.D.N.Y. 2014) (declining to abstain from proceeding to interpret plan and confirmation order).

---

[18] In support of its forum shopping argument, Atari contends that equitable considerations do not support Alden's position because, after Atari obtained the statutory grace period from the Commercial Court of Paris, Alden was "clearly seeking to avoid its obligations to litigate in France." (Mar. 30, 2016 Hr'g Tr. 54:17-18; *see also id.* at 54:2-15 ("[O]nce the TEG issues were raised, . . . Alden came to the U.S. not to reopen these cases, not to enforce the plan release, but to try and foreclose on the [Reorganized Debtors'] assets. So that was their Plan A, Your Honor. . . . [T]his [Motion] was Plan B . . . .").) The Court is not persuaded. This Court was the situs of these chapter 11 cases, and the Plan manifested an agreement among the parties that this Court would retain exclusive jurisdiction over disputes regarding the interpretation and enforcement of the Plan into which the releases were embodied. Thus, Alden's effort to enforce the releases in this Court does not constitute forum shopping. *See LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.)*, 312 B.R. 249, 255 (Bankr. D. Del. 2004) (commencement of action in bankruptcy court was not forum shopping where court was the location of the debtor's chapter 11 case and parties had previously consented to bankruptcy court as the proper forum to adjudicate the dispute).

Because Alden has asked this Court to interpret and enforce the release and exculpation provisions of the Court's Confirmation Order, the Court finds that abstention in favor of the Commercial Court of Paris would not be appropriate.

### *Conclusion*

For these reasons, the Court finds that Alden has established "other cause" to reopen these chapter 11 cases pursuant to § 350(b) of the Bankruptcy Code. Further, the Court finds that abstention would be inappropriate. Accordingly, the Motion is **GRANTED** insofar as it seeks an order reopening these chapter 11 cases. Counsel for Alden is hereby directed to settle an order consistent with this memorandum decision on not less than seven days' notice.

Dated: New York, New York
       April 20, 2016

/s/ *James L. Garrity, Jr.*
JAMES L. GARRITY, JR.
United States Bankruptcy Judge